BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
ANTHONY NICASTRO
*Acting Director*
DEVIN BARRETT
*Senior Litigation Counsel*
MALCOLM MCDERMOND
ALEXA PERLMUTTER
JASON K. ZUBATA
*Trial Attorneys*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: jason.k.zubata@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| YAMIL LUNA GUTIERREZ, *et al.*, ) | Civil Action No. 1:25-cv-01766-SLS |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, Secretary, U.S. Department ) | |
| of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

    **A.** Legal Background ....................................................................................... 3
    **B.** Factual Background .................................................................................... 5
    **C.** This Lawsuit and Motion .......................................................................... 6

STANDARD ......................................................................................................... 6

ARGUMENT ........................................................................................................ 8

   I.    Plaintiffs' Claims are Moot as They are Neither Detained at NSGB or Otherwise in U.S. Custody .............................................................................. 8

   II.   Certain Putative Class Members Lack Article III Standing as They Cannot Demonstrate the Requisite Injury-in-Fact for the Feared Future Harm Alleged ..................................................................................................... 12

   III.  8 U.S.C. § 1252(f)(1) Strips This Court of Jurisdiction to Issue the Injunctive Classwide Relief Plaintiffs Seek .................................................. 14

   IV.  The Class is Impermissible Because it Intends to Include Individuals Who Have Not Suffered, and May Not Ever Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment ........................ 21

   V.   Plaintiffs' Proposed Class Lacks the Commonality Required under Rule 23(a)(2) Because Their Conditions of Confinement and Due Process Protections Are Not Common ...................................................................... 26

   VI.  The Named Plaintiffs are Not Adequate Class Representatives .................. 30

   VII.  Plaintiffs' Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements ................. 31

        **A.** A "Single Injunction" Cannot Provide Relief to Each Member of the Putative Class .................................................................................. 32

        **B.** There is No Injunctive Relief to Enjoin Detention Under Section 1231 ................................................................................................. 33

   VIII. The Court Should Deny Class Certification in Favor of Allowing Individual Habeas Petitions as Habeas is Unfit for Class Adjudications ..................... 33

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
   No. CV, 2023 WL 4364096 (D.D.C. July 6, 2023) ................................................................. 28, 29

*A.A.R.P. v. Trump*,
   145 S. Ct. 1034 (2025) ......................................................................................................... 35

*AmChem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................7, 22, 30, 31

*Arizona v. Biden*,
   40 F.4th 375 (6th Cir. 2022) ................................................................................................ 16

*Biden v. Texas*,
   797 U.S. 785 (2022) ............................................................................................................ 17

*Brown v. District of Columbia*,
   928 F.3d 1070 (D.C. Cir. 2019) ........................................................................................... 27

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................................................ 6

*Calla-Collado v. Att'y Gen. of U.S.*,
   663 F.3d 680 (3d Cir. 2011) ............................................................................................... 15

*C.G.B. v. Wolf*,
   464 F. Supp. 3d 174 (D.D.C. 2020) ................................................................................ 27, 31

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................................ 13

*Coca-Cola Bottling Co. of Elizabethtown, v. Coca-Cola Co.*,
   98 F.R.D. 254 (D. Del. 1983) .............................................................................................. 19

*Container Corp. of Am. v. Franchise Tax Bd.*,
   463 U.S. 159 (1983) ............................................................................................................ 5

*Cooper v. Fed. Reserve Bank of Richmond*,
   467 U.S. 867 (1984) ............................................................................................................ 20

*Dellums v. Powell,*
   566 F.2d 216 (D.C. Cir. 1977) ................................................................................. 33

*Dep't of Homeland Sec. v. Thuraissigiam,*
   591 U.S. 103 (2020) ............................................................................................. 3

*DL v. District of Columbia,*
   713 F.3d 120 (D.C. Cir. 2013) ......................................................................... 26, 27

*Gandarillas-Zambrana v. Bd. of Immigr. Appeals,*
   44 F.3d 1251 (4th Cir. 1995) ................................................................................ 15

*Garcia v. Johanns,*
   444 F.3d 625 (D.C. Cir. 2006) .............................................................................. 29

*Garland v. Aleman Gonzalez,*
   596 U.S. 543 (2022) ........................................................................... 14, 15, 16, 17

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) ............................................................................................. 7

*Givens v. Bowser,*
   111 F.4th 117 (D.C. Cir. 2024) ........................................................................... 8, 9

*Hamama v. Adducci,*
   912 F.3d 869 (6th Cir. 2018) ................................................................................ 17

*Hartman v. Duffey,*
   19 F.3d 1459 (D.C. Cir. 1994) .............................................................................. 21

*Hernandez-Carrera v. Carlson,*
   547 F.3d 1237 (10th Cir. 2008) ............................................................................ 29

*Honeywe,ll Int'l, Inc. v. Nuclear Regul. Comm'n,*
   628 F.3d 568 (D.C. Cir. 2010) ............................................................................ 8, 9

*I.M. v. United States Customs & Border Prot.,*
   67 F.4th 436 (D.C. Cir. 2023) ......................................................................... 32, 34

*In re Guantanamo Detainee Cases,*
   355 F. Supp. 2d 443 (D.D.C. 2005) ...................................................................... 35

*In re Navy Chaplaincy,*
   306 F.R.D. 33 (D.D.C. 2014) ............................................................................... 32

*In re White,*
    64 F.4th 302 (D.C. Cir.) ................................................................. 22, 23, 24, 25, 27

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019) .............................................................. passim

*J.G.G. v. Trump,*
    Nos. 25-5067, 25-5068, 2025 U.S. App. LEXIS 7131 (D.C. Cir. Mar. 26, 2025) .......................... 35

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ...................................................................... 4, 19, 29

*Johnson v. District of Columbia,*
    248 F.R.D. 46 (D.D.C. 2008) .................................................................... 25

*Jones v. Rossides,*
    256 F.R.D. 274 (D.D.C. 2009) .................................................................... 7

*Kohen v. Pac. Inv. Mgmt. Co. LLC,*
    571 F.3d 672 (7th Cir. 2009) .................................................................... 21

*Las Americas Immigrant Advoc. Ctr. v. Wolf,*
    507 F. Supp. 3d 1 (D.D.C. 2020) ................................................................ 29

*Lawyers Ass'n v. Reno (AILA),*
    199 F.3d 1352 (D.C. Cir. 2000) ................................................................. 3

*Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO,*
    216 F.3d 577 (7th Cir. 2000) ................................................................... 32

*Lewis v. Nat'l Football League,*
    146 F.R.D. 5 (D.D.C. 1992) .................................................................... 21

*Lightfoot v. District of Columbia,*
    273 F.R.D. 314 (D.D.C. 2011) .................................................................. 32

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................ 12, 13

*Lujan v. G & G Fire Sprinklers, Inc.,*
    532 U.S. 189 (2001) .......................................................................... 27

*M.M.V. v. Garland,*
    1 F.4th 1100 (D.C. Cir. 2021) ................................................................. 24

*Make the Rd. N.Y. v. McAleenan*,
  405 F. Supp. 3d 1 (D.D.C. 2019) ............................................................... 23

*McCarthy v. Kleindienst*,
  741 F.2d 1406 (D.C. Cir. 1984) .............................................................. 6, 7

*Mendoza-Linares v. Garland*,
  51 F.4th 1146 (9th Cir. 2022) ................................................................. 23

*N.S. v. Dixon*,
  141 F.4th 279 (D.C. Cir. 2025) ............................................................... 16

*O.A. v. Trump*,
  404 F. Supp. 3d 109 (D.D.C. 2019) ......................................................... 24

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................... 25

*Pension Ben. Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990) ................................................................................. 5

*Pigford v. Glickman*,
  182 F.R.D. 341 (D.D.C. 1998) ................................................................. 21

*President v. Vance*,
  627 F.2d 353 (D.C. Cir. 1980) ................................................................. 18

*Ross v. Lockheed Martin Corp.*,
  267 F. Supp. 3d 174 (D.D.C. 2017) ......................................................... 21

*Scott v. District of Columbia*,
  139 F.3d 940 (D.C. Cir. 1998) ................................................................... 8

*Sibley v. Diversified Collection Servs., Inc.*,
  No. CIV. A., 396-cv-0816, 1998 WL 355492 (N.D. Tex. June 30, 1998) ...................................... 19

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................... 12

*Steel Co.* v. *Citizens for Better Env't*,
  523 U.S. 83 (1998) ................................................................................. 12

*Thorpe v. District of Columbia*,
  303 F.R.D. 120 (D.D.C. 2014) ............................................................ 21, 22

*United States ex rel. Knauff v. Shaughnessy,*

    338 U.S. 537 (1950) ............................................................................................ 3

*United States Parole Comm'n v. Geraghty,*

    445 U.S. 388 (1980) .......................................................................................... 30

*Van Dinh v. Reno,*

    197 F.3d 427 (10th Cir. 1999) ......................................................................... 15

*Vijender v. Wolf,*

    No. 19-CV-3337 (APM), 2020 WL 1935556 (D.D.C. Apr. 22, 2020) .......... 32

*Wal-Mart Stores, Inc. v. Dukes,*

    564 U.S. 338 (2011) .................................................................................. passim

*Warth v. Seldin,*

    422 U.S. 490 (1975) .......................................................................................... 25

*Welborn v. Internal Revenue Serv.,*

    218 F. Supp. 3d 64 (D.D.C. 2016) ................................................................... 13

*Whitmore v. Arkansas,*

    495 U.S. 149 (1990) .......................................................................................... 34

*Zadvydas v. Davis,*

    533 U.S. 678 (2001) ................................................................................... 4, 5, 29

**Statutes**

6 U.S.C. § 202(5) ........................................................................................................ 3

8 U.S.C. § 1103(a)(3) .................................................................................................. 3

8 U.S.C. § 1158 ........................................................................................................... 3

8 U.S.C. § 1182(a)(6)(C) ............................................................................................ 3

8 U.S.C. § 1182(d)(5)(A) ............................................................................................ 4

8 U.S.C. § 1225(b) .................................................................................................... 22

8 U.S.C. § 1225(b) .................................................................................................. 3, 4

8 U.S.C. § 1229a ...................................................................................................... 3, 4

8 U.S.C. § 1231 .................................................................................... 14, 17, 18, 33

8 U.S.C. § 1231(a) ...................................................................................... 14, 15, 16

8 U.S.C. § 1231(g)(1) ......................................................................................... passim

8 U.S.C. § 1252 ............................................................................................................ 33

8 U.S.C. § 1252(a)(1) ..................................................................................................... 4

8 U.S.C. § 1252(e) ......................................................................................................... 2

8 U.S.C. § 1252(e)(1)(A) ............................................................................................. 32

8 U.S.C. § 1252(e)(1)(B) ....................................................................................... 23, 24

8 U.S.C. § 1252(e)(2) ................................................................................................... 24

8 U.S.C. § 1252(e)(3)(A) ............................................................................................. 24

8 U.S.C. § 1252(f) ........................................................................................................... 2

8 U.S.C. § 1252(f)(1) ............................................................................................. passim

28 U.S.C. § 2072(b) ..................................................................................................... 21

28 U.S.C. § 2242 .......................................................................................................... 34

**Regulations**

8 C.F.R. § 208.30(f) ...................................................................................................... 3

**Other Authorities**

Fed. Prac. & Proc. Civ. § 1775 .................................................................................... 19

Habeas Corpus Act of 1679, 31 Car. 2, c. 2 § I (Eng.) ............................................... 34

3 William Blackstone, Commentaries on the Laws of England 131-132 (1768) ................................. 34

Manual for Complex Litigation § 21.222 (4th ed.) ....................................................... 22

## INTRODUCTION

On January 29, 2025, the President directed the Secretary of Defense and the Secretary of Homeland Security to take all appropriate actions to expand the Migrant Operations Center (MOC) at the Guantanamo Bay Naval Station (NSGB) to allow for the housing of "high-priority criminal aliens unlawfully present in the United States."[1] Since that time, immigration detainees with final orders of removal have been transferred to NSGB as part of the removal process. *See* Exhibit A, Memorandum of Understanding ("MOU").

The named Plaintiffs—two aliens with final orders of removal who were detained at NSGB prior to completion of their removal from the United States and who are no longer in U.S. custody—bring this putative habeas class action on behalf of all immigration detainees who are detained at or may be transferred to NSGB. Specifically, named Plaintiffs seek to represent a class of all aliens "originally apprehended and detained in the United States, and who are, or will be held at [NSGB]." ECF No. 4, Plaintiffs' Motion for Class Certification and Appointment of Class Counsel (Mot.) at 1.

As raised in Defendants' consent motion for extension of time to file this opposition, ECF No. 18 at 1, "Defendants believe the appropriate course is for this Court to decide the [forthcoming] Rule 12 motion before deciding the class certification motion, as there is a strong likelihood that the claims will be narrowed or the case will be resolved and dismissed consistent with Rule 12." The Court's resolution of the scope and nature of the viable claims is essential to the class certification process because the commonality analysis calls for a "rigorous analysis" of the merits of the class claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011).

---

[1] The White House, "Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity" (Jan. 29, 2025), https://www.whitehouse.gov/presidentialactions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-fullcapacity/.

Nevertheless, the Court should deny Plaintiffs' motion to certify. As an initial matter, Plaintiffs' claims are moot, and they do not satisfy an exception to the mootness doctrine such that Plaintiffs can continue to serve as class representatives. Moreover, Plaintiffs' articulated class is impermissible because it would include those whose claims are statutorily precluded from class treatment as well as individuals who have not suffered, and may not suffer, the same or any injury. Beyond being overbroad and amorphous, certification of this class would be improper because the class does not meet most of the requirements under Federal Rule of Civil Procedure 23(a) and (b).

To the extent the putative class alleges substantive due process violations, Plaintiffs allege individual incidents that turn on each detainee's respective conditions of confinement, which are not common to all putative class members housed at two different facilities (with different policies and practices) at NSGB under circumstances where security and precautions depend on the individual behavior of proposed class members. And it is well established that due process claims depend on individualized circumstances. Stated differently, resolution of Plaintiffs' alleged injuries hinges on factual and legal circumstances that are not shared by the putative class as a whole. Additionally, Plaintiffs have failed to demonstrate that their proposed class qualifies under Rule 23(b)(2) for three reasons: (1) 8 U.S.C. § 1252(f) bars this Court from entering classwide injunctive relief that would order federal officials to refrain from exercising immigration detention authority conferred by the Immigration and Nationality Act (INA); (2) 8 U.S.C. § 1252(e) bars injunctive relief regarding all putative class members subject to expedited removal orders; and (3) Plaintiffs' claims—challenging individual incidents—must be channeled through individual habeas petitions, such that habeas relief would be inappropriate on a classwide basis. For these reasons, class certification should be denied.

## BACKGROUND

**A. *Legal Background.*** The Executive Branch has extensive constitutional authority in the field of immigration, and Congress has further conferred broad statutory discretion over the administration and enforcement of the nation's immigration laws. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). Applicants for admission who are intercepted at entry or shortly after unlawfully entering the United States are subject to an expeditious process to remove them from the United States under 8 U.S.C. § 1225(b)(1), as described herein. Under this process—known as expedited removal—applicants for admission arriving in the United States or certain other aliens (as designated by the Secretary of Homeland Security) who lack valid entry documentation or make material misrepresentations shall be "order[ed] . . . removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see* 8 U.S.C. §§ 1182(a)(6)(C), (a)(7); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107-10 (2020) (discussing expedited removal); *Am. Immigr. Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1354-55 (D.C. Cir. 2000) (same). They remain subject to an expedited removal order if they do not indicate an intent to apply for asylum or express a fear of persecution, or if they are unable to show that such fear is credible. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (b)(1)(B)(v).

Individuals subject to an expedited removal order must be detained until they are removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If the applicant for admission indicates a fear of return and the asylum officer determines that the applicant has a credible fear, the officer will issue a Notice to Appear, placing the applicant in removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Removal proceedings under § 1229a

include the ability to appeal to the Board of Immigration Appeals (Board) and petition for review by a federal appellate court. 8 U.S.C. § 1252(a)(1). An applicant for admission who demonstrates a credible fear "shall be detained for further consideration of the application for asylum."[2] 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded.").

For anyone with a final order of removal that was entered following removal proceedings held under 8 U.S.C. § 1229a, Congress has authorized detention under 8 U.S.C. § 1231(a) while the government works to execute the removal order. *See* 8 U.S.C. § 1231(a)(2). Section 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001), limits post-final-order detention to the period reasonably necessary to accomplish removal. 533 U.S. at 701. The Court determined that six months is a presumptively reasonable period of time to allow the government to complete removal after the removal period has commenced. *Id.* at 701.

Once the six-month period has run, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [then] the Government must respond with evidence sufficient to rebut that showing." *Id.* "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. In

---

[2] The only exception to § 1225(b)(1)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole applicants for admission into the United States on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (holding the existence of § 1182(d)(5)(A)'s "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

making this assessment, the Supreme Court has counseled immigration habeas courts to apply "[o]rdinary principles of judicial review" in order to "give expert agencies decisionmaking leeway in matters that invoke their expertise" and "recognize [the] Executive Branch['s] primacy in foreign policy matters." *Id.* at 700 (citing *Pension Ben. Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 651-52 (1990); *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 196 (1983)). Specifically, the Supreme Court instructed habeas courts to "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700.

**B. *Factual Background.*** On January 29, 2025, the President issued a Memorandum ordering Department of Homeland Security (DHS) and the Department of Defense (DoD) to take all necessary steps to expand the MOC in NSGB to allow for the housing of "high-priority criminal aliens unlawfully present in the United States." ECF No. 1, Compl. ¶ 24 (citing the Presidential memorandum). DoD acted swiftly to comply with the President's Order by creating the Joint Task Force Southern Guard (JTF-SG) to work with DHS to operationalize the Memorandum. Currently, the detainees are housed in two areas of the base: Camp VI and the MOC. *Id.* at 45.

The detainees are housed in two areas of the base, with the higher-threat immigration detainees housed in Camp VI and the lower-threat detainees housed at the MOC. *See* Exhibit B, Declaration of Lieutenant Colonel Tommy Sieker ("Sieker Decl.") ¶ 3; *see also* Compl. ¶ 45. DHS has developed procedures applicable to immigration detainees at NSGB, and DoD is following and supporting DHS procedures. Sieker Decl. ¶ 3. Defendants are providing immigration detainees access to counsel, the opportunity to make calls to family and friends, communal living, recreation time, nutrition, and medical care, and are handling searches and behavioral issues

consistent with the Departments' practices. Exhibit C, Declaration of Francisco Madrigal ("Madrigal Decl.") ¶¶ 20-50; Sieker Decl. ¶¶ 4-29 (describing the distinct conditions, practices and policies of the two facilities at NSGB).

**C. This Lawsuit and Motion.** On June 4, 2025, the two named Plaintiffs brought this lawsuit on behalf of themselves and similarly situated individuals who are or may be detained at NSGB at some point. Compl. at 3. Their Complaint: (1) challenges the government's decision to detain aliens with final removal orders pending removal at NSGB and seeks to prevent the government from detaining aliens, now and in the future, at NSGB; (2) alleges substantive due process violations under the Fifth Amendment; and (3) seeks relief in the form of habeas. The same day they filed their Complaint, Plaintiffs filed the instant motion for class certification, seeking to certify a class of "[a]ll immigration detainees originally apprehended and detained in the United States, and who are, or will be held at [NSGB]." Mot. at 1. Plaintiff Gutierrez arrived at NSGB on May 20, 2025, and was removed to Nicaragua on June 26, 2025. Madrigal Decl. ¶¶ 11, 13. Plaintiff Lopez-Ocon arrived at NSGB on May 23, 2025, and was removed to Nicaragua on June 5, 2025. *Id.* ¶¶ 17, 19. Named Plaintiffs were housed at Camp VI. *Id.* ¶¶ 11, 17.

### STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc.*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23— "that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350; *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984) ("It is the party seeking class certification that bears the burden

of establishing the class action requirements."). This is not just a "mere pleading standard." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the rules has been met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350-51. In determining whether class certification is appropriate, courts may consider evidence outside of the pleadings to determine whether claims or defenses are prone to resolution on a class-wide basis. *See Jones v. Rossides*, 256 F.R.D. 274, 276 (D.D.C. 2009) (citing *McCarthy*, 741 F.2d at 1413 n.8).

To merit class certification, Plaintiffs must demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Relevant to Plaintiffs' motion, Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

I.    **Plaintiffs' Claims are Moot as They are Neither Detained at NSGB or Otherwise in U.S. Custody.**

The Court should deny Plaintiffs' motion for class certification because both named Plaintiffs have been removed from the United States and are no longer in U.S. custody; thus, their claims are now moot. Generally, "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010). And proposed class representatives must keep their individual claims "live until certification, or else the class action based on [those claims] generally becomes moot." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024) (quoting *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019)) (alteration added). Plaintiffs challenge the government's authority to detain them (and other immigration detainees) at NSGB, and contend that their Fifth Amendment Due Process rights are being violated by subjecting immigration detainees to punitive conditions. *See* Compl. ¶¶ 62-64, 70-73. However, Plaintiffs Gutierrez and Lopez Ocon were removed from NSGB on June 26, 2025, and June 5, 2025, respectively. *See* Madrigal Decl. ¶¶ 13, 19. Their claims, which sound in habeas, Compl. ¶ 9, turn on the legality of detention and Plaintiffs' detention has ended. Plaintiffs are thus no longer subject to U.S. custody and, accordingly, cannot continue to challenge their past detention at NSGB, including detention conditions at NSGB. *See Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998) (finding release from criminal detention normally moots any claims for relief arising out of the conditions of detention). Thus, Plaintiffs' claims are moot as they are no longer subject to detention at NSGB or subject to the detention conditions they seek to challenge.

Nor does the record demonstrate a mootness exception applies to Plaintiffs' claims such that this Court could certify their proposed class. Plaintiffs bear the burden to show that an

exception to mootness applies, and they cannot satisfy that burden here. *See Honeywell Int'l, Inc.*, 628 F.3d at 576. Whether the "inherently transitory" exception applies depends on "(i) whether the individual claim might end before the district court has a reasonable amount of time to decide class certification, and (ii) whether some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311. In making this evaluation, the record must assure the court that "some class members will retain a live claim throughout the proceedings." *Givens*, 111 F.4th at 121 (quoting *J.D.*, 925 F.3d at 1310). The record before the Court cannot provide such assurances.

A primary use of NSGB is for it to serve as a short-term staging point to facilitate prompt removal from the United States, so stays there are designed to be short, with an average of 12 days. Madrigal Decl. ¶ 6. But this Court should be cautious before it determines an exception to mootness should apply. First, the overall litigation history—which involves three separate cases filed by the same team of attorneys raising overlapping claims—shows that there has been time to adjudicate a request for class relief with plaintiffs whose claims are not moot. *See J.D.*, 925 F.3d at 1310 ("[R]elation-back doctrine requires us to analyze the 'practicalities and prudential considerations' of the class action under review."). The initial claims regarding detention and conditions at NSGB were filed on February 12, 2025, nearly six months ago, and heard preliminarily on the merits prior to mootness of those individual plaintiffs' claims in March 2025. *Compare* Exhibit D, Transcript of March 14, 2025 TRO Hearing, *Las Americas v. Noem*, No. 1:25-cv-418 (CJN) (D.D.C. Mar. 14, 2025), (Hr'g Tr.) at 68-70 (considering the declarations and record evidence) *and id.* at 71-73, 75-77 (using declarations and record evidence to first determine plaintiffs had not suffered irreparable harm) *with id.* at 73-74, 77-78 (concluding second that because plaintiffs could not establish Article III standing they could not succeed on the merits). A second case raising claims that overlap with the claims in this case was filed on March 1, 2025,

and voluntarily dismissed in late May 2025. *Espinoza Escalona v. Noem*, No. 1:25-604 (CJN) (D.D.C. May 22, 2025), ECF No. 34. Given this litigation history, there has been adequate time to consider claims related to detention and conditions of confinement at NSGB prior to mootness and, similarly, there is a "reasonable amount of time to decide class certification." *J.D.*, 925 F.3d at 1311. Moreover, because NSGB is a short-term facility, the interest of plaintiffs in serving as class representatives must carefully be scrutinized. *See supra* Argument VI. For example, one of the two proposed class representatives was at NSGB for less than two weeks and removed to his country of citizenship the day after this case was filed. Madrigal Decl. ¶¶ 17, 19. Thus, while his claim quickly mooted out and given he is no longer in U.S. custody (nor likely to be detained again), his interest in this litigation is also likely at a nadir.

This is also not a case where some class members will retain a live claim at every stage of litigation. First, with respect to the substantive due process claims based on conditions of confinement, the record shows that conditions are changing over time as the NSGB base is built up, and the conditions Plaintiffs allege no longer exist given ongoing efforts to establish policies and practices to ensure proper conditions for immigration detainees at NSGB. *See, e.g.*, Hr'g Tr. at 54-59, 71 (noting that "the parties ha[d] narrowed the issues significantly" based on implemented changes since the start of the mission in January 2025); *compare* MOU (effectuated Mar. 7, 2025) *with* Compl., *Las Americas v. Noem*, No. 1:25-cv-418 (CJN) (D.D.C.), ECF No. 1, at 1 (filed Feb. 12, 2025). This is especially evident given the fact counsel for Plaintiffs dismissed a prior case, largely alleging the same violations. *See* Notice of Voluntary Dismissal, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. May 22, 2025), ECF No. 34. Same counsel ultimately refiled with new Plaintiffs but still fail to overcome the fact proper conditions are being provided to immigration detainees during the span of their detention at NSGB. In particular, legal counsel

can schedule appointments in 20-minute increments Monday through Friday from 8:00am to 5:00pm EST and Saturday through Sunday from 10:00am to 2:00pm. Madrigal Decl. ¶ 21. These calls are confidential although contract security and ICE officer are stationed beyond earshot outside of the confidential room to ensure security. *Id.* ¶ 22. Defendants have posted notices of right to counsel, which include toll-free numbers to the ABA Information Line in both the Camp VI and MOC. *Id.* ¶ 25. Attorneys can send emails to detainees via legal.gtmo@ice.dhs.gov but cannot contain more than 20 pages. *Id.* ¶ 48. Additionally, detainees at the Camp VI and MOC can request calls to family. *Id.* ¶ 29. At the Camp VI, familial calls are provided every third day. *Id.* ¶ 30. At the MOC, family calls are provided seven days-a-week from 10:00 am to 5:00 pm. *Id.* Given the ongoing changes being implemented at NSGB, which addresses concerns raised in the previous litigation as well as here, the Court's relation back analysis must include these "practicalities and prudential considerations[.]" *J.D.*, 925 F.3d at 1310.

Second, the record does not provide assurances that a "live controversy" will "always exist throughout the litigation." *Id.* at 1311. The NSGB has been periodically used to assist in repatriation of people in the removal process, but it has not constantly been operating. There are many times—including during the span of other related NSGB immigration detainee litigation where there were "zero aliens with final removal orders housed at [NSGB]" Hr'g Tr. at 70—when there is no live controversy because there are no putative class members. *See* Madrigal Decl. ¶ 4. That precludes class certification under the relation back analysis of *J.D.* 925 F.3d at 1312 (finding the second test was met only because the Office of Refugee Resettlement was always in custody of putative class member pregnant minors).

Accordingly, the removed named Plaintiffs' claims are moot, they do not allege that their claims are subject to a mootness exception, and therefore, this Court should deny their motion for class certification.

**II.    Certain Putative Class Members Lack Article III Standing as They Cannot Demonstrate the Requisite Injury-in-Fact for the Feared Future Harm Alleged.**

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "irreducible constitutional minimum of standing" contains three requirements: (1) the plaintiff must have suffered an "injury in fact"; (2) that injury has to be "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it must be "likely," as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Putative class members who are not yet (and may never be) transferred to NSGB lack a cognizable injury such that they could have standing to be part of Plaintiffs' putative class.

To establish injury in fact, a plaintiff must show that they suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Injury in fact is a "constitutional requirement" and is the "[f]irst and foremost" of standing's three elements. *Id.* at 338-39 (quoting *Steel Co.* v. *Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To be "particularized" the injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Spokeo, Inc*, 578 U.S. 339-40. A "concrete" injury must be "'*de facto*'; that is, it must actually exist[,]" that is, it must be "real," and not "abstract." *Id.*

When, as here, an alleged injury has not yet occurred, courts must determine whether it is imminent. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). An injury is imminent if the threatened injury is "certainly impending" or if there is substantial risk that the harm will occur. *Id.* Plaintiffs bear the burden of pleading concrete facts showing that the defendant's actual action has caused the substantial risk of harm. *Id.*

Plaintiffs fail to establish standing because the claimed risk of harm they face is premised on hypothetical future transfer to NSGB. While Plaintiffs, who were at one point detained at NSGB, seek to advance their claims based on testimonial assertions of harms experienced by previous detainees, the likelihood that any putative plaintiff will encounter a similar adverse consequence—whether that be actually being detained at NSGB or enduring allegedly punitive conditions there—remains entirely speculative and depends on the convergence of multiple independent variables including the actions of immigration officers, facility operators, and personnel in charge of removal operations. *See Clapper*, 568 U.S. at 414. Plaintiffs have defined their putative class with maximum breadth, inclusive of every alien who "originally apprehended and detained in the United States, and who . . . will be held at [NSGB]." Mot. at 1. They ask this Court to accord them standing without any indication as to whether the intended class member will ever be detained at NSGB. Though some constellation of circumstances could converge to create a substantial risk of injury for some putative plaintiff, it would not create the same risk for each detainee—much less every detainee present at any time. *See Lujan*, 504 U.S. at 560 n.1. (holding an injury cannot be "particularized" unless it "affect[s] the plaintiff in a personal and individual way"). *Clapper* has already instructed that a party cannot claim injury-in-fact based on hypothetical future harm that is not "certainly impending." *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 76 (D.D.C. 2016) (citing *Clapper*, 568 U.S. at 401-02). Put simply, Plaintiffs have

not alleged facts from which a plausible inference could be drawn that they personally face imminent harm that is "certainly impending." *Id.* Thus, Plaintiffs' allegations of speculative or possible future injury do not satisfy Article III such that they can be included in Plaintiffs' proposed class.

**III. 8 U.S.C. § 1252(f)(1) Strips This Court of Jurisdiction to Issue the Injunctive Classwide Relief Plaintiffs Seek.**

The Court cannot enjoin or restrain the federal government from detaining individuals under 8 U.S.C. § 1231 on a classwide basis because it lacks jurisdiction. Section 1252(f)(1) states that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, *no court (other than the Supreme Court)* shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of Part IV [of subchapter II of the INA], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1) (emphasis added). As the Supreme Court explained, § 1252(f)(1)'s reference to "the 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out" the covered statutory provisions of the INA. *Id.*

By its plain terms, § 1252(f)(1) is applicable here because § 1231—the statutory authority for post-removal order detention to effectuate removal—is one of the covered provisions. *Id.*; *see* MOU at 1. Section 1231 mandates the detention and removal of aliens ordered removed and subsection (g) further provides that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal." 8 U.S.C. § 1231(g)(1).

14

The government is afforded great deference regarding operational decisions of where to detain aliens with final removal orders pending their removal. *See Calla-Collado v. Att'y Gen. of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("[A]s a part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another.'" (quoting *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995))); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from this language [in 8 U.S.C. § 1231(g)(1)].").

Here, Plaintiffs seek classwide relief enjoining the government from detaining them and all putative class members at NSGB. *See* Compl. ¶¶ 78-80. This injunctive relief would necessarily restrain the operation of § 1231(g) because it requires officials to refrain from actions that are allowed by § 1231(g), in complete contradiction of the Supreme Court's instruction in *Aleman Gonzalez*, 596 U.S. at 551. The injunction Plaintiffs seek violates § 1252(f)(1) because it would limit where the government can and cannot detain aliens subject to detention under the removal and detention provisions and would do so on behalf of a putative class consisting of individuals who are subject to detention under § 1231. Injunctive relief is, thus, inappropriate for the putative class Plaintiffs seek to certify and represent under Rule 23.

The Supreme Court and the D.C. Circuit have decisively weighed in on the issue of classwide relief in the immigration context such that there can be no doubt that § 1252(f)(1)'s remedial bar applies here. In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for noncitizens detained under 8 U.S.C. § 1231(a)(6). 596 U.S. at 550. The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they

require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6)." *Id.* at 551. Because "[t]hose injunctions thus interfere with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). *Id.*

In *N.S. v. Dixon*, the D.C. Circuit overturned an injunction entered by the district court restraining the U.S. Marshals from carrying out immigration arrests and detentions pursuant to Forms I-200 Warrants of Arrest issued by DHS. 141 F.4th 279, 289 (D.C. Cir. 2025). Despite finding the U.S. Marshals lacked authority to execute the Form I-200s, the Court held that the injunction "directly and substantially restricts the ability of federal officials to 'carry out' provisions covered by § 1252(f)(1)." *Id.*

Both *Aleman Gonzalez* and *N.S.* proscribe the same result here—the Court lacks authority under § 1252(f)(1) to enjoin Defendants from detaining Plaintiffs and putative class members at NSGB. *Aleman Gonzalez* and *N.S.* likewise foreclose any argument that § 1252(f) does not apply because the government's detention of Plaintiffs and putative class members at NSGB is lawful. As both the Supreme Court and the D.C. Circuit have affirmed, § 1252(f)'s remedial bar is not limited to the enumerated provisions "as *properly* interpreted." *N.S.*, 141 F.4th at 289 (citing *Aleman Gonzalez*, 596 U.S. at 552-54). Put another way, even if this Court were to ultimately find that Plaintiffs and the potential class members' detention at NSGB exceeds the INA's authority, § 1252(f)(1) bars the Court from enjoining Defendants operation of § 1231(g) on a classwide basis. *See id.* ("§ 1252(f)(1) has the same force even when the National Government allegedly enforces the relevant statutes unlawfully." (quoting *Arizona v. Biden*, 40 F.4th 375, 394 (6th Cir. 2022) (Sutton, C.J., concurring))).

Plaintiffs may argue that they meet the requirements of Rule 23(b)(2) because even if the injunctive relief they seek is barred under § 1252(f)(1), the declaratory relief they seek is not. But such attempt would equally run afoul of § 1252(f)(1) because on its face, § 1252(f)(1) is not limited to injunctions. Instead, it prohibits lower-court orders that "enjoin or *restrain*" the government's operation of the covered provisions. *Id.* (emphasis added). The common denominator of those terms is that they involve coercion. *See* Black's Law Dictionary 529 (6th ed. 1990) ("Enjoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id.* at 1314 ("Restrain" means to "limit" or "put compulsion upon" (emphasis omitted)). Together, they indicate that a court may not impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions in a particular way. *Aleman Gonzalez*, 596 U.S. at 551.

Though the Supreme Court left unanswered the question of whether § 1252(f)(1) also prohibits other forms of relief that are practically similar to an injunction, including classwide declaratory relief,[3] the Court specified that lower courts cannot impose coercive relief that "interfere[s] with the government's efforts to operate" the covered provisions. *Id.* at 551 n.2. Therefore, if the relief sought requires the government to implement (or refuse to implement) § 1231 generally, and § 1231(g) specifically, that relief is barred by § 1252(f)(1). *See Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018) (holding that while "declaratory relief will not always be the functional equivalent of injunctive relief . . . in this case it is the functional equivalent").

Here, the "declaratory" relief sought by the putative class is impermissibly coercive and violates § 1252(f)(1). Plaintiffs ask that the Court "[d]eclare the Defendants' detention of Plaintiffs

---

[3] Indeed, the Supreme Court, in *Biden v. Texas*, left open the question of whether § 1252(f)(1) bars declaratory relief that is in effect coercive. 797 U.S. 785, 839 (2022) (Barrett, J., dissenting).

and class members at Guantánamo violates the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment." Compl. ¶ 77. Via this request, Plaintiffs seek to challenge the government's detention policy and for the Court to find it unlawful. Mot. at 2, 11. Such relief would necessarily restrain the government's operation of § 1231 because it would require the government to not detain aliens ordered removed at NSGB. Plaintiffs might dispute this conclusion, but the nature of declaratory relief proves the point.

Within this Circuit, courts can enter declaratory judgment if it will either (1) "serve a useful purpose in clarifying the legal relations in issue" or (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980) (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)). Plaintiffs do not seek declaratory relief for the first purpose of clarifying the legal relations in issue; they concede they do not challenge the government's authority to detain them under the INA. Compl. ¶ 3. Rather, Plaintiffs seek class-wide declaratory judgment to "terminate and afford relief from" the "controversy" of their detention at NSGB. *See generally id.* In order for the Court to "terminate" this "controversy" in Plaintiffs' favor, the Court would need to declare that the government cannot detain aliens ordered removed at NSGB. But such a "declaratory" judgment is the equivalent of telling the government it cannot utilize the authority of § 1231 generally, and § 1231(g) specifically, to arrange for and detain aliens ordered removed at NSGB as it might see fit or operationally necessary. Such "declaratory" relief would restrain or coerce the government from implementing § 1231's detention authority, and § 1252(f)(1) prohibits this Court from granting such coercive classwide relief.

Moreover, even if standalone declaratory relief is not barred by § 1252(f)(1) in this instance, the putative class cannot be sustained based solely upon request for declaratory relief

18

because the text of Rule 23 allows class certification only where a court can grant "*corresponding* declaratory relief." Fed. R. Civ. P. 23(b)(2). The Advisory Committee defines "corresponding declaratory relief" as any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; *see also* 7AA Fed. Prac. & Proc. Civ. § 1775 (3d ed.). This definition makes clear that the purpose of the Rule 23(b)(2) class was to enjoin certain action or inaction on a classwide basis and that any anticipated declaratory relief issued under this provision should be equivalent to an injunction to satisfy the requirements of class certification. *See id.*; *see also Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 98 F.R.D. 254, 271 (D. Del. 1983) (refusing to certify a Rule 23(b)(2) class where "[d]etermination of the [] issues would not result in corresponding declaratory relief that would have the effect of enjoining the defendant from acting in the future"); *Sibley v. Diversified Collection Servs., Inc.*, Civ. A. No. 396-cv-0816, 1998 WL 355492, at *4 (N.D. Tex. June 30, 1998) (opining that, under Rule 23(b)(2), "the declaratory judgment should be the equivalent of an injunction"). Because Rule 23(b)(2) allows only declaratory relief that has the same practical effect as an injunction, and § 1252(f) prevents Plaintiffs from obtaining any relief that has the same effect as an injunction, Plaintiffs cannot meet the requirements for certification under Rule 23(b)(2).

The Supreme Court in *Jennings* echoed this point when it suggested that if 8 U.S.C. § 1252(f)(1) prohibits classwide injunctive relief, then it may equally prohibit corresponding declaratory relief. 583 U.S. at 313 ("[I]f the Court of Appeals concludes that it may issue only declaratory relief, then the Court of Appeals should decide whether that remedy can sustain the class on its own" in light of Rule 23(b)(2)'s language concerning "*corresponding*" relief). Thus,

any declaratory judgment here would be limited to stand-alone declaratory relief, which is not contemplated by Rule 23(b)(2).

Even if classwide declaratory relief were permitted, it would not be appropriate to certify a class given the bar on class-wide injunctive relief. A class can only be certified when a single declaratory judgment can provide complete relief to all class members on the asserted claim that is common to all class members. Fed. R. Civ. P. 23(b)(2). But certification of a class would extinguish or preclude individual claims to injunctive relief based on the same claims due to bedrock rules against claim splitting. *See Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief."); *Wal-Mart Stores, Inc.*, 564 U.S. at 364 (stating that individual relief not permitted in Rule 23(b)(2) class action "would be *precluded* by litigation they had no power to hold themselves apart from" and this creates a "pervese[] incentive" for class counsel to forego available individual relief). "Rule 23(b)(2) . . . does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. Because class action treatment extinguishes individual injunctive relief relating to the class claim—such as an individual habeas release order—certification of a class is not consistent with the requirement under Rule 23 that class action treatment 'fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Wal-Mart Stores, Inc.*, 564 U.S. at 362 (finding a Rule 23(b)(2) class is a "mandatory class[]" and there is "no opportunity . . . to opt out"). By eliminating a potential remedy for individual class members—injunctive relief—class treatment is necessarily inadequate given that Congress precluded class injunctive relief pursuant to 8 U.S.C.

1252(f)(1); *Wal-Mart Stores, Inc.*, 564 U.S. at 363 (holding notice serves "no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause"); *id.* at 367 ("[T]he Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" (citing 28 U.S.C. § 2072(b))).

Because the Court lacks authority under § 1252(f) to issue the classwide injunctive or corresponding declaratory relief they seek, Plaintiffs cannot demonstrate injunctive or corresponding declaratory relief is appropriate to the putative class as a whole, as required under Rule 23(b)(2).

## IV.    The Putative Class is Impermissible Because it Intends to Include Individuals Who Have Not Suffered, and May Not Ever Suffer, the Same Injury and Whose Claims Are Statutorily Precluded from Class Treatment.

Courts in this District interpret Rule 23 as imposing a "requirement that a class be clearly defined." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (citing *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994)). This requirement ensures that the class is "neither amorphous, nor imprecise." *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992) (internal quotation and citation omitted). For example, a class sought to be certified under Rule 23(b)(2) must "accurately articulate[] the general demarcations of the class of individuals who are being harmed." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (cleaned up). A class definition may be fatally overbroad if it "sweeps within it persons who could not have been injured by the defendant's conduct." *Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 191 (D.D.C. 2017) (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009)). Having an inadequately defined or overbroad class also often implicates other Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

In short, a putative class must be "definite" or "ascertainable." *J.D.*, 925 F.3d at 1319-20 (citing 1 William B. Rubenstein, Newman and Rubenstein on Class Actions § 3:3 (6th ed.)). It arises from Rule 23's "express[] direct[ion] that the definition of a class be determined and that its members be identified or identifiable early in the litigation, not at its end." *In re White*, 64 F.4th 302, 313 (D.C. Cir.), *cert. denied sub nom. Hilton Hotels Ret. Plan v. White*, 144 S. Ct. 487 (2023) (citing Fed. R. Civ. P. 23(c)(1)(A)). Although absolute precision is not necessary before certifying a (b)(2) class, class membership must still be determinable "with reference to 'objective criteria.'" *Thorpe*, 303 F.R.D. at 139 (quoting 1 Rubenstein § 3:3); *see also* Manual for Complex Litigation § 21.222 (4th ed.) (defining class "is of critical importance because," among other things, "it identifies the persons [who are] entitled to relief"); *id*. (noting that although a court need not "identify every individual member at the time of certification of a Rule 23(b)(2) class action for injunctive relief," it must be able to "determine at any given time whether a particular individual is a member of the class"). Here, Plaintiffs seek certification of a class of "[a]ll immigration detainees originally apprehended and detained in the United States, and who are, or will be held at [NSGB]." Mot. at 1. This class definition is overbroad and not ascertainable for several reasons.

First, the proposed class is amorphous insofar as it is based entirely on Plaintiffs' own conjecture as to who may or may not end up at NSGB. *See* Mot. at 1. Indeed, as currently articulated, the proposed class would necessarily encompass individuals who are not yet (and may never be) transferred to NSGB, which would make the claims of the proposed class too disparate to be measured at once, and thus precludes a finding of commonality and typicality among the asserted class claims. *Cf. AmChem Prods., Inc.*, 521 U.S. at 626 (named parties with diverse medical conditions were not adequate representatives of a single class because the interests of those within the single class are not aligned). It would also preclude the Court from ascertaining

the members of the class early in the litigation, as required by Rule 23. *In re White*, 64 F.4th at 313. And as discussed at length above, *see supra* Argument II, these individuals also lack cognizable injuries such that they would not have standing to challenge the speculative possibility of being detained at NSGB in the future.

Second, the proposed class is overbroad to the extent it intends to include aliens who received expedited removal orders pursuant to 8 U.S.C. § 1225(b). Congress has expressly precluded class certification where claims relate to expedited removal orders, and the Court thus cannot permissibly certify a class that includes such claims. The claims asserted by those aliens subject to expedited removal orders are limited by the jurisdictional provisions of 8 U.S.C. § 1252, which provide that there is no judicial review of any claims "arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" or involving "the application of such section to individual aliens," except as provided under § 1252(e). *See Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 20 (D.D.C. 2019), *rev'd and remanded sub nom. Make The Rd. New York v. Wolf*, 962 F.3d 612 (D.C. Cir. 2020); *accord Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154-66 (9th Cir. 2022) (discussing the limitations on judicial review of expedited removal orders). Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under . . . this subsection." 8 U.S.C. § 1252(e)(1)(B). The claims in the Complaint ultimately challenge access to legal counsel post-expedited removal order. Accordingly, § 1252(e)(1)(B)'s bar on class certification applies to the claims of any proposed class member who was processed for an expedited removal order under § 1225(b).

Indeed, Congress has also limited the relief available for the claims of aliens subject to expedited removal orders. To the extent that Plaintiffs are seeking equitable relief from their

expedited removal orders, the exclusive means of doing so would be through limited individual habeas proceedings under § 1252(e)(2) in the district of confinement seeking to obtain placement in removal proceedings before an immigration judge. *See* 8 U.S.C. §§ 1252(e)(2), (4). Aliens subject to expedited removal may also challenge the validity of those procedures in this District under the terms of § 1252(e)(3), provided they have standing to do so.[4] Even if judicial review of any of Plaintiffs' claims is authorized by § 1252(e)(3), the INA likewise bars class certification. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 138, 158 (D.D.C. 2019) (recognizing class-certification bar of § 1252(e)(1)(B) claims).

    Third, the putative class is overbroad to the extent it includes those who were previously transferred to NSGB but have already been removed, like both named Plaintiffs, whose allegations form the basis of the class allegations. *See supra* Argument I. Now that both named Plaintiffs have been removed, Madrigal Decl. ¶¶ 13, 19, Plaintiffs cannot contest the fact that any relief this Court could grant would not benefit them or other aliens similarly situated to them who have already been removed from NSGB. They are no longer in the United States, and thus prospective relief from future transfers to NSGB, conditions of confinement there, or other unspecified relief will not redress their claimed injury. Moreover, because aliens who are no longer in the United States lack standing to obtain the relief sought, they cannot—absent an applicable mootness exception, *see supra* Argument I—represent a class of similarly situated individuals (who likewise lack

---

[4] Notably, Plaintiffs are not challenging the "validity of the system" and so their allegations cannot survive under the exception to the jurisdictional bar pursuant to 8 U.S.C. § 1252(e)(3)(A). This provision restores jurisdiction to actions initiated in this Court, but it is "limited to determinations" of the constitutionality of statutory or regulatory provisions or written policies regarding § 1225(b). *M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). But Plaintiffs are not bringing a systemic challenge to § 1225(b)'s procedures, and, if Plaintiffs *did* purport to challenge the procedures of § 1225(b) in this lawsuit, such an argument would similarly defeat Rule 23(a)(2)'s commonality requirement and Rule 23(b)(2)'s requirement for class wide relief, as those procedures are inapplicable to aliens without expedited removal orders.

standing). *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Johnson v. District of Columbia*, 248 F.R.D. 46, 54-56 (D.D.C. 2008) (declining to certify Rule 23(b)(2) classes where the plaintiffs lacked standing to seek prospective injunctive relief).

These same defects defeat commonality and typicality as well as adequacy of representation and the propriety of an injunctive relief class under Rule 23(b)(2), demonstrating that the need for a clearly defined, cohesive class is inherent in Rule 23's various requirements. Thus, the D.C. Circuit's statement that "courts should stick to Rule 23's specified requirements when making class certification decisions," *In re White*, 64 F.4th at 314, does not preclude district courts from evaluating whether the class definition is overbroad and insufficiently definite. This is particularly true given that one threshold issue discussed *supra*—whether Congress has precluded certification of certain class claims—involves a statutory command that supersedes Rule 23 and does not fit neatly within Rule 23's contours.

For these reasons, Plaintiffs' intended class is fatally overbroad and amorphous by attempting to include individuals who may not suffer the same alleged injuries or who otherwise are not entitled to class wide relief. The Court should thus not grant class certification.

**V.    Plaintiffs' Proposed Class Lacks the Commonality Required under Rule 23(a)(2) Because Their Conditions of Confinement and Due Process Protections Are Not Common.**

Plaintiffs also have not established commonality under Rule 23(a)(2). *See* Mot. at 7-8. Plaintiffs must "affirmatively demonstrate" their compliance with the commonality requirement, which demands not only "common questions . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. The commonality requirement is uniquely rigorous when applied to a proposed class, like the one here, seeking certification under Rule 23(b)(2). For certification under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class" so that "relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *J.D.*, 925 F.3d at 1321 ("[I]f any person in the class has a meritorious claim, they all do."). In that way, satisfaction of Rule 23(a)(2) for a class under Rule 23(b)(2) requires a common legal problem wherein the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in *one stroke.*" *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis added); *DL v. District of Columbia*, 713 F.3d 120, 127 (D.C. Cir. 2013) ("The circuit courts of appeals to address the question have hewed faithfully to *Wal-Mart* s 'one stroke' requirement.").

Plaintiffs assert that they meet the commonality requirement because "the detention of noncitizens at [NSGB]" is a "single alleged practice" that generally affects all class members. Mot. at 8. They further contend that "whether detention at [NSGB] violates statutory and regulatory removal procedures and prohibitions on extraterritorial detention[,] whether it violates the Administrative Procedure Act[,] and whether such detention constitutes unlawful punishment in violation of the Fifth Amendment" are questions of law common to all class members. Mot. at 8. But "any competently crafted class complaint [(like the one here)] literally raises common

26

questions." *Wal-Mart Stores, Inc.*, 564 U.S. at 349 (cleaned up); *In re White*, 64 F.4th at 314 ("Rule 23 does not allow for . . . a 30,000 foot view of commonality."). As discussed below, the resolution of Plaintiffs' Fifth Amendment claim defeats commonality because the alleged injuries hinge on factual and legal circumstances that are not shared by the putative class as a whole. *See Brown v. District of Columbia*, 928 F.3d 1070, 1081-82 (D.C. Cir. 2019) (finding commonality when "common proof will lead to common answers to *each* of the five questions on which resolution of Plaintiffs' claims turns" (emphasis added)); *see Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). In particular, Plaintiffs allege that detainees at NSGB have been "subjected . . . to punitive conditions," including incidents of taunting, physical altercations, and denial of necessities, activities, and information. Compl. ¶¶ 44-49. But as these wide-ranging allegations exemplify, Plaintiffs are not just challenging policies that are common to the putative class, but rather they assert—via declarations of individual aliens who are no longer at NSGB or otherwise in U.S. custody—discrete and disparate incidents of harm. *DL*, 713 F.3d at 128 (finding no commonality when allegations are based on "multiple, disparate" alleged violations).

As Plaintiffs concede in their Complaint, these incidents and the challenged practices— which are constantly changing based on the availability of resources and demand—turn on each detainee's conditions of confinement, which are likewise not common to all putative class members. *See* Compl. ¶¶ 46-47 (noting that Defendants hold detainees at Camp VI and the MOC). Where, as here, Plaintiffs allege harms that are rooted in the specific context of a detention facility, this Court has held that such claims cannot establish commonality when the putative class members are detained in multiple facilities. *See, e.g., C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 202

(D.D.C. 2020) (finding no commonality when resolution of claims required evaluation of "each individual detention facility (and for that matter, in each individual unit in which putative class members are housed)"). This is because "[a]s a general matter, questions of law and fact in suits brought by detainees (or prisoners) regarding their conditions of confinement generally do not overlap between different detention facilities." *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 4364096, at *4 (D.D.C. July 6, 2023).

That is exactly the case at NSGB, where there are two facilities—Camp VI and MOC.  As Plaintiffs acknowledge in their Complaint, each facility's conditions differ in ways that are significant to Plaintiffs' claims. *See* Compl. ¶¶ 46-47. Camp VI houses high-threat detainees, while the MOC houses low-and medium-security detainees. Sieker Decl. ¶ 3. Detainees at the MOC live in dormitory-style units, each of which holds up to eight detainees and has a bathroom and window. Sieker Decl. ¶ 11; Madrigal Decl. ¶ 35. At the MOC, a maximum of fourteen detainees at a time are permitted recreation time outdoors between 7:00 AM and 7:00 PM. Sieker Decl. ¶ 12; Madrigal Decl. ¶ 37. In contrast, detainees in Camp VI are housed in individual cells, each of which has a bed, toilet, sink, and water fountain, and they are provided one hour of recreation in a modified indoor environment with natural light. Sieker Decl. ¶ 6; Madrigal Decl. ¶¶ 39-41, 43. And, the search protocols differ, as detainees at Camp VI undergo various search procedures during processing and each time they re-enter the facility, which, on two occasions, have included strip searches when an officer had reasonable suspicion of contraband. Sieker Decl. ¶¶ 22, 24. Officers additionally use hand and leg restraints whenever a Camp VI detainee moves outside of the cell block. Sieker Decl. ¶ 21. In contrast, MOC detainees are not restrained during movement and are subject to only a pat-down inspection upon arrival. *See* Sieker Decl. ¶¶ 21, 23.

These differences in physical infrastructure, security protocols, and classifications of detainees, Sieker Decl. ¶¶ 2-25; Madrigal Decl. ¶¶ 26-27, 30, 35, 37-39, 41, 43, 45-46, make a single analysis of all of the proposed class members' harms impossible to conduct in "one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350; *see Americans for Immigrant Just.*, 2023 WL 4364096, at *4. Plaintiffs' allegations bolster this conclusion, as they allege that detainees at Camp VI have reported incidents of physical harm, the withholding of water, and solitary confinement, however they do not allege those same conditions at the MOC. Compl. ¶¶ 46-47. And, that many of their allegations focus on the behavior of individual officers, *id.*, further undermines commonality, which is "particularly difficult [to establish] where, as here, multiple decisionmakers with significant local autonomy exist." *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006).

Additionally, in this context, the Supreme Court has recognized a class action may not be the proper vehicle to resolve due process claims, which "call[] for such protections as the particular situation demands." *Jennings*, 583 U.S. at 314 (internal quotation and citations omitted). This is especially true in the immigration context, where "claims of [due process] constitutional violations . . . [are] not always fully available to every claimant." *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020), *dismissed sub nom. Las Americas Immigrant Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir. Aug. 1, 2024); *Zadvydas*, 533 U.S. at 694 ("[T]he nature of protection[s] may vary depending upon status and circumstance[s]."); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1254 (10th Cir. 2008) ("[I]t is not at all clear that removable aliens benefit from precisely the same advantages of due process as do citizens or lawful permanent resident aliens.").

Accordingly, the differences between the separate facilities in which the purported class members were, are, and will be held and the flexible nature of due process defeat commonality as

to Plaintiffs' conditions of confinement claim. And because the certification of a class in this lawsuit would impermissibly apply to Plaintiffs' Fifth Amendment claim, where there will not be a "common answer[] apt to drive the resolution" of the claim, the Court should decline to grant certification. *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

## VI.    The Named Plaintiffs are Not Adequate Class Representatives.

Plaintiffs also fail to demonstrate they are adequate class representatives. Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class." *Amchem Prods. Inc.*, 521 U.S. at 625. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up). Here, Plaintiffs have not demonstrated they are adequate class representatives for two reasons.

First, the record does not demonstrate Plaintiffs fully comprehend their representational responsibilities. Plaintiffs claim they would like to serve as class representatives, *see* ECF No. 4-1, Gutierrez Decl. ¶ 12; ECF No. 4-2, Lopez Ocon Decl. ¶ 12, but their declarations demonstrate no understanding of their role and responsibilities as class representatives. *See generally* Gutierrez Decl. and Lopez Ocon Decl. When a class representative does not understand their responsibilities, they cannot adequately protect the interests of the class. *See, e.g.*, *Amchem Prods., Inc.*, 521 U.S. at 626-27 (affirming lower court's finding that sub-class representatives who negotiated on behalf of the entire class, not just their sub-class, were not adequate class representatives because they did not properly understand their representational responsibilities).

Second, Plaintiffs' removal and the mootness of their claims raises tangential adequacy issues. Defendants recognize that "plaintiffs with moot claims *may* adequately represent a class." *J.D.*, 925 F.3d at 1313 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407 (1980)) (emphasis added). However, mootness can still raise adequacy concerns. *Id.* Here, the record does not demonstrate that Plaintiffs Gutierrez and Lopez Ocon remain interested in this litigation after

30

their respective June 26 and June 5 removals. *See* Gutierrez Decl. ¶ 12 (indicating desire to represent the putative class as of June 2, 2025); Lopez Ocon Decl. ¶ 12 (indicating desire to represent the putative class as of June 2, 2025). Nor does the record establish that Plaintiffs have maintained the capability to communicate with counsel and participate in this litigation, including in any potential settlement negotiations. The Court should not assume Plaintiffs' continued interest and capability to prosecute this action; rather, the Court should hold Plaintiffs to their burden of "affirmatively demonstrating" their adequacy. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350. The bar should be high in cases like this, where class representatives are no longer in the United States, have no right to return (and indeed, return is barred by federal statute), and it may prove difficult to establish contact. This is particularly true when claims are moot and can be raised by future claimants if they believe they are deprived of their rights—a fact pattern that has proven adequate in this very situation. *Compare* Compl. ¶¶ 62 -75 (claiming lack of statutory detention authority, and violations of the APA, Fifth Amendment Due Process, and habeas corpus), *with* Compl., *Espinoza Escalona v. Noem*, Civil Action No. 1:25-cv-00604-CJN (D.D.C. March 1, 2025), ECF No. 1, at ¶¶ 67-80 (same); *see also* Notice of Voluntary Dismissal, *Espinoza Escalona v. Noem*, Civil Action No. 1:25-cv-00604-CJN (D.D.C. May 22, 2025), ECF No. 34.

## VII.    Plaintiffs' Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements.

Even if Plaintiffs had satisfied the requirements under Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *AmChem Prods. Inc.*, 521 U.S. at 614. In particular, a class may be maintained under Rule 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when *a single injunction or declaratory judgment* would provide relief to each member of the class." *C.G.B.*, 464 F. Supp. 3d at 206 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (emphasis

added)); *see In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (holding class is not permitted under Rule 23(b)(2) because the plaintiffs had not identified a common harm that could be resolved with a "single injunction or declaratory judgment" applicable to all class members).

**A.    A "Single Injunction" Cannot Provide Relief to Each Member of the Putative Class.**

"By virtue of its requirement that the plaintiffs seek to redress a common injury . . . Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO,* 216 F.3d 577, 580 (7th Cir. 2000); *Lightfoot v. D.C.*, 273 F.R.D. 314, 329 (D.D.C. 2011). The key to a Rule 23(b)(2) class is that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. Plaintiffs say that the relief they seek, i.e., a "determination that Defendants' practice of holding immigration detainees at [NSGB]" to be unlawful "would resolve all class members' claims in one stroke." Mot. at 10 (cleaned up). However, their proposed class would be impermissibly broad insofar as it includes aliens with expedited removal orders who cannot obtain classwide relief; Congress has specifically barred class actions challenging the expedited removal processes or allowing for injunctive relief outside of the stricture of the INA. *See* 8 U.S.C. §§ 1252(e)(1)(A) ("[N]o court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1)"); *accord I.M. v. U.S. Customs & Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023); *Vijender v. Wolf*, No. 19-CV-3337 (APM), 2020 WL 1935556, at *4 (D.D.C. Apr. 22, 2020) (interpreting § 1252 as to "strip[] the courts of any source of jurisdiction over challenges arising from the execution of removal orders not expressly permitted in the statute"). Because "a single injunction or declaratory judgment" would not provide relief to aliens subject to expedited removal orders, the proposed class, as currently defined, cannot be

certified or maintained under Rule 23(b)(2). Similarly, these divisions among the class and the different forms of relief sought raise adequacy concerns under Rule 23(a)(4). *See supra* Argument VI. On this basis, the Court should deny Plaintiffs' motion for class certification under Rule 23(b)(2).

        **B.**        **There is No Injunctive Relief to Enjoin Detention Under Section 1231.**

Plaintiffs' putative class also does not satisfy Rule 23(b)(2) because the Court does not have the authority to award classwide relief due to the limitations on classwide injunctive relief in 8 U.S.C. § 1252(f)(1). As explained above, *supra* Argument III, the Court cannot enjoin or restrain the federal government from detaining individuals under 8 U.S.C. § 1231 on a classwide basis. Specifically, the Court cannot grant Plaintiffs the injunctive relief they seek: an order enjoining the government from detaining them and all putative class members at NSGB's two facilities. *See* Compl. ¶¶ 78-80. Such relief would impermissibly enjoin and restrain the government's use of NSGB to detain aliens with final orders of removal as part of its efforts to implement § 1231(g), in violation of § 1252(f)(1). *See supra* Argument III. Because § 1252(f)(1) bars classwide injunctive relief, the Court should find that Plaintiffs cannot meet Rule 23(b)(2)'s requirements.

**VIII.**        **The Court Should Deny Class Certification in Favor of Allowing Individual Habeas Petitions as Habeas is Unfit for Class Adjudications.**

The Court should be especially hesitant to grant class certification here because habeas petitions are generally unfit for class actions. The purpose of class actions is to "create an efficient mechanism for trying claims that share common questions of law or fact when other methods of consolidation are impracticable." *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977). Habeas, from its inception, has been an individualized writ, however. Indeed, the federal habeas statute is designed for individual petitioners; it requires that an "[a]pplication for a writ of habeas corpus []" be in writing signed and verified *by the person for whose relief it is intended or by someone acting*

*in his behalf*" and "shall allege the facts concerning *the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority*, if known." 28 U.S.C. § 2242 (emphasis added). The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at the hearing *the body of the person detained*." *Id.* § 2243 (emphasis added). That is an individualized process and inquiry, not one amenable to class wide resolution. Indeed, as explained above, *see supra* Argument III, by certifying a class action where the only relief that can be provided is declaratory, the Court would be extinguishing the individualized habeas right to court-ordered release.

This reflects the historical origins of habeas. "'Habeas corpus' is Latin for 'you have the body.'" *I.M.*, 67 F.4th at 440 (quoting *Webster's New International Dictionary* 1121 (2d ed. 1945)). The original Habeas Corpus Act of 1679 required the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable; and certify the true Causes of Imprisonment." Habeas Corpus Act of 1679, 31 Car. 2 cl. 2 § I (Eng.). Blackstone commented that habeas was "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his caption and detention." 3 William Blackstone, Commentaries on the Laws of England 131-132 (1768). That is, by definition, individualized. How can a court order the production of a prisoner's body if the prisoner is an unknown class member?

This is reinforced by the one exception to the rule that an application for habeas must be "signed and verified by the person for whose relief it is intended;" the application can sometimes be signed "by someone acting in his behalf." 28 U.S.C. § 2242. This is not carte blanche for any representative to seek habeas on behalf of others. Instead, this incorporates the historical doctrine of "next friend," which allows someone close to the detainee to apply for habeas on his or her behalf. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990).

It is no wonder, therefore, that the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting). And neither has the D.C. Circuit. *J.G.G. v. Trump*, Nos. 25-5067, 25-5068, 2025 U.S. App. LEXIS 7131, at *109 (D.C. Cir. Mar. 26, 2025) ("Whether the plaintiffs can certify a class and whether that class is entitled to relief is for a federal district court in Texas to decide."); *id.* at *109 n.93 ("Whether Plaintiffs can seek habeas relief through a class action in the Southern District of Texas seems to be an open question for that court to resolve in the first instance."). This Court should not stray from the tenets of habeas here to certify novel classes that do not even meet Rule 23's requirements. In fact, this District has decades-long experience handling countless habeas litigation stemming from law of war detention at NSGB without resorting to class certification. *See e.g.*, *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 445 (D.D.C. 2005) (addressing several coordinated, but individual habeas petitions of detainees at NSGB). This case is no different.

## CONCLUSION

For these reasons, the Court should decline to certify the proposed class.

//

Dated: July 25, 2025                      Respectfully submitted,

                                          BRETT A. SHUMATE
                                          *Assistant Attorney General*

                                          DREW C. ENSIGN
                                          *Deputy Assistant Attorney General*

                                          ANTHONY NICASTRO
                                          *Acting Director*

                                          DEVIN BARRETT
                                          *Senior Litigation Counsel*

                                          MALCOLM MCDERMOND
                                          ALEXA PERLMUTTER
                                          *Trial Attorneys*

                                    By: */s/ Jason K. Zubata*
                                          JASON K. ZUBATA
                                          *Trial Attorney*
                                          U.S. Department of Justice, Civil Division
                                          Office of Immigration Litigation
                                          P.O. Box 868, Ben Franklin Station
                                          Washington, DC 20044
                                          Tel: (202) 532-4113
                                          Email: jason.k.zubata@usdoj.gov

                                          *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I electronically filed this motion with the Clerk of the Court for the U.S. Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

                                    By: */s/ Jason K. Zubata*
                                          JASON K. ZUBATA
                                          *Trial Attorney*
                                          United States Department of Justice

36