UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YAMIL LUNA GUTIERREZ, et al.,

       Plaintiffs,

    v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security, et al.,

       Defendants.

Civil Action No. 1:25-cv-01766-SLS

**DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................2

LEGAL STANDARD ......................................................................................................5

ARGUMENT ..................................................................................................................6

    I.      Plaintiffs' Claims are not Justiciable ................................................................7

          A.      Named Plaintiffs' claims are moot as they have departed NSGB and are no longer in U.S. custody..........................................................................7

          B.      Named Plaintiffs lack standing insofar as they raise allegations they have not actually suffered or will imminently suffer, including against the policies at the MOC even though they were not detained at that facility....9

    II.     The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention. ...10

    III.    Plaintiffs Fail to State a Claim Under the APA.................................................14

          A.      There has been no final agency action.....................................................14

          B.      Transfer decisions are committed to agency discretion by law. ..............16

          C.      The Secretary of Homeland Security has statutory authority to detain immigration detainees at NSGB...........................................................18

          D.      Defendants did not act arbitrarily or capriciously in the implementation of the Presidential Memorandum. ............................................................23

    IV.    Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim..................24

          A.      Because Transfer Authority is Discretionary, Plaintiffs Lack the Qualifying Liberty Interest Necessary to Challenge Their Detention at NSGB Under the Due Process Clause. ....................................................25

          B.      Plaintiffs Fail to Allege Facts Sufficient to State a Due Process Claim Arising from Their Conditions of Detention …............................................28

CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Abdullah v. Trump,*
No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025)............................................................7

*Abigail All. for Better Access to Developmental Drugs v. von Eschenbach,*
495 F.3d 695 (D.C. Cir. 2007).................................................................................................25

*Aguilera v. Kirkpatrick,*
241 F.3d 1286 (10th Cir. 2001) ...............................................................................................26

*Am. Nat'l Ins. Co. v. FDIC,*
642 F.3d 1137 (D.C. Cir. 2011).................................................................................................6

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ...................................28, 29

*Aref v. Lynch,*
833 F.3d 242 (D.C. Cir. 2016)...........................................................................................25, 27

*Arizona v. United States,*
567 U.S. 387 (2012).................................................................................................................16

*Arizonans for Official English v. Ariz.,*
520 U.S. 43 (1997)....................................................................................................................7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................ 6, 24, 27, 29

*Bagguley v. Bush,*
953 F.2d 660 (D.C. Cir. 1991)...........................................................................................24, 26

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................................................6

*Bell v. Wolfish,*
441 U.S. 520 (1979)...........................................................................................................28, 30

*Bennett v. Spear,*
520 U.S. 154 (1997).................................................................................................................14

*Block v. Rutherford,*
468 U.S. 576 (1984)...........................................................................................................28, 30

*Boumediene v. Bush,*
553 U.S. 723 (2008)...........................................................................................................21, 23

*Brennan v. City of N.Y.*,
No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590 (E.D.N.Y. Sep. 1, 2023)..........................9

*Carlson v. Landon*,
342 U.S. 524 (1952).............................................................................................................24

*Castaneda-Lugo v. Mukasey*,
263 F. App'x 164 (2d Cir. 2008) ...........................................................................................23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................................8

*Conn. v. U.S. Dep't of the Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018) .......................................................................................16

*Container Corp. of America v. Franchise Tax Bd.*,
463 U.S. 159 (1983)...............................................................................................................4

*CoreCivic, Inc. v. Murphy*,
690 F. Supp. 3d 467 (D.N.J. 2023) ........................................................................................12

*Dallas Safari Club v. Bernhardt*,
518 F. Supp. 3d 535 (D.D.C. 2021) .......................................................................................15

*Demore v. Kim*,
538 U.S. 510 (2003)...............................................................................................................24

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020)...............................................................................................................2

*Dep't of State v. Munoz*,
602 U.S. 899, (2024)..............................................................................................................25

*Edison C. F. v. Decker*,
No. 20-cv-15455-SRC, 2021 WL 1997386 (D.N.J. May 19, 2021)...........................................17

*Flytenow, Inc. v. F.A.A.*,
808 F.3d 882 (D.C. Cir. 2015)...............................................................................................14

*Fraihat v. U.S. Immigr. & Customs Enf't*,
16 F.4th 613 (9th Cir. 2021).................................................................................................28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000)...............................................................................................................7

*Gandaril las-Zambrana v. Bd. Immigr. Appeals*,
44 F.3d 1251 (4th Cir. 1995) ................................................................................................12

*Guangzu Zheng v. Decker*,
No 14-cv-4663-MHD, 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014) .................................. 11, 12

*Gul v. Obama*,
652 F.3d 12 (D.C. Cir. 2011) ..................................................................................................... 7, 8

*Handa v. Crawford*,
312 F. Supp. 2d 1367 (W.D. Wash. 2004) ................................................................................. 23

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) .................................................................................................................... 16

*Hatim v. Obama*,
760 F.3d 54 (D.C. Cir. 2014) ..................................................................................................... 30

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ..................................................................................................... 6

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) .................................................................................................... 13

*Jacquet v. Hodgson*,
No. CIV.A. 03-11568RWZ, 2003 WL 22290360 (D. Mass. Oct. 6, 2003) ................................ 12

*Jafarzadeh v. Duke*,
270 F. Supp. 3d 296 (D.D.C. 2017) ........................................................................................... 26

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) .................................................................................................................... 15

*Janay v. Blinken*,
743 F. Supp. 3d 96 (D.D.C. 2024) ............................................................................................. 16

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .................................................................................................................. 3, 11

*Kerry v. Din*,
576 U.S. 86 (2015) ...................................................................................................................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .................................................................................................................... 10

*Kwok Sze v. Johnson*,
172 F. Supp. 3d 112 (D.D.C. 2016) ........................................................................................... 25

*Kwok Sze v. Kelly*,
No. 16-5090, 2017 WL 2332592 (D.C. Cir. Feb. 21, 2017) ...................................................... 26

*Lawyers Ass'n v. Reno,*
199 F.3d 1352 (D.C. Cir. 2000)............................................................................2

*Lewis v. Cont'l. Bank Corp.,*
494 U.S. 472 (1990)............................................................................................7

*Los Angeles v. Lyons,*
461 U.S. 95 (1983)......................................................................................8, 10

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)............................................................................................6

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990)..........................................................................................15

*Mathews v. Diaz,*
426 U.S. 67 (1976)............................................................................................16

*Matter of G-N-C,*
22 I. & N. Dec. 281 (BIA 1998)........................................................................22

*Mendez-Garcia v. Lynch,*
840 F.3d 655 (9th Cir. 2016)............................................................................26

*Mendias-Mendoza v. Sessions,*
877 F.3d 223 (5th Cir. 2017)............................................................................26

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans, Affs.,*
842 F. Supp. 2d 127 (D.D.C. 2012)..................................................................16

*Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.,*
461 F. Supp. 2d 24 (D.D.C. 2006)......................................................................6

*O.M.G. v. Wolf,*
474 F. Supp. 3d 274 (D.D.C. 2020)..................................................................28

*Olim v. Wakinekona,*
461 U.S. 238 (1983)..........................................................................................26

*Papasan v. Allain,*
478 U.S. 265 (1986)............................................................................................6

*Parm v. Nat'l Bank of Cal,. N.A.,*
242 F. Supp 3. 1321 (N.D. Ga. 2017)..............................................................10

*Pension Ben. Guaranty Corp. v. LTV Corp.,*
496 U.S. 633 (1990)............................................................................................4

*Ponce Flores v. U.S. Att'y Gen.*,
64 F.4th 1208 (11th Cir. 2023) ......................................................................................26

*Rady v. Ashcroft*,
193 F. Supp. 2d 454 (D. Conn. 2002) ............................................................................13

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) .......................................................................................14

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1990) ....................................................................................... 11, 13, 17

*Reno v. Flores*,
507 U.S. 292 (1993) ................................................................................................25, 27

*RJR Nabisco, Inc. v. European Cmty.*,
579 U.S. 325 (2016) ......................................................................................................19

*Ruiz v. Mukasey*,
552 F.3d 269 (2d Cir. 2009) ..........................................................................................13

*Sale v. Haitian Centers Council, Inc.*,
509 U.S. 155 (1993) ................................................................................................20, 21

*Sandin v. Conner*,
515 U.S. 472 (1995) ......................................................................................................26

*Sharp v. Capitol City Brewing Co., LLC*,
680 F. Supp. 2d 51 (D.D.C. 2010) ..............................................................................9, 27

*Sheldon v. Sill*,
49 U.S. 441 (1850) ........................................................................................................10

*Spokeo, inc. v. Robbins*,
578 U.S. 330 (2016) ......................................................................................................10

*Stern v. Fed. Bureau of Prisons*,
601 F. Supp. 2d 303 (D.D.C. 2009) ..............................................................................14

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................................................................................8

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) .........................................................................................6

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) ........................................................................................................2

*United States v. Al-Imam*,
373 F. Supp. 3d 247 (D.D.C. 2019) .......................................................................20

*United States v. Argueta-Rosales*,
819 F.3d 1149 (9th Cir. 2016) ...............................................................................22

*United States v. Estrada*,
876 F.3d 885 (6th Cir. 2017) .................................................................................26

*United States v. Texas*,
599 U.S. 670 (2023) ...............................................................................................11

*Van Dinh v. Reno*,
197 F.3d 427 (10th Cir. 1999) .................................................................. 12, 13, 17

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ..........................................................................................25, 27

*Wong Wing v. United States*,
163 U.S. 228 (1896) ...............................................................................................24

*Wood v. United States*,
175 F. App'x 419 (2d Cir. 2006) ...........................................................................13

*Xiao Ji Chen v. U.S. Dep't of Justice*,
434 F.3d 144 (2d Cir. 2006) ..................................................................................13

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ......................................................................................... 3, 4, 19

## **Statutes**

5 U.S.C. § 701(a)(1) ........................................................................................................18

5 U.S.C. § 701(a)(2) ........................................................................................................16

5 U.S.C. § 704 ..................................................................................................................14

5 U.S.C. § 706(2)(A) .........................................................................................................1

6 U.S.C. § 202(5) ...............................................................................................................2

6 U.S.C. § 251 ..................................................................................................................17

6 U.S.C. § 291 ..................................................................................................................17

8 U.S.C. § 1101(a)(38) .....................................................................................................21

8 U.S.C. § 1103(a)(1) .................................................................................................17, 20

8 U.S.C. § 1103(a)(3) ................................................................. 1, 2, 20

8 U.S.C. § 1158 ....................................................................................2

8 U.S.C. § 1182(d)(5)(A) ....................................................................3

8 U.S.C. § 1182(a)(6)(C) .....................................................................2

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .......................................................3

8 U.S.C. § 1229a ..................................................................................3

8 U.S.C. § 1231(a) .......................................................................passim

8 U.S.C. § 1231(b) .............................................................................21

8 U.S.C. § 1231(e)(3)(A) ...................................................................19

8 U.S.C. § 1231(f) ..............................................................................19

8 U.S.C. § 1231(g) .......................................................................passim

28 U.S.C. § 2241 ......................................................................1, 11, 14

8 U.S.C. § 1252 .............................................................................8, 18

8 U.S.C. § 1252(a)(1) ..........................................................................3

8 U.S.C. § 1252(a)(5) ....................................................................17, 18

8 U.S.C. § 1252(b)(9) ....................................................................13, 14

8 U.S.C. § 1252(g) .......................................................................11, 12

8 U.S.C. § 1225(b)(1) ..........................................................................2

**Regulations**

8 C.F.R. § 208.30(f) .............................................................................3

By and through their undersigned counsel, Defendants respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs—two individuals who were detained at the Naval Station Guantanamo Bay (NSGB) briefly as part of their lawful removal from the United States—filed a complaint for declaratory and injunctive relief and petition for a writ of habeas corpus, seeking an order to prevent their detention at NSGB. Plaintiffs claim that that their detention at NSGB—which ended over a month ago—would be inconsistent with the Secretary of Homeland Security's detention authority under the Immigration and Nationality Act (INA) and would result in Plaintiffs being subject to unconstitutional conditions of detention. They assert these challenges under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A); through a writ of habeas corpus, 28 U.S.C. § 2241; and under the Fifth Amendment Due Process Clause. ECF No. 1, Compl. ¶¶ 62-75.

The case should be dismissed. First, since the Complaint was filed, both Plaintiffs are no longer in U.S. custody, and as a result do not have any reasonable possibility of being subject to the challenged policies, procedures, or conditions. Second, the INA precludes judicial review of the government's exercise of discretion to transfer an alien ordered removed to an appropriate place of detention. Third, Plaintiffs fail to state a claim under the APA, as they only attempt to challenge presidential orders, non-final actions, and matters subject to the Secretary's discretion. At most, Plaintiffs' claims sound in habeas, which are moot without an applicable exception, and even then, would be inappropriate as a class complaint.

But even if the Court were to consider these claims under an APA lens, Plaintiffs' claims nevertheless fail because: (1) the Secretary of Homeland Security has the authority to detain individuals with final orders of removal in overseas U.S. Government facilities consistent with 8 U.S.C. §§ 1103(a)(3), 1225(b)(1)(B)(iii)(IV), 1231(a)(2) and (6), and 1231(g), as well as pursuant

to the President's Memorandum, Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity (Jan. 29, 2025) (Memorandum); and (2) Defendants have strong rationales for their decisions, thus defeating Plaintiffs' arbitrary-and-capricious claims. Finally, Plaintiffs have failed to state a substantive due process claim because no such claim is viable and Defendants have provided sufficient safeguards to ensure acceptable conditions of detention.

      For all these reasons, the Court should dismiss this case in its entirety.

## BACKGROUND

      **A.** ***Legal Background.*** The Executive Branch has extensive constitutional authority in the field of immigration, and Congress has further conferred broad statutory discretion over the administration and enforcement of the nation's immigration laws. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(5) (giving the Secretary authority to "[e]stablish[] national immigration enforcement policies and priorities"); 8 U.S.C. § 1103(a)(3) (empowering the Secretary to establish regulations). Applicants for admission who are intercepted at entry or shortly after unlawfully entering the United States are subject to an expeditious process to remove them from the United States under 8 U.S.C. § 1225(b)(1). Under this process—known as expedited removal—applicants for admission arriving in the United States or certain other aliens (as designated by the Secretary of Homeland Security) who lack valid entry documentation or make material misrepresentations shall be "order[ed] . . . removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see* 8 U.S.C. §§ 1182(a)(6)(C), (a)(7); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107-10 (2020) (discussing expedited removal); *Am. Immigr. Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1354-55 (D.C. Cir. 2000) (same). They remain subject to an expedited removal order if they do not indicate an intent to apply for asylum or express a fear of persecution, or if they are unable

to show that such fear is credible. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (b)(1)(B)(v).

Individuals subject to an expedited removal order must be detained until they are removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If the applicant for admission indicates a fear of return and the asylum officer determines that the applicant has a credible fear, the officer will issue a Notice to Appear, placing the applicant in removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). Removal proceedings under § 1229a include the ability to appeal to the Board of Immigration Appeals (Board) and petition for review by a federal appellate court. 8 U.S.C. § 1252(a)(1). An applicant for admission who demonstrates a credible fear "shall be detained for further consideration of the application for asylum."[1] 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded.").

For anyone with a final order of removal that was entered following removal proceedings held under 8 U.S.C. § 1229a, Congress has authorized detention under 8 U.S.C. § 1231(a) while the government works to execute the removal order. *See* 8 U.S.C. § 1231(a)(2). Section 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001), limits post-final-order detention to the period reasonably necessary to accomplish removal. 533 U.S. at 701. The Court determined that six months is a presumptively reasonable period of time to allow the government to complete removal after the removal period has commenced. *Id*. at 701.

---

[1] The only exception to § 1225(b)(1)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole applicants for admission into the United States on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (holding the existence of § 1182(d)(5)(A)'s "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

Once the six-month period has run, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [then] the Government must respond with evidence sufficient to rebut that showing." *Id*. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be detained until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. In making this assessment, the Supreme Court has counseled immigration habeas courts to apply "[o]rdinary principles of judicial review" in order to "give expert agencies decisionmaking leeway in matters that invoke their expertise" and "recognize [the] Executive Branch['s] primacy in foreign policy matters." *Id.* at 700 (citing *Pension Ben. Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 651-52 (1990); *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 196 (1983)). Specifically, the Supreme Court instructed habeas courts to "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700.

**B. *Factual Background.*** On January 29, 2025, the President issued a Memorandum ordering Department of Homeland Security (DHS) and the Department of Defense (DoD) to take all necessary steps to expand the Migrant Operations Center (MOC) at NSGB to full capacity and to provide additional detention space for "high-priority criminal aliens unlawfully present in the United States." ECF No. 1, Compl. ¶ 24 (citing the Presidential Memorandum). DoD acted swiftly to comply with the President's Order by creating the Joint Task Force Southern Guard (JTF-SG) to work with DHS to operationalize the Memorandum. Currently, the detainees are housed in two areas of the base: Camp VI and the MOC. *Id.* at 45.

The higher-threat immigration detainees are housed in Camp VI and the lower-threat detainees are housed at the MOC. *See* ECF No. 28-1, Memorandum of Understanding (MOU) at 4.1.21; *see also* Compl. ¶ 45. DHS has developed procedures applicable to immigration detainees at NSGB, and DoD is following and supporting DHS procedures. ECF No. 28-2, Declaration of Lieutenant Colonel Tommy Sieker ("Sieker Decl.") ¶ 3. Defendants are providing immigration detainees access to counsel, the opportunity to make calls to family and friends, communal living, recreation time, nutrition, and medical care, and are handling searches and behavioral issues consistent with the Departments' practices. *See* ECF No. 28-3, Declaration of Francisco Madrigal ("Madrigal Decl.") ¶¶ 20-50; Sieker Decl. ¶¶ 4-29 (describing the distinct conditions, practices, and policies of the two facilities at NSGB). Defendants are also providing preventative health services, first aid, and emergency medical care; sanitary facilities; and select recreation services as practicable within the existing infrastructure of NGSB. *See* MOU at 4.1.17, 4.1.24, 4.2.3, 4.2.6.

On June 4, 2025, the two named Plaintiffs—Yamil Luna Gutierrez and Rafael Angel Lopez-Ocon—brought this putative class action on behalf of themselves and similarly situated individuals who are or may be detained at NSGB at some point. Compl. at 3. Plaintiffs' Complaint: (1) challenges the government's decision to detain aliens with final removal orders pending removal at NSGB and seeks to prevent the government from detaining aliens, now and in the future, at NSGB; (2) alleges substantive due process violations under the Fifth Amendment; and (3) seeks relief in the form of habeas. Plaintiff Gutierrez arrived at NSGB on May 20, 2025, and was removed to Nicaragua on June 26, 2025. Madrigal Decl. ¶¶ 11, 13. Plaintiff Lopez-Ocon arrived at NSGB on May 23, 2025, and was removed to Nicaragua on June 5, 2025. *Id.* ¶¶ 17, 19. During their detention at NSGB, both Plaintiffs were housed at Camp VI. *Id.* ¶¶ 11, 17.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a Rule 12(b)(6) motion to dismiss, the pleadings are construed broadly where all facts pleaded therein are accepted as true and inferences are viewed in a light most favorable to the plaintiff. *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006). However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

## I.    <u>Plaintiffs' Claims are not Justiciable.</u>

Plaintiffs' claims are not justiciable because (1) named Plaintiffs have been removed from the United States and their claims are now moot; and (2) to the extent their claims are not moot, Plaintiffs lack standing to raise allegations as to a facility's policies they themselves have not actually suffered or will imminently suffer.

### A.  **Named Plaintiffs' claims are moot as they have departed NSGB and are no longer in U.S. custody.**

Plaintiffs seek to enjoin Defendants from detaining them at NSGB. *See* Compl. ¶ 79. However, now that Plaintiffs have been removed to their respective designated country of removal and are not in U.S. custody, they have no injury that can be remedied with the relief sought in the Complaint, Madrigal Decl. ¶¶ 13, 19, and, thus, their claims—which at most sound in habeas—are moot. *See Gul v. Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011) (affirming the district court's decision finding that petitioners' habeas claims were moot once they were no longer in U.S. custody); *see also Abdullah v. Trump*, No. 25-5002, 2025 WL 914093, at *1 (D.C. Cir. Mar. 24, 2025) (affirming *Gul*'s holding in finding "Appellant's habeas case has been mooted by his transfer to the custody of a foreign sovereign"). Mootness is "the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 n.22 (1997)). To present a live case or controversy to avoid dismissal on mootness grounds, the plaintiff "must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Cont'l. Bank Corp.*, 494 U.S. 472, 478 (1990).

Named Plaintiffs cannot maintain this suit under the collateral consequences doctrine, in which a former detainee must make an actual showing that the previously challenged detention

continues to burden the individual with "concrete injuries." *Gul,* 652 F.3d at 17. As the D.C. Circuit noted in *Gul*, potential immigration consequences that flow from removal but themselves are not challenged in the operative suit (and could not be challenged) cannot be concrete injuries ameliorated by an order granting relief. *Id.* at 19. The same holds true here where prospective class Plaintiffs are not challenging their immigration removal orders—this Court cannot review those proceedings given 8 U.S.C. § 1252—but rather, exclusively their speculated detention at NSGB. Indeed, Plaintiffs concede they do "not challenge the government's authority to . . . remove [them] to [their] home country or another statutorily authorized country." Compl. ¶ 2.

This case also fails the *Lyons* test, if viewed as a non-habeas case, because there is no prospect that either Plaintiff will be detained at NSBG at any time in the future. *Los Angeles v. Lyons*, 461 U.S. 95, 97 (1983) (requiring "the injury or threat of injury [] be 'real and immediate,' not 'conjectural' or 'hypothetical'"). As the Court in *Lyons* explained, the fact that Lyons "may have been illegally choked by the police . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." 461 U.S. at 106. Similarly here, Plaintiffs have made no allegation that they would, at any time in the future, be detained at NSGB, and they therefore cannot pursue a case challenging the legality of detention at NSGB. *See id.*; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[R]espondents merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("Accepting an intention to visit the national forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized injury in fact.").

Accordingly, the two now removed named Plaintiffs' claims are moot, they do not allege collateral consequences of their detention at NSGB, and therefore, they should be dismissed from this action.

### B. Named Plaintiffs lack standing insofar as they raise allegations they have not actually suffered or will imminently suffer, including against the policies at the MOC even though they were not detained at that facility.

The two Plaintiffs also lack standing to the extent they challenge injuries they themselves have not experienced, and given their removal, will not experience in the future. *See Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (requiring plaintiff to have suffered actual or imminent injury and disallowing claiming injury on behalf of others). The two Plaintiffs were detained at Camp VI only briefly and were neither detained at the MOC nor otherwise subject to that facility's policies and practices. *See* Madrigal Decl. ¶¶ 11-13 (stating Plaintiff Gutierrez was housed at Camp VI until his removal), 17-19 (stating Plaintiff Lopez-Ocon was housed at Camp VI until his removal). As discussed at length in Defendants' Opposition to Class Certification, each facility's conditions differ in ways that are significant to Plaintiffs' claims. *See* ECF No. 28, Defs.' Opp'n to Class Certification at 27-29.

The differences in security protocols (Sieker Decl. ¶ 3), telecommunication resources (Madrigal Decl. ¶ 26), and communication policies (Madrigal Decl. ¶ 30) between the two facilities undermine any finding of standing, where named Plaintiffs have not endured (and will not endure) the conditions of detention of another facility of which they seek to challenge the policies and practices. *See Brennan v. City of N.Y.*, No. 19-CV-02054 (NGG) (CLP), 2023 WL 5672590, at *10 (E.D.N.Y. Sep. 1, 2023) (finding "Plaintiffs cannot demonstrate standing to enjoin a current ongoing injury" where they were not detained at the facility where such injury is alleged to be occurring).

Furthermore, neither Plaintiff alleged suffering any of the severe treatment allegations included in unattributed, unverified, and anonymous hearsay statements in the complaint: (1) invasive searches; (2) solitary confinement; (3) physical harm from guards; nor (4) time in the restraint chair. *Compare* Compl. ¶¶ 46-52 *with* Gutierrez Decl. and Lopez-Ocon Decl. Obviously, a case must be dismissed if it is based upon allegations of injury not made or asserted by the plaintiffs. *See Spokeo, inc. v. Robbins*, 578 U.S. 330, 339 (2016) (requiring that an injury be "concrete and particularized" and "affect the Plaintiff in a personal and individual way"). And because they are no longer at NSGB, the named Plaintiffs will not, now or in the future, suffer these unsupported allegations of speculative injury. *See Lyons*, 461 U.S. at 106. Although they make generalized statements about conditions that they allegedly heard about from other detainees, *see, e.g.*, Lopez-Ocon Decl. ¶ 10, absent class certification (which is inappropriate for the reasons Defendants have separately addressed, ECF No. 28), "the Court considers only Plaintiff's individual allegations . . . not the generalized allegations of the putative class members." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp 3. 1321, 1341 (N.D. Ga. 2017). Stripped of these improper challenges, Plaintiffs are left only with the bare-bones allegations contained in the named Plaintiffs' declarations which are, for the reasons discussed *infra* Argument IV.B, insufficient to support their Due Process claim challenging conditions at both Camp VI and the MOC.

## II.    The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention.

The Court lacks jurisdiction to grant equitable relief regarding the two Plaintiffs or, should a class be certified, a class. The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* at 377 (citations omitted); *see also Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Courts created by

statute can have no jurisdiction but such as the statute confers."). The INA deprives this Court of jurisdiction over Plaintiffs' APA claims for three reasons.

*First*, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction, including habeas corpus jurisdiction, to review claims arising from any decision or action to "execute removal orders." *See Jennings*, 583 U.S. at 292-95 (concluding the district court lacked jurisdiction over a challenge to a "decision to . . . seek removal"). Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). By its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241, as well as review under the APA, of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. Am.-Arab Anti-Discrimination Comm.* (*AAADC*), 525 U.S. 471, 482 (1990); *cf. United States v. Texas*, 599 U.S. 670, 680 (2023) ("In light of inevitable resource constraints and regularly changing public-safety and public-welfare needs, the Executive Branch must balance many factors when devising arrest and prosecution policies. That complicated balancing process in turn leaves courts without meaningful standards for assessing those policies."). The discretionary determination to transfer a detainee to an appropriate place of detention as part of a removal effort pursuant to the government's authority under 8 U.S.C. § 1231(g) is, as discussed, an unreviewable "action" taken to execute a final removal order. *See AAADC*, 525 U.S. at 485 (noting that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the base for separate rounds of judicial intervention outside the streamlined process that Congress has designed"); *Guangzu Zheng v. Decker*, No 14-cv-4663-MHD, 2014 WL

7190993, at *16 (S.D.N.Y. Dec. 12, 2014) (holding that § 1231(g) transfer authority "is among the [Secretary of Homeland Security's] discretionary powers" (internal quotation marks omitted)); *Jacquet v. Hodgson*, No. CIV.A. 03-11568RWZ, 2003 WL 22290360, at *1 (D. Mass. Oct. 6, 2003) (holding that a court is "without power to prevent transfer of a plaintiff" because the "[Secretary of Homeland Security] shall arrange for appropriate places of detention" under § 1231(g), and "no court shall have jurisdiction" under § 1252(g) "to hear any cause or claim" arising from the discretion granted to the Secretary). Here, Plaintiffs were properly detained pursuant to § 1231(a) because every immigration detainee at NSGB has a final order of removal. *See* ECF No. 28-1, Memorandum of Understanding (MOU) at 3; Madrigal Decl. ¶ 3. The same would be true of a class were it improperly certified here.

*Second*, 8 U.S.C. § 1252(a)(2)(B)(ii) similarly strips the Court of jurisdiction to grant Plaintiffs' request, where it bars review of "any other decision or action of the [Executive] the authority for which is specified under this subchapter to be in the discretion of the [Executive]." 8 U.S.C. § 1252(a)(2)(B)(ii). The Executive is afforded great deference in deciding where to detain aliens with final removal orders pending their removal. *See, e.g.*, *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 472 (D.N.J. 2023) ("Congress has likewise granted DHS discretion over the manner in which it detains individuals for civil immigration violations."). And the Executive's authority under § 1231(g) to decide the location of detention for individuals detained pending removal falls within the scope of the review bar in § 1252(a)(2)(B)(ii). That is because, under § 1231(g), DHS "necessarily has the authority to determine the location of detention of an alien in deportation proceedings," including to transfer detainees from one detention site to another. *See* *Gandarillas-Zambrana v. Bd. Immig. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("The Attorney General's discretionary power

to transfer aliens from one locale to another, as she deems appropriate, arises from [§ 1231(g)'s] language."); *Rady v. Ashcroft*, 193 F. Supp. 2d 454, 457 (D. Conn. 2002) (noting that the Secretary's "power to transfer aliens from one locale to another, in [her] discretion, arises from th[e] statutory language [of § 1231(g)(1)]"). The Executive's broad discretion to determine appropriate places of detention pending removal has repeatedly been recognized by federal courts after careful review of § 1231(g). *See, e.g.*, *Van Dinh*, 197 F.3d at 433; *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that the Secretary "was not required to detain [Plaintiff] in a particular state" given the Secretary's "statutory discretion" under § 1231(g)).

*Third*, 8 U.S.C. § 1252(b)(9) precludes judicial review of Plaintiffs' claims, which arise from their challenge to the location of their detention pending removal. Under this provision, "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from *any action taken . . . to remove an alien* from the United States" is only proper before the appropriate court of appeals via a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9) (emphasis added); *AAADC*, 525 U.S. at 483. In other words, "*any* issue—whether legal or factual—arising from *any* activity" taken to remove an immigration detainee "can be reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *accord Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens to one bite of the apple" (internal quotation marks omitted)). Plaintiffs would need to present their claims before the appropriate court of appeals insofar as they challenge their removal orders, a decision which Congress has expressly required to be raised before a court of appeals, not this Court. *See* 8 U.S.C. § 1252(b)(9).

Accordingly, as this Court lacks jurisdiction to review the government's decision to detain immigration detainees at NSGB in the process of executing their removal orders, this case should be dismissed.

### III.     Plaintiffs Fail to State a Claim Under the APA.

####     A.     There has been no final agency action.

As a preliminary matter, given that Plaintiffs' claims sound in habeas, APA review is unavailable here. *Stern v. Fed. Bureau of Prisons*, 601 F. Supp. 2d 303, 305 (D.D.C. 2009) (concluding that the availability of habeas relief under § 2241 precluded an APA claim because "the APA does not allow a claim unless there is no other adequate remedy in a court" (internal quotation marks omitted)). But even if APA review were available, Plaintiffs fail to allege a reviewable final agency action.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Although the requirement of finality is not jurisdictional, without final agency action, "there is no doubt that [a plaintiff] would lack a cause of action under the APA." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003); *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 888 (D.C. Cir. 2015). Agency actions are final if two independent conditions are met: (1) the action "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature;" and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).

To the extent Plaintiffs challenge the use of NSGB as a detention facility, that is not a discrete, identifiable "agency action" subject to challenge. *Lujan*, 497 U.S. at 890-91 (holding that a plaintiff cannot challenge "the continuing (and thus constantly changing) operations" of the

agency in carrying out a program but must instead "direct its attack against some particular 'agency action' that causes it harm"). The Supreme Court was clear that the APA precludes challenges to "the entirety" of an administrative program, whereby plaintiffs seek "*wholesale* improvement" of an agency's operations "by court decree"—"rather than in the offices of [agencies] or the halls of Congress, where programmatic improvements are normally made." *Id.* at 891. "Removal decisions"—including the considerations that go into determining where an alien under a removal order is detained, transferred, or removed—"implicate our relations with foreign powers and require consideration of changing political and economic circumstances." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (internal quotation marks omitted). Accordingly, this Court should decline to hear any challenge that would interfere with the complex, delicate, and considered process by which removal decisions are made in light of the particularized facts within the agency's command.

Finally, since Plaintiffs fail to identify any final agency action to support their APA claims, the local rules' requirement to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539-40 (D.D.C. 2021) (noting the two flavors of APA review—agency action and agency inaction—concluding both are considered on an administrative, not discovery record, at summary judgment). Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record but instead based on the facts alleged in the complaint and the present status of the individual Plaintiffs' detention (or lack thereof). *See Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (noting that often "if an agency fails to

act, there is no 'administrative record' for a federal court to review" (internal citation omitted)).

The Court may also waive compliance with the local rule where the "Court concludes that the

administrative record is unnecessary to decide the threshold legal questions presented by the

pending motion to dismiss," *Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024), as is the

case here. *See Conn. v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (waiving

compliance with Local Rule 7(n) "because the Court need not consider the administrative record

in evaluating the motions before it").

### B.    Transfer decisions are committed to agency discretion by law.

Even if there was a final agency action at issue, judicial review would not be available here.

The APA does not permit review of actions "committed to agency discretion by law." 5 U.S.C.

§ 701(a)(2). Even if Plaintiffs could credibly argue that the delegation of responsibility contained

in the President's Memorandum is an agency action, it would still be barred from review, where

the execution of removal orders is a process over which the Executive Branch enjoys largely

unfettered discretionary control.

"A principal feature of the removal system is the broad discretion exercised by immigration

officials." *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see id.* at 409 (holding that decisions

"touch[ing] on foreign relations . . . must be made with one voice"); *Mathews v. Diaz*, 426 U.S.

67, 81 (1976) (removal decisions "are frequently of a character more appropriate to either the

Legislature or the Executive than to the Judiciary"). Indeed, "any policy *toward aliens* is vitally

and intricately interwoven with contemporaneous policies in regard to the conduct of foreign

relations, the war power, and the maintenance of a republican form of government." *Harisiades v.

Shaughnessy*, 342 U.S. 580, 588-89 (1952) (emphasis added). Here, decisions made to house

immigration detainees at NSGB are grounded in the President's "broad power over the creation

and administration of the immigration system," which necessarily includes discretion to determine

where individuals will be detained to execute their removal orders. *Kerry v. Din*, 576 U.S. 86, 106 (2015) (Kennedy, J., concurring in judgment).

The Executive's discretionary authority to administer the removal process is further reinforced by the statute that governs judicial review of removal orders—8 U.S.C. § 1252, as well as § 1231(g)—which give the Secretary of Homeland Security[2] broad latitude to "arrange for *appropriate* places of detention for aliens detained pending removal or a decision on removal." *See AAADC*, 525 U.S. at 486. Indeed, in interpreting § 1231(g), courts throughout the country have recognized that determinations regarding the location of detention for individuals subject to removal orders are within the discretion of the Executive Branch. *See, e.g.*, *Van Dinh*, 197 F.3d at 433; *Edison C. F. v. Decker*, No. 20-cv-15455-SRC, 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) ("Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings." (citing § 1231(g)(1))). To the extent Plaintiffs seek an order enjoining detention of individuals who are subject to final removal orders—and who do not otherwise challenge the legitimacy of those removal orders, *see* 8 U.S.C. § 1252(a)(5)—the APA provides no basis for judicial review.

The APA also does not permit judicial review in cases where statute precludes it. 5 U.S.C. § 701(a)(1). As discussed *supra* Argument II, 8 U.S.C. § 1252 plainly bars review of discretionary agency actions, such as actions taken to remove an individual or execute a removal order, as is the

---

[2] Although the statute and regulations refer to the "Attorney General," these references should, in light of the Homeland Security Act of 2002, be read as references to the Secretary of Homeland Security. *See* Homeland Security Act § 471, 6 U.S.C. § 291 (abolishing the former Immigration and Naturalization Service); *id.* § 441, 6 U.S.C. § 251 (transferring immigration enforcement functions from the Department of Justice to the Department of Homeland Security); 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens . . . .").

case here. 8 U.S.C. §§ 1252(a)(2)(B)(ii), (b)(9), (g). The statute allows for review in certain specified circumstances and subject to specified limitations and prerequisites. *See, e.g.*, 8 U.S.C. § 1252(a)(5) (recognizing petition for review with court of appeals is "the sole and exclusive means for judicial review of an order of removal" with exceptions in subpart (e)), (b)(9) (limiting courts' jurisdiction to review all questions of law and fact arising from action taken to remove an alien to a petition for review), (e) (extremely circumscribed review of decisions made under 8 U.S.C. § 1225(b)(1)). None of those provisions, however, apply to Plaintiffs' APA claims here, which seek to constrict how the Executive can exercise its broad powers under § 1231(g) and otherwise thwart its ability to promptly execute final removal orders. Section 701(a)(1) thus bars APA review here.

### C.    The Secretary of Homeland Security has statutory authority to detain immigration detainees at NSGB.

Even if their APA claims were cognizable, Plaintiffs have failed to establish that it would be unlawful to detain them at NSGB. Plaintiffs are lawfully in the custody of the Secretary as individuals subject to final orders of removal. *See* Compl. ¶¶ 13-22. Sections 1231(a)(2) and (6) and 1225(b)(1)(B)(iii)(IV) authorize the Secretary to detain individuals who are, respectively, subject to final orders of removal and expedited removal orders. The Secretary's authority under these provisions begins upon entry of the removal order and extends until the Secretary relinquishes custody of the detainee. *See* 8 U.S.C. §§ 1231(a)(2) and (6), 1225(b)(1)(B)(iii)(IV). Detention authority under § 1231(a)(6) is limited to the amount of time reasonably necessary to execute the removal order and will generally terminate if (after six months) "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In addition to having authority to detain individuals subject to final orders of removal, the Secretary also has broad statutory authority to "arrange for appropriate places of detention for aliens pending removal" at "United States Government

facilities," 8 U.S.C § 1231(g), and to "perform such other acts as [she] deems necessary for carrying out [her] authority" under the INA, 8 U.S.C § 1103(a).

Sections 1231(a)(2) and (6) and 1225(b)(1)(B)(iii)(IV) afford the Secretary extraterritorial authority to manage international removal operations. Congress understands that the execution of removal orders typically requires the Secretary—by definition—to exercise extraterritorial authority. *See, e.g.*, 8 U.S.C. § 1231(e)(3)(A) (specifying funding source for costs associated with removal), (f) (authorizing caregiver travel for removal trip); U.S. Immigration and Customs Enforcement Budget Overview Fiscal Year 2023 at 169, https://perma.cc/AM2G-7PVN (last visited July 30, 2025) (noting Congress allocated more than $400 million per year for ICE's Transportation and Removal Program, a program with a mission that includes providing "transportation to the noncitizen's final destination"). The overwhelming majority of removals carried out under sections 1231 and 1225 are escorted removals—that is, removals where ICE officers maintain custody of the individual who are being removed from the United States and transport them to their country of removal. DHS OIG Report, OIG-19-28, ICE Faces Barriers in Timely Repatriation of Detained Aliens, at 11 (Mar. 2019) (approximately 84,000 of the 90,000 removals in fiscal year 2017 were escorted removals).

Section 1231(g) also affords the Secretary more narrow extraterritorial authority to select appropriate places for removal to include any "United States Government facilities." 8 U.S.C. § 1231(g); *see also RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 340 (2016) (holding that "an express statement of extraterritoriality is not essential," and "'context can be consulted as well,'" to establish the extraterritorial effect of a statute). NSGB is precisely that type of "United States Government facility." Indeed, this Court, in considering a different federal statute, has previously defined "federal facility" to mean "a building or part thereof owned or leased by the

Federal Government, where Federal employees are regularly present for the purpose of performing their official duties"—the definition encompassing both "diplomatic missions" and "component structures of military bases." *United States v. Al-Imam*, 373 F. Supp. 3d 247, 264 (D.D.C. 2019) (citing 18 U.S.C. § 930(g)). In line with the meaning of "federal facility," the Court in that case found the federal statute applied extraterritorially where the law had "foreseeable extraterritorial applications." *Id*.

Along with § 1231(g), § 1103(a)(3)'s sweeping grant of authority for the Secretary to take any action "deemed necessary" to the exercise of her other statutory authorities is also naturally read as conferring extraterritorial authority when exercised in support of her extraterritorial removal responsibilities. *Cf. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 171 (1993) (assuming 8 U.S.C. § 1103(a)(1) applies extraterritorially but finding exercise to be within that section's exception).

Therefore, sections 1103(a)(3), 1225(b)(1)(B)(iii)(IV), 1231(a)(2) and (6), and 1231(g) together confer broad extraterritorial authority for ICE to carry out Congress's removal mandate. The Secretary has the authority to detain individuals subject to final orders of removal in U.S. government facilities as part of an ongoing removal operation. For individuals detained under § 1231(a)(6), that authority extends as removal remains significantly likely to occur in the reasonably foreseeable future. The immigration detainees at NSGB fall squarely within this authority: they are subject to final orders of removal, have been taken to NSGB as part of the government's efforts to facilitate their removals, and can be held for only so long as their removal remains significantly likely to occur in the reasonably foreseeable future.

Plaintiffs argue that the government lacks the authority to detain them at NSGB because the base is outside of the United States for purposes of the INA. Compl. ¶¶ 62-63 (citing 8 U.S.C.

§ 1101(a)(38)). Defendants acknowledge NSGB's status for purposes of the INA. However, the cited provisions overcome any presumption against extraterritorial application—which does not apply here given the inherent nature of removal operations. *Sale*, 509 U.S. at 173. Removal operations are inherently extraterritorial missions and therefore necessarily require the Secretary to exercise detention authority outside of the United States. *See* ECF No. 28-4, Transcript of March 14, 2025 TRO Hearing, *Las Americas v. Noem*, No. 1:25-cv-418 (CJN) (D.D.C. Mar. 14, 2025), at 24 (Plaintiffs conceding "[o]bviously the removal statutes apply extraterritorially. That's inherent."). As noted above, many of ICE's removal operations are conducted by ICE transporting the detainee to their country of removal. As a result, ICE routinely exercises its §§ 1231 and 1225 detention authority outside of the United States. Plaintiffs' contrary arguments simply set aside the reality of how ICE removal operations have operated for decades and necessarily must continue to operate. Section 1103(a)(3) operates in tandem with these provisions to give the Secretary all necessary authority to conduct the removal operation in her preferred manner, including to plan the removal mission and arrange for appropriate staging points to support that mission. Indeed, it would lead to an impossible situation if the government's broad powers under the INA were held to instantly terminate upon the detainee's flight leaving U.S. airspace but before ICE relinquishes control. Detainees placed on ICE-operated removal missions remain subject to ICE custody until ICE relinquishes custody. *See* 8 U.S.C. § 1231(b) (setting out the categories of countries to which aliens may be removed). None of that would be possible unless DHS's authority to execute removal operations has an extraterritorial component.

Furthermore, the United States "exercises complete jurisdiction and control" over the naval station. *Boumediene v. Bush*, 553 U.S. 723, 753-55 (2008) (finding "the United States, by virtue of its complete jurisdiction and control over the base, maintains *de facto* sovereignty over this

territory"). There is no Cuban government presence at NSGB and no way for Cuban authorities to exercise any control over the detainees. *Id.* at 753. Although they may have physically departed the territorial United States and transited through NSGB, DHS has not completed the removal mission and has certainly not surrendered them to the control of the Cuban government.

Moreover, Plaintiffs' Complaint does not acknowledge that "removal" as contemplated by the INA is a legal term of art that refers to a circumscribed, multi-step process that often involves detention, transfer, and travel. *Matter of G-N-C*, 22 I. & N. Dec. 281, 296-97 (BIA 1998); *cf. United States v. Argueta-Rosales*, 819 F.3d 1149, 1155 (9th Cir. 2016) (noting that under the INA, "enter" can have "a narrower meaning than its colloquial usage"). Just as a detainee who, while being escorted and has a layover en route to their final destination, is not removed "to" that location, named Plaintiffs were not removed to NSGB. Conversely, for example, if a removal flight in route to Romania were to make an overnight refueling stop in Germany, DHS would be acting without lawful basis once the plane left the United States or landed in Germany. But that has never been the law and makes little sense as a practical matter. Here, the term "removal" as it is used in § 1231(a)(6) is not intended as a limitation or termination point on the Secretary's detention authority. *See* 8 U.S.C. § 1231(a)(6) ("An alien . . . may be detained beyond the removal period"). Therefore, staging immigration detainees at NSGB—a U.S. military facility—through to completion of the multi-step removal process does not impact the Secretary's detention authority.

Indeed, courts recognize a distinction between a "physical" departure and a "legal" departure. *See Handa v. Crawford*, 312 F. Supp. 2d 1367, 1370 (W.D. Wash. 2004), *aff'd sub nom. Handa v. Clark*, 401 F.3d 1129 (9th Cir. 2005). To effectuate a departure or removal from the United States, the immigration detainee must lawfully enter another country. *Handa*, 312 F. Supp. 2d at 1370 ("Because Dr. Handa had not legally entered Canada, Dr. Handa did not legally depart

from the United States."); *cf. Boumediene*, 553 U.S. at 769 (indicating NSGB "[i]n every practical sense . . . [is] not abroad" but rather "within the constant jurisdiction of the United States"); *see also Castaneda-Lugo v. Mukasey*, 263 F. App'x 164, 165 (2d Cir. 2008).

Here, the U.S. government has not relinquished custody of immigration detainees at NSGB and has explicitly stated that the removal operation is ongoing. Therefore, the Secretary's detention authority continues to exist at NSGB as it pertains to immigration detainees with final removal orders still in the custody of the United States.

### D. Defendants did not act arbitrarily or capriciously in the implementation of the Presidential Memorandum.

Plaintiffs also fail to state an arbitrary or capricious APA claim. First, Plaintiffs argue that Defendants' actions are inconsistent with the President's direction because detainees are being held at Camp VI whom they allege are low-risk. Compl. ¶ 68. Plaintiffs' argument incorrectly assumes that Defendants' authority to hold immigration detainees is based on the President's Memorandum or that the Memorandum limits the Secretary's detention authority. Neither is correct. As discussed *supra* Argument III, the Secretary has broad discretion to administer detention facilities under the INA, independent of the Memorandum. And the Memorandum certainly does not purport to limit the Secretary's use of any detention space, including NSGB.

Second, Plaintiffs argue that Defendants' failure to explain the reasons transferring immigration detainees to NSGB is arbitrary and capricious. Compl. ¶ 66. As explained *supra* Argument III, there is no APA claim to challenge these types of overarching detention management decisions, and the Secretary has wide discretion to detain individuals with final orders of removal, to plan and carry out removal missions, and to select appropriate places of detention. Plaintiffs have not identified any instance in which a court required the government to justify using a particular detention facility for an individual alien or its removal path.

To the extent the APA calls for further justification, Defendants are using NSGB to maximize available detention resources given ongoing and increasing enforcement efforts, making it desirable to add the capacity already available at NSGB to accomplish the President's priority of completing removals of individuals with final orders of removal. *See* MOU at 1 (detailing the need for additional detention capacity). Utilizing unused detention capacity is a rational response to limited resources and not arbitrary and capricious. Plaintiffs' policy-laden disagreements with Defendants' reasons for transferring detainees to NSGB do not warrant relief under the APA.

## IV.    Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim.

The Supreme Court repeatedly held that civil immigration detention is a lawful exercise of executive authority under the Constitution. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."). Here, Plaintiffs assert a general liberty interest in being free from punitive conditions of detention. Compl. ¶ 70. First, the mere fact of being held at NSGB—distinguished from allegations as to actual conditions, *see, e.g.*, Compl. ¶¶ 46-48—cannot violate due process because detention locations are not punitive. They are also discretionary and therefore do not give rise to a qualifying liberty interest. 8 U.S.C. § 1231(g); *see Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991). Second, Plaintiffs fail to allege facts sufficient to state a claim as to the specific conditions of detention at the NSGB facilities. Compl ¶¶ 72-73; *Iqbal*, 556 U.S. at 678.

**A.    Because Transfer Authority is Discretionary, Plaintiffs Lack the Qualifying Liberty Interest Necessary to Challenge Their Detention at NSGB Under the Due Process Clause.**

Plaintiffs claim that the fact of their detention at NSGB *per se* violates due process, Compl. ¶ 71, but they lack a qualifying liberty interest to trigger due process protections. A threshold requirement for an alien to establish such a violation is identifying a liberty interest of which he has been deprived. *Abigail All. for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)); *Aref v. Lynch*, 833 F.3d 242, 252 (D.C. Cir. 2016) ("Absent a liberty interest, [a detainee] is not entitled to any process."). The substantive Due Process Clause protects only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Dep't of State v. Munoz*, 602 U.S. 899, 910, (2024) (quoting *Glucksberg*, 521 U.S. at 720-21). Thus, this Court's "substantive due process analysis must begin with a careful description of the asserted right." *See Reno v. Flores*, 507 U.S. 292, 302 (1993) (noting that liberty interests are narrowly defined); *Glucksberg*, 521 U.S. at 720. Plaintiffs do not even attempt to argue that they have a protectable liberty interest in the locations in which they are held, *see generally* Compl., and indeed, as the Supreme Court acknowledges, "it would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight." *Munoz*, 602 U.S. at 911.

As discussed, *supra* Argument III.B, detention locations and transfer determinations are wholly discretionary. *See* 8 U.S.C. § 1231(g); *Flores*, 507 U.S. at 294-95 (concluding the Executive has "broad discretion to determine whether, and on what terms" an individual can be detained or released pending removal). Because Plaintiffs "can point to no particularized standards or criteria to guide the government in making a decision" regarding detention transfer determinations, they have no protected liberty interest. *Kwok Sze v. Johnson*, 172 F. Supp. 3d 112,

122 (D.D.C. 2016) (declining to find liberty interest when no statutory language provided for the desired relief), *aff'd sub nom*. *Kwok Sze v. Kelly*, No. 16-5090, 2017 WL 2332592 (D.C. Cir. Feb. 21, 2017). As the D.C. Circuit has explained, there is no protected liberty interest in detention location or where there are no "particularized standards or criteria" to guide the Attorney General's decision. *Bagguley*, 953 F.2d at 662 (D.C. Cir. 1991).

Indeed, in the immigration context, it is well-settled that discretionary determinations do not give rise to any liberty interest protected by the Due Process Clause. *See*, *e.g.*, *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1220 (11th Cir. 2023) ("[A]liens do not have a constitutionally protected liberty interest in discretionary relief from removal."); *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 228 (5th Cir. 2017) (same); *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017) (same); *Mendez-Garcia v. Lynch*, 840 F.3d 655, 669 (9th Cir. 2016) ("Discretionary immigration relief gives rise to no substantive interest protected by the Due Process Clause . . . [n]or did Congress provide aliens with such an interest."); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1293 (10th Cir. 2001) (rejecting due process challenge when regulation "lacks criteria or standards limiting official discretion"); *see also Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 313 (D.D.C. 2017) (collecting cases, stating that "the D.C. Circuit has not opined on the issue," and declining to do so because plaintiffs were not challenging a discretionary determination). So too, in the detention context, there is generally no liberty interest in discretionary determinations. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("Hawaii's prison regulations place no substantive limitations on official discretion and thus create no liberty interest [for transfer determinations] entitled to protection under the Due Process Clause"). And while courts may locate such an interest if the challenged practice poses an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 472 (1995), this analytical framework makes clear

that there is no per se liberty interest in avoiding transfer to NSGB absent consideration of the conditions on the ground. *See Aref*, 833 F.3d at 252 (explaining that the inquiry focuses on the "nature of the deprivation and its duration"). For that reason, under either formulation, Plaintiffs' due process claim rises and falls on the actual conditions of detention to which they are subject. *See* infra Argument IV.B.

Moreover, allowing Plaintiffs' claim to proceed would allow any alien in immigration detention anywhere to challenge the Secretary's detention determinations based on preferred location, proximity to their family, or any other reason. It would also fly in the face of the Supreme Court's instruction to "exercise the utmost care whenever we are asked to break new ground in this field [of substantive due process], lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court." *Glucksberg*, 521 U.S. at 720. And it would violate the Supreme Court's direction that the Executive has "broad discretion to determine whether, and on what terms" an individual can be detained. *Flores*, 507 U.S. at 294-95. Thus, Plaintiffs have no protected liberty interest sufficient to raise a due process challenge to the location of their custody at NSGB.

**B.    Plaintiffs Fail to Allege Facts Sufficient to State a Due Process Claim Arising from Their Conditions of Detention.**

Plaintiffs additionally challenge specific conditions of detention at the MOC and Camp VI,[3] Compl. ¶¶ 72-73, but their claims do not amount to a plausible Fifth Amendment violation. *Iqbal*, 556 U.S. at 678 (acknowledging courts are not required to accept conclusory allegations or

---

[3] As discussed *supra* Argument I.B, named Plaintiffs were neither housed at the MOC nor experienced injury there, and this Court thus lacks jurisdiction to evaluate the conditions at that facility. Likewise, any injuries not actually experienced by the named Plaintiffs may not form the basis of this claim. *Sharp*, 680 F. Supp. 2d at 57 (requiring actual or imminent injury); *Parm*, F. Supp. 3d at 1342.

unwarranted factual deductions as true). Ordinarily, when it is alleged that an immigration detainee has been deprived of liberty without due process, "the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment." *Block v. Rutherford*, 468 U.S. 576, 583 (1984). A detainee must show a subjective intent to punish, or, in the absence of such evidence, that the challenged condition is excessive and not reasonably related to a legitimate governmental purpose. *Bell v. Wolfish*, 441 U.S. 520, 535-36 & n.16 (1979); *see also O.M.G. v. Wolf*, 474 F. Supp. 3d 274, 286 (D.D.C. 2020) (applying test to immigration detention). Thus, if "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 647 (9th Cir. 2021) (quoting *Bell*, 441 U.S. at 539); *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 1438376, at *12 (D.D.C. Feb. 1, 2023) (calling for dismissal when conditions are "rationally related to a non-punitive purpose and . . . not excessive."). Indeed, detainees may be subject to conditions that relate to legitimate non-punitive governmental objectives, such as "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees" without raising constitutional concerns. *Bell*, 441 U.S. at 540. And courts must "be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539.

Plaintiffs fail to state facts sufficient to satisfy any part of this inquiry. *Block*, 468 U.S. at 583 (asking "whether the challenged condition, practice, or policy constitutes punishment"). Plaintiffs acknowledge that during their entire time at NSGB they received three meals a day and personal hygiene items for showers, were permitted recreation time, and were able to make legal and personal calls. Gutierrez Decl. ¶¶ 6-10. Plaintiffs state, without elaboration, however, that

"[i]ndividuals currently and formerly detained at [NSGB] report that the conditions are far worse than those they experienced in ICE detention or other carceral facilities." Compl. ¶ 44. This sentence alleges no facts to support the conclusion made and is only a "threadbare recital[] of a cause of action's element[]." *Iqbal*, 556 U.S. at 678.

Nor does this claim fare any better in light of the allegations made in the named Plaintiffs' declarations. For example, Plaintiff Lopez-Ocon writes only that "[b]eing detained at [NSGB] is much worse than being in detention in Farmville"—comparing NSGB to "a detention center for people who are criminals or terrorists"—but this is simply another recitation of the required element to show a presumption of punishment that is not substantiated by facts to support the alleged violation. Lopez-Ocon Decl. ¶ 7. He does not explain what is different. Plaintiff Gutierrez makes two references to other detention centers, stating he "ha[s] lost weight during [his] entire time in ICE detention, but [he] ha[s] lost weight faster" at NSGB because there is no commissary. Gutierrez Decl. ¶ 6. But "[j]ust because one pretrial detention facility provides certain amenities," like a commissary, "does not mean every other pretrial detention facility . . . must adopt those amenities lest they 'punish' their detainees." *Ams. for Immigrant Just.*, 2023 WL 1438376, at *14. He additionally asserts that "[i]n other ICE detention centers where [he] has been held, there have been forms for making medical requests." Gutierrez Decl. ¶ 11. But he neither alleges nor suggests that medical services are not available upon request or necessity. Moreover, the alleged lack of a form to make medical requests is wholly insufficient to support Plaintiffs' entire, wide-ranging conditions-of-detention claim when Plaintiff Gutierrez never alleges attempting to make a medical request, Gutierrez Decl. ¶ 11, and Plaintiffs state no facts showing worse conditions at NSGB than other facilities. *See generally* Compl. The Court need not go further to dismiss this claim. *Ams. for Immigrant Just.*, 2023 WL 1438376, at *12 (explaining that the burden shifts to the government

to show legitimate justification only if plaintiffs show they face worse conditions than other civil detainees).

However, should the Court reach the question, the conditions at NSGB are all related to a legitimate governmental purpose. *Bell*, 441 U.S. at 539-40. Although Plaintiffs' Complaint includes statements by public officials about the existence of NSGB as a detention site, Compl. ¶¶ 30-43, as described above, any due process claim must be rooted in the conditions of the facility in which Plaintiffs are actually housed, not the mere fact of their transfer. *See supra* Argument I.B. To that end, they allege no facts suggesting that any of the specific conditions at NSGB are subjectively intended to punish. *See generally* Compl. On the contrary, their conditions are all reasonably related to legitimate security purposes and operational limitations. *See, e.g.*, MOU at 4.1.20 (explaining that "the appropriate level of access . . . to legal representation" takes into account "security concerns"); *see also Hatim v. Obama*, 760 F.3d 54, 59 (D.C. Cir. 2014) (recognizing that securing the detention and military facilities at NSGB is "beyond cavil a legitimate governmental interest"); *Bell*, 441 U.S. at 540 ("The effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment); *id.* ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment"). And, as here, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to [detention officials'] expert judgment in such matters." *Rutherford*, 468 U.S. at 584-85.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action. A proposed order is enclosed herewith.

Dated: August 4, 2025                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         *Assistant Attorney General*

                                         DREW C. ENSIGN
                                         *Deputy Assistant Attorney General*

                                         ANTHONY NICASTRO
                                         *Acting Director*

                                         DEVIN BARRETT
                                         *Senior Litigation Counsel*

                                         IAN LAM
                                         MALCOM I. MCDERMOND
                                         ALEXA PERLMUTTER
                                         *Trial Attorneys*

                                   By: */s/ Jason K. Zubata*
                                         JASON K. ZUBATA
                                         *Trial Attorney*
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation
                                         P.O. Box 868, Ben Franklin Station
                                         Washington, DC 20044
                                         Tel: (202) 532-4143
                                         Email: jason.k.zubata@usdoj.gov

                                         *Counsel for Defendants*