**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| YAMIL LUNA GUTIERREZ, *et al.*,<br><br>*Plaintiffs-Petitioners, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants-Respondents.* | Case No. 1:25-cv-01766-SLS |

**PLAINTIFFS-PETITIONERS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

  I.    DEFENDANTS' JURISDICTIONAL ARGUMENTS FAIL ............................. 2

    A.  The Case is Not Moot, Because the Class's Claims Are Inherently Transitory. ............. 2

    B.  Plaintiffs Have Standing. .................................................................................. 6

    C.  The Court Can Grant Classwide Declaratory Relief and Relief Under the APA. ........... 8

  II.   THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a). ....... 10

    A.  The Proposed Class Satisfies the Commonality Requirements. .................................... 10

    B.  There Is No Ascertainability Requirement, and Regardless, the Class Is Ascertainable. ................................................................................................ 14

    C.  The Proposed Class Satisfies the Adequacy Requirement. ............................................. 18

  III.  THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)........ 20

  IV.  CLASS CERTIFICATION IS APPROPRIATE FOR PLAINTIFFS' HABEAS CLAIMS. .............................................................................................. 21

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*A.A.R.P. v. Trump*,
  145 S. Ct. 1034 (2025) .......................................................................................... 23

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025) .......................................................................................... 23

*Al Otro Lado, Inc. v. Mayorkas*,
  619 F. Supp. 3d 1029 (S.D. Cal. 2022) ................................................................ 10

*Alli v. Decker*,
  650 F.3d 1007 (3d Cir. 2011) .................................................................................. 9

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................................................... 6

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................... 19

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
  No. 22-cv-3118, 2023 WL 4364096 (D.D.C. July 6, 2023) .................................. 12

*Aracely, R. v. Nielsen*,
  319 F. Supp. 3d 110 (D.D.C. 2018) ...................................................................... 21

*Bell v. Wolfish*,
  441 U.S. 520 (1979) ......................................................................................... 12, 13

*Biden v. Texas*,
  597 U.S. 785 (2022) ................................................................................................. 8

*Bijeol v. Benson*,
  513 F.2d 965 (7th Cir. 1975) ................................................................................. 22

*Brito v. Garland*,
  22 F.4th 240 (1st Cir. 2021) .................................................................................... 9

*Bynum v. D.C.*,
  214 F.R.D. 27 (D.D.C. 2003) ................................................................................ 14

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020) .................................................................. 8, 12

*Cap. Area Immigs.' Rts. Coal. v. Trump*,
    471 F. Supp. 3d 25 (D.D.C. 2020) ........................................................... 16

*Crowe v. Fed. Bureau of Prisons*,
    No. 24-CV-3582 (APM), 2025 WL 1635392 (D.D.C. June 9, 2025) ...................................... 21

*Damus v. Nielsen*,
    313 F. Supp. 3d 317 (D.D.C. 2018) ........................................................ 11, 12, 14, 22

*DL v. D.C.*,
    302 F.R.D. 1 (D.D.C. 2013) .................................................................. 14, 15

*DL v. D.C.*,
    860 F.3d 713 (D.C. Cir. 2017) ................................................................... 20

*Eisen v. Carlisle & Jacqueline*,
    417 U.S. 156 (1974) .............................................................................. 2

*Florida v. United States*,
    660 F. Supp. 3d 1239 (N.D. Fla. 2023) ........................................................ 10

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) .............................................................................. 8

*Garnett v. Zeilinger*,
    301 F. Supp. 3d 199 (D.D.C. 2018) ........................................................... 19

*Garnett v. Zeilinger*,
    323 F. Supp. 3d 58 (D.D.C. 2018) .......................................................... 6, 7

*Genesis HealthCare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ............................................................................... 2

*Gerstein v. Pugh*,
    420 U.S. 103 (1975) ............................................................................. 2, 3

*Givens v. Bowser*,
    111 F.4th 117 (D.C. Cir. 2024) ................................................................. 5

*Goss v. Lopez*,
    419 U.S. 565 (1975) ............................................................................. 11

*Greene v. Lindsey*,
    456 U.S. 444 (1982) ............................................................................. 11

*Hamama v. Adducci*,
  912 F.3d 869 (6th Cir. 2018) ............................................................... 10

*Hardy v. District of Columbia*,
  283 F.R.D. 20 (D.D.C. 2012) ........................................................... 11, 12

*Harris v. Nelson*,
  394 U.S. 286 (1960) ............................................................................ 22

*Heredia Mons v. McAleenan*,
  No. 19-1953, 2019 WL 4225322 (D.D.C. Sep. 5, 2019) ................... 2, 3, 5

*Hernandez-Carrera v. Carlson*,
  547 F.3d 1237 (10th Cir. 2008) .......................................................... 12

*Hinton v. D.C.*,
  567 F. Supp. 3d 30 (D.D.C. 2021) ....................................................... 15

*Hoyte v. D.C.*,
  325 F.R.D. 485 (D.D.C. 2017) ............................................................ 14

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022) ............................................................. 22

*I.M. v. U.S. Customs & Border Prot.*,
  67 F.4th 436 (D.C. Cir. 2023) ............................................................. 21

*In re White*,
  64 F.4th 302 (D.C. Cir. 2023) ............................................................. 14

*J.D. v. Azar*,
  925 F.3d 1291 (D.C. Cir. 2019) .................................................... *passim*

*J.G.G. v. Trump*,
  No. CV 25-766 (JEB), 2025 WL 1577811 (D.D.C. June 4, 2025) ......... 16

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ................................................................... 10, 11, 23

*Johnson v. Guzman Chavez*,
  594 U.S. 523 (2021) ............................................................................ 23

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec'y*,
  No. CV 24-1702 (RC), --- F. Supp. 3d ----, 2025 WL 1403811 (D.D.C. May 9, 2025) .......... 10

*Las Americas Immigrant Advoc. Ctr. v. Wolf,*
    507 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................ 12

*LoBue v. Christopher,*
    82 F.3d 1081 (D.C. Cir. 1996) ......................................................................... 22

*Make the Rd. New York v. Wolf,*
    962 F.3d 612 (D.C. Cir. 2020) ...................................................................... 8, 16

*McKinney v. U.S. Postal Service,*
    No. 11-cv-631, 2013 WL 164283 (D.D.C. 2013) ............................................... 8

*Mead v. Parker,*
    464 F.2d 1108 (9th Cir. 1972) ..................................................................... 22, 23

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) .......................................................................................... 11

*N.S. v. Dixon,*
    141 F.4th 279 (D.C. Cir. 2025) ....................................................................... 5, 8

*N.S. v. Hughes,*
    335 F.R.D. 337 (D.D.C. 2020) ........................................................................... 5

*Napier v. Gertrude,*
    542 F.2d 825 (10th Cir. 1976) ..................................................................... 22, 23

*Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. Jacksonville,*
    508 U.S. 656 (1993) ........................................................................................... 6

*Nielsen v. Preap,*
    586 U.S. 392 (2019) ...................................................................................... 8, 23

*O.A. v. Trump,*
    404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................ *passim*

*R.I.L.-R v. Johnson.,*
    80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................ 3, 22

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem,*
    No. CV 25-306 (RDM), --- F. Supp. 3d ----, 2025 WL 1825431 (D.D.C. July 2, 2025) ..... 9, 10

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem,*
    No. 25-5243, 2025 U.S. App. LEXIS 19422 (D.C. Cir. Aug. 1, 2025) .................... 9

*Ramirez v. U.S. Immigr. & Customs Enf't,*
    338 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................ 15

*Rasul v. Bush,*
    542 U.S. 466 (2004) ........................................................................................... 23

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010), *as amended* (Jan. 4, 2010) ......................................... 9

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.,*
    No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) ................................ 16

*Simon v. Eastern Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976), *as revised* (May 24, 2016) ......................................................... 7

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................................................. 7

*Streicher v. Prescott,*
    103 F.R.D. 559 (D.D.C. 1984) ............................................................................. 23

*Texas v. United States,*
    40 F.4th 205 (5th Cir. 2022) ................................................................................ 10

*Thorpe v. D.C,*
    303 F.R.D. 120 (D.D.C. 2014) ............................................................................. 15

*Trump v. J.G.G.,*
    145 S. Ct. 1003 (2025) ........................................................................................ 23

*U.S. ex rel. Morgan v. Sielaff,*
    546 F.2d 218 (7th Cir. 1976) ............................................................................... 24

*U.S. ex rel. Sero v. Preiser,*
    506 F.2d 1115 (2d Cir. 1974) ......................................................................... 22, 24

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980) ......................................................................................... 2, 20

*Vijender v. Wolf,*
    No. 19-CV-3337 (APM), 2020 WL 1935556 (D.D.C. Apr. 22, 2020) ............................. 20

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ................................................................................... 2, 9, 10

*Wilkinson v. Austin,*
    545 U.S. 209 (2005)....................................................................................... 11

*Williams v. Richardson,*
    481 F.2d 358 (8th Cir. 1973) ....................................................................... 22

*Wolff v. McDonnell,*
    418 U.S. 539 (1974)....................................................................................... 11

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)....................................................................................... 12

**Statutes**

5 U.S.C. § 706(2) ................................................................................................ 9

8 U.S.C. § 1225(b) ............................................................................................ 16

8 U.S.C. § 1225(b)(1) ....................................................................................... 16

8 U.S.C. § 1231(g) ............................................................................................ 17

8 U.S.C. § 1252 ................................................................................................. 16

8 U.S.C. § 1252(e) ......................................................................... 16, 17, 20, 21

8 U.S.C. § 1252(e)(1) ....................................................................................... 16

8 U.S.C. § 1252(e)(1)(A) ............................................................................ 18, 20

8 U.S.C. § 1252(e)(2) ....................................................................................... 16

8 U.S.C. § 1252(e)(3) .................................................................................. 16, 17

8 U.S.C. § 1252(f)(1) .............................................................................. 8, 9, 10, 20

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 2, 22, 23

Fed. R. Civ. P. 23(a) ................................................................................ 1, 10, 18

Fed. R. Civ. P. 23(a)(2) .................................................................................... 10

Fed. R. Civ. P. 23(a)(4) .................................................................................... 18

Fed. R. Civ. P. 23(b)(2)................................................................................. passim

LCvR 7 ...................................................................................................... 3

## Other Authorities

7AA Charles A. Wright & Arthur. R. Miller, Fed. Prac. & Proc. § 1775 (3d ed. 2025)................ 9

*Definition of Class*, Manual for Complex Lit. § 21.222 (4th ed.)................................... 7

Dep't of Homeland Sec., *Press Release: DHS Releases Names of Worst of the Worst Convicted Criminal Illegal Aliens Detained at Guantanamo Bay* (July 7, 2025), https://www.dhs.gov/news/2025/07/08/dhs-releases-names-worst-worst-convicted-criminal-illegal-aliens-detained [https://perma.cc/YL55-5RD6] ........................................... 17

Immigr. & Customs Enf't, *Naval Station Guantanamo Bay (JTF Camp Six and Migrant Ops Center Main A)*, https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/J4BJ-QDX6] ................................................................ 14

Memorandum for the Sec'y of Def. and the Sec'y of Homeland Sec., *Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity* (Jan. 29, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity [https://perma.cc/D2P3-45SN]....... 13

Newberg on Class Actions § 2:3, § 3:15, § 3:67, § 4:35 (5th ed.)............................... 6, 16, 19, 24

ShaTyra Reed-Cox, *SECDEF Hegseth Visits Naval Station Guantanamo Bay*, U.S. Army (Feb. 26, 2025), https://www.army.mil/article/283368/secdef_hegseth_visits_naval_station_guantanamo_bay [https://perma.cc/3XA5-DEFS] ............................................................... 13

Ximena Bustillo & Tom Bowman, *Military Bases in New Jersey and Indiana Will Be Expanded to Detain Immigrants*, NPR (Jul. 21, 2025, at 6:11 ET), https://www.npr.org/2025/07/21/nx-s1-5475109/immigrant-detention-military-bases [https://perma.cc/QX6B-UHG9].................. 4

# INTRODUCTION

Plaintiffs-Petitioners ("Plaintiffs") present a textbook Rule 23(b)(2) class: every class member raises a number of identical legal claims against the government's use of detention at Guantánamo and, if they prevail, each class member would be entitled to the same court order declaring such detention outside the United States to be unlawful and vacating the agencies' policy. Plaintiffs thus meet the requirements for commonality. And Plaintiffs are adequate class representatives, as they can vigorously prosecute the interest of the class, and have no conflicting interests with the class. Defendants-Respondents ("Defendants") do not dispute that the proposed class satisfies Rule 23(a)'s numerosity, typicality, or adequacy of counsel requirements. Instead, they largely rely on a hodgepodge of jurisdictional arguments, but none of them stick. And although Defendants removed Named Plaintiffs Yamil Luna Gutierrez and Rafael Angel Lopez Ocon before this motion could be adjudicated, this case is not moot, because the class's claims are inherently transitory and are subject to an exception from mootness.

The Court can grant relief applicable to the whole class under Rule 23(b)(2) because nothing in the Immigration and Nationality Act ("INA") prevents the Court from issuing classwide declaratory relief or relief under the Administrative Procedure Act ("APA"). And class certification here, whether in habeas or in equity, is not only authorized but also necessary to allow the class to obtain judicial review over its claims because otherwise the government can keep mooting out individual challenges to their detention at Guantánamo.[1]

---

[1] Defendants argue that the Court should defer its decision on this fully briefed motion for class certification while it waits for briefing on Defendants' motion to dismiss (ECF No. 29), which will be complete on September 8, 2025. Defs.' Opp. to Mot. for Class Cert. ("Opp.") 9, ECF No. 28; Minute Order, Jul. 14, 2025. But even if the Court credits all the arguments in Defendants' motion to dismiss, those arguments apply only to some claims or portions of the case and would thus not moot the need for class certification. *See, e.g.*, Mot. Dismiss 18–19, ECF No. 29 (attacking only

## ARGUMENT

### I.     DEFENDANTS' JURISDICTIONAL ARGUMENTS FAIL

#### A.     The Case is Not Moot, Because the Class's Claims Are Inherently Transitory.

Contrary to Defendants' assertion, Opp. 16–20, the Named Plaintiffs' removal from Guantánamo *after* their motion for class certification was filed but before the Court could resolve the motion does not negate their ability to serve as class representatives in light of the "inherently transitory" exception to mootness.

Mootness can be avoided where "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398–399 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)). Under this exception, claims of a class persist even after named plaintiffs' claims become moot because the court may "'relate [a] certification motion back' to a date when the individual claims were live." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019) (alteration in original) (internal citation omitted) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 & n.2 (2013)). Notably, "the Supreme Court specifically 'crafted the exception in injunctive class actions,' such as this one, 'challenging criminal and immigration detention procedures.'" *Heredia Mons v. McAleenan*, No. 19-1953, 2019 WL 4225322, at *6 (D.D.C. Sep. 5, 2019) (first quoting *J.D.*, 925 F.3d at 1308; then citing

---

standing to assert claims involving the MOC portion of Guantánamo); *id.* at 23–39 (raising 12(b)(6) arguments only as to two of Plaintiffs' claims). Defendants' argument also rests on the assumption that the Court would not grant Plaintiffs leave to amend on any claims that might be dismissed. Because adjudicating a motion for class certification does not call for an in-depth examination of the underlying merits, the Court should not delay granting class certification if it finds that Plaintiffs satisfy Rule 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 n.6 (2011) (clarifying that Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper (citing *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177 (1974))).

*Gerstein*, 420 U.S. at 110 n.11). Here, the inherently transitory exception applies because (1) "the individual claim might end before the district court has a reasonable amount of time to decide class certification" and (2) "some class members will retain a live claim at every stage of litigation." *J.D.*, 925 F.3d at 1311.

Defendants removed Named Plaintiffs from Guantánamo on June 5 and 26, 2025, well before Defendants had even submitted their opposition to the motion for class certification on July 25. Moreover, the period of time that Plaintiffs were held at Guantánamo—37 days for Mr. Luna Gutierrez and 13 days for Mr. Lopez Ocon—falls squarely within the length of time courts have found to be inherently transitory. *See, e.g. J.D.*, 925 F.3d at 1311 (explaining that just as "one-year immigration detention . . . would end too soon, so too would a full term of pregnancy"); *R.I.L.-R v. Johnson.*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (period of detention lasting "weeks or months" was "too short for a court to be expected to rule on a certification motion"); *Heredia Mons*, 2019 WL 4225322, at *7 (applying exception to claims that "most likely" remained live for a maximum of six months).

Defendants argue that "there has been time to adjudicate a request for class relief with plaintiffs whose claims are not moot," yet acknowledge that the length of detention at Guantánamo is "an average of 12 days." Opp. 17 (citing Francisco Madrigal Decl. ¶ 6, ECF No. 28-3).  This length of time is clearly short enough to be inherently transitory, and certainly less than the time required to adjudicate a class certification motion. *See* LCvR 7(b), (d) (designating 14 days for opposing memorandum and seven days for reply memorandum). Moreover, Defendants' citation to other cases brought by different parties—legal service organizations and individual petitioners, Opp. 17—has no bearing on whether the inherently transitory exception to mootness applies in *this* case, especially since the former raised different claims and the latter were not, for the most

part, detained at Guantánamo. If anything, the government's actions in *Espinoza Escalona*—including transferring one plaintiff to the notorious CECOT prison in El Salvador, removing other plaintiffs, and disclaiming any intent to transfer others to Guantánamo—illustrates how Defendants' control over where noncitizens are detained allows them to keep mooting out individual challenges to detention on Guantánamo. *See* Defendants' Motion to Dismiss and Memorandum in Support Thereof at 19–26, *Espinoza Escalona v. Noem*, No. 25-cv-604 (D.D.C. May 19, 2025), ECF No. 33. Defendants' suggestion that Plaintiffs' interest in their claims is "likely at a nadir" because of their deportation is similarly off-base: the inherently transitory exception to mootness exception itself contemplates the very fact that the named plaintiffs' individual claims have become moot.

Plaintiffs also satisfy the second requirement of the exception: that "some class members will retain a live claim at every stage of litigation." *J.D.,* 925 F.3d at 1311. Defendants do not contest that they continue to detain immigrants at Guantánamo, or that the government plans to continue to send immigrant detainees to Guantánamo. Pls.' Mot. Class Cert. ("Mot.") 6–7, ECF No. 4. Indeed, Defendants currently seek to *increase* the number of people held at Guantánamo.[2] Defendants suggest that the facility has "not constantly been operating" because there have been times where no noncitizens were detained at Guantánamo, and that this precludes relation-back analysis. Opp. 19 (first citing Hr'g for TRO at 71, ECF No. 28-4; then citing Madrigal Decl. ¶ 4). But the evidence they cite is conspicuously silent on a crucial point: nowhere do they identify any time since Plaintiffs moved for class certification when the facility has been empty. Madrigal Decl.

---

[2] Ximena Bustillo & Tom Bowman, *Military Bases in New Jersey and Indiana Will Be Expanded to Detain Immigrants*, NPR (Jul. 21, 2025, at 6:11 ET), https://www.npr.org/2025/07/21/nx-s1-5475109/immigrant-detention-military-bases [https://perma.cc/QX6B-UHG9] ("ICE is also seeking to detain more immigrants without legal status at Guantanamo Bay," with plans to "double the capacity at Guantanamo to 400 people.").

¶ 4. And regardless, this Court has clearly rejected this reading of the inherently transitory exception to mootness. The exception applies even if an immigration detention facility "does not have at least one class member in its custody at all times." *N.S. v. Hughes*, 335 F.R.D. 337, 345 (D.D.C. 2020), *partially reversed on other grounds by N.S. v. Dixon*, 141 F.4th 279 (D.C. Cir. 2025). This rule makes practical sense: If the government could not only moot a class action but defeat a class's reliance on the inherently transitory exception to mootness by simply clearing out a detention facility for a short period of time in search of a reset, that would defeat entirely the reason the exception exists in the first place.  It is also consistent with the government's cited case law, Opp. 16, which only held that a claim was moot on this basis because the complaint alleged "too small [a number of violations] to demonstrate that the alleged violations will recur often enough for members of the proposed class to retain live claims throughout the litigation." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024) (citing *J.D.*, 925 F.3d at 1307). Here, in contrast, the record is unambiguous that there will be future class members as the litigation continues.

Defendants also seem to argue that alleged improvement to access to counsel at Guantánamo somehow defeats the inherently transitory exception to mootness because class members may eventually speak with attorneys after being transferred to Guantánamo. Opp. 18–19. But this is irrelevant when courts have already recognized how the length of time in immigration detention falls well within the exception because even "[m]onths of detention . . . represent a mere moment in civil litigation." *Heredia Mons*, 2019 WL 4225322, at *7; *J.D.*, 925 F.3d at 1310.[3] Changes in access to counsel do not remedy the violations Plaintiffs challenge in

---

[3] Ongoing litigation over access to counsel at Guantánamo also does not suggest there will be no live case or controversy here, in a challenge to whether detention at Guantánamo is permissible at all. *See* ECF No. 1. In any event, the difficulties in accessing counsel also support Plaintiffs' argument for class certification by underscoring how difficult it would be for individuals to bring their own cases one-by-one when they cannot even reach attorneys in a timely manner.

this case, which involve the legality of detention at Guantánamo and the unconstitutional punishment the class faces there. Any changes to access to counsel do not alter "[t]he gravamen of [Plaintiffs'] complaint" and therefore do not render the case moot. *See Ne. Fla. Ch. of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 662 (1993). And even if Defendants' changes to attorney access could provide Plaintiffs the relief they seek, it is black-letter law under the voluntary cessation doctrine that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Plaintiffs clearly meet the test for the inherently transitory exception to mootness, and the case is not moot.

### B.    Plaintiffs Have Standing.

Defendants argue that the Court should not certify the class because "[p]utative class members who are not yet (and may never be) transferred" to Guantánamo lack standing. Opp. 20. This argument misunderstands the standing requirement and the class definition.

First, Defendants are wrong about who must establish standing. In a class action, "individual named plaintiffs representing a class must have standing to pursue their own individual claims at the time the suit was filed." *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 65 (D.D.C. 2018) (citing 1 Newberg on Class Actions § 2:3 (5th ed.) ("Newberg")). "[S]o long as the individual named plaintiffs have standing, the Court need not consider the standing of any absent class members." *Id.* (citing Newberg § 2:3); *see also J.D.*, 925 F.3d at 1324 ("[A]ny suggestion that absent class members . . . must themselves demonstrate standing is belied by the accepted understanding that only one of the class ***representatives*** needs standing."). Defendants cite nothing to support their contrary view that the Court should examine the standing of "putative class members." Opp. 20. In fact, one of Defendants' cited opinions reiterates the rule that the class

6

representatives must "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 40, n. 20 (1976)), *as revised* (May 24, 2016).

The only relevant question is whether the class representatives had standing when they filed suit. And the unrebutted allegations in the Complaint are that both class representatives were detained at Guantánamo when they filed suit. Luna Gutierrez Decl. ¶ 3, ECF No. 4-1; Lopez Ocon Decl. ¶ 3, ECF No. 4-2. Both challenged this detention as ultra vires, arbitrary and capricious, and unconstitutional. ECF No. 1 ¶¶ 62–75. Consequently, both had "standing to pursue their own individual claims at the time the suit was filed." *Garnett*, 323 F. Supp. 3d at 65. This ends the inquiry.

Second, Defendants misunderstand the class definition. The class consists of those who "are, or will be" detained at Guantánamo. Mot. 2. Defendants hinge their argument on their misunderstanding that this class encompasses "[p]utative class members who are not yet (and may never be) transferred" to Guantánamo. Opp. 20. But a class defined in this way "does not, as Defendants claim, include unknown and unidentifiable" future members. *O.A. v. Trump*, 404 F. Supp. 3d 109, 150, 160 (D.D.C. 2019) (considering a class of immigrants who "have entered or will enter" the country). Instead, people "only become members of the class *if and when* they come within its definition by arriving at Guantánamo. *Id.* at 160; *see also Definition of Class*, Manual for Complex Lit. § 21.222 (4th ed.) ("A class may be defined to include individuals who may not become part of the class until later."). Defendants miss the mark when they attack the

standing of people who "may never be" at Guantánamo, Opp. 20, and will thus never be class members.[4]

### C.    The Court Can Grant Classwide Declaratory Relief and Relief Under the APA.

While Defendants spill much ink arguing against classwide injunctive relief, Opp. 22–29, the Court need not reach that question because Plaintiffs can, at a minimum, seek classwide declaratory relief and relief under the APA like vacatur. *See* ECF No. 1, ¶¶ 77–79. Defendants rely primarily on 8 U.S.C. § 1252(f)(1), as interpreted in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), but "[t]he plain language of § 1252(f)(1) only strips courts of the 'jurisdiction or authority to *enjoin* or *restrain*,'" and "[n]either term encompasses declaratory relief." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 200 (D.D.C. 2020) (quoting 8 U.S.C. § 1252(f)(1)) (emphasis added). Thus, "§ 1252(f)(1) 'does not proscribe issuance of a declaratory judgment,'" *N.S.*, 141 F.4th at 290 n.7 (cited by the government, Opp. 24) (quoting *Make the Rd. New York v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020)), and, contrary to Defendants, it does not matter what kind of declaratory judgment Plaintiffs seek because of the inherent differences between declaratory and injunctive relief. The Supreme Court has repeatedly recognized that distinction. *See, e.g., Biden v. Texas*, 597 U.S. 785, 798 (2022); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (opinion of Alito, J., joined by Roberts, C.J., and Kavanaugh, J.) (explaining that § 1252(f)(1) did not eliminate "jurisdiction to entertain the plaintiffs' request for declaratory relief"). Notably, the government has even recently "concede[d] that the D.C. Circuit rejected [its] capacious reading of § 1252(f)(1) in *Make the Road*

---

[4] If the Court agrees with the government that the language of the class definition does not sufficiently rule out people who may never be held at Guantánamo, it should not deny class certification but instead should use its discretion to modify the proposed class to ensure a clear scope. *See McKinney v. U.S. Postal Service*, No. 11-cv-631, 2013 WL 164283, at *8 n.10 (D.D.C. 2013) ("It is well within the Court's authority to redefine [a] proposed class.").

New York . . . ." *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem ("RAICES")*, No. CV 25-306 (RDM), --- F. Supp. 3d ----, 2025 WL 1825431, at \*20 (D.D.C. July 2, 2025).[5]

Defendants' argument against classwide declaratory relief notwithstanding these decisions reads the word "or" out of the statute. Rule 23(b)(2) permits a class action where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). Accordingly, Rule 23(b)(2) "does not require that both forms of relief be sought and a class action seeking solely declaratory relief may be certified." 7AA Charles A. Wright & Arthur. R. Miller, Fed. Prac. & Proc. § 1775 (3d ed. 2025); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("Rule 23(b)(2) applies only when a single injunction *or* declaratory judgment would provide relief to each member of the class." (emphasis added)). The rule thus does not require a party to seek injunctive relief, but rather merely recognizes that declaratory relief can be an adequate or equal substitute for injunctive relief in many instances. Unsurprisingly, other circuits have rejected the government's interpretation and agree with the D.C. Circuit that § 1252(f)(1) does not bar classwide declaratory relief. *See, e.g.*, *Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010), *as amended* (Jan. 4, 2010).

Moreover, Defendants completely ignore Plaintiffs' request for relief under the APA. All courts to have addressed the issue have agreed that § 1252(f)(1) does not bar the normal remedy under the APA of vacatur under 5 U.S.C. § 706(2). *See, e.g.*, *Las Americas Immigrant Advoc. Ctr.*

---

[5] Although the government sought a stay on this decision, on appeal, it did not contest the availability of declaratory relief or vacatur based on § 1252(f)(1), *see Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. 25-5243, 2025 U.S. App. LEXIS 19422, at \*51 n.7 (D.C. Cir. Aug. 1, 2025) (Millett, J., concurring in part and dissenting in part), and the D.C. Circuit affirmed the class certification order with only a modification that is not relevant to this case, *id.* at \*3– 4 (per curiam).

*v. U.S. Dep't of Homeland Sec'y* ("*Las Americas*"), No. CV 24-1702 (RC), --- F. Supp. 3d ----,
2025 WL 1403811, at *22 (D.D.C. May 9, 2025); *RAICES*, 2025 WL 1825431, at *21; *Texas v.
United States*, 40 F.4th 205, 219–20 (5th Cir. 2022) (per curiam); *Florida v. United States*, 660 F.
Supp. 3d 1239, 1284–85 (N.D. Fla. 2023); *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029,
1045 (S.D. Cal. 2022). As another court in this District recently explained, "[v]acatur"—the relief
sought under the APA—"is not an injunction: it is 'less drastic' because it 'neither compels nor
restrains' agency action; all it does is 're-establish the status quo absent the unlawful agency
action." *Las Americas*, 2025 WL 1403811, at *22 (quoting *Texas*, 40 F.4th at 219–20). Thus, the
Court can also award vacatur to the class.[6]

## II.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

Defendants do not contest the numerosity, typicality, or adequacy of counsel requirements
of Rule 23(a). Opp.33–36. Instead, Defendants raise overlapping arguments as to ascertainability
and commonality, and also challenge the adequacy of class representatives. None hold up.

### A.     The Proposed Class Satisfies the Commonality Requirements.

Commonality is satisfied where "there are questions of law or fact common to the class
. . . ." Fed. R. Civ. P. 23(a)(2). In assessing commonality, courts focus on "the capacity of a class-
wide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Wal-
Mart*, 564 U.S. at 350 (citation omitted). "Even a single common question will" satisfy this

---

[6] Plaintiffs maintain that nothing in the INA authorizes detention extraterritorially, *contra* Opp.
22–23, so any injunction would not affect the "provisions of part IV" of the INA. 8 U.S.C.
§ 1252(f)(1).  The Supreme Court itself maintains authority to enjoin any covered provisions. *Id*.
Lastly, at least one circuit has recognized the availability of classwide habeas relief. *See Hamama
v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) ("[T]here is nothing barring a class from seeking a
traditional writ of habeas corpus (which is distinct from injunctive relief . . .)" (citing *Jennings v.
Rodriguez*, 583 U.S. 281, 324 (2018) (Thomas, J., concurring in part and concurring in
judgment))). Again, the Court need not reach these issues given the D.C. Circuit's recognition of
classwide declaratory and APA vacatur relief.

requirement. *Id.* at 359 (citation modified). "[A]s this Circuit has held, if there is a 'single' common question, 'factual variations among the class members will not defeat the commonality requirement.'" *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)).

> Plaintiffs pointed in their opening brief to several such common questions:

> [1] whether detention at Guantánamo violates statutory and regulatory removal procedures and prohibitions on extraterritorial detention; [2] whether it violates the Administrative Procedure Act ("APA"); and [3] whether such detention constitutes unlawful punishment, in violation of the Fifth Amendment.

Mot. 8. Defendants take issue only with the third of these questions; they do not contest that the first and second present qualifying common questions. Opp. 35. There is no dispute that the Plaintiffs can proceed as a class on the first two claims. Even the question Defendants dispute—involving Plaintiffs' Fifth Amendment claim—satisfies commonality because Plaintiffs' claims turn on a single detention policy, which applies broadly to all class members. Defendants' two arguments against the commonality of the class's Fifth Amendment claim both fail.

First, Defendants argue that "a class action may not be the proper vehicle to resolve due process claims . . . ." Opp. 37. But the opinion they cite deals with procedural due process and thus has no bearing on Plaintiffs' substantive due process claims. *See Jennings*, 583 U.S. at 314.[7]

---

[7] Defendants misquote *Jennings* as discussing "such protections as the particular situation demands." Opp. 37 (quoting *Jennings*, 583 U.S. at 314). The actual quotation is "such **procedural** protections as the particular situation demands." *Jennings*, 583 U.S. at 314 (emphasis added) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). This is an important omission, as it obscures that *Jennings*—unlike this case—involved **procedural** due process claims. Regardless, courts regularly consider procedural due process claims and provide categorical guidance as to what due process requires, including in class actions. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 228–30 (2005); *Greene v. Lindsey*, 456 U.S. 444, 450–56 (1982); *Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974); *Goss v. Lopez*, 419 U.S. 565, 577–84 (1975). Moreover, Defendants omit that the class and subclasses in *Jennings* were also certified on common statutory claims that the Court addressed on the merits, *Jennings*, 583 U.S. at 290–92, and Plaintiffs indisputably raise a common statutory claim here too.

Defendants also argue that due process protections are "not always fully available to every claimant" in the immigration context. Opp. 37. But this has no bearing here because Plaintiffs claim in this case that all class members are entitled to substantive due process protections against unlawful punishment, *see* ECF No. 1, ¶¶ 70–73, and Defendants cite no authority supporting that different immigrants are entitled to different substantive due process protections against unlawful punishment. Opp. 37; *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020) (addressing procedural due process protections in expedited removal); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (addressing the permissibility of prolonged detention after a final order of removal) (2001); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1244 (10th Cir. 2008) (same).

Second, Defendants argue that class members cannot raise common questions because they are held in two different buildings at Guantánamo, Camp VI and MOC. Opp. 36. But Plaintiffs challenge policies that apply across the two buildings, and any minor "factual variations . . . will not defeat the commonality requirement" in light of the significant factual similarities." *See Damus*, 313 F. Supp. 3d at 332 (quoting *Hardy*, 283 F.R.D. at 24). Defendants cite two opinions involving claims spanning multiple detention facilities thousands of miles apart. Opp. 35–36; *C.G.B. v. Wolf*, 464 F. Supp. 3d 174 (D.D.C. 2020) (covering all ICE detention facilities in the United States); *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3118, 2023 WL 4364096, at *2, *4 (D.D.C. July 6, 2023) (covering detention facilities in Florida, Louisiana, Texas, and Arizona). The major differences between distinct detention centers addressed in those opinions do not resemble the irrelevant distinctions between Camp VI and MOC at Guantánamo.

One such policy is Defendants' use of detention at Guantánamo for purposes of "deterrence," which is not a "legitimate nonpunitive governmental objective[]" and thus violates the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979); *see also, e.g.*, ShaTyra Reed-

Cox, *SECDEF Hegseth Visits Naval Station Guantanamo Bay*, U.S. Army (Feb. 26, 2025) (Defendant Hegseth stating that "Guantanamo Bay represents . . . deterrence").[8] This unconstitutional policy of deterrence applies equally to both detention buildings on the base.

Another common policy is Defendants' implementation of unconstitutionally harsh restrictions on class members to achieve "objectives that could be accomplished in so many alternative and less harsh methods." *Bell*, 441 U.S. at 539 n.20. Defendants' declarants admit that many of the restrictions they place on class members are common between the two facilities. They do not differentiate between the MOC and Camp VI in describing policies regarding request forms, clothing, air conditioning, restraints in housing units, food, complaints, and medical care. Madrigal Decl. ¶¶ 32–34, 42, 44, 47; Tommy Sieker Decl. ¶¶ 12, 27, ECF No. 28-2. Both facilities hold people "subject to executable final orders without legal impediments to removal," and both are operated according to the same memorandum of understanding. Madrigal Decl. ¶ 3. The presidential directive that this memorandum cites as authorizing detention at Guantánamo mentions only the MOC, yet Defendants have used that authority to hold people in both buildings. ECF No. 28-1 at §§ 1–2; Memorandum for the Sec'y of Def. and the Sec'y of Homeland Sec., *Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity* (Jan. 29, 2025).[9] The two buildings fall under the authority of the same task force (Task Force Guardian). Sieker Decl. ¶ 3. And Defendant ICE's website treats the two buildings as a single

---

[8]    *Available at* https://www.army.mil/article/283368/secdef_hegseth_visits_naval_station_guantanamo_bay [https://perma.cc/3XA5-DEFS].

[9]    *Available at* https://www.whitehouse.gov/presidential-actions/2025/01/expanding-migrant-operations-center-at-naval-station-guantanamo-bay-to-full-capacity [https://perma.cc/D2P3-45SN].

facility. *See* ICE, *Naval Station Guantanamo Bay (JTF Camp Six and Migrant Ops Center Main A)* (last visited Aug. 4, 2025).[10]

Defendants claim there are some minor differences between Camp VI and the MOC, but "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. D.C.*, 214 F.R.D. 27, 33 (D.D.C. 2003); *Damus*, 313 F. Supp. 3d at 332. And even if the Court credits Defendants' argument that these differences defeat class certification (which it should not), the remedy is not to deny class certification. Rather, the Court should grant class certification, and should certify subclasses for the two buildings if the evidence ever suggests the need for them. *See DL v. D.C.*, 302 F.R.D. 1, 14 (D.D.C. 2013) (certifying four separate subclasses on remand after a holding that lack of commonality precluded class certification), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).

### B.    There Is No Ascertainability Requirement, and Regardless, the Class Is Ascertainable.

Defendants' ascertainability arguments also fail. As an initial matter, even opinions Defendants cite recognize that "[i]t is 'far from clear,' . . . 'that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification.'" *O.A.*, 404 F. Supp. 3d at 159 (citation omitted) (cited at Opp. 32). Although "the D.C. Circuit has not opined on the requirement," ascertainability "has been recently disavowed by four federal appellate courts." *Id.* at 159–60 (citing *Hoyte v. D.C.*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017)). That is "consistent with the intent of the drafters of Rule 23(b)(2), who explicitly endorsed

---

[10]    *Available at* https://www.ice.gov/detain/detention-facilities/naval-station-guantanamo-bay [https://perma.cc/J4BJ-QDX6].

its use in cases such as this that challenge widespread illegal practices because the class members are often 'incapable of specific enumeration.'" *DL*, 302 F.R.D. at 17.[11]

Regardless, the class would satisfy any ascertainability requirement. Ascertainability "is not designed to be a particularly stringent test and simply requires that a class definition render potential class members identifiable according to objective criteria . . . ." *Hinton v. D.C.*, 567 F. Supp. 3d 30, 51 (D.D.C. 2021) (citations omitted). Thus, all Plaintiffs need to show is "that the general outlines of the members of the class are determinable at the outset of the litigation without engaging in burdensome individualized determinations." *O.A.*, 404 F. Supp. 3d at 160. Plaintiffs readily make this showing.

First, Defendants take issue with the class's inclusion of people who "are, or will be" detained at Guantánamo. Mot. 2. In Defendants' view, this means the class includes members "who are not yet (and may never be)" at the facility. Opp. 20. Defendants are wrong. As explained above, a class defined in this way includes only those currently detained at Guantánamo and in the future will include those who are being detained there at that future date. *Supra* at 7–8. It does not currently include those who might or could be detained there in the future. For this reason, a class of people who "are detained or will be detained" under certain circumstances "identifie[s] clear and objective criteria on which to show membership in the proposed class." *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 12, 49 (D.D.C. 2018); *see also J.D.*, 925 F.3d at 1323 (affirming certification of a class of certain people "who are or will be" in government custody).

---

[11] Defendants cite no opinion requiring a class to be ascertainable. *In re White* rejects fail-safe classes without mentioning ascertainability. 64 F.4th 302, 313 (D.C. Cir. 2023). Defendants do not argue the class here is a fail-safe class. And *Thorpe v. D.C.* specifically notes that "'[b]ecause the rationale for precise ascertainability is inapposite in the 23(b)(2) context, it is not required in cases such as this where only injunctive relief is sought and notice is not required.'" 303 F.R.D. 120, 139 (D.D.C. 2014) (quoting *DL*, 302 F.R.D. at 17) (alterations in *Thorpe* omitted).

"Nor is it at all unusual or improper for a Rule 23(b)(2) class to include future members." *O.A.*, 404 F. Supp. 3d at 160 (collecting cases); *see also J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 1577811, at *28 (D.D.C. June 4, 2025) ("The Government's argument that the inclusion of future claimants renders a class non-ascertainable is at odds with existing law on Rule 23(b)(2) actions, which often include future members."), *vacated on other grounds by J.G.G. v. Trump*, No. 25-5217 (D.C. Cir. Aug. 8, 2025). Indeed, the requirement Defendants attempt to create—where any class involving future members would not be ascertainable because they cannot yet be identified—would be at odds with the widely recognized principle that "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" *J.D.*, 925 F.3d at 1322 (quoting Newberg § 3:15).

Second, Defendants argue that the proposed class is overbroad to the extent it includes noncitizens with expedited removal orders because of 8 U.S.C. § 1252's limits on judicial review of expedited removal orders under § 1225(b)(1). Opp. 31–32. But the plain meaning of that statute makes clear that it does not apply to Plaintiffs' claims. Section 1252 channels individual challenges to certain determinations made under § 1225(b)(1) into habeas corpus proceedings, *see* 8 U.S.C. § 1252(e)(2), and systemic challenges to a regulation, directive, guideline, or procedure implementing § 1225(b) into this District, *see id*. § 1252(e)(3). *See also Make the Rd. N.Y.C.*, 962 F.3d at 625–26 (describing channeling of "challenges to the Secretary's rules and procedures implementing the expedited removal system"). Plaintiffs are not challenging either the execution of any individual's expedited removal order or policies implementing § 1225(b), so § 1252(e) has no bearing here. *See Cap. Area Immigs.' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 59 (D.D.C. 2020) (finding § 1252(e)(1) inapplicable to vacatur of rule changing asylum procedures because plaintiffs were "not challenging any specific order to exclude an individual alien"); *S. Poverty L.*

*Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533 at *16 (D.D.C. June 17, 2020) (finding substantive due process challenge conditions of confinement "ancillary to the removal process" and outside "any part of the process by which . . . removability will be determined.").

Defendants have never described their policy and practice of detaining noncitizens at Guantánamo as an implementation or operation of an expedited removal order or a "regulation, directive, guideline, or procedure" implementing expedited removal in general. Rather, Defendants have consistently, in both public and internal documents, described detention at Guantánamo to apply to noncitizens "with final orders of removal." *See, e.g.*, ECF No. 28-1, Exh. A (Memorandum of Understanding between DHS and DOD, entitled "DOD Support at Naval Station Guantanamo Bay (NSGB) to U.S. Immigration and Customs Enforcement (ICE) for DHS/ICE Detention of Illegal Aliens *Subject to Final Orders of Removal*" (emphasis added)); Dep't of Homeland Sec., *Press Release: DHS Releases Names of Worst of the Worst Convicted Criminal Illegal Aliens Detained at Guantanamo Bay* (July 7, 2025) (noting that noncitizens detained at Guantánamo had "final orders of removal from an immigration judge").[12] Neither of the declarations submitted by the Defendants in opposing class certification make any distinction to their policies based on whether an individual has an expedited removal order. *See* ECF No. 28-2; 28-3. And elsewhere Defendants concede that they rely primarily on 8 U.S.C. § 1231(g) for their authority to detain on Guantánamo. *See, e.g.*, ECF No. 28-4 at 45 (government attorney arguing "We think 1231(g) answers specifically the question of, you know, can you have overseas facilities by just defining it as the United States government facility in 1231(g).").

---

[12]    *Available    at*    https://www.dhs.gov/news/2025/07/08/dhs-releases-names-worst-worst-convicted-criminal-illegal-aliens-detained [https://perma.cc/YL55-5RD6].

The case *O.A.*, 404 F. Supp. 3d 109, cited by the government, Opp. 32, confirms that § 1252(e) does not apply here. There, because the plaintiffs challenged asylum restrictions that applied in all contexts—including but not limited to expedited removal proceedings, *O.A.*, 404 F. Supp. 3d at 126—jurisdictional bars like § 1252(e)(3) were inapplicable because plaintiffs "present[] neither a challenge to a removal order nor a challenge to the statutory or regulatory system for expedited removal." *Id.* at 141. Thus, the fact that some members of the proposed class might have expedited removal orders does not impact either the Court's jurisdiction over their claims or its ability to certify the class because Plaintiffs are not challenging anything specific to expedited removal but, rather, their unlawful detention in a facility outside the United States. *See id.* at 158.

Third, Defendants argue that the class is "overbroad to the extent it includes those who were previously transferred to NSGB but have already been removed." Opp. 32. This argument misreads the class definition. The class includes those who "are" currently at Guantánamo and those who "will be" there, but does not include those who were there in the past. Mot. 2. This tracks the relief Plaintiffs request, which is prospective and includes no remedies for past violations. ECF No. 1 ¶¶ 76–82.

## C.     The Proposed Class Satisfies the Adequacy Requirement.

Contrary to Defendants' arguments, Opp. 38–40, the Named Plaintiffs adequately represent the class under Rule 23(a)'s requirements because (1) they do not have any "antagonistic or conflicting interests" with putative class members and (2) they both "appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D.*, 925 F.3d at 1312 (internal citation omitted). Defendants do not argue that the Named Plaintiffs have any conflicts with

putative class members, and their arguments against the Named Plaintiffs' ability to prosecute class interests are meritless.[13]

Defendants assert that the Named Plaintiffs cannot adequately represent the class because neither of them "fully comprehend" their role and responsibilities as class representatives. Opp. 38. Defendants misunderstand the adequacy requirement. A class representative is "not require[d]" to "have legal knowledge or a complete understanding of [their] role in class litigation." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210 (D.D.C. 2018). A plaintiff must only have a "rudimentary knowledge of her role as a class representative" and a "commit[ment] to serving in that role." *Id.* (quoting Newberg § 3:67). Typically, a plaintiff fails to meet this requirement only in "flagrant cases," where the plaintiff "display[s] an alarming unfamiliarity with the suit" or "an unwillingness to learn about the facts underlying their claims." *Id.* at 210–11.

Mr. Luna Gutierrez and Mr. Lopez Ocon readily meet this requirement. Both have expressed their desire to serve as class representatives and demonstrated a sufficient understanding of their roles. Luna Gutierrez Decl. ¶ 11, Lopez Ocon Decl. ¶ 12; Suppl. Decl. of Yamil Luna Gutierrez, ¶¶ 5–11 (Aug. 7, 2025); Suppl. Decl. of Rafael Angel Lopez Ocon, ¶¶ 10–16 (Aug. 6, 2025). Their declarations reveal that they understand the class of people they will represent, the possible duration of their representation, their responsibility to represent all class members' interests, and their continuing duty to provide counsel with any needed information, documents, and testimony. Luna Gutierrez Suppl. Decl. ¶¶ 6–11; Lopez Ocon Suppl. Decl. ¶¶ 11–16. They have also both displayed an awareness of the facts in this case regarding the conditions at

---

[13] Defendants argue that 8 U.S.C. § 1252(e)(1)(A) bars injunctive relief as to putative class members with expedited removal orders, and that this may result in "divisions among the class," which "raise adequacy concerns under Rule 23(a)(4)." Opp. 33. Defendants do not explain what these "concerns" entail. *Id.* Nonetheless, Defendants' argument fails because, as discussed *supra at* 16–18, § 1252(e)(1)(A) is not applicable to Plaintiffs' claims.

Guantánamo, including the lack of cleanliness and inability to maintain basic hygiene, lack of sufficient food or outdoor access, and limited ability to speak with friends and family. Luna Gutierrez Decl. ¶¶ 4–11; Lopez Ocon Decl. ¶¶ 6–10.[14]

Defendants also argue that the Named Plaintiffs' removal from Guantánamo to Nicaragua "raises adequacy issues." Opp. 38. As Defendants recognize, "plaintiffs with a moot claim may adequately represent a class." *Id.* (quoting *J.D.*, 925 F.3d at 1313); *see also Geraghty*, 445 U.S. at 404). "Though the mootness of named plaintiffs' claims can raise 'adequacy concerns,' the very existence of the inherently-transitory exception disproves any suggestion that the mootness of a plaintiff's claims necessarily demonstrates her inadequacy as a representative." *J.D.*, 925 F.3d at 1313 (internal citation omitted). Even after the Named Plaintiffs were removed from Guantánamo, they have actively participated in this litigation, demonstrating both their continued interest and ability to represent the class. *See* Luna Gutierrez Suppl. Decl.; Lopez Ocon Suppl. Decl. Thus, the Named Plaintiffs remain adequate class representatives despite their removal. *See DL v. D.C.*, 860 F.3d 713, 726 (D.C. Cir. 2017) (affirming finding that named plaintiffs were able to "adequately press the class's interests" even though their claims were moot).

## III.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b).

Defendants repeat their jurisdictional arguments and contend that class certification fails to satisfy Rule 23(b)(2) because the Court has no power to issue injunctive relief applicable to the

---

[14] Defendants rely on *Amchem Products, Inc. v. Windsor*, in which the Supreme Court found that the named plaintiffs were inadequate representatives of a mega-class of people exposed to asbestos because their diverse medical conditions resulted in conflicting interests—some in the class were experiencing critical injuries and sought immediate payment through the lawsuit, while others sought only an inflation-protected fund to provide remedy for future exposure-related injuries. 521 U.S. 591, 595 (1997). But here, the Named Plaintiffs are not seeking any damages and have no such conflicting interests with other class members.

whole proposed class under either 8 U.S.C. §1252(e)(1)(A) or § 1252(f)(1). Opp. 40–41. As demonstrated above, neither of those provisions apply here. *Supra* at 8–10, 16–18.[15]

Defendants do not otherwise contest that their practice of holding immigration detainees at Guantánamo is applicable to all class members. *See* Opp. 10–11. Nor could they, as that is inherent in the class definition. Thus, the proposed class satisfies Rule 23(b)(2) because at a minimum, either a declaratory judgment or vacatur would provide relief that would benefit the class as a whole. *See supra* at 8–10; *see also O.A.*, 404 F. Supp. 3d at 157–58 (finding Rule 23(b)(2) satisfied where the plaintiffs sought a declaration that an administrative rule was unlawful and vacatur of the rule); *Crowe v. Fed. Bureau of Prisons*, No. 24-CV-3582 (APM), 2025 WL 1635392, at *20 & n.7 (D.D.C. June 9, 2025) (finding Rule 23(b)(2) satisfied where proposed class sought vacatur of rule generally applicable to the class).

## IV. CLASS CERTIFICATION IS APPROPRIATE FOR PLAINTIFFS' HABEAS CLAIMS.

The government argues against the availability of class habeas, a question the Court need not reach because Plaintiffs' claims are reviewable under the APA and in equity. Other than in the Alien Enemies Act context, where judicial review is generally limited to habeas, the D.C. Circuit and multiple courts in this District have consistently allowed noncitizens to bring claims related to their detention under the APA and equity as long as success on the claims does not result in

---

[15] The two additional cases Defendants cite only highlight how Plaintiffs are not subject to § 1252(e)(1)(A). Opp. 32. Unlike here, the court in both of those cases applied § 1252(e) where plaintiffs directly challenged their expedited removal orders and sought relief from those orders. *See Vijender v. Wolf*, No. 19-CV-3337 (APM), 2020 WL 1935556, at *4 (D.D.C. Apr. 22, 2020) (finding that § 1252(e) barred injunctive relief from plaintiffs' expedited removal orders based on a challenge to an instructional document that asylum officers used in determining plaintiffs did not qualify for asylum); *I.M. v. U.S. Customs & Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023) (affirming dismissal of challenge to plaintiff's expedited removal order under § 1252(e) where plaintiff could not bring a habeas petition).

immediate release. *See, e.g.*, *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022) (APA action challenging expulsions under Title 42); *J.D.*, 925 F.3d at 1300 (challenge to access to reproductive care in detention); *Damus*, 313 F. Supp. 3d at 323 (APA challenge to compliance with parole directive); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 126–27 (D.D.C. 2018) (APA challenge to deterrence through detention policy); *R.I.L-R*, 80 F. Supp. 3d at 186 (same). Thus, the Court need not rely on habeas jurisdiction to certify the class.

In any event, all of the circuit courts to address the issue, including the D.C. Circuit, have found that habeas petitioners can litigate common claims through a class action or similar procedure available at equity. *See, e.g.*, *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976).

Defendants overlook this body of caselaw recognizing the propriety of habeas class actions where, as here, petitioners present identical legal claims and seek the same relief against a government policy that applies to them all. *See, e.g.*, *LoBue*, 82 F.3d at 1085 (rejecting intervenor-appellant's argument that the petitioner "could not have maintained a class action . . . nor sought class-wide relief in those proceedings," because "courts have in fact developed such equivalents" of class actions in habeas); *Sero*, 506 F.2d at 1125 (the Supreme Court "confirms the power of the judiciary, under the All Writs Act, . . . to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage'" (citing *Harris v. Nelson*, 394 U.S. 286 (1960)); *Bijeol*, 513 F.2d at 968 (agreeing with *Sero* that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action" like the one at issue); *Williams*, 481 F.2d at 361 (similar); *Mead*, 464

F.2d at 1112–13 (similar); *Napier*, 542 F.2d at 827 & n.5 (similar); *Streicher v. Prescott*, 103 F.R.D. 559, 561 (D.D.C. 1984) (similar).

The government relies on the *dissents* in *A.A.R.P. v. Trump*, and *J.G.G. v. Trump*, Opp. 43, but omits the Supreme Court's decisions to stay removals of the putative district-wide habeas class in *A.A.R.P. See* 145 S. Ct. 1034 (2025) (per curiam); 145 S. Ct. 1364, 1368 (2025) (per curiam). That result would not have been possible if the government's argument was correct. Further, the Supreme Court has also considered several class habeas actions on the merits. *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 532–33 (2021) (Virginia-wide class of detainees); *Nielsen v. Preap*, 586 U.S. 392, 400–01 (2019) (California-wide and Western District of Washington-wide classes); *Jennings*, 583 U.S. at 290 (Central District of California-wide class).[16]

Finally, the circumstances of this case make class treatment especially appropriate— indeed, necessary. Members of the proposed class are in detention on a military base over access to which the government has complete control—in fact, there is ongoing litigation regarding the inadequate access to counsel for detainees at Guantánamo, *Suazo-Muller v. Noem*, No. 1:25-cv-00418 (D.D.C.)—and they generally lack sufficient resources, English proficiency, and familiarity with the U.S. legal system to bring their own cases challenging their confinement. Moreover, the government has complete control over when they transfer individuals to and from Guantánamo, thereby giving it the ability to moot out any individual challenge before a court can ever issue a decision on the legality of detention there. Because class treatment is necessary to allow for judicial

---

[16] Although the government cites the dissent in the D.C. Circuit's decision in *J.G.G.* questioning the availability of class, the relevant procedural issue at the Supreme Court was whether this District was the proper venue for challenges to removal under the Alien Enemies Act where class members were not detained in this District. 145 S. Ct. 1003, 1006 (2025). But it is well established, and the government does not contest, that this District does have jurisdiction over habeas petitions filed by individuals detained on Guantánamo. *See Rasul v. Bush*, 542 U.S. 466, 481 (2004).

review, this too weighs in favor of permitting a class to litigate the threshold legal questions here, under either Rule 23 or in equity. *See, e.g.*, *U.S. ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals, such as many of the class members here, who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf."); *Sero*, 506 F.2d at 1126 (similar); Newberg § 4:35 (discussing "critical safeguards for class members that certification alone can provide").

## CONCLUSION

The Court should certify the proposed class under Rule 23(a) and 23(b)(2), appoint the Named Plaintiffs as Class Representatives, and appoint the undersigned as Class Counsel.

Dated: August 8, 2025

Respectfully submitted,

/s/ *Lee Gelernt*

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo (D.D.C. Bar No. CA00219)
Kyle Virgien
Noelle Smith
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (646) 946-7453
dalagesan@refugeerights.org
kgrano@refugeerights.org

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Judy Rabinovitz
Noor Zafar
Omar C. Jadwat
Natalie Behr*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
IRP_NBehr@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*Pro bono representation certificates forthcoming*

25