UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAMIL LUNA GUTIERREZ, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>KRISTI NOEM, Secretary of the U.S.<br>Department of Homeland Security, et al.,<br><br>   Defendants. | Civil Action No. 1:25-cv-01766-SLS |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 1

    I.      Plaintiffs' Claims are not Justiciable ...................................................... 1

           A.      Named Plaintiffs' claims are moot as they are no longer in U.S. custody . 1

           B.      Named Plaintiffs lack standing insofar as they raise allegations they have not actually suffered or will imminently suffer, including against the policies at the MOC even though they were not detained at that facility ... 6

    II.     The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention ...... 7

    III.    Plaintiffs Fail to State a Claim Under the APA ................................................... 10

           A.      There has been no final agency action ...................................................... 11

           B.      Transfer decisions are committed to agency discretion by law ............... 15

           C.      The DHS Secretary has statutory authority to detain aliens at NSGB ...... 17

           D.      Defendants did not act arbitrarily or capriciously in implementing the Presidential Memorandum ........................................................................ 19

    IV.    Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim ................... 20

           A.      Plaintiffs Lack the Qualifying Liberty Interest Necessary to Challenge Their Detention at NSGB Under the Due Process Clause ....................... 20

           B.      Plaintiffs Fail to Allege Facts Sufficient to State a Due Process Claim Arising from Their Conditions of Detention ........................................... 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Abdullah v. Trump*,
No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) ........................................... 2

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ........................................ 23

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016) ................................................................................ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 4, 14, 20

*Bagguley v. Bush*,
953 F.2d 660 (D.C. Cir. 1991) ........................................................................... 20, 21

*Bell v. Wolfish*,
441 U.S. 520 (1979) ............................................................................. 21, 22, 23, 24

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................................................... 14

*Block v. Rutherford*,
468 U.S. 576 (1984) ............................................................................................... 21

*Boumediene v. Bush*,
553 U.S. 723 (2008) ............................................................................................... 18

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ............................................................................................... 11

*Brennan v. City of N.Y.*,
No. 19-CV-02054, 2023 WL 5672590 (E.D.N.Y. Sep. 1, 2023) ............................................. 6, 7

*Briscoe v. Costco Wholesale Corp.*,
61 F. Supp. 3d 78 (D.D.C. 2014) ............................................................................... 2

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ......................................................................................... 6, 25

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) ............................................................................... 12

*Comm. of Cent. Am. Refugees v. INS*,
795 F.2d 1434 (9th Cir. 1986) ................................................................................. 16

*Dep't of Com. v. New York,*
588 U.S. 752 (2019)......................................................................................... 16

*Detroit Int'l Bridge Co. v. Gov't of Canada,*
189 F. Supp. 3d 85 (D.D.C. 2016) .................................................................... 11

*Drs. for Am. v. Off. of Pers. Mgmt.,*
No. CV 25-322, 2025 WL 1836009 (D.D.C. July 3, 2025)............................... 12

*Franklin v. Massachusetts,*
505 U.S. 788 (1992)......................................................................................... 11

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
460 F.3d 13 (D.C. Cir. 2006) ........................................................................... 12

*Gandaril las-Zambrana v. Bd. Immigr. Appeals,*
 44 F.3d 1251 (4th Cir. 1995) ............................................................................. 8

*Geo Grp., Inc. v. Newsom,*
50 F.4th 745 (9th Cir. 2022) ............................................................................ 15

*Givens v. Bowser,*
111 F.4th 117 (D.C. Cir. 2024).......................................................................... 2

*Gul v. Obama,*
652 F.3d 12 (D.C. Cir. 2011)............................................................................. 2

*Helling v. McKinney,*
509 U.S. 25 (1993)........................................................................................... 24

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
284 F. Supp. 2d 15 (D.D.C. 2003) ................................................................. 6, 7

*J.D. v. Azar,*
925 F.3d 1291 (D.C. Cir. 2019) .................................................................. 2, 3, 5

*Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't,*
319 F. Supp. 3d 491 (D.D.C. 2018) ................................................................. 22

*Jama v. Immigr. & Customs Enf't,*
543 U.S. 335 (2005)......................................................................................... 12

*Jane v. Rodriguez,*
No. CV 20-5922 (ES), 2020 WL 10140953 (D.N.J. May 22, 2020).................. 16

*Jennings v. Rodriguez,*
583 U.S. 281 (2018)........................................................................................... 9

*Jones v. Blanas,*
393 F.3d 918 (9th Cir. 2004) ................................................................................ 23

*Kang v. DHS,*
No. 21-2944 (RJL), 2022 WL4446385 (D.D.C. Sep. 23, 2022) ............................... 5

*Kansas v. Crane,*
534 U.S. 407 (2002) ........................................................................................... 22

*Kareem v. Haspel,*
986 F.3d 859 (2021) ............................................................................................. 6

*Kerry v. Din,*
576 U.S. 86 (2015) ............................................................................................. 21

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ............................................................................................. 8

*Lewis v. Casey,*
518 U.S. 343 (1996) ............................................................................................. 7

*Los Angeles v. Lyons,*
461 U.S. 95 (1983) ........................................................................................ 3, 4, 7

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ........................................................................................... 24

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) ........................................................................................... 13

*Meina Xie v. Kerry,*
780 F.3d 405 (D.C. Cir. 2015) ............................................................................. 13

*Mississippi v. Johnson,*
71 U.S. (4 Wall.) 475 (1867) ............................................................................... 11

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm,*
463 U.S. 29 (1983) ............................................................................................. 19

*Nat'l Black Media Coal. v. FCC,*
589 F.2d 578 (1978) ........................................................................................... 19

*Noem v. Perdomo,*
--- S.Ct. ----, 2025 WL 2585637 (U.S. Sept. 8, 2025) ............................................ 4

*Norton v. S. Utah Wilderness All.,*
542 U.S. 55 (2004) ............................................................................................. 12

*NRDC, Inc. v. U.S. Dep't of State*,
658 F. Supp. 2d 105 (D.D.C. 2009) .................................................................. 11

*Parm v. Nat'l Bank of Cal., N.A.*,
242 F. Supp. 3d 1321 (N.D. Ga. 2017) ...................................................... 2, 3, 7

*Physicians for Soc. Resp. v. Wheeler*,
956 F.3d 634 (D.C. Cir. 2020) ............................................................................ 16

*Plomis v. Lujan*,
No. CIV 87-2893, 1990 WL 108955 (July 17, 1990) ....................................... 19

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................. 10, 22

*Ramirez v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 7 (D.D.C. 2018) ............................................................... 13, 14

*Reno v. Flores*,
507 U.S. 292 (1993) ............................................................................................. 21

*Sharp v. Capitol City Brewing Co., LLC*,
680 F. Supp. 2d 51 (D.D.C. 2010) ....................................................................... 6

*Sinclair v. Att'y Gen. of U.S.*,
198 F. App'x 218 (3d Cir. 2006) ......................................................................... 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................... 7

*Thorpe v. District of Columbia*,
303 F.R.D. 120 (D.D.C. 2014) .............................................................................. 7

*U.S. Dep't of the Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018) .................................................................... 10

*V.I. Hous. Fin. Auth. v. FEMA*,
No. CIV 24-5122, 2025 WL 2371506 (D.C. Cir. Aug. 15, 2025) ................... 11

*Van Dinh v. Reno*,
197 F.3d 427 (10th Cir. 1999) ....................................................................... 8, 15

*Vetcher v. Sessions*,
316 F. Supp. 3d 70 (D.D.C. 2018) ...................................................................... 10

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
768 F. Supp. 2d 117 (D.D.C. 2011) .................................................................... 24

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................................................. 3

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ............................................................................................... 22

*Webster v. Doe*,
486 U.S. 592 (1988) ............................................................................................... 17

*Welborn v. Internal Revenue Serv.*,
218 F. Supp. 3d 64 (D.D.C. 2016) ......................................................................... 25

*Winterhalter v. U.S. Dep't of Justice*,
No. CIV 23-0547 (UNA), 2023 WL 2384449 (D.D.C. Mar. 6, 2023) ........................ 10

**<u>Statutes</u>**

5 U.S.C. § 701(a)(2) ............................................................................................... 15

5 U.S.C. § 702 ................................................................................................... 11, 16

5 U.S.C. § 704 ....................................................................................................... 10

8 U.S.C § 1103(a) ............................................................................................... 16, 18

8 U.S.C. § 1101(a)(38) ........................................................................................... 18

8 U.S.C. § 1103(a)(3) ......................................................................................... 17, 18

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................................ 14

8 U.S.C. § 1225(b)(iii)(IV) ..................................................................................... 18

8 U.S.C. § 1231 ...................................................................................................... 14

8 U.S.C. § 1231(a)(1)(A) ........................................................................................ 14

8 U.S.C. § 1231(a)(1)(B)(i) ..................................................................................... 14

8 U.S.C. § 1231(a)(2), ............................................................................................ 18

8 U.S.C. § 1231(a)(6) ......................................................................................... 17, 18

8 U.S.C. § 1231(e)(3)(A) ........................................................................................ 17

8 U.S.C. § 1231(g) ........................................................................................... passim

(b8 U.S.C. § 1231(g)(1) .......................................................................................... 15

8 U.S.C. § 1252(a)(2)(B)(ii) .................................................................................. 8, 15

8 U.S.C. § 1252(a)(5) .................................................................................................. 14

8 U.S.C. § 1252(b)(9) ............................................................................................ 9, 15

8 U.S.C. § 1252(g) ............................................................................................ 8, 9, 15

Plaintiffs' Opposition, ECF No. 33 (Opp'n), fails to overcome Defendants' bases for dismissal. While Plaintiffs attempt to relitigate their motion for class certification to avoid procedural default, their claims are moot and they lack standing insofar as they have not suffered nor will personally suffer the wide range of injuries described in their Complaint, including policies and practices at the Migrant Operations Center (MOC), despite only being detained at Camp VI. Further, the Immigration and Nationality Act (INA) precludes judicial review of the government's exercise of discretion to transfer removable aliens to another U.S. detention facility. Even if this Court had jurisdiction, Plaintiffs fail to state a claim under the Administrative Procedure Act (APA), as they challenge presidential orders, non-final actions, and matters subject to the Secretary's discretion. These claims nevertheless fail because: (1) the Secretary has statutory authority to detain removable aliens in U.S. government facilities and authority pursuant to the President's Memorandum, *Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity* (Jan. 29, 2025) (Memorandum); and (2) the government has strong rationales for its decisions. Plaintiffs also fail to state a due process claim as they do not identify a qualifying liberty interest that has not been satisfied and fail to allege facts to disprove the legitimate government interest as to conditions at NSGB. Accordingly, the Court should dismiss this case.

## ARGUMENT

### I.    Plaintiffs' Claims are not Justiciable.

Plaintiffs' claims are not justiciable because (1) named Plaintiffs have been removed from the United States and their claims are now moot; and (2) to the extent their claims are not moot, Plaintiffs lack standing to challenge policies they themselves have not suffered and will not suffer.

#### A.  Named Plaintiffs' claims are moot as they are no longer in U.S. custody.

Having been removed to their respective designated countries of removal and no longer being in U.S. custody, Plaintiffs have no redressable injury, rendering their claims which at most

sound in habeas—moot. *Gul v. Obama*, 652 F.3d 12, 15 (D.C. Cir. 2011); *Abdullah v. Trump*, No. 25-5002, 2025 WL 914093, at *1 (D.C. Cir. Mar. 24, 2025).[1]

As an initial matter, Plaintiffs do not dispute Defendants' arguments that their individual claims do not satisfy the collateral consequences or capable-of-repetition-but-evading-review exceptions to mootness. *Compare* Mot. at 7-9 *with* Opp'n at 9-13, 13 n.4 (noting Plaintiffs do not maintain their suit under the collateral consequences doctrine). Both arguments are thus conceded. *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 83 n.2 (D.D.C. 2014). Plaintiffs instead use their opposition to relitigate their arguments in support of class certification, claiming mootness should be considered for unnamed, putative class members before a class has been certified. Opp'n at 10. As a general rule, at least one named plaintiff must keep his individual dispute live for every claim until class certification or else the class action based on those claims becomes moot. *See J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019). Notwithstanding Plaintiffs' inability to name a remaining detainee at NSGB and even considering the potential class, Plaintiffs' claims are moot, without an exception for their claims to survive dismissal. *See* Defs.' Opp'n to Class Certification (ECF No. 28) (Class Opp'n) at 8-12 (arguing how Plaintiffs claims fare no better in the class certification context and discussing the deficiencies that prevent an inherently transitory finding).

*First*, Plaintiffs allege their claims satisfy the "inherently transitory" exception to mootness. Opp'n at 10-12 (citing *J.D.*, 925 F.3d at 1311). But the record must assure the Court that "some class members will retain a live claim through the proceedings." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024) (quoting *J.D.*, 925 F.3d at 1307). Here, the record fails to provide

---

[1] Plaintiffs challenge Defendants' reliance on *Gul* and *Abdullah* as they did not involve a class complaint. Opp'n at 10 n.2. However, absent class certification (which is inappropriate for reasons Defendants addressed separately in their Opposition, ECF No. 42), "the Court considers only Plaintiff's individual allegations . . . , not the generalized allegations of the putative class members." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017).

such assurances as named Plaintiffs no longer retain live claims—neither are at NSGB and have no reasonable expectation of being there again, as Plaintiffs acknowledged, Opp'n 10-11.

Plaintiffs maintain that their individual claims ended before the Court was able to certify the class. That is incorrect, as evidenced by the litigation history—which involves three separate cases filed by the same team of attorneys raising overlapping claims—which clearly demonstrates there has been time to adjudicate a request for class relief with plaintiffs whose claims are not moot. *See J.D.*, 925 F.3d at 1310 ("[R]elation-back doctrine requires us to analyze the 'practicalities and prudential considerations' of the class action under review."). The initial claims regarding detention and conditions at NSGB were filed on February 12, 2025, nearly six months ago, and heard preliminarily on the merits prior to mootness of those individual plaintiffs' claims in March 2025. *See* Class Opp'n 9. A second case raising claims that overlap with the claims here was filed on March 1, 2025, and voluntarily dismissed in late May 2025. *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (CJN) (D.D.C. May 22, 2025), ECF No. 34. In light of this litigation, there has been adequate time to consider claims related to detention and conditions of confinement at NSGB prior to mootness and, similarly, there has been a "reasonable amount of time to decide class certification." *J.D.*, 925 F.3d at 1311. Plaintiffs, represented by the same counsel in the prior litigation, ignore these "prudential considerations," *id.* at 1310, instead considering only the named Plaintiffs' short stays, Opp'n at 11 (noting Plaintiffs were "detained for 37 and 13 days").[2]

---

[2] Plaintiffs dismiss *Los Angeles v. Lyons*, 461 U.S. 95, 97 (1983) (requiring real and immediate injury) as irrelevant, because standing is assessed when the suit commences, Opp'n at 13 n.4. Not only are "standing and mootness inquiries . . . closely related[,]" *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975), but Plaintiffs attempt to rely on named Plaintiffs' standing at the time suit was filed while also relying on unnamed, putative class members' hypothetical claims to demonstrate their claims are not moot. Plaintiffs cannot have it both ways and, absent class certification, this Court may only consider "Plaintiff's individual allegations" and "not the generalized allegations of the putative class members" in deciding Defendants' Motion. *Parm*, 242 F. Supp. 3d at 1342.

Plaintiffs also contend that "some class members will retain a live claim at every stage of litigation" because of the government's continued transfer of immigration detainees to NSGB and alleged punitive conditions at NSGB facilities. Opp'n at 12. The record shows that conditions of confinement are changing over time as the NSGB base is built up, and the conditions Plaintiffs allege no longer exist given ongoing efforts to establish policies and practices to ensure proper detention at NSGB. *See, e.g.*, Hr'g Tr. at 54-59, 71 (noting that "the parties ha[d] narrowed the issues significantly" based on implemented changes since the start of the mission in January 2025). Plaintiffs do not dispute the government's ongoing, implemented changes to ensure proper detention conditions at NSGB, instead maintaining, without any elaboration, that the government is "subject[ing] them to *ultra vires* and punitive detention there." Opp'n at 12. However, "[t]hreadbare recitals of the elements of [an exception to mootness], supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is strong evidence of the resolved concerns regarding detention conditions at NSGB. *See* Notice of Voluntary Dismissal, *Espinoza Escalona v. Noem*, No. 1:25-cv-604 (D.D.C. May 22, 2025), ECF No. 34. Same counsel ultimately refiled with new Plaintiffs but still fail to overcome the fact that proper conditions are being provided to immigration detainees during their detention at NSGB. *See* Mot. at 27-30; *see also* Class Opp'n at 10-11 (discussing how current conditions preclude a finding of ongoing due process violations). And this Court should not infer injuries and claims to other putative class members from Plaintiffs' self-serving, imprecise declarations that fail to demonstrate due process violations. Mot. 29-30 (discussing how Plaintiffs' declarations include

---

In fact, in his concurrence of the Supreme Court's recent grant of an emergency stay in the Los Angeles immigration arrests litigation, Justice Kavanaugh reinforced the Supreme Court's prior ruling in *Lyons*, recognizing that "[w]hat matters is the "*reality* of the threat of repeated injury," as opposed to subjective fear of recurrence. *Noem v. Perdomo*, --- S.Ct. ----, 2025 WL 2585637, at * 2 (U.S. Sept. 8, 2025) (Kavanaugh, J., concurring) (citing *Lyons*, 461 U.S. at 107, n.8).

bare recitations of requisite legal elements without specific factual allegations showing worse conditions at NSGB).

Nor can the record assure this Court that a "live controversy" will "always exist throughout the litigation." *J.D.* 925 F.3d at 1311. Plaintiffs do not dispute, nor could they, that NSGB—while periodically used to assist in repatriation of people in the removal process—has not constantly been operating. There have been times—including during the span of other related NSGB immigration detainee litigation where there were "zero aliens with final removal orders housed at [NSGB]" Hr'g Tr. at 70—when there is no live controversy. *See also* ECF No. 28-3, Declaration of Francisco Madrigal ("Madrigal Decl.") ¶ 4. That precludes class certification under the relation back analysis of *J.D.* 925 F.3d at 1312 (finding the second test was met only because the agency was always in custody of putative class member pregnant minors).

*Second*, Plaintiffs contend the "picking off" exception to mootness applies. Opp'n at 11. As an initial matter, Plaintiffs acknowledge that the D.C. Circuit has not recognized this exception. Opp'n at 13 n.3; *see Kang v. DHS*, No. 21-2944 (RJL), 2022 WL 4446385, at *5 (D.D.C. Sep. 23, 2022). But even if this exception were recognized, Plaintiffs cannot establish that Defendants have picked off named Plaintiffs by "strategically mooting named plaintiffs claims in an attempt to avoid class action." *Kang*, 2022 WL 4446385, at *5 (cleaned up). Plaintiffs merely point to the government's removal of named Plaintiffs "after they filed the complaint and sought class certification[.]" Opp'n at 13. But that is precisely the point of removal operations. Named Plaintiffs had final removal orders and were staged at NSGB pending departure to their country of removal. While Plaintiffs try to impute malicious intent in carrying out final removal orders, they do not show any evidence in support of such presumptive conclusion. *Kang*, 2022 WL 4446385, at *5 ("Other than this bare allegation that defendants picked-off the named plaintiffs, plaintiffs have

offered no evidence or support for their position," thus failing to show the exception applies.).

Accordingly, both removed named Plaintiffs' claims are moot, Plaintiffs fail to demonstrate an applicable mootness exception, and their Complaint should be dismissed.

### B. Named Plaintiffs lack standing insofar as they raise allegations they have not actually suffered or will imminently suffer, including against the policies at the MOC even though they were not detained at that facility.

As a threshold matter, Plaintiffs contend that standing is only measured at "the time a suit commences," Opp'n at 13 (internal citation and quotation marks omitted). That is incorrect. "Because standing is a threshold jurisdictional requirement," the D.C. Circuit allows for standing to "be questioned at any time during the litigation." *Kareem v. Haspel*, 986 F.3d 859, 865 (2021).

Plaintiffs do not address or respond to Defendants' dispositive argument—and thus concede, *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)—that named Plaintiffs lack standing insofar as they challenge injuries they themselves have not experienced, and given their removal, will not experience in the future.[3] *See Sharp v. Capitol City Brewing Co., LLC*, 680 F. Supp. 2d 51, 57 (D.D.C. 2010) (requiring actual or imminent injury and disallowing claims on behalf of others). While Plaintiffs attempt to rehash their class certification arguments by misconstruing Defendants' argument as one against typicality, Opp'n at 15, as relevant here, Plaintiffs lack standing to challenge alleged violations caused by policies and practices they themselves did not endure or have any likelihood of facing in the future.[4]

---

[3] As Plaintiffs acknowledge, Opp'n at 42, they are no longer at NSGB; thus, any claim that they face an imminent injury from detention conditions there defies logic—and thus cannot support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (requiring injury be "certainly impending" or at substantial risk of occurring). And nowhere in their briefing have they claimed to possess third-party standing to sue on behalf of any other detainee. *See generally* Opp'n.

[4] Plaintiffs challenge Defendants' reliance on *Brennan v. City of N.Y.*, No. 19-CV-02054, 2023 WL 5672590 (E.D.N.Y. Sep. 1, 2023), as "both Named Plaintiffs were detained at [NSGB] at the time they filed the complaint." Opp'n at 15. But Plaintiffs' point is inapposite as both facilities, albeit located on the same base, have distinct policies and practices. ECF No. 42-4, Memorandum

In particular, Plaintiffs do not dispute Defendants' dispositive argument that Plaintiffs have not alleged suffering any of the following allegations: (1) invasive searches, (2) physical harm by guards, (3) solitary confinement, or (4) time in the restraint chair. *Compare* Compl. ¶¶ 46-52 *with* Gutierrez Decl. and Lopez-Ocon Decl. The inapplicability of these conditions—and lack of standing to challenge them—is thus conceded. *Hopkins*, 284 F. Supp. 2d at 25. But to be sure, claims based upon allegations of injury that have not "affect[ed] the Plaintiff in a personal and individual way" must be dismissed. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). And because they are no longer at NSGB, the named Plaintiffs will not, now or in the future, suffer these unsupported allegations of speculative injury. *See Lyons*, 461 U.S. at 106. Although named Plaintiffs make generalized statements about conditions that they allegedly heard about from other detainees, *see, e.g.*, Lopez-Ocon Decl. ¶ 10, absent class certification, "the Court considers only Plaintiff's individual allegations . . . not the generalized allegations of the putative class members." *Parm*, 242 F. Supp 3. at 1341.[5] Stripped of these improper challenges, Plaintiffs are left only with the bare-bones allegations contained in the named Plaintiffs' declarations which are, for the reasons discussed *infra* Argument IV.B, insufficient to support their Due Process claim challenging conditions at both Camp VI and the MOC.

## II.    The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention.

The Court lacks jurisdiction to grant equitable relief to named Plaintiffs or, should a class be certified, a class. Federal courts' jurisdiction is presumptively limited to "only that power

of Understanding ("MOU"). Contrary to Plaintiffs' reading of *Brennan*, its holding that "Plaintiffs cannot demonstrate standing to enjoin a current ongoing injury" at a facility they were not detained at applies here. 2023 WL 5672590, at *10-11.

[5] Plaintiffs attempt to blur the line between allegations of named Plaintiffs and those made on behalf of the putative class. Plaintiffs rely exclusively on *Lewis v. Casey*, 518 U.S. 343 (1996) and *Thorpe v. District of Columbia*, 303 F.R.D. 120 (D.D.C. 2014), which deal with sufficiency of claims made on behalf of a *certified* class and thus have no bearing for this *putative* class action.

authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiffs do not overcome Defendants' cited jurisdictional bars.

*First*, regardless of Plaintiffs' framing, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction, including habeas corpus jurisdiction, to review claims arising from any decision or action to "execute removal orders." *See* Mot. at 11-12. Plaintiffs acknowledge this limitation but claim anyways that courts have and may consider where a person is detained. Opp'n at 16. However, Plaintiffs do not cite a single case where a court has reviewed the Secretary's discretionary authority to transfer a detainee to an appropriate place of detention as part of executing that detainee's removal order which, by definition, constitutes an unreviewable "action" taken to execute an alien's final removal order. *See infra* Argument III.B; Mot. at. 16-18.

*Second*, for the reasons stated below, *infra* Argument III.B, Plaintiffs fail to overcome the fact the Secretary's discretionary decision to transfer detainees to the NSGB detention facility is discretionary, and thus unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii). The Executive's authority under § 1231(g) to decide the location of detention for individuals detained pending removal is inherently discretionary because DHS "necessarily has the authority to determine the location of detention of an alien in deportation proceedings," including to transfer detainees from one detention site to another. *See Gandarillas-Zambrana v. Bd. Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from [§ 1231(g)'s] language."). Courts have repeatedly recognized the Executive's broad discretion to determine appropriate places of detention pending removal, *see, e.g.*, *Van Dinh*, 197 F.3d at 433, and unlike the cases Plaintiffs cite to in their opposition, the

transfers at issue here are directly correlated to the "execution" of the removal order, as detainees are being staged at NSGB pending imminent departure to their country of removal.

*Third*, just as with § 1252(g), the applicability of § 1252(b)(9) turns on a similar question: whether Plaintiffs' claims challenging their detention pending removal proceedings arise "from any action taken . . . to remove [them] from the United States." *See* 8 U.S.C. § 1252(b)(9). The answer is, again, yes. Plaintiffs' challenge concerns the government's decision to transfer a detainee to another detention facility as part of executing that detainee's removal order. By its terms, transfer determinations—particularly in this case where detainees at NSGB are on the precipice of removal—are actions taken "to remove an alien from the United States." *Id.* To evade this inevitable conclusion, Plaintiffs resort to misconstruing existing case law, such as *Jennings*, as not to "bar challenges to the legality of detention." Opp'n at 18. The portions of *Jennings* cited by Plaintiffs do not reflect a view of § 1252(b)(9) that Defendants have either advocated for or subscribed to. The Supreme Court has rejected an overly-expansive reading of § 1252(b)(9)—that is, where any action even marginally related to removal would fall under § 1252(b)(9) if, but for that action, "the aliens would not be in custody at all." *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). For example, under this expansive reading of § 1252(b)(9), "an alien [] injured when a truck hits the bus transporting aliens to a detention facility" could not sue because this incident could be said to "'aris[e] from' actions taken to remove the alien[]." *See id.* As is obvious from Defendants' Motion, this is not the argument that Defendants are making. Rather, Defendants maintain that Plaintiffs may raise their claims via a petition for review insofar as they challenge the execution of their removal orders. *See* Mot. at 13 (citing 8 U.S.C. § 1252(b)(9)).

**III.**     **Plaintiffs Fail to State a Claim Under the APA.**

If the Court nevertheless entertains Plaintiffs' claims further, which at most sound in habeas and are moot, Plaintiffs fail to state a claim under the APA because they only attempt to challenge presidential orders, non-final actions, and matters subject to the Secretary's discretion.

As a preliminary matter, Plaintiffs claim dismissal is inappropriate at this stage because "Defendants have not even produced the [administrative record]." Opp'n at 32.[6] However, as stated previously, Mot. at 15-16, and as discussed below, Plaintiffs cannot identify a final agency action to support their APA claims, and thus the local rules' administrative record requirement does not apply. Nor is review of an administrative record required, as this case can (and should) be decided based on threshold legal questions presented by Defendants' motion. Mot. at 16 (citing, *inter alia*, *Conn. v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018)).

Plaintiffs further contest (Opp'n at 33) the necessary conclusion that APA review is inappropriate because Plaintiffs' claims, at most, sound in habeas and thus another "adequate remedy" exists such that APA review is unavailable. *See* 5 U.S.C. § 704 (requiring there be "*no other* adequate remedy" (emphasis added)). While courts appear split on whether both APA and habeas relief can "coexist," *compare R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185-86 (D.D.C. 2015) *with Winterhalter v. U.S. Dep't of Justice*, No. CIV 23-0547 (UNA), 2023 WL 2384449, at *1 (D.D.C. Mar. 6, 2023) (citing 5 U.S.C. § 704 and *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 78 (D.D.C. 2018)) (concluding judicial review under the APA is not available where the "demand is . . . cognizable through the writ of habeas corpus"), the D.C. Circuit has maintained that "APA review is not available if . . . a 'special and adequate review procedure' [exists] elsewhere." *V.I.*

---

[6]  If this case is not dismissed on Defendants' Motion, Defendants respectfully request at least 60 days to assemble the administrative record for any remaining claims given the need to coordinate among the various agencies (and sub-components) involved in the use and maintenance of NSGB.

*Hous. Fin. Auth. v. FEMA*, No. CIV 24-5122, 2025 WL 2371506, at *6 (D.C. Cir. Aug. 15, 2025)

(quoting *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988)). Such a legal vehicle for challenging

detention is available in the form of habeas. Accordingly, due to these procedural defects and/or

the substantive defects discussed below, their APA claim fails.

### A.  There has been no final agency action.

Plaintiffs attempt to use the APA to challenge both the substance and the implementation

of the President's Memorandum. *See, e.g.*, Compl. ¶¶ 24, 41, 68; Opp'n at 36. The APA provides

for judicial review only with respect to "agency action." 5 U.S.C. §§ 702, 704. The President,

however, is not an "agency" for purposes of APA review, and his actions are thus not reviewable

under that statute. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("As the APA does

not expressly allow review of the President's actions, we must presume that his actions are not

subject to its requirements."); *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867) ("[T]his

court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.").

Plaintiffs attempt to sidestep this bar by purporting to sue only the agencies tasked with

implementing the Memorandum, but not the President himself. But courts across the country,

including in this district, have held that where an agency acts "solely on behalf of the President"

and exercises "purely presidential prerogatives, such direction constitutes a presidential action

unreviewable under the APA." *See, e.g.*, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp.

3d 85, 99 (D.D.C. 2016) (holding agency action is "unreviewable presidential action because it

involved an exercise of discretionary authority committed to the President by law (*i.e.*, Article II

of the Constitution and [a statute delegating complete Executive control over the approvals of

international bridges])"), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017); *NRDC, Inc. v. U.S. Dep't of State*,

658 F. Supp. 2d 105, 112 (D.D.C. 2009) (finding "Congress intended to exempt from judicial

review presidential discretion [to issue presidential permits], whether exercised by the President himself *or by his delegee*" (emphasis added) (internal citation omitted)).

Nonetheless, even if Plaintiffs' claims did not impermissibly seek review of Presidential actions, they still fail to challenge final agency action reviewable under the APA. This Circuit has "long recognized that the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (alteration in original). "The APA does not permit judicial review of 'broad programmatic attack[s]' that 'seek wholesale improvement' of an agency's work." *Drs. for Am. v. Off. of Pers. Mgmt.*, No. CV 25-322, 2025 WL 1836009, at *16 (D.D.C. July 3, 2025) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Neither does the APA condone challenges of an "on-going program or policy." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001). But that is precisely what Plaintiffs do here.

By alleging that "the government lacks statutory authority to detain them at [NSGB]," Opp'n at 14, Plaintiffs divulge the true target of their APA challenge— the government's general authority to determine the location and detention of aliens pending their removal from the Country. Put differently, by challenging the underlying bases for the government's actions and decisions taken to remove individuals from the United States, Plaintiffs challenge the government's removal decisions at-large. Plaintiffs' attempt to frame their challenge as one relating to a "particular" detention policy is insufficient to transform it into one that is cognizable under the APA.

Indeed, transfer and detention at NSGB is part-and-parcel of the government's ongoing removal decisions, which require constantly evolving determinations affected by foreign relations and consideration of changing political and economic circumstances. Mot. at 15; *see, e.g., Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005). Plaintiffs attempt to downplay Defendants'

- 12 -

argument, asserting the governments' actions are not immune from APA review "just because they may implicate foreign relations and political considerations." Opp'n at 34. However, removal-operation decisions are necessarily "continuing [] and thus constantly changing," and cannot constitute a final agency action for purposes of APA review. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990). Plaintiffs do not advance any argument to the contrary.

Instead, Plaintiffs improperly point to *Ramirez* to argue that their broad attack on the government's removal decisions survives dismissal. Opp'n at 33-34 (citing *Ramirez v. U.S. Immigr. & Customs Enf't*. 310 F. Supp. 3d 7 (D.D.C. 2018)). In *Ramirez*, the court determined that plaintiffs brought a proper APA claim by seeking to compel "an agency to take the discrete and concrete action of considering statutorily specified factors in determining where and how to place them" after having aged out of another agency's custody. 310 F. Supp. 3d at 21. In concluding that those plaintiffs permissibly aggregated similar injuries, rather than bringing an improper programmatic challenge, the court found that plaintiffs brought the same exact challenge that this Circuit found to be cognizable in *Meina Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015). *Ramirez*, 310 F. Supp. 3d at 21. The plaintiff in *Meina Xie*—which, completely unrelated to the issues at play here, concerned a mandamus petition seeking visa processing—"point[ed] to a precise section of [a statutory provision], establishing a specific principle of temporal priority that clearly reins in the agency's discretion" and had argued that the agency had failed to act in accordance with that mandate." *Id.* (alteration in original). But Plaintiffs bring no such challenge in this action.

Unlike *Ramirez* and *Meina Xie*, Plaintiffs here do not assert that the agency failed to take action that is required by a specific statutory provision. Plaintiffs fail to adequately identify any principle or statute that would limit the government's ability to make removal decisions. Nor do they meaningfully allege that the government has failed to act in accordance with any mandate—

if anything, the government is acting consistent with its broad authority over immigration matters. *See, e.g.,* 8 U.S.C. §§ 1231, 1225(b)(1)(B)(iii)(IV); *id.* at § 1252; Mot. at 16-23. In asking the Court to review the government's removal decisions and ongoing policies, Plaintiffs ask the Court to impermissibly review the government's "day-to-day operations." *Lujan*, 497 U.S at 899.

Moreover, Plaintiffs have failed to demonstrate that their detention at NSGB constitutes final agency action under the test set forth in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997): Agency action is final only if (1) the agency action marks "the consummation of the agency's decisionmaking process" and (2) the action is "one by which rights or obligations have been determined, or from which legal consequences flow." *Id.* (internal quotation marks omitted). Plaintiffs do not directly challenge their underlying removal orders—nor could they, except in "a petition for review filed with an appropriate court of appeals." *See* 8 U.S.C. § 1252(a)(5). They acknowledge as much. Opp'n at 19. Instead, they argue that legal consequences flow solely from their detention at NSGB. Opp'n at 34. But operational determinations relating to post-removal detention and transfer fail to mark the "consummation" of the removal process. Nor do any "legal consequences flow" out of them. Instead, any legal consequences are the direct outcome of the removal order itself, as detention under 8 U.S.C. § 1231 (post-removal detention) is predicated on whether the alien has been "ordered removed" in the first place. 8 U.S.C. § 1231(a)(1)(A); *see id.* § 1231(a)(1)(B)(i). Unlike *Ramirez*—where the court determined that the agency's decisions had legal consequences for plaintiffs, who were subjected to "detention in more restrictive settings than" may otherwise have been appropriate, *Ramirez*, 310 F. Supp. 3d at 23—Plaintiffs have failed to allege the same here. They merely proffer a bald legal conclusion that their detention at NSGB is "more restrictive" as compared to other facilities. Compl. ¶ 72. This is not enough. *See Iqbal*, 556 U.S. at 678 (2009) (not requiring courts to accept legal conclusions as true).

- 14 -

The use of a particular detention site—as a function of ongoing policy and evolving removal decisions—as a step towards completing a removal to a designated country is purely an operational choice made entirely in the agency's discretion and attendant to the determinative final removal order. *See* 8 U.S.C. § 1231(g); *supra* Argument III. B. The selection of a particular place of detention is not a final agency action subject to APA review. But even if it were construed as a final agency action, the decision to transfer and detain individual aliens is undisputably committed to agency discretion, and again, unreviewable under the APA.

**B.  Transfer decisions are committed to agency discretion by law.**

Nothing in Plaintiffs' Opposition overcomes the fact that the Executive Branch retains broad, discretionary control over the execution of removal orders—of which, transfer and detention of aliens is a necessary part. Mot. 16–18. As established *supra* Argument II, APA review is precluded under § 701(a)(1) because numerous provisions of § 1252 preclude judicial review of, among other things, actions taken to remove an individual or execute a removal order. 8 U.S.C. §§ 1252(a)(2)(B)(ii), (b)(9), (g); *see also, e.g.,* Mot. at 16-18. But even if judicial review is not precluded under § 701(a)(1), such review is still precluded under § 701(a)(2).

Both the APA and INA make clear that courts cannot review purely discretionary immigration decisions, 5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B)(ii), which includes any decision as to where to detain aliens. After all, Congress vested the Executive with the power to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). That power includes the "discretionary power to transfer aliens from one locale to another, as she deems appropriate." *Van Dinh*, 197 F.3d at 433.

In other words, "[§] 1231(g)(1) gives both 'responsibility' and 'broad discretion' to the Secretary 'to choose the place of detention for deportable aliens.'" *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (internal citation omitted); *Sinclair v. Att'y Gen. of U.S.,* 198 F.

App'x 218, 222 n.3 (3d Cir. 2006) ("[T]he place of detention is left to the discretion of the [Secretary]."). Absent a case-specific constitutional claim, courts will not supervise the Secretary's "daily exercise of [her] discretion to select the place of detention of aliens in [her] custody." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986); *Lujan*, 497 U.S at 899 (disallowing APA review of agency "day-to-day operations"); *see, e.g.*, *Jane v. Rodriguez*, No. CV 20-5922 (ES), 2020 WL 10140953, at *1 (D.N.J. May 22, 2020) (recognizing Congress "vested DHS with the discretion to set the place of detention" which limits judicial review).

Against this backdrop, Plaintiffs' only argument is that the § 702(a)(2) exception is "narrow" and there may be "judicially manageable standards" against which the Court can evaluate the exercise of the government's largely unfettered discretion. Opp'n at 35. This argument fails to change the calculus. As stated above, a chorus of courts across the country have refused jurisdiction where § 1231(g) was involved. It is thus unsurprising that Plaintiffs have not provided any concrete "standard" that can be distilled from the materials they recount. *See* Opp'n at 35-36.

Indeed, § 1231(g) is markedly dissimilar from other statutes and regulations at issue in cases where courts found the existence of judicially manageable standards. For example, the D.C. Circuit found a judicially manageable standard where certain regulations implementing the Federal Advisory Committee Act noted that committee members' terms are at the authority's "sole discretion" but nonetheless outlined certain requirements that the authority "must" fulfill. *See Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020); *see also, e.g., Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019). Unlike *Physicians*, federal law makes clear that the Secretary has broad statutory authority to "arrange for appropriate places of detention for aliens pending removal" at "United States Government facilities," § 1231(g), and to "perform such other acts as [she] deems necessary for carrying out [her] authority" under the INA, 8 U.S.C § 1103(a).

- 16 -

*See, e.g., Webster v. Doe*, 486 U.S. 592, 600 (1988) (finding no manageable standard in statute allowing termination whenever the Director "shall *deem* [it] necessary or advisable").

Thus, to overcome Plaintiffs' assertion of the APA's "strong presumption of reviewability," the Court need only look to the INA's text and decisions across jurisdictions establishing that transfer and detention decisions are committed to agency discretion by law.

### C.    The DHS Secretary has statutory authority to detain aliens at NSGB.

Even if their APA claims were cognizable, Plaintiffs fail to establish that it would be unlawful to detain them at NSGB. Notably, while Plaintiffs acknowledge that an express statement is not always required to demonstrate a statutory provision's extraterritorial reach, they set aside the "context" and "statutory structure" that confirms Congress' intent for the Secretary—in executing removal orders—to exercise extraterritorial detention authority, Opp'n at 21. *See, e.g.*, 8 U.S.C. § 1231(e)(3)(A) (specifying funding source for costs associated with removal), (f) (authorizing caregiver travel for removal trip). Given most removals are escorted, Mot. at 19, removal operations are inherently extraterritorial missions that necessarily require the Secretary to exercise detention authority outside of the United States until she relinquishes control over the detainee. ECF No. 28-4, Transcript of March 14, 2025 TRO Hearing, *Las Americas v. Noem*, No. 1:25-cv-418 (CJN) (D.D.C. Mar. 14, 2025), at 24 (Plaintiffs conceding "[o]bviously the removal statutes apply extraterritorially. That's inherent."). Plaintiffs' contrary arguments simply set aside the reality of how ICE removal operations have operated for decades and must continue to operate. Section 1103(a)(3) operates in tandem with the aforementioned statutory provisions to give the Secretary all necessary authority to conduct removal operations in her preferred manner, including to plan the removal mission and arrange for appropriate staging points to support that mission. If this Court accepts Plaintiffs' rigid theory of detention authority, absurd results would follow, such as the government's broad powers under the INA being held to instantly terminate upon the

detainee's flight leaving U.S. airspace but before ICE relinquishes control. Detainees placed on ICE-operated removal missions remain subject to ICE custody until ICE relinquishes custody.

Moreover, Plaintiffs fail to address *Boumediene v. Bush*, which undercuts their foundational claim that Defendants are unable to detain aliens at NSGB. Mot. at 21-22. There, the Supreme Court made clear that the United States, "by virtue of its *complete jurisdiction* and *control* over [NSGB], maintains *de facto* sovereignty over [it]." *Boumediene*, 553 U.S. 723, 755 (2008) (emphasis added). Plaintiffs nevertheless hang on to their argument that the government lacks detention authority because NSGB is outside of the "United States" for purposes of the INA. Opp'n at 21 (citing 8 U.S.C. § 1101(a)(38)). While Defendants acknowledge this provision, the statutory authority cited in Defendants' Motion—8 U.S.C. §§ 1103(a)(3), 1225(b)(iii)(IV), 1231(a)(2) and (6) and 1231(g)—overcome any presumption against extraterritorial application of the Secretary's detention authority. Mot. at 18-23. Plaintiffs are lawfully in the Secretary's custody as individuals subject to final orders of removal. *See* Compl. ¶¶ 13-22. Sections 1231(a)(2) and (6) and 1225(b)(1)(B)(iii)(IV) authorize the Secretary to detain aliens subject to final removal orders and expedited removal orders, respectively. The Secretary's authority under these provisions begins upon entry of the removal order and necessarily extends until she relinquishes custody of the alien detainee. *See* 8 U.S.C. §§ 1231(a)(2) and (6), 1225(b)(1)(B)(iii)(IV). And this authority affords the Secretary discretion to "arrange for appropriate places of detention for aliens pending removal" at "[U.S.] Government facilities," 8 U.S.C § 1231(g), and allows her to "perform such other acts as [she] deems necessary for carrying out [her] authority" under the INA, *id.* § 1103(a). Together, these provisions confer broad extraterritorial authority for ICE to carry out Congress's removal mandate.

**D.      Defendants did not act arbitrarily or capriciously in implementing the Presidential Memorandum.**

Plaintiffs also fail to state an arbitrary or capricious APA claim. Plaintiffs maintain that Defendants' actions are inconsistent with the President's direction because detainees are being held at Camp VI whom they allege are low-risk. Opp'n at 36. But Plaintiffs' argument incorrectly assumes that Defendants' authority to hold immigration detainees is based on the President's Memorandum or that the Memorandum limits the Secretary's detention authority. Neither is correct. As discussed *supra* Argument III.B, and contrary to Plaintiffs' assertion, the Secretary has broad discretion to administer detention facilities under the INA, independent of the Memorandum which does not purport to limit the Secretary's use of any detention space, including NSGB.

The Supreme Court has held "[w]here the challenged agency action is within the agency's authority and is rationally based on relevant factors, that action must be sustained." *Plomis v. Lujan*, No. CIV 87-2893, 1990 WL 108955, at *2 (July 17, 1990) (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm*, 463 U.S. 29, 42-43 (1983)). In deciding an arbitrary-and-capricious claim, the court "must determine whether the challenged action was based on consideration of the relevant factors and is supported by a reasoned opinion" and must ultimately conclude that the agency's action did not exceed its statutory and constitutional authority." *Nat'l Black Media Coal. v. FCC*, 589 F.2d 578, 581 (1978) (citing, *inter alia*, 5 U.S.C. §§ 706(2) (B), (C)). As discussed here and in Defendants' principal motion, Mot. at 18-23 (discussing the government's statutory authority to detain at NSGB), 23-24 (discussing the reasoned decision and justifications for NSGB detention), Defendants have made that showing.

Not only does the Secretary—in executing removal operations—have wide discretion to detain individuals with final orders of removal, to plan and carry out removal missions, and to select appropriate places of detention, but Plaintiffs have not identified, in their Opposition or

otherwise, any instance in which a court has required the government to justify using a particular detention facility for an individual alien or its removal path. But to the extent this Court continues to entertain Plaintiffs' APA claim, Defendants are using NSGB to maximize available detention resources given ongoing and increasing enforcement efforts, making it desirable to add the capacity already available at NSGB to accomplish the President's priority of completing removals of individuals with final orders of removal. *See* MOU at 1 (detailing the need for additional detention capacity). Utilizing unused detention capacity is a reasoned, rational response to limited resources and would, thus, not be arbitrary or capricious. Plaintiffs' policy-laden disagreements with Defendants' reasons for transferring detainees to NSGB do not warrant relief under the APA.

## IV.    **Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim.**

Plaintiffs maintain they suffered, and will continue to suffer, Fifth Amendment violations, Opp'n at 38-43, but have yet to identify a qualifying liberty interest that has not been satisfied. Plaintiffs maintain they have a general liberty interest in being free from punitive detention conditions, *id.* at 38, but merely being held at NSGB—without a concrete, redressable injury—is insufficient as detention locations are discretionary and not punitive, thus not giving rise to a qualifying liberty interest. 8 U.S.C. § 1231(g); *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991). Even if Plaintiffs identified a qualifying interest, they fail to allege facts sufficient to state a claim as to the specific detention conditions at NSGB. Opp'n at 42-43; *Iqbal*, 556 U.S. at 678.

### A.  **Plaintiffs Lack the Qualifying Liberty Interest Necessary to Challenge Their Detention at NSGB Under the Due Process Clause.**

Plaintiffs concede that "the basis of their constitutional claim is not the location of the facility at which [they] are detained but the *conditions at the facility*, *regardless of where it is located*." Opp'n at 38-39 (emphasis added). Nevertheless, they argue, absent *any* connection

- 20 -

whatsoever to the "conditions at the facility," that detention at NSGB is punitive. Opp'n at 39-41. This argument—as Plaintiffs expressly acknowledged one page prior—is misplaced.

This Court must decide only "whether particular restrictions and conditions accompanying . . . detention amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *see Block v. Rutherford*, 468 U.S. 576, 583 (1984) (requiring challenge to a specific "condition, practice, or policy" occurring at a detention facility); *Aref v. Lynch*, 833 F.3d 242, 252 (D.C. Cir. 2016) (focusing the inquiry on the "nature of the deprivation and its duration"). Plaintiffs therefore must establish a connection between the "particular restrictions [or] conditions" at the facility and the alleged deterrence. *Bell*, 441 U.S. at 538. But Plaintiffs have alleged no facts to support such an inference. Indeed, none of the public statements Plaintiffs' Opposition cites reference any punitive restriction or condition at NSGB. *See* Opp'n at 40 (citing Compl. ¶ 39-43). Rather, the cited statements refer to the mere fact of being detained in a particular location, which, Plaintiffs now admit, is wholly unrelated to their due process challenge. Compl. ¶ 39 ("NSGB 'represents deterrence'"), ¶ 42 ("[Y]ou could end up in [NSGB]."). Likewise, Plaintiffs cite the cost of detaining an alien at NSGB without referencing any punitive restriction or condition. Opp'n at 41.

Thus, as explained in Defendants' motion, Mot. at 16-18, 25-27, absent any connection to actual facts on the ground, the particular location of an alien's detention is a discretionary determination. 8 U.S.C. § 1231(g); *Reno v. Flores*, 507 U.S. 292, 294-95 (1993) (noting the Executive's "broad discretion to determine whether, and on what terms" aliens can be detained or released pending removal). And courts have not recognized a protected liberty interest in detention location given there are no "particularized standards or criteria" to guide the Attorney General's decision. *Bagguley*, 953 F.2d at 662 (D.C. Cir. 1991); *Kerry v. Din,* 576 U.S. 86, 95 (2015) (finding no liberty interest where "tradition den[ies] the specific application of that general interest").

None of Plaintiffs' cited cases identify a liberty interest in the mere fact of civil detention at a particular location. *See* Opp'n at 40-41. In *R.I.L-R. v. Johnson,* the plaintiffs challenged custody determinations under guidance that "required" ICE officials to consider deterrence in making those determinations. 80 F. Supp. 3d 164, 175 (D.D.C. 2015). Likewise, in *Kansas v. Crane*, plaintiff challenged his detention absent any dangerousness finding. 534 U.S. 407, 407-08 (2002). Here, in contrast, each named Plaintiff was lawfully detained prior to arriving at NSGB, a fact that they do not contest. Guterriez Decl. ¶ 4 (explaining that he had been detained prior to being transferred to NSGB); Lopez-Ocon Decl ¶ 5 (same). And, unlike in *R.I.L.R.* and *Crane*, Plaintiffs here do not challenge their continued custody but instead take issue with the agency's discretionary determination of where they were held. Finally, *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't* provides no support for Plaintiffs' position as there, the litigants properly construed their liberty interest under existing Supreme Court precedent. 319 F. Supp. 3d 491, 501 (D.D.C. 2018). This Court must carefully contemplate "expand[ing] the concept of substantive due process" to recognize novel rights, and Plaintiffs proffer no basis for such expansive reading of the Fifth Amendment. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997).

In short, Plaintiffs concede they must establish a connection between "the conditions at the facility" and a punitive purpose. Opp'n at 38-39. But they do not state any facts relating the alleged deterrence to any particular restriction or condition at NSGB; thus, the Court need not consider those sections of the Complaint (¶¶ 39-43) in the due process context. *Bell*, 441 U.S. at 538. And as Plaintiffs' discretionary transfer to NSGB fails to give rise to a qualifying liberty, the Court should dismiss their due process claim insofar it is not inextricably tied to conditions at NSGB.

**B. Plaintiffs Fail to Allege Facts Sufficient to State a Due Process Claim Arising from Their Conditions of Detention.**

Plaintiffs additionally challenge specific detention conditions at the MOC and Camp IV, Opp'n at 42-43, but their claims do not amount to a plausible Fifth Amendment violation.

First, Plaintiffs state, without citation or elaboration, that the "burden-shifting framework" applicable to conditions of confinement claims "does not come into play" because their allegations "do not involve a comparison to prison conditions."[7] Opp'n at 39. But Plaintiffs cannot pick and choose the legal test that fits their narrative. The Supreme Court has clearly delineated the "proper inquiry" applied to civil detainees—"whether [the] conditions amount to punishment"—precisely based on the difference in due process protections between prisoners and civil detainees. *Bell*, 441 U.S. at 536, 536 n.16 (rooting the definition of putative conditions in the distinction between prisoners and civil detainees); *see Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec*., No. CV 22-3118 (CKK), 2023 WL 1438376, at *12 (D.D.C. Feb. 1, 2023) (citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (finding that the burden shifts to the government to show legitimate justification only if plaintiffs show they face conditions equal to or worse than those experienced by prisoners); *see also Suazo-Muller et. al. v. Noem, et. al*, No. 25-cv-418 (D.D.C. June 30, 2025), ECF No. 46 at 16 (Plaintiffs stating that "[t]he parties agree on the framework to consider the validity of a substantive due process challenge to punitive conditions of detention" referring to the comparative, burden-shifting framework). Plaintiffs acknowledge that during their entire time at NSGB, they received three meals a day and personal hygiene items for showers, were permitted recreation time, and were able to make legal and personal calls. Gutierrez Decl. ¶¶ 6-10. The Court should dismiss this claim absent comparative facts that establish these conditions as putative.

---

[7] Yet, Plaintiffs claim just prior that the government is "drawing on the history of [NSGB]" as a prison. Opp'n at 40. They cannot have it both ways.

Second, Plaintiffs attempt to preclude Defendants from establishing the purpose of NSGB conditions. Opp'n at 41. But Defendants may properly cite to documents "incorporated by reference in the complaint," or those "'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). Plaintiffs expressly rely on the MOU in their Complaint, Compl. ¶ 29, and thus Defendants may cite and this Court may consider that document, which explains that operational limitations and security concerns give rise to conditions and reasonable restrictions at the MOC and Camp VI. MOU §§ 4.1.6 ("searches and other necessary actions [are] for the safety of DOD personnel or facility integrity"), 4.1.8 (internal security required for human safety, "facility integrity, or to prevent the detainee from harming self or others, or from causing property damage").

Finally, Plaintiffs assert that conditions at NSGB are excessive in relation to their purpose. Opp'n at 42. But "[t]he effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell*, 441 U.S. at 540 (declining to adopt the "court's idea of how best to operate a detention facility"). As explained above, *supra* n.5, prior to class certification, Plaintiffs may only challenge the conditions that *they* personally faced or will imminently face.[8] *See Lujan*, 504 U.S. at 560 n.1. (holding an injury cannot be "particularized" unless it "affect[s] the plaintiff in a personal and individual way"); *see also* Class Opp'n at 12-13. And Guttierez's allegation that he received less food at

---

[8] *Helling v. McKinney* provides no support for Plaintiffs' attempt to bootstrap non-party allegations onto this lawsuit as there, the plaintiff had breathed in the dangerous environmental smoke *prior* to suing. 509 U.S. 25, 25-26 (1993). That plaintiff already experienced the injury, and the court held that his standing was not contingent on waiting for consequences to manifest in his body. *Id.*

NSGB compared to at other detention facilities is wholly insufficient to support Plaintiffs' entire, wide-ranging conditions-of-detention claim. Critically, neither Plaintiff has alleged being (1) invasively searched, (2) physically harmed by guards, (3) placed in solitary confinement, or (4) put in the restraint chair. *See* Guterriez Decl; Lopez-Ocon Decl. It is likewise anachronistic to claim that Plaintiffs face any "imminent injury" when they are no longer at NSGB and will not be there again. *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 76 (D.D.C. 2016) (rejecting claims based on hypothetical future harm that is not "certainly impending" (citing *Clapper*, 568 U.S. at 409)). Ultimately, Plaintiffs' attempt to raise allegations for which they lack standing must fail, and neither Plaintiff has alleged facts sufficient to state a claim under the Due Process Clause.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action.

//

Dated: September 8, 2025          Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

ANTHONY NICASTRO
*Acting Director*

LESLIE MCKAY
*Assistant Director*

IAN S. LAM
MALCOM I. MCDERMOND
ALEXA PERLMUTTER
*Trial Attorneys*

By: /s/ *Jason K. Zubata*
JASON K. ZUBATA
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: jason.k.zubata@usdoj.gov

*Counsel for Defendants*