UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YAMIL LUNA GUTIERREZ, et al.,

        Plaintiffs,

    v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security, et al.,

        Defendants.

Civil Action No. 1:25-cv-01766-SLS

**DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S
SEPTEMBER 9, 2025 MINUTE ORDER**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

    I.    A Class Action Seeking Vacatur or Habeas Relief Without an Injunction Cannot Be Certified Under Rule 23(b)(2). ........................................................................... 1

        A.    Vacatur fails to support class certification under Rule 23(b)(2). ................ 2

        B.    Habeas similarly fails to support class certification under Rule 23(b)(2). . 5

    II.    8 U.S.C. § 1252(f)(1) Does Not Permit Class Certification Under Rule 23(b)(2) for Plaintiffs' Requested Habeas Relief or Universal Vacatur. ............................. 7

    III.    Certifying Plaintiffs' Claims Under Rule 23(b)(2) Will Result in a Judgment that Precludes Members of the Putative Class from Bringing Individual Actions for Injunctive Relief. ................................................................................................... 12

    IV.    The Court Cannot Certify an Issue Class Under Rule 23(c)(4) to Permit Later Individual Actions for Injunctive Relief Because the Putative Class Does Not Satisfy Rule 23(a) and (b)'s Requirements. .......................................................... 16

    V.    The Government Has Statutory Authority to Detain Removable Aliens at NSGB During Execution of a Removal Order. .............**Error! Bookmark not defined.**19

## TABLE OF AUTHORITIES

<u>Cases</u>

*A. A. R. P. v. Trump*,

605 U.S. 91 (2025) ........................................................................................ 5, 10

*Alli v. Decker*,

650 F.3d 1007 (3d Cir. 2011) ............................................................................ 16

*Anatol Zukerman & Charles Krause Reporting, LLC v. United States Postal Serv.*,

64 F.4th 1354 (D.C. Cir. 2023) .......................................................................... 15

*Apotex, Inc. v. Food & Drug Admin.*,

393 F.3d 210 (D.C. Cir. 2004) ....................................................................... 13, 14

*Ashbourne v. Hansberry*,

894 F.3d 298 (D.C. Cir. 2018) ....................................................................... 12, 13

*Athridge v. Iglesias*,

No. CIV.A. 89-1222, 2000 WL 1780273 (D.D.C. Nov. 14, 2000) ............................. 15

*Bell v. Wolfish*,

441 U.S. 520 (1979) ....................................................................................... 14

*Boumediene v. Bush*,

553 U.S. 723 (2008) ....................................................................................... 23

*Carpenters Indus. Council v. Salazar*,

734 F. Supp. 2d 126 (D.D.C. 2010) ...................................................................... 4

*Container Corp. of Am. v. Franchise Tax Bd.*,

463 U.S. 159 (1983) ....................................................................................... 20

*Cooper v. Fed. Rsrv. Bank of Richmond*,

467 U.S. 867 (1984) ....................................................................................... 12

*Cox v. McCarthy*,
829 F.2d 800 (9th Cir. 1987) ......................................................................... 6

*D.A.M. v. Barr*,
486 F. Supp. 3d 404 (D.D.C. 2020) ............................................................... 3

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020) ....................................................................................... 6

*Direct Mktg. Ass'n v. Brohl*,
575 U.S. 1 (2015) ..................................................................................... 3, 11

*Drake v. F.A.A.*,
291 F.3d 59 (D.C. Cir. 2002) ...................................................................... 14

*Eagle Pharms., Inc. v. Azar*,
952 F.3d 323 (D.C. Cir. 2020) ...................................................................... 9

*Galen Hosp. Alaska, Inc. v. Azar*,
474 F. Supp. 3d 214 (D.D.C. 2020) ............................................................ 15

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ............................................................................ passim

*Greater Yellowstone Coal. v. Bosworth*,
209 F. Supp. 2d 156 (D.D.C. 2002) .............................................................. 3

*Harris v. Med. Transp. Mgmt., Inc.*,
77 F.4th 746 (2023) ........................................................................ 16, 17, 18

*Harris v. Nelson*,
394 U.S. 286, (1969) ...................................................................................... 6

*Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*,
843 F.2d 546 (D.C. Cir. 1988) .................................................................... 15

*I.N.S. v. St. Cyr,*
533 U.S. 289 (2001) ................................................................................................ 6

*Illinois v. Wheeler (In re Clean Water Act Rulemaking),*
60 F.4th 583 (9th Cir. 2023) .................................................................................. 4

*In Re Nassau Cnty. Strip Search Cases,*
461 F.3d 219 (2d Cir. 2006) .................................................................................. 17

*Jennings v. Rodriguez,*
583 U.S. 281 (2018) ................................................................................................ 9

*Kaplan v. Cent. Bank of the Islamic Republic of Iran,*
896 F.3d 501 (D.C. Cir. 2018) .............................................................................. 13

*Kiakombua v. Wolf,*
498 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................... 2, 3

*Malam v. Adducci,*
475 F. Supp. 3d 721 (E.D. Mich. 2020) .............................................................. 5

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
672 F.3d 482 (7th Cir. 2012) ................................................................................ 17

*N.S. v. Dixon,*
141 F.4th 279 (D.C. Cir. 2025) .................................................................... 7, 8, 12

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
145 F.3d 1399 (D.C. Cir. 1998) ............................................................................ 3

*Nat'l Parks Conservation Ass'n v. Salazar,*
660 F. Supp. 2d 3 (D.D.C. 2009) .......................................................................... 4

*O.A. v. Trump,*
404 F. Supp. 3d 109 (D.D.C. 2019) ...................................................................... 4

*Pate v. United States*,
328 F. Supp. 2d 62 (D.D.C. 2004) ......................................................................... 13

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) ............................................................................................... 20

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
No. CV 25-306 (RDM), 2025 WL 1825431 (D.D.C. July 2, 2025) .......................... 4

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016) ............................................................................................... 21

*Rodriguez Diaz v. Garland*,
53 F.4th 1189 (9th Cir. 2022) ................................................................................. 5

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ................................................................................. 5

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
15 F.4th 259 (3d Cir. 2021) ................................................................................... 17

*Sale v. Haitian Centers Council, Inc.*,
509 U.S. 155 (1993) ............................................................................................... 22

*Samuels v. Mackell*,
401 U.S. 66 (1971) ........................................................................................... 15, 16

*Saylor v. United States*,
315 F.3d 664 (6th Cir. 2003) ................................................................................. 14

*Smalls v. United States*,
471 F.3d 186 (D.C. Cir. 2006) ............................................................................... 13

*Steele v. United States*,
144 F.4th 316 (D.C. Cir. 2025) ........................................................................ 12, 13

*Taylor v. Sturgell,*

553 U.S. 880 (2008) ................................................................................................ 3

*Torres v. Shalala,*

48 F.3d 887 (5th Cir. 1995) ................................................................................... 14

*TRW Inc. v. Andrews,*

534 U.S. 19 (2001) ................................................................................................... 9

*United Gov't Sec. Officers of Am., Loc. 52 v. Chertoff,*

587 F. Supp. 2d 209 (D.D.C. 2008) ....................................................................... 3

*United States v. Sineneng-Smith,*

590 U.S. 371 (2020) ............................................................................................... 10

*Van Dinh v. Reno,*

197 F.3d 427 (10th Cir. 1999) ................................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes,*

564 U.S. 338 (2011) ........................................................................................ passim

*Woodford v. Garceau,*

538 U.S. 202 (2003) ................................................................................................. 6

*Youngin's Auto Body v. D.C.,*

775 F. Supp. 2d 1 (D.D.C. 2011) ......................................................................... 14

*Zadvydas v. Davis,*

533 U.S. 678 (2001) ..................................................................................... 19, 20, 21

*Zepeda v. U.S. I.N.S.,*

753 F.2d 719 (9th Cir. 1983) ................................................................................. 3

**Statutes**

8 U.S.C. § 1101(a)(38)...........................................................................................22

8 U.S.C § 1103(a) ................................................................................................21

8 U.S.C. § 1221 ....................................................................................................8

8 U.S.C. § 1225(b)(1) ..........................................................................................19

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .....................................................................19-22

8 U.S.C. § 1229a .................................................................................................19

8 U.S.C. § 1231(a) ...............................................................................................19

8 U.S.C. § 1231(a)(2) ..........................................................................................20

8 U.S.C. § 1231(a)(2)(A) .....................................................................................19

8 U.S.C. § 1231(a)(6) .......................................................................................11, 20

8 U.S.C. § 1231(b) ...............................................................................................23

8 U.S.C. § 1231(e)(3)(A) ......................................................................................21

8 U.S.C. § 1231(g) ......................................................................................8, 10, 21

8 U.S.C. § 1231(g)(1) ...........................................................................................8

8 U.S.C. § 1232 ...................................................................................................15

8 U.S.C. § 1252(f)(1) .....................................................................................passim

28 U.S.C. § 2201(a) .............................................................................................3

28 U.S.C. § 2242 .................................................................................................10

29 U.S.C. § 2202 .................................................................................................15

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................ 12, 17, 18

Fed. R. Civ. P. 23(a) ................................................................................................ 16, 17

Fed. R. Civ. P. 23(b) ................................................................................................ 16

Fed. R. Civ. P. 23(b)(2) .......................................................................................... passim

Fed. R. Civ. P. 23(c)(4) ........................................................................................... 16, 17

Fed. R. Civ. P. 57 ...................................................................................................... 3

**<u>Other Authorities</u>**

Black's Law Dictionary 529 (6th ed. 1990) ............................................................ 18

By and through undersigned counsel, Defendants respectfully file this supplemental brief in response to questions set forth in this Court's September 9, 2025 Minute Order. For the reasons provided below, this Court should not grant class certification as to any issues presented and should dismiss this case on the grounds set forth in Defendants' Motion to Dismiss (ECF Nos. 29, 35).

## ARGUMENT

### I.    A Class Action Seeking Vacatur or Habeas Relief Without an Injunction Cannot Be Certified Under Rule 23(b)(2).

*(I) Whether a class action seeking vacatur or habeas relief without an injunction can be certified under Federal Rule of Civil Procedure 23(b)(2).*

This question must be answered in the negative for two primary reasons. First, vacatur and habeas relief are unavailable in this action because both implicate and run afoul of 8 U.S.C. § 1252(f)(1). *See infra* §§ I. A–B, II. Thus, a putative class seeking vacatur or habeas relief cannot be certified under Rule 23(b)(2). Second, a class action seeking vacatur or habeas relief—without an injunction—cannot be certified under Rule 23(b)(2) because neither vacatur nor habeas relief constitute "corresponding declaratory relief," which is the only basis upon which a putative class can be certified under Rule 23(b)(2) if an injunction is not sought.

As a threshold matter—and as discussed in detail below—both vacatur and habeas relief are precluded by § 1252(f)(1)'s bar on classwide relief that enjoins or restrains the government's operation of certain statutes. *See, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); 8 U.S.C. § 1252(f)(1); *infra* §§ I. A–B, II. Putting aside the fact that vacatur and habeas relief are— quite literally—not the same as declaratory relief, *see infra*, Plaintiffs may nonetheless claim that vacatur or habeas relief comport with the meaning of "corresponding declaratory relief," as set forth in Rule 23(b)(2). But that argument outlines precisely why these two forms of relief are impermissible here.

"Corresponding declaratory relief" is understood to be any remedy that "as a practical matter . . . affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note to 1996 Amendment; Defendants' Opposition to Motion for Class Certification at 18–19, ECF No. 28 ("Mot."). In other words, declaratory relief should be equivalent to an injunction to satisfy the requirements of class certification. *See id.* Declaratory relief is thus barred by § 1252(f)(1) as it is impermissibly coercive and "interfere[s] with the government's efforts to operate" certain statutes that are implicated in this action. Mot. at 17–18.

An argument that vacatur or habeas relief constitutes "corresponding declaratory relief" necessarily equates to a concession that these forms of relief are injunctive in nature and thus— like declaratory relief—violative of § 1252(f)(1)'s bar on relief that would "enjoin or restrain" the government's operation of various federal statutes at issue in this litigation. *See* 8 U.S.C. § 1252(f)(1). Vacatur or habeas relief are not appropriate in this action, and the Court should decline to certify the putative class under Rule 23(b)(2). *See infra* §§ I. A–B, II.

But even assuming that coercive relief such as vacatur or habeas were permissible notwithstanding § 1252(f)(1), these two remedies cannot form a foundation for Rule 23(b)(2) certification. Under Rule 23(b)(2), if a putative class does not seek "injunctive relief," then the class may only be certified if it seeks "corresponding declaratory relief" because "Rule 23(b)(2) applies *only* when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (emphasis added); Fed. R. Civ. P. 23(b)(2). Neither vacatur nor habeas suffice under the plain language of Rule 23(b)(2).

### A.    Vacatur fails to support class certification under Rule 23(b)(2).

Vacatur under the APA is not a party-specific declaration; it is the court's act of "set[ting] aside" unlawful agency action, which takes the action "off the books" and has proscriptive effect beyond the parties—or even members of a certified class, for that matter. *See Kiakombua v. Wolf*,

498 F. Supp. 3d 1, 50 (D.D.C. 2020) (internal citation omitted); *see also D.A.M. v. Barr*, 486 F. Supp. 3d 404, 416 (D.D.C. 2020) (vacatur means that "the government cannot issue any more orders of removal under [a particular] rule"); *Greater Yellowstone Coal. v. Bosworth*, 209 F. Supp. 2d 156 (D.D.C. 2002) (noting that the vacatur and declaratory judgment sought by plaintiffs were "separate remedies"); *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409–10 (D.C. Cir. 1998) (explaining that when an agency action of broad applicability is invalidated, the agency may not apply it to anyone). A declaratory judgment, by contrast, is one that "declare[s] the rights and other legal relations" of the litigants, without itself restraining the government's future conduct in all settings. *See United Gov't Sec. Officers of Am., Loc. 52 v. Chertoff*, 587 F. Supp. 2d 209, 222 (D.D.C. 2008); *see* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.

Taking an agency action "off the books" sharply departs from a judgment that simply "declare[s] the rights and other legal relations" between litigants. *See Kiakombua*, 498 F. Supp. 3d at 50. Like an injunction, vacatur "restrict[s] or stop[s] official action." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015). Put differently, a declaration or injunction under Rule 23(b)(2) binds the parties, including the certified class, but does not—like vacatur—"set aside" a rule for everyone everywhere. *Compare Wal-Mart*, 564 U.S. at 360–61 (Rule 23(b)(2) relief must be appropriate as to the class as a whole), *and Taylor v. Sturgell*, 553 U.S. 880, 884–95 (2008) (non-parties are not bound absent recognized exceptions), *and Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (injunctive relief should not extend to non-parties), *with Kiakombua*, 498 F. Supp. 3d at 50 (vacatur "set aside[s] agency action," taking it "off the books"), *and Nat'l Mining Ass'n*, 145 F.3d at 1408–09 (vacatur sets aside a rule entirely). Plaintiffs—against this well-established backdrop—cannot use Rule 23(b)(2) as pretext to secure impermissible relief not authorized by Congress.

Even setting aside the plain language of Rule 23(b)(2), Plaintiffs' desired relief exceeds statutory limits, where Congress has specifically curtailed class-wide injunction-like relief against the operation of large sections of the INA. *See* 8 U.S.C. § 1252(f)(1); *infra* § II. That includes § 1231(g), which is one of the statutory provisions covered by the relief bar in § 1252(f)(1). Should this Court order vacatur, that would impose a coercive form of relief "interfer[ing] with the Government's efforts to operate" its removal and detention authority pursuant to § 1231(g). *Aleman Gonzalez*, 596 U.S. at 551; *infra* § II. Such an order is unquestionably barred by § 1252(f)(1), and a class cannot be certified on that basis.[1]

Defendants acknowledge that another judge in this District has certified Rule 23(b)(2) classes seeking, among other forms of relief, vacatur. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 152–54 (D.D.C. 2019); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *29 (D.D.C. July 2, 2025) ("*RAICES*"). But the judge in those cases never addressed the distinction between a declaratory judgment and vacatur, as discussed above—though he did concede that vacatur generally will sweep farther than "the parties before the Court" to affect the enforcement of a rule "writ large." *O.A.*, 404 F. Supp. 3d at 153. Further, the jurisdictional bar in § 1252(f)(1) did not factor into the rulings in those cases. Here, by contrast, Plaintiffs bring claims that necessarily implicate § 1252(f)(1) no matter how they are framed. *See* Mot. at 17–19; *infra* § II. Thus, even if this Court were inclined to agree with the one

---

[1] Similarly, assuming this Court identified a final agency action, which Defendants maintain Plaintiffs have failed to allege, *see* ECF No. 29 at 14-16, the district court could not grant vacatur at this stage of proceedings as courts have "read the APA as foreclosing any authority of courts to vacate agency actions not *first* held unlawful" by a merits determination. *See Illinois v. Wheeler (In re Clean Water Act Rulemaking)*, 60 F.4th 583, 594 (9th Cir. 2023) (emphasis added); *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009) (requiring "judicial consideration of the merits" before vacating agency action); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 136 (D.D.C. 2010) (recognizing the court lacked authority to order "vacatur without a determination of the merits").

judge and draw an equivalence between vacatur and declaratory judgments, a class could not be certified for purposes of setting aside the removal action in this case.

### B.    Habeas similarly fails to support class certification under Rule 23(b)(2).

Habeas fares no better in this context. Rule 23(b)(2) authorizes certification only where "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360–61. Habeas, by contrast, turns on each person's custody status and circumstances, and the remedies—release, bond, transfer, or none—are inherently individualized rather than "indivisible." *See id.* at 360–63; *see also A. A. R. P. v. Trump*, 605 U.S. 91, 109 (2025) (Alito, J., dissenting) ("[A]s a general matter, the class action device is uniquely ill-suited for habeas proceedings, which often turn on individualized and fact-specific determinations regarding the confinement of a specific prisoner." (citation modified)); *see also Malam v. Adducci*, 475 F. Supp. 3d 721, 742 (E.D. Mich. 2020), *amended*, No. 20-10829, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) ("Rule 23(b)(2) contemplates common 'final injunctive relief or corresponding declaratory relief' unavailable in habeas litigation.").[2] That mismatch alone is enough to defeat Rule 23(b)(2) certification. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010), *abrogation recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199–1201 (9th

---

[2] While the *Malam* court ultimately determined that Rule 23(b)(2) provided an "appropriate framework" to analogize proceedings to govern a "habeas litigation group," that ultimate determination is inapplicable here because the parties in that action did not address § 1252(f)(1)'s jurisdictional bar at the class certification stage. *See Malam*, 475 F. Supp. 3d at 743; Defendants' Response to Plaintiffs' Motion for Class Certification at 25 n.7, *Malam v. Adducci*, No. 5:20-cv-10829-JEL-APP (E.D. Mich. June 26, 2020) (explaining that the "government has not opted to argue that § 1252(f)(1) bars class certification" in favor of addressing that issue "more fully in briefing on the merits"). Section 1252(f)(1) definitively bars class-wide habeas relief in this action and Defendants argue as such. Rule 23(b)(2) cannot provide relief that is otherwise precluded by statute. *See infra* § II; Mot. at 17–19.

Cir. 2022) *(*quoting *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987)) (noting class actions are "ordinarily disfavored" in the habeas context).

The writ's traditional function confirms this point. Habeas is the exclusive vehicle for challenges to custody seeking release; it is not a means to obtain programmatic injunctions or policy-level decrees. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117–19 (2020); ECF No. 28 at 33–35 (explaining that habeas has always existed as an individualized writ, requiring the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable[,] and certify the true Causes of Imprisonment" (quoting Habeas Corpus Act of 1679, 31 Car. 2 cl. 2 § I (Eng.)). As the Supreme Court has repeatedly cautioned, habeas is a sui generis proceeding with its own statutory framework, not simply another civil action governed wholesale by the Federal Rules of Civil Procedure. *See Woodford v. Garceau*, 538 U.S. 202, 203 (2003) ("The Federal Rules of Civil Procedure apply in the habeas context *to the extent* that they are not inconsistent with the Habeas Corpus Rules." (emphasis added)); *Harris v. Nelson*, 394 U.S. 286, (1969) (finding it "difficult to believe that the draftsmen of the [Federal Rules of Civil Procedure] or Congress would have applied the discovery rules without modification to habeas corpus proceedings because their specific provisions are *ill-suited* to the special problems and character of such proceedings" (emphasis added)). Because Rule 23(b)(2) presupposes uniform injunctive or declaratory relief—in essence, a single, class-wide decree—its operation is inconsistent with the individualized remedies habeas provides.

Again, § 1252(f)(1) confirms the impropriety of plaintiffs' class-wide request. To be clear, § 1252(f)(1) does not abolish relief in individual habeas cases. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 299–314 (2001). But it expressly withdraws lower courts' authority to "enjoin or restrain the operation of" the INA's detention and removal provisions on a class-wide basis. 8 U.S.C.

§ 1252(f)(1). Plaintiffs' attempt to evade that bar by styling their case as a "habeas" challenge to detention at Guantánamo. Yet the relief they seek would necessarily restrain how DHS may exercise its removal and detention authority under the INA for all putative class members—dictating whether, where, and on what terms the agency may detain aliens processed under the various removal provisions. That is precisely the "operation of" covered provisions that Congress insulated from class-wide injunctions. The Supreme Court has already held that broad injunctions altering how those removal provisions function are barred by § 1252(f)(1). *Aleman Gonzalez*, 596 U.S. at 548–56. What § 1252(f)(1) leaves intact—individualized habeas relief—by definition cannot support Rule 23(b)(2) certification, because it is not a single, indivisible remedy "with respect to the class as a whole." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

For these reasons, a class action seeking vacatur or habeas relief without an injunction cannot be certified under Rule 23(b)(2).

## II. **8 U.S.C. § 1252(f)(1) Does Not Permit Class Certification Under Rule 23(b)(2) for Plaintiffs' Requested Habeas Relief or Universal Vacatur.**

*(II) Whether Federal Rule of Civil Procedure 23(b)(2) permits certification of the Plaintiffs' claims for classwide vacatur and habeas relief in light of 8 U.S.C. § 1252(f)(1).*

Plaintiffs' requests for classwide habeas relief and universal vacatur fall squarely within 8 U.S.C. § 1252(f)(1)'s prohibition on lower-court orders that provide relief to more than one individual alien. *See Aleman Gonzalez*, 596 U.S. at 550; *N.S. v. Dixon*, 141 F.4th 279, 289 (D.C. Cir. 2025) (explaining that *Aleman Gonzalez* abrogated the D.C. Circuit's prior caselaw that narrowly interpreted § 1252(f)(1)). Specifically, "[r]egardless of the nature of the action or claim . . . no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of Part IV [of subchapter II of the INA]." 8 U.S.C. § 1252(f)(1). As the Supreme Court explained, § 1252(f)(1)'s reference to "the 'operation of' the relevant statutes

is best understood to refer to the Government's efforts to enforce or implement them." *Aleman Gonzalez*, 596 U.S. at 550. Thus, § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" 8 U.S.C. §§ 1221-1232. *Id.* (internal citations omitted); *cf. Dixon*, 141 F.4th at 288.  The only exception is for individual relief. *Dixon*, 141 F.4th at 287 (permitting "the application of such provisions to an individual alien").

Plaintiffs ask the Court to prevent Defendants from detaining aliens at NSGB.  *See* Compl. ¶ 76-80. And Plaintiffs seek to apply this relief to a class of aliens certified under Rule 23(b)(2), Compl. ¶ 61, which is appropriate only when Defendants' actions "apply generally" such that the Court can impose "final injunctive relief . . . respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). As a threshold matter, this requested relief plainly interferes with the operation of 8 U.S.C. § 1231(g), which provides that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal." 8 U.S.C. § 1231(g)(1); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("The Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from this language [in 8 U.S.C. § 1231(g)(1)]."). And critically, because Plaintiffs seek to apply this relief to a Rule 23(b)(2) class, it is necessarily barred by § 1252(f)(1). That they frame their requests as habeas and vacatur actions—neither of which is appropriate in any case, *supra* § I—does nothing to circumvent § 1252(f)(1)'s statutory bar because it applies "[r]egardless of the nature of the action or claim" as long as plaintiffs seek to "enjoin or restrain" the Executive's carrying out of the covered provisions. 8 U.S.C. § 1252(f)(1).

Indeed, § 1252(f)(1) does not limit itself to formal injunctions but rather, by its plain language, prohibits lower-court orders that "enjoin or restrain" the Executive Branch's operation

of the covered provisions. 8 U.S.C. § 1252(f)(1). These terms indicate that a court may not impose coercive relief that "interfere[s] with the Government's efforts to operate" the covered provisions in a particular way. *Aleman Gonzalez*, 596 U.S. at 551; *see* Black's Law Dictionary 529 (6th ed. 1990) ("[e]njoin" means to "require," "command," or "positively direct" (emphasis omitted)); *id*. at 1314 ("[r]estrain" means to "limit" or "put compulsion upon" (emphasis omitted)). Moreover "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001), and thus reading "enjoin or restrain" to refer only to one form of relief ignores the reality that Congress "'says in a statute what it means and means in a statute what it says.'" *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 330 (D.C. Cir. 2020) (internal citation omitted).

As applied to Plaintiffs' request for classwide habeas relief, however, the Court need not even address the proper scope of § 1252(f)(1). This is because Plaintiffs request classwide "habeas relief" from this Court in the form of a "a writ of habeas corpus . . . that enjoins Defendants from detaining [class members] at [NSGB]." Compl. ¶ 80. Here, Plaintiffs "do not seek habeas relief, as understood by our precedents. Although their complaint references the general habeas statute . . . it is not a habeas petition." *Jennings v. Rodriguez*, 583 U.S. 281, 324-26 (2018) (Thomas, J., concurring). Indeed, as discussed at length in Defendants' Opposition to Class Certification (ECF No. 28) ("Class Cert. Opp'n") at 33-35, habeas from its inception, has been an individualized writ, requiring the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable; and certify the true Causes of Imprisonment." Habeas Corpus Act of 1679, 31 Car. 2 cl. 2 § I (Eng.). That understanding is reflected in our modern habeas statute, which calls for an "[a]pplication for a writ of habeas corpus . . . in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and then "directed to the person having custody of

the person detained" who may have to "produce at the hearing the body of the person." 28 U.S.C. §§ 2242, 2243. Because the statute would be rendered meaningless if the petitioner was an unknown class member, it is no wonder then that the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting); Class Cert. Opp'n at 33-35 (discussing why habeas is unfit for class adjudication and relief).

In any event, § 1252(f)(1) prohibits this Court from granting Plaintiffs' classwide habeas relief because their requested "writ" is simply a thinly-veiled injunction. No logical leaps are necessary to reach this conclusion, as Plaintiffs ask expressly for a "writ of habeas corpus . . . that *enjoins* Defendants from detaining them at [NSGB]. Compl. ¶ 80 (emphasis added); *Aleman Gonzalez*, 596 U.S. at 550 (explaining that to enjoin conduct includes issuing an injunction). Of course, "no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin*" actions authorized by § 1231(g). 8 U.S.C. § 1252(f)(1). That Plaintiffs have asked for precisely what § 1252(f)(1) prohibits—going as far as to use the *exact language* in the statute—forecloses their requested classwide habeas relief. *Compare* Compl. ¶ 90, *with* 8 U.S.C. § 1252(f)(1); *see United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

The point does not hinge on Plaintiffs' word choice: even had they avoided the term "enjoin," § 1252(f)(1) would still bar classwide relief because the writ they seek functions as an injunction against the agency's discretionary use of its own removal authority under § 1231(g). Rule 23(b)(2) requires action applied "generally to [a] class" such that "injunctive relief" is appropriate "respecting the class as a whole," which is exactly the remedial measure prohibited

under § 1252(f)(1).[3] Fed. R. Civ. P. 23(b)(2). Indeed, any request for a "writ" or "vacatur" that simply prevents Defendants from detaining class members at NSGB is a form of coercive relief that prevents federal officials from "arrang[ing] appropriate places of detention for aliens detained pending removal" under § 1231(g) and is thus barred. 8 U.S.C. § 1252(f)(1); *Aleman Gonzalez*, 596 U.S. at 551. For the same reason, § 1252(f)(1) prevents the Court from "[v]acating Defendants' policy of transferring immigration detainees from the United States to [NSGB] and detaining them there." Compl. ¶ 78. Like an injunction, vacatur "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency action under review.

    As the Supreme Court held, it is not relevant to the analysis that this case seeks to challenge the statutory and constitutional authority of the aliens' detention at NSGB, because § 1252(f)'s remedial bar is not limited to the covered provisions "as properly interpreted." *Aleman*, 596 U.S. at 550. Indeed, in *Aleman Gonzalez*, the Supreme Court explained that injunctions that required the government to provide bond hearings for aliens detained under 8 U.S.C. § 1231(a)(6) "'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by § 1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by § 1231(a)(6)." *Id*. at 551. Because "[t]hose injunctions thus interfere[d] with the Government's efforts to operate §1231(a)(6)" in its chosen manner, the Court concluded that they were barred by § 1252(f)(1). *Id*. Just so here. Even if this Court were to ultimately find that Defendants' invocation of § 1231(g) to detain Plaintiffs and the potential class members at NSGB is erroneous, § 1252(f)(1) bars the Court from enjoining Defendants' operation

---

[3] Defendants acknowledge that Rule 23(b)(2) enables certification for "corresponding declaratory relief," but whether those actions are permitted by § 1252(f)(1)—which they are not—is outside the scope of the questions this Court ordered supplemental briefing on.

of § 1231(g) on a classwide or universal basis. *See Dixon*, 141 F.4th at 289 (noting that because § 1252(f)(1) is not "contingent upon the merits of the claim . . . [it] has the same force even when the National Government allegedly enforces the relevant statutes unlawfully"). In sum, because Plaintiffs' requested classwide vacatur and universal habeas relief impermissibly enjoins and restrains Defendants' operation of § 1231(g), it is barred by § 1252(f)(1).

### III. Certifying Plaintiffs' Claims Under Rule 23(b)(2) Will Result in a Judgment that Precludes Members of the Putative Class from Bringing Individual Actions for Injunctive Relief.

*(III) Whether certifying the Plaintiffs' claims under Federal Rule of Civil Procedure 23 would result in a judgment that precludes the members of the putative class from later bringing individual actions for injunctive relief that are permitted by 8 U.S.C. § 1252(f)(1).*

As a general rule, parties are limited to "one bite at the litigation apple," *Ashbourne v. Hansberry*, 894 F.3d 298, 302 (D.C. Cir. 2018), and thus must "assert all causes of action arising from a common set of facts in one lawsuit." *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025). Once a lawsuit has been initiated but prior to the issuance of a final judgment, the rule against claim-splitting precludes the same parties from bringing additional causes of action that "rest on the same operative facts and legal theories." *Steele*, 144 F.4th at 326. And following "a judgment in a properly entertained class action," the doctrine of *res judicata* binds "class members in any subsequent litigation." *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984). While claim-splitting applies during all stages of litigation and *res judicata* applies after a final judgment on the merits, the doctrines share a set of substantive requirements that this Court applies to determine whether a subsequent lawsuit is barred. *Steele*, 144 F.4th at 324. ("Claim-splitting operates as a corollary to claim preclusion."). Specifically, subsequent claims are barred when there has been prior litigation: (1) involving the same claims or cause of action, (2) between

the same parties or their privies, and (3) before a court of competent jurisdiction. *Steele*, 144 F.4th at 324 (claim-splitting); *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (*res judicata*).

Whether the claims are substantially similar turns on whether they arise from the same "nucleus of facts." *Ashbourne*, 894 F.3d at 302. That is, if a subsequent lawsuit is "related in time, space, origin, or motivation," it will be barred. *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004); *see Steele*, 144 F.4th at 326 (asking whether the "two suits rest on the same operative facts and legal theories"). This rule encompasses not only issues that are or were actually litigated, but also issues that "could have been raised in the earlier case" but were not. *Ashbourne*, 894 F.3d at 302. And critically, for classes under Rule 23(b)(2)—the type of class Plaintiffs seek to certify here, *see* Mot. at 10-11—there is no notice to class members required to bar them from later seeking injunctive relief. *See Pate v. United States*, 328 F. Supp. 2d 62, 74 (D.D.C. 2004) (requiring notice only when "individual monetary claims of absent class members may be barred").

Thus, whether brought during the pendency of this litigation or after its resolution, any lawsuits for injunctive relief that might ordinarily be permissible under 8 U.S.C. § 1252(f)(1) brought by individual class members following certification would be precluded. First, although Defendants maintain that several jurisdictional bars prohibit judicial review of Plaintiffs' claims, *see* 8 U.S.C. §§ 1252(a)(2)(B)(ii), (b)(9), (g), assuming this Court reaches the merits after having "assure[d] itself of its subject-matter jurisdiction," the original action would have taken place in a court of competent jurisdiction. *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018). Second, the parties to any subsequent lawsuit filed by a certified class member would be the same as in the instant litigation; that is, the class member would be raising an additional claim seeking to enjoin the same government authorities from transferring or detaining him at NSGB. Finally, the suit would challenge the alien's detention at NSGB under the

- 13 -

same statutory framework governing detention and even involving the same agency action exercising that authority in the first place. Compl. ¶¶ 62-69. The conclusion would be the same even if the class member raises a "new legal theory" to invalidate his or her detention, because that legal theory "could have been raised" in this action. *Apotex, Inc.*, 393 F.3d at 217-18 (explaining that a "new legal theory" is "precisely what is barred by *res judicata*"); *see also Youngin's Auto Body v. D.C.*, 775 F. Supp. 2d 1, 7 (D.D.C. 2011) ("[F]or the purposes of claim preclusion, the legal theory upon which the plaintiff relies is irrelevant; rather, the relevant inquiry is whether the plaintiff's claims arise out of the same common nucleus of facts.") (internal quotation marks omitted).

As to Plaintiffs' due process claim, the class member would likewise be challenging the conditions in Camp VI and the MOC, the same facilities as those challenged in the instant lawsuit. And "simply submitting new evidence" about the conditions in the facilities does not "render a prior decision factually distinct." *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995); *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003) ("The fact that . . . new evidence might change the outcome of the case does not affect application of claim preclusion doctrine"); *see also* Restatement (Second) of Judgments § 25, Comment b ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment"). Because Plaintiffs' due process claim turns on whether the "particular restrictions and conditions accompanying . . . detention amount to punishment," *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), a class member might be able to raise a new lawsuit only if he can show that the conditions that he faces at NSGB are so distinct that they are somehow based wholly "on a different nucleus of facts" than those generally applicable to the putative class in this lawsuit. *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002). And even then, the mere possibility

- 14 -

that an individual's conditions could later change enough to avoid claim preclusion—however unlikely—only highlights the individualized, shifting nature of the due process claims raised by Plaintiffs and thus why Rule 23(b)(2) certification does not fit. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

The declaratory judgment exception to the claim preclusion doctrine does not change the analysis. *See Anatol Zukerman & Charles Krause Reporting*, *LLC v. United States Postal Serv*., 64 F.4th 1354, 1367 (D.C. Cir. 2023) ("A declaratory judgment . . . may have *res judicata* effect in later actions."); *but see* 29 U.S.C. § 2202 (providing for "[f]urther necessary or proper relief based on a declaratory judgment or decree"). As a threshold matter, this exception applies "[w]here a party *only* asks for declaratory relief," but, here, Plaintiffs have also requested habeas, vacatur, and an injunction—even if they all run up against the jurisdictional bar in § 1252(f)(1). *Horn & Hardart Co. v. Nat'l Rail Passenger Corp*., 843 F.2d 546, 549 (D.C. Cir. 1988) (emphasis added); *see* Compl. ¶¶76-80 (delineating the forms of relief sought). Additionally, a declaratory judgment may still have an "issue preclusive effect," meaning that the parties cannot re-litigate "those factual and legal issues actually and necessarily determined in the earlier declaratory judgment action." *Athridge v. Iglesias, No. CIV.A*. 89-1222, 2000 WL 1780273, at *2 (D.D.C. Nov. 14, 2000); *see also Galen Hosp. Alaska, Inc. v. Azar*, 474 F. Supp. 3d 214, 227 (D.D.C. 2020) ("As compared to claim preclusion, issue preclusion is "[a] related but narrower principle—that one who has actually litigated an issue should not be allowed to relitigate it."). Moreover, because "declaratory relief alone has virtually the same practical impact as a formal injunction would," *Samuels v. Mackell*, 401 U.S. 66, 72 (1971), applying the declaratory judgment exception in the class context is inappropriate because it would allow every individual class member to obtain an injunction based on a classwide declaratory judgment, thereby circumventing § 1252(f)(1)'s bar on classwide relief

that "restrains or enjoins" the government's operations of the covered provisions of the INA. 8 U.S.C. § 1252(f)(1); *see Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting) ("A class-wide declaratory judgment, followed by individual injunctions from every member of the class is, in every consequence that matters, the same as a class-wide injunction."); *cf. Samuels*, 401 U.S. at 72 ("ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid.").

In short, although individual injunctive actions are not barred by the text of § 1252(f)(1), the faithful application of claim-splitting and *res judicata* doctrines will bar subsequent lawsuits by putative class members, both before and after a final judgment on the merits.

**IV.    The Court Cannot Certify an Issue Class Under Rule 23(c)(4) to Permit Later Individual Actions for Injunctive Relief Because the Putative Class Does Not Satisfy Rule 23(a) and (b)'s Requirements.**

*(IV) Whether the Court can certify an issue class under Federal Rule of Civil Procedure 23(c)(4) in this case that would permit later individual actions for injunctive relief.*

Before this Court can even consider Rule 23(c)(4), "the plain text of Rule 23 [requires] all certified classes . . . [to] meet both the threshold requirements of Rule 23(a) and be maintainable under one of Rule 23(b)'s categories." *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 757-58 (2023), *cert denied*, 144 S.Ct. 818 (2024). "Rule 23(c)(4) does not create a fourth category of class action beyond those specified in Rule 23(b)." *Id.* at 757. Rather, Rule 23(c)(4) provides an avenue for "managing Rule 23-qualifying class actions." *Id.* An "issue class" under Rule 23(c)(4) must satisfy the four requirements under Rule 23(a) and fall under a subsection of Rule 23(b); Rule 23(c)(4) "does not give the district court a pass on those preconditions." *Id.* at 757-58 (referring to the Rule 23(a) and (b) requirements as "fundamental prerequisites").

- 16 -

Here, the Court cannot certify an issue class under Rule 23(c)(4) because Plaintiffs fail to meet Rule 23(a) and (b)'s requirements. As Defendants argued in the Opposition to Motion for Class Certification, Plaintiffs proposed class lacks commonality, they are not adequate class representatives, and the proposed class cannot obtain final injunctive or corresponding declaratory relief under Rule 23(b)(2). Class Cert. Opp'n at 26-33; *supra* §§ I, II. "[W]hen creating issue classes, district courts must heed Rule 23's carefully calibrated limits on class certification." *Harris*, 77 F.4th at 762. In this case, 8 U.S.C. § 1252(f)(1) strips the Court of jurisdiction to issue classwide injunctive relief and the Court cannot create an "issue class" to circumvent this barrier to class certification under Rule 23(b)(2). *Harris*, 77 F. 4th at 757. Because Plaintiffs cannot meet Rule 23(a) and (b)'s threshold requirements, the Court cannot carve out an issue class for Plaintiffs that would otherwise not strictly comply with Rule 23. *Id.* at 758 ("There is no free standing class to be certified under Rule 23(c)(4).").

If the Court nevertheless finds Plaintiffs' proposed class meets Rule 23(a) and (b)'s requirements, the Court can only certify an issue class under (c)(4) when "appropriate." *Id.* (citing Fed. R. Civ. P. 23(c)(4)). But here, it is inappropriate to do so. "Appropriateness" implicates Rules 23(a) and (b)'s requirements. *Id.* The D.C. Circuit has not provided much elaboration on when the "appropriate" requirement is met in the 23(b)(2) context. Generally, however, most "issue classes" are certified in the 23(b)(3) context, not the 23(b)(2). *See, e.g., Harris*, 77 F.4th 746; *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3rd Cir. 2021); *In Re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006); *but see McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482 (7th Cir. 2012) (finding, in a racial discrimination case with no threshold bar on relief akin to § 1182(f)(1), that the putative class was amenable to (c)(4) treatment because "a single proceeding, while it might result in an injunction, could not resolve"

class members' individualized claims regarding the disparate impact of corporate policies on them). For instance, courts have cited the example of a "liability-only issue class" as an appropriate certified issue class under Rule 23(c)(4). *See, e.g., Harris*, 77 F.4th at 761; *see also* Fed. R. Civ. P. 23, Committee Notes ("For example, in a fraud or similar case the action may retain its 'class' character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims.").

Here, however, creating an "issue class" is inappropriate because there is a single issue in this case: the lawfulness of detention at NSGB. *See* Compl. ¶ 61 ("Defendants have acted on grounds generally applicable to the class by subjecting them to the same policies and practices with respect to detention of immigrants at Guantánamo."); Mot. at 8 ("Plaintiffs in this case have identified a single alleged practice—the detention of noncitizens at Guantánamo") (internal quotations omitted); *id.* at 11(claiming Plaintiffs have met the Rule 23(b)(2) requirements because the practice of holding putative class members at NSGB can be declared unlawful as to the entire class). The D.C. Circuit has cautioned that, in the Rule 23(b)(3)'s predominance context, a "certified issue class should encompass a reasonably and workably segregable aspect of the litigation." *Harris*, 77 F.4th at 761. Since there is only one core issue underlying all of Plaintiff's claims—lawfulness of putative class members' detention at NSGB—it is not reasonably and workably segregable.

Plaintiffs might contend that each of their claims presents separate issues. But issues are not coextensive of claims. *Harris*, 77 F.4th at 761 ("Rule 23(c)(4) may be used to certify an issue that is less than an entire cause of action."). And the same issue can underpin multiple types of claims. Here, Plaintiffs present multiple claims spanning the same issue: the lawfulness of Plaintiffs' detention at NSGB.

In short, certifying an issue class under Rule 23(c)(4) would be inappropriate because creating a separate issue class as to the legality of detention at NSGB is repetitive of the same issue Plaintiffs seek to litigate as a class as a whole—which in any case are barred under § 1252(f)(1).

## V.    The Government Has Statutory Authority to Detain Removable Aliens at NSGB During Execution of a Removal Order.[4]

*(V) [Provide] the statutory source of the Government's authority to detain an individual during the execution of a removal order.*

The Secretary has the authority to detain individuals subject to final orders of removal in U.S. government facilities as part of an ongoing removal operation. In general, aliens may be ordered removed from the United States under one of two tracks: removal proceedings under 8 U.S.C. § 1229a or expedited removal proceedings under 8 U.S.C. § 1225(b)(1). First, aliens subject to an expedited removal order must be detained until they are removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). For aliens with a final order of removal that was entered following removal proceedings held under 8 U.S.C. § 1229a, Congress has authorized detention under 8 U.S.C. § 1231(a) while the government works to execute the removal order. *See* 8 U.S.C. § 1231(a)(2)(A) (providing that "[d]uring the removal period, the Attorney General shall detain the alien," and delineating certain classes of removable aliens subject to mandatory detention). Section 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001), limits post-final-order detention to the period reasonably necessary to accomplish removal. 533 U.S. at 701. The Court determined that six months is a presumptively reasonable period of time to allow the government to complete removal after the removal period has

---

[4] Defendants address their statutory authority to detain removable aliens during removal operations at length in their Motion to Dismiss (ECF No. 29 at 2-4, 18-23) and Opposition to Plaintiffs' Class Certification Motion (ECF No. 28 at 3-5).

commenced. *Id*. at 701.

"This 6–month presumption, of course, does not mean that every alien not removed must be released after six months; instead, "an alien may be detained until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. In making this assessment, the Supreme Court has counseled immigration habeas courts to apply "[o]rdinary principles of judicial review" in order to "give expert agencies decisionmaking leeway in matters that invoke their expertise" and "recognize [the] Executive Branch['s] primacy in foreign policy matters." *Id.* at 700 (citing *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651-52 (1990); *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 196 (1983)). Specifically, the Supreme Court instructed habeas courts to "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700.

While detained, Plaintiffs are lawfully in the custody of the Secretary as individuals subject to final orders of removal. *See* Compl. ¶¶ 13-22. Section 1231(a)(2) and (6) and § 1225(b)(1)(B)(iii)(IV) authorize the Secretary to detain individuals who are, respectively, subject to final orders of removal and expedited removal orders. The Secretary's authority under these provisions begins upon entry of the removal order and extends until the Secretary relinquishes custody of the detainee. *See* 8 U.S.C. §§ 1231(a)(2) and (6), 1225(b)(1)(B)(iii)(IV). As previewed above, the Secretary's detention authority under § 1231(a)(6) is limited to the amount of time reasonably necessary to execute the removal order and will generally terminate if (after six months) "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In addition to having authority to detain

- 20 -

individuals subject to final orders of removal, the Secretary also has broad statutory authority to "arrange for appropriate places of detention for aliens pending removal" at "United States Government facilities," 8 U.S.C § 1231(g), and to "perform such other acts as [she] deems necessary for carrying out [her] authority" under the INA, 8 U.S.C § 1103(a). Under this statutory framework, alien detainees at NSGB fall squarely within the broad grant of authority: they are subject to final orders of removal, have been taken to NSGB as part of the government's efforts to facilitate their removals, and are held for only so long as their removal remains significantly likely to occur in the reasonably foreseeable future.

Section 1231(a)(2) and (6) and § 1225(b)(1)(B)(iii)(IV) afford the Secretary extraterritorial authority to manage alien detention during the span of international removal operations.[5] Congress understood that the execution of removal orders typically requires the Secretary—by definition—to exercise extraterritorial authority. *See, e.g.*, 8 U.S.C. § 1231(e)(3)(A) (specifying funding source for costs associated with removal), (f) (authorizing caregiver travel for removal trip); U.S. Immigration and Customs Enforcement Budget Overview Fiscal Year 2023 at 169, https://perma.cc/AM2G-7PVN (last visited July 30, 2025) (noting Congress allocated more than $400 million per year for ICE's Transportation and Removal Program, a program with a mission that includes providing "transportation to the [alien's] final destination"). The overwhelming majority of removals carried out under §§ 1231 and 1225 are escorted removals—that is, removals where ICE officers maintain custody of the individual who are being removed from the United

---

[5] In addition, as described at length in Defendants' pending Motion to Dismiss (ECF No. 29 at 19-20), section 1231(g) also affords the Secretary more narrow extraterritorial authority to select appropriate places for removal to include any "United States Government facilities." 8 U.S.C. § 1231(g); *see also RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 340 (2016) (holding that "an express statement of extraterritoriality is not essential," and "'context can be consulted as well,'" to establish the extraterritorial effect of a statute). NSGB is precisely that type of United States Government facility. ECF No. 29 at 19-20.

States and transport them to their country of removal. DHS OIG Report, OIG-19-28, ICE Faces Barriers in Timely Repatriation of Detained Aliens, at 11 (Mar. 2019) (approximately 84,000 of the 90,000 removals in fiscal year 2017 were escorted removals).

Section 1103(a)(3)'s sweeping grant of authority for the Secretary to take any action "deemed necessary" to the exercise of her other statutory authorities is also naturally read as conferring extraterritorial authority when exercised in support of her extraterritorial removal responsibilities, *cf. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 171 (1993) (assuming 8 U.S.C. § 1103(a)(1) applies extraterritorially but finding exercise to be within that section's exception), which supports ongoing detention of removable aliens subject to U.S. custody while removal operations are ongoing. In short, §§ 1103(a)(3), 1225(b)(1)(B)(iii)(IV), 1231(a)(2) and (6), and 1231(g) together confer broad extraterritorial authority for ICE to carry out Congress's removal mandate. Further, the U.S. government has not relinquished custody of immigration detainees at NSGB and has explicitly stated that the removal operation is ongoing. Therefore, the Secretary's detention authority continues to exist at NSGB as it pertains to immigration detainees with final removal orders still in the custody of the United States.

While Plaintiffs claim that the government lacks the authority to detain them at NSGB because the base is outside of the United States for purposes of the INA, Compl. ¶¶ 62-63 (citing 8 U.S.C. § 1101(a)(38)), and Defendants acknowledge NSGB's location for purposes of the INA, the cited provisions overcome any presumption against extraterritorial application—which does not apply here given the nature of removal operations. *Sale*, 509 U.S. at 173. Removal operations are inherently extraterritorial missions and therefore necessarily require the Secretary to exercise detention authority outside of the United States. *See* ECF No. 28-4, Transcript of March 14, 2025 TRO Hearing, *Las Americas v. Noem*, No. 1:25-cv-418 (CJN) (D.D.C. Mar. 14, 2025), at 24

- 22 -

(Plaintiffs conceding "[o]bviously the removal statutes apply extraterritorially. That's inherent."). As noted above, many of ICE's removal operations are conducted by ICE transporting the detainee to their country of removal. As a result, ICE routinely exercises its §§ 1231 and 1225 detention authority outside of the United States. And § 1103(a)(3) operates in tandem with these provisions to give the Secretary all necessary authority to conduct the removal operation in her preferred manner, including to plan the removal mission and arrange for appropriate staging points to support that mission. Detainees placed on ICE-operated removal missions remain subject to ICE custody until ICE relinquishes custody. *See* 8 U.S.C. § 1231(b) (setting out the categories of countries to which aliens may be removed). None of that would be possible unless DHS's authority to execute removal operations has an extraterritorial component. Accordingly, because the United States has not relinquished control of immigration detainees at NSGB—a military facility that the United States "exercises complete jurisdiction and control over," *see Boumediene v. Bush*, 553 U.S. 723, 753-55 (2008); *see also* ECF No. 29 at 21-22 (noting "DHS has not completed the removal mission and has certainly not surrendered them to the control of the Cuban government")—the Secretary's detention authority continues to exist at NSGB as it pertains to immigration detainees with final removal orders still in the custody of the United States.

Dated: September 23, 2025

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

ANTHONY NICASTRO
*Acting Director*

*Leslie McKay*
*Assistant Director*

*David Kim*
*Senior Litigation Counsel*

IAN S. LAM
ALEXA PERLMUTTER
*Trial Attorneys*

By: /s/ *Jason K. Zubata*
JASON K. ZUBATA
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4143
Email: Jason.k.zubata@usdoj.gov

*Counsel for Defendants*