UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Action No. 22-3118 (CKK) |

**MEMORANDUM OPINION & ORDER**
(October 6, 2025)

This matter is before the Court upon Defendants' [121] Motion to Dismiss the Second Amended Complaint for Injunctive and Declaratory Relief. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **DENY** Defendants' Motion.

**I. BACKGROUND**

Plaintiff Florence Immigrant and Refugee Rights Project ("FIRRP") and other legal services organizations filed this action on October 13, 2022, alleging that the Department of Homeland Security and other Defendants were not providing constitutionally and statutorily required access to counsel for people held in certain immigration detention facilities. Compl., ECF No. 1. On February 1, 2023, the Court entered a preliminary injunction against Defendants,

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- Plaintiff's Second Amended Complaint for Injunctive and Declaratory Relief, ECF No. 118;
- Defendants' Motion to Dismiss the Second Amended Complaint, ECF No. 121;
- Plaintiff's Opposition to Defendants' Motion to Dismiss, ECF No. 124; and
- Defendants' Reply in Support of Motion to Dismiss the Second Amended Complaint, ECF No. 127.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues presented in the pending motion. *See* LCvR 7(f).

1

holding that Plaintiff FIRRP had shown a likelihood of success on the merits of its claim that attorney-access conditions at the Central Arizona Florence Correctional Complex ("Florence") were constitutionally deficient because they amounted to punishment. *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3118, ECF No. 79, 2023 WL 1438376 (D.D.C. Feb. 1, 2023) (CKK) ("PI Op."). The Court found that FIRRP had shown "a clear likelihood of success on its punitive-detention claim as to Florence" and that Defendants had "effectively blocked attorney access in toto" at the Florence facility. *Id.* at *16–17. However, the Court found that the other groups that had filed suit alongside FIRRP were not entitled to preliminary injunctions because those groups had not shown a likelihood of success on the merits of their own claims. *See id.* at *21. The Court also found that one Plaintiff lacked standing and dismissed its claims for lack of subject-matter jurisdiction. *See id.*; Order, ECF No. 78, at 1.

To remedy the likely harm that FIRRP established at the preliminary injunction stage, the Court ordered that Defendants must, within 60 days, either install "six private, confidential attorney-client visitation rooms in which counsel may utilize translation services and physically pass documents to and from their detainee client[s]" or "a ratio of 25 detainees to one telephone that block[s] all others from listening to legal calls while in progress." Order, ECF No. 78, at 1. The Court further ordered that, in making these changes, Defendants "shall otherwise comply with every provision" of the applicable national detention standards. *Id.*

After several extensions of time to comply with the Court's Order, Defendants notified the Court on August 30, 2023, that they had installed 24 soundproof virtual visitation booths at the Florence facility and implemented procedures for detainees to use these booths for private virtual meetings with attorneys. *See* Defs.' Cert. of Compliance, ECF No. 120.

However, FIRRP's success at the preliminary injunction stage is merely one step in the litigation. As the Supreme Court recently emphasized in *Lackey v. Stinnie*, such success is "a transient victory at the threshold of an action" that "is "tentative [in] character, in view of the continuation of the litigation to definitively resolve the controversy." 604 U.S. 192, 203 (2025) (quoting *Sole v. Wyner*, 551 U.S. 74, 78, 84 (2007)).

Before Defendants certified compliance with the Court's preliminary injunction, the Court severed the several Plaintiffs' cases from one another, retaining jurisdiction over FIRRP's case and transferring the cases of the other remaining Plaintiffs to other Districts. *See* Order, ECF No. 102. FIRRP then filed a Second Amended Complaint on August 11, 2023, removing factual allegations, claims, and parties that the Court had transferred or dismissed and adding factual allegations related to FIRRP's existing claims. Second Am. Compl., ECF No. 118; *see also* Notice of Consent to Filing of Second Am. Compl., ECF No. 117 (explaining changes implemented in the Second Amended Complaint). The Second Amended Complaint relates in extensive detail alleged deficiencies in access to communications between FIRRP and its detained clients. *See, e.g.,* Second Am. Compl., ¶¶ 6–13, 23–36, 47–149, 161–73.

Defendants have now moved to dismiss FIRRP's Second Amended Complaint. *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 121. FIRRP opposes the Motion. Pl's Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 124.

Defendants' Motion presents the Court with three central arguments.

*First*, Defendants argue that because detainees who are FIRRP's clients "[can] access counsel through several mediums and [that] Defendants abide by the appropriate performance-based national detention standards," the Second Amended Complaint fails to state a claim under either the Fifth Amendment Due Process Clause or the Rehabilitation Act. Defs.' Mot. at 1.

*Second*, Defendants argue that FIRRP "has not pled sufficient facts to establish third-party standing or to provide Defendants with sufficient notice about the claims." *Id.* Specifically, they argue that FIRRP has failed to "identify any client who was injured by Defendants' procedures in any actual proceeding or show that FIRRP clients are hindered in bringing their claims as first-party litigants." *Id.*

*Third*, and finally, Defendants contend that FIRRP's claims must be dismissed for lack of subject-matter jurisdiction and failure to state a claim because FIRPP "does not offer sworn statements from FIRRP counsel or any declarations from detained clients in support of its claims." *Id.* at 6.

Each of Defendants' contentions is predicated on alleged failures and inadequacies in pleading by FIRRP. The Court has carefully considered Defendants' arguments and FIRRP's factual allegations under Rule 12. Although the Second Amended Complaint does not provide full factual development of FIRRP's allegations, the allegations that it does contain are sufficient to establish FIRRP's standing and satisfy the pleading requirements of Rule 12(b)(6). Accordingly, the Court shall **DENY** Defendants' [121] Motion to Dismiss.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's complaint need not contain "'detailed factual allegations,'" but it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). When evaluating a motion to dismiss, a court must "'construe the complaint liberally,' granting the [plaintiff] 'the benefit of all inferences that can be derived from the facts alleged.'"

4

*Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1135 (D.C. Cir. 2023) (quoting *Zukerman v. USPS*, 961 F.3d 431, 436 (D.C. Cir. 2020)).

Although the court "is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record," *Covad Commc'ns Co. v. Revonet, Inc.*, 250 F.R.D. 14, 18 (D.D.C. 2008) (CKK), there is no requirement in the Federal Rules of Civil Procedure that a plaintiff attach declarations to the complaint. *Cf.* Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit."). A motion to dismiss under Rule 12(b)(6) for failure to state a claim "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). At this juncture, the court "do[es] not 'assess the truth of what is asserted or determine[e] whether a plaintiff has any evidence to back up what is in the complaint.'" *Id.* (second alteration in original) (quoting *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991)).

### III. ANALYSIS

Defendants advance three arguments for dismissal of the Second Amended Complaint: that FIRRP lacks third-party standing to raise attorney-access claims on behalf of its clients, that it fails to state a claim under the Fifth Amendment Due Process Clause, and that it fails to state a claim under the Rehabilitation Act. *See* Defs.' Mot., ECF No. 121. For the reasons that follow, the Court concludes that none of these arguments warrant dismissal. The Court shall therefore **DENY** Defendants' motion.

    **A.**    **The Second Amended Complaint adequately alleges third-party standing.**

Defendants first argue that the Court should dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because it lacks third-party standing to raise claims on behalf of its detained clients. This Court disagrees.

Third-party standing is a limited exception to the general principle that litigants must assert their own legal rights. *Cf. Warth v. Seldin*, 422 U.S. 490, 499 (1975). To proceed on the basis of third-party standing, a litigant must satisfy three requirements: (1) an "injury in fact" to the litigant's own interests, (2) "a close relation to the third party" whose rights are asserted, and (3) "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991); *see Kowalski v. Tesmer*, 543 U.S. at 130 (describing latter two requirements as "additional showings" on top of injury-in-fact requirement). The allegations in the Second Amended Complaint are sufficient to satisfy all three requirements in this case.

*First*, FIRRP has adequately alleged an injury-in-fact to its own interests. An injury-in-fact is "an invasion of a legally protected interest that is 'concrete and particularized,' 'actual or imminent,' and 'fairly traceable' to the challenged act of the defendant, and likely to be redressed by a favorable decision in the federal court." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An organizational Plaintiff can establish injury-in-fact by showing a sufficient "personal stake" in the outcome of the case, such as a direct impediment to its own activities. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379–80 (1982).

As this Court previously held, the barriers to attorney access that FIRRP has alleged are direct impediments to its mission, and FIRRP has organizational standing to challenge those barriers. *See* PI Op. at *7 (citing *Ukrainian-Am. Bar Ass'n v. Baker*, 893 F.2d 1374, 1378 (D.C. Cir. 1990)). The Second Amended Complaint relates in detail the injury-in-fact allegedly suffered by FIRRP in its representation of its detained clients. These extensive allegations in the Second Amended Complaint, combined with the Court's prior ruling, support a finding of injury-in-fact to FIRRP that is sufficient to satisfy the first prong of the third-party standing framework.

6

*Second*, FIRRP has adequately alleged "a close relation to" the third parties whose rights it intends to assert.  The third parties at issue here are immigration detainees at the Florence facility, and FIRRP alleges that it serves as counsel to some of these detainees.  *See, e.g.*, Second Am. Compl. ¶ 17 ("FIRRP currently represents clients detained at Florence who are harmed by Defendants' restrictions on access to counsel, and are otherwise impeded from protecting their own interests regarding attorney access.").  At the motion-to-dismiss stage, an allegation of an actual attorney-client relationship provides a sufficient basis to find that FIRRP has satisfied the second prong of the third-party standing inquiry.  *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989) (holding that a law firm could assert the rights of an existing client and noting that the attorney-client relationship "is one of special consequence"); *cf. Kowalski*, 543 U.S. at 131 (noting that an "*existing* attorney-client relationship is, of course, quite distinct from [a] *hypothetical* attorney-client relationship," and holding that the latter does not support third-party standing).

*Third*, and finally, the Second Amended Complaint adequately alleges "some hindrance to" FIRRPs' clients' "ability to protect [their] own interests."  *Powers*, 499 U.S. at 411.  The hindrance prong of the third-party standing test "does not require an absolute bar from suit, but 'some hindrance to the third party's ability to protect his or her own interests.'"  *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 (3d Cir. 2002) (quoting *Powers*, 499 U.S. at 411).  Hindrances justifying third-party standing can include "systemic practical challenges to pursuing one's own rights," "deterrence from filing suit due to privacy concerns," or "the 'imminent mootness' of a case."  *United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 274 (D.D.C. 2017) (JDB) (citing *Singleton v. Wulff*, 428 U.S. 106, 117 (1976)).  The Second Amended Complaint's allegations in this regard sufficiently plead facts supporting

7

hindrance to a third party's ability to protect his or her own interests. *See, e.g.*, Second Am. Compl. ¶¶ 30, 44, 46, 49–67, 73, 114, 125, 131.

Although Defendants suggest that FIRRP should have attached declarations from its clients to substantiate its assertion of third-party standing, this argument lacks merit. *See* Defs.' Mot. at 8–9, 13. Declarations are not required to establish standing or any other element of a claim at the motion-to-dismiss stage. *See Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1063 (D.C. Cir. 2019) (explaining that at the pleading stage, "a plaintiff is required only to state plausibly that each standing element exists"); *see also Browning*, 292 F.3d at 242 (noting that when evaluating a motion to dismiss, a court must "accept the plaintiff's factual allegations as true").

Accordingly, consistent with the Court's prior determination at the preliminary injunction stage, the Court finds that FIRRP has sufficiently established third-party standing to raise attorney-access claims on behalf of its detained clients. *See Powers*, 499 U.S. at 411.

### B. The Second Amended Complaint states a claim under the Fifth Amendment Due Process Clause.

Next, Defendants urge this Court to dismiss FIRRP's claim under the Fifth Amendment Due Process Clause. The Court declines to do so.

FIRRP's Fifth Amendment Due Process claim is founded in the allegation that Defendants have functionally denied FIRRP's clients detained at the Florence facility from accessing their attorneys without due justification. FIRRP supports this claim with myriad factual allegations regarding asserted deficiencies in client access. *See, e.g.*, Second Am. Compl. ¶¶ 30, 44, 46, 49-67, 73, 114, 125, 131.

The crux of Defendants' motion to dismiss is the argument that FIRRP's factual allegations of attorney-access barriers at Florence are "conclusory and do not reference a specific claim," and therefore fail to satisfy Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6), leaving Defendants

8

incapable of "formulat[ing] an informed defense." Defs.' Mot. at 14. Defendants also briefly argue that FIRRP's claims regarding the adequacy of in-person visitation must fail because the applicable national detention standards "do not impose a set number of visitation rooms." *Id.* at 15.

However, at the preliminary injunction stage, the Court already concluded that "FIRRP has shown a clear likelihood of success on its punitive-detention claim as to Florence." PI Op. at *16. The Court found that Defendants have "functionally stripped detainee-clients of access to their attorneys without due justification," and that their failure to provide confidential legal visitation and calls "effectively vitiates attorney-client access in its entirety." *Id.* at *16, *21.

Immigration detention is "undisputedly civil—*i.e.,* non-punitive in nature." *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.* (*SPLC I*), No. 18-cv-0760, 2020 WL 3265533, at *18 (D.D.C. June 17, 2020) (CKK) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 187 (D.D.C. 2015) (JEB)). Detained immigrants can establish unconstitutional punishment by showing that there is "an expressed intent to punish," or that the challenged conditions are either "not 'rationally related to a legitimate nonpunitive governmental purpose'" or "excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)); *see also SPLC I*, 2020 WL 3265533, at *18. To determine whether a challenged condition is not rationally related to a legitimate governmental purpose, the court considers "whether the conditions are 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *SPLC I*, 2020 WL 3265533, at *18 (quoting *Bell*, 441 U.S. at 539 n.20).

Where conditions at a detention facility are "not more considerate than those at pretrial and prison facilities," they "may be punitive in nature." *SPLC I*, 2020 WL 3265533, at *19 (quoting *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1064-65 (C.D. Cal. 2019)); *see also* PI Op. at *12 (explaining that detained immigrants establish a "'presumption' of punitive

detention" where conditions are "equal to or worse than conditions experienced by inmates convicted of a criminal offense"). Upon establishing such a presumption, "a makeshift burden then generally shifts to the defendant to establish that the conditions are rationally related to a non-punitive purpose and those conditions were not excessive." PI Op. at *12.

In its Second Amended Complaint, FIRRP has adequately alleged that attorney-access conditions at Florence are more restrictive than those in which prisoners serving criminal sentences are held, both at the very same facility and similarly situated facilities. *See, e.g.,* Second Am. Compl. ¶¶ 34, 55, 57, 78, 104.

For example, FIRRP alleges that there are no "private, confidential attorney-client visitation rooms where counsel can utilize interpretation services and physically pass documents to and from detained clients." Second Am. Compl. ¶ 48; *see also id.* ¶ 51 (attorneys cannot share legal documents in private visitation rooms due to plexiglass walls); *id.* ¶ 67 ("If attorneys elect to use the private meeting rooms at Florence, they cannot exchange documents or procure signatures without giving them to a guard, breaching confidentiality."). FIRRP also alleges that the only visitation area where attorneys can share documents is in a cafeteria-like setting, where there is no privacy. *Id.* ¶¶ 50–51 ("Legal visits at Florence occur primarily in a large, cafeteria-style visitation room, which does not provide any confidential space for attorneys and clients to communicate."). Similarly, FIRRP alleges that there is no video teleconferencing availability for confidential attorney-client communication, *id.* ¶ 103, and legal calls made from housing units are not private or confidential, *id.* ¶ 82. FIRRP alleges that, following the Court's preliminary injunction order, Defendants provided FIRRP clients with prepaid cell phones for attorney-client communication. *Id.* ¶ 69. However, FIRRP alleges that calls made using these cell phones are not always confidential, and they are often held in a hallway or in a cafeteria-style visitation room, where

10

FIRRP's clients can be overheard by others. *Id.* ¶ 76. Taken together, these factual allegations plausibly state a claim that the attorney-access conditions for immigration detainees at Florence are more restrictive than those applicable to prisoners serving criminal sentences. Those allegations are therefore sufficient to state a Fifth Amendment punitive-detention claim. *Accord* PI Op. at *16.

Defendants' arguments for dismissal maintain that FIRRP's factual allegations of attorney-access barriers at Florence are "conclusory and do not reference a specific claim," and fail to satisfy Rules 8(a)(2) and 12(b)(6), leaving Defendants incapable of "formulat[ing] an informed defense." Defs.' Mot. at 14. The breadth and detail of the allegations contradict that assertion. Nonetheless, Defendants parse the Second Amended Complaint and point to separate factual allegations that they contend do not violate the U.S. Constitution. *Id.* at 18–20 (citing lack of scheduled phone calls, burdensome pro bono call system, use of cellphones and printers, and lack of fax and email to exchange documents). However, although single restriction in isolation may not reach the level of a constitutional violation, the combination of many such restrictions may make the whole greater than the sum of the parts. The crux of the analysis of attorney-access restrictions must therefore be based on the "totality of these circumstances." PI Op. at *14 (quoting *SPLC I*, 2020 WL 3265533, at *24).

Defendants also suggest that FIRRP should have submitted declarations from attorneys or clients to substantiate its allegations regarding attorney-access conditions, but this Court disagrees. As the Court noted in response to Defendants' similar argument that FIRRP should have submitted declarations to show third-party standing, declarations are not required to establish any element of a claim at the motion-to-dismiss stage. *See Jeffries*, 928 F.3d at 1063; *Browning*, 292 F.3d at 242.

11

In this Court's view, the Second Amended Complaint's allegations are sufficient to meet the pleading requirements of Rules 8(a)(2) and 12(b)(6). To the extent that Defendants need additional specificity to construct their defense as the case proceeds, they can obtain the necessary information through the discovery process.

Defendants' additional argument that the "continued immigration detention of Plaintiff's clients pending removal cannot be described as punitive or excessive in relation to the legitimate government purpose of enforcing the immigration laws" is beside the point. Defs.' Mot. at 20. This lawsuit does not challenge the lawful detention of immigrants who have allegedly violated the immigration laws. It only seeks redress for the alleged violation of those detainees' rights to have unimpeded access to their counsel. For the reasons the Court has explained, the Second Amended Complaint states a valid substantive due process claim sufficient to overcome the motion to dismiss.

### C. The Second Amended Complaint states a claim under the Rehabilitation Act.

Finally, Defendants seek to dismiss FIRRP's claim under the Rehabilitation Act. Because the Second Amended Complaint plausibly alleges that the attorney-access conditions at the Florence facility functionally exclude otherwise-qualified detained individuals with disabilities from participating in a public program or activity, the Court shall not dismiss this claim.

In the Second Amended Complaint, FIRRP defines a category of individuals it describes as "Detained Clients with Disabilities." *See* Second Am. Compl. ¶¶ 107-09). FIRRP contends that these clients face particular barriers to attorney access "because Defendants impose certain barriers disproportionately on Detained Clients with Disabilities and because other barriers . . . have a disproportionate effect on Detained Clients with Disabilities." *Id.* ¶ 120.

To succeed on its Rehabilitation Act claim on behalf of these individuals, FIRRP must show that "(1) one or more of its [Detained Clients with Disabilities] are 'disabled' within the

12

meaning of the Rehabilitation Act; (2) one or more of [Detained Clients with Disabilities] are 'otherwise qualified' for a particular program or activity; (3) one or more of its [Detained Clients with Disabilities] were 'excluded from[] or denied the benefit of' that program or activity; and (4) 'the program or activity is carried out by a federal executive agency or with federal funds.'" PI Op. at *19 (citing *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008)). This inquiry is necessarily fact-intensive. *See Solomon v. Vilsack*, 763 F.3d 1, 10 (D.C. Cir. 2014); *Brown v. District of Columbia*, 928 F.3d 1070, 1090 (D.C. Cir. 2019) (Wilkins, J., concurring).

In the portion of the Court's preliminary injunction ruling that assessed a Rehabilitation Act claim by Plaintiff Americans for Immigration Justice ("AIJ"), the Court determined that it would have required specific factual evidence of "the specific identity of any clients' disabilities, how disabling their respective conditions are, the details of prior requests for accommodation(s), and the efforts (if any) by [the facility] to provide any such requested accommodation(s)" in order to evaluate AIJ's Rehabilitation Act claim at the preliminary injunction stage. PI Op. at *19.

FIRRP's Second Amended Complaint responds to the concerns that the Court previously expressed about AIJ's Rehabilitation Act claim by adding specific and detailed factual allegations regarding two of its clients that are detained at Florence, who FIRRP identifies as "Jose" and "Pedro." *See* Second Am. Compl. ¶¶ 30–33, 107–18 (describing Jose and Pedro's symptoms and potential diagnoses, the impediments to attorney access that the experienced, and the accommodation requests that FIRRP made on their behalf). These detailed factual allegations, taken together with FIRRP's legal allegations reciting the elements of a Rehabilitation Act claim, satisfy the requisite pleading standards.

Two challenges remain. Defendants seek dismissal of FIRRP's Rehabilitation Act claim on the grounds that: (1) it provides inadequate notice, and, (2) even drawing all factual inferences

in its favor, FIRRP cannot satisfy the third prong of the relevant test: that "one or more of its [two] purportedly disabled clients were 'excluded from or denied the benefit of' th[e] program or activity." *See* Defs.' Mot. at 24–25; Defs.' Reply at 16–18.

Defendants contend that the Second Amended Complaint "fails to provide sufficient information about specific individuals' diagnoses and mental disabilities, or the specific accommodations requested, the specific accommodations that were denied, and the basis for any denial." Defs.' Mot. at 24; Defs.' Reply at 16–18.

However, this contention lacks merit. The Second Amended Complaint alleges facts about specific individuals' diagnoses and mental disabilities. *See, e.g.*, Second Am. Compl. ¶ 112 (alleging that Jose's diagnoses of "Post-Traumatic Stress Disorder, Insomnia Disorder, Major Depressive Disorder with mood congruent psychotic features, and Unspecified Major Neurocognitive Disorder, [are] most likely due to Traumatic Brain Injury"), ¶ 116 (alleging that "Pedro's symptoms are so extreme that it was difficult to conduct a formal evaluation and obtain a clear diagnosis," but that "he experienced psychosis and suicidality"). It similarly contains detailed allegations of the "accommodation requests" that FIRRP has made. *See, e.g.*, *id.* ¶¶ 114, ¶ 118. The Second Amended Complaint also alleges that the specific accommodations were denied. *Id.* ¶¶ 114, 118. It further asserts that there appears to be no logically sound basis for these denials. *See, e.g.*, *id.* ¶ 110 (explaining that Defendant Immigration and Customs Enforcement ("ICE") established a directive requiring the type of attorney access for clients with disabilities that this case seeks), ¶ 114 (explaining that facility staff denied a request for private, scheduled legal phone calls "despite interest in such a system by those charged with telephonic visitation scheduling at Florence," and that facility staff "denied or attempted to deny" visits even when they were specifically approved by ICE beforehand). The Second Amended Complaint therefore gives

14

Defendants adequate notice of the essential Rehabilitation Act allegations. Contrary to Defendants' suggestion, there is no need for a declaration from a client or a client's medical provider at this stage of the proceeding. *See* Defs.' Mot. at 24; *Browning*, 292 F.3d at 242. To the extent that Defendants require further information to formulate their defense, discovery is the appropriate vehicle for obtaining that information.

Defendants' argument about lack of fair notice appears to misapprehend the fundamental difference between the pleading standards and standards of proof to be established at trial or in a motion for summary judgment. They contend that dismissal is appropriate because every fact necessary at a trial was not alleged, citing to cases that evidence a *complete* failure to allege facts supporting discrimination and characterizing the alleged facts as "legal conclusions." *Cf., e.g.*, *Savoy v. United States*, 962 F. Supp. 2d 1, 2 (D.D.C. 2013) (RC) ("Plaintiff mentions discrimination but he has neither alleged any acts of discrimination nor stated any facts suggesting that the IRS' garnishing of his wages was 'solely'—or even probably—due to his alleged mental disability."); *Donovan v. Powell*, 70 F. Supp. 3d 460, 464 (D.D.C. 2014) (CKK) ("The Court agrees that Plaintiff has provided only a recitation of legal conclusions without any factual support and, accordingly, Count II also should be dismissed for failure to state a claim upon which relief can be granted."); *Lucas v. District of Columbia*, 683 F. Supp. 2d 16, 20 (D.D.C. 2010) (EGS) (granting a motion to dismiss on a Rehabilitation Act claim in which the plaintiff's complaint included only conclusory, boilerplate language regarding "a policy, custom or practice" employed by the defendant). This effort to hold Plaintiff to a trial or summary-judgment standard of proof in the context of a motion to dismiss is unavailing.

    1.    <u>Meaningful Access</u>

The Rehabilitation Act requires government entities to provide "meaningful access" to government programs and benefits to people with disabilities. *Alexander v. Choate*, 469 U.S. 287,

15

301 (1985). This requirement is not a black-and-white proposition. The government can fall short of providing "meaningful access" even when people with disabilities have some ways of accessing the benefit. *See, e.g.*, *Am. Council of the Blind*, 525 F.3d 1256, 1259, 1269–70 (D.C. Cir. 2008) (holding that blind people lacked "meaningful access" to currency despite the government's argument that "availability of portable currency readers to identify denominations and credit cards as an alternative to cash" provided some access); *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 58 (D.D.C. 2020) (JEB) (holding that "[c]losed captioning and transcripts" of coronavirus briefings did not amount to "meaningful access" to these briefings for deaf people even though they provided some access); *Rogers v. Colo. Dep't of Corr.*, No. 16-cv-2733, 2019 WL 4464036, at *16 (D. Colo. Sept. 18, 2019) (holding that "the fact that TTYs retain some functionality" that provides deaf incarcerated people some ability to communicate "does not equate to meaningful access").

Defendants argue that because FIRRP has not alleged a total denial of access to its clients with disabilities, it cannot bring a Rehabilitation Act claim for denial of access to counsel on their behalf. *See* Defs.' Mot. at 25; Defs.' Reply at 15–22. However, FIRRP's Second Amended Complaint more than sufficiently alleges that the barriers to accessing counsel at Florence are high. *See, e.g.* Second Am. Compl. ¶ 113 ("at least five times over approximately two months, FCC denied FIRRP staff in-person visitation [with its client Jose] after they had already traveled to the facility"); ¶ 117 (14 of FIRRP staff's 20 attempts to visit Pedro in person "were denied by staff"); ¶ 113 (over a "five-month period" when Jose was in mental health observation, FIRRP staff succeeded in contacting him by phone only three times); ¶ 117 ("FIRRP was never able to communicate with Pedro [by phone] despite several attempts."); ¶ 123 (FIRRP attorney "was denied telephone and in-person visits for nearly a month with a Detained Client with a [D]isability,

16

who was under 'mental health watch,' during which time the client's case continued before the court."). FIRRP has also alleged that these access barriers can have serious repercussions, such as by causing "[i]nterruption[s] in communications [that] undermine the attorney-client relationship," and "concrete harm" to the ability of Plaintiff and Detained Clients with Disabilities "to communicate effectively about matters crucial to legal representation." *Id.* ¶¶ 121, 129.

"Meaningful access" is a "necessarily fact-specific" inquiry, and it is not appropriate for determination on a motion to dismiss in this case. *See Am. Council of the Blind*, 525 F.3d at 1267. Further development of the relevant facts will allow this issue to be resolved as this case proceeds.

    2.    <u>Reasonable Accommodations</u>

The Second Amended Complaint requests a wide variety of forms of accommodations to ensure client access. Defendants maintain that the requested accommodations are not reasonable and that dismissal should follow. *See* Defs.' Mot. at 28–35.

As with the prior question of whether the Government has upheld its obligation to provide "meaningful access," "whether a particular type of accommodation is reasonable is commonly a contextual and fact-specific inquiry." *Solomon*, 763 F.3d at 9. Accordingly, the "reasonableness of an accommodation under the [closely related ADA inquiry] is a question of fact appropriate for resolution by the trier of fact and not by the Court on a motion under Fed. R. Civ. P. 12(b)(6)." *Niece v. Fitzner*, 922 F. Supp. 1208, 1218 (E.D. Mich. 1996).

Defendants assert that they offer reasonable accommodations for in-person visitation, contrary to the allegations in the Second Amended Complaint. *Compare* Defs.' Mot. at 29–30, *and* Defs.' Reply at 16–18, *with* Second Am. Compl. ¶¶ 113–15, 117–18, 123, 128. Assessing the back-and-forth between the parties over what procedures are or are not in place and are or are not followed, or have sufficient other justification, is not a proper inquiry at the motion-to-dismiss stage, at which the Court must assume the truth of the Plaintiff's plausible factual allegations. The

17

Court finds that FIRRP has met its pleading burden. As this case proceeds, discovery will elucidate the critical facts, and any remaining disputes can be resolved by the trier of fact.

Defendants also contend that an accommodation request for video teleconference visits is moot because video visits "are now available through the virtual visitation booths" that Defendants installed in response to the preliminary injunction entered in this case. *See* Defs.' Mot. at 33. However, "a case does not become moot simply because the defendant has complied with [an] injunction." *Marshall v. Loc. Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Inc.*, 593 F.2d 1297, 1300 n.14 (D.C. Cir. 1979). "If there is a substantial likelihood that the defendant will revert back to the enjoined practice then the case is not moot." *Id.* Here, absent this Court's preliminary injunction order, the challenged denial of access to private attorney visitation could recur, for example through the closure or non-operation of the new videoconference booths. *See Phillips v. Mabus*, 894 F. Supp. 2d 71, 84-85 (D.D.C. 2012); *Gray Panthers Project Fund v. Thompson*, 273 F. Supp. 2d 32, 34-35 (D.D.C. 2002). Accordingly, FIRRP's claims regarding reasonable accommodations for video teleconference visits are not moot.

Defendants also dispute FIRRP's allegation that its clients with disabilities experience particular difficulties using the call-back message system at Florence. *Compare* Defs.' Mot. at 31 (maintaining that because the system worked on occasion, it is demonstrably workable), *with* Second Am. Compl. ¶¶ 125, 113-114, 117, 128. Again, the "reasonableness of an accommodation under the [closely related ADA inquiry] is a question of fact appropriate for resolution by the trier of fact and not by the Court on a motion under Fed. R. Civ. P. 12(b)(6)." *Niece*, 922 F. Supp. at 1218. FIRRP's claims regarding the call-back message system therefore shall not be dismissed.

18

FIRRP also contends that, after Defendants' policies resulted in multiple failed attempts to visit its client Pedro, it requested—and was refused—an accommodation where its staff would visit Pedro cell-side (*i.e.*, go to Pedro's isolation cell and conduct an interview through the door). Second Am. Compl. ¶ 118. Defendants respond that "Plaintiff does not explain the basis for the denial or if and how a 'cell-side' visit was a reasonable accommodation." Defs.' Mot. at 31. However, given the alleged prior failures of attorney access and the allegation that a cell-side visit was previously granted, *see* Second Am. Compl. ¶ 118, Plaintiff's failure to allege a specific basis for the denial does not warrant the dismissal of these allegations. Furthermore, Defendants explanations in its Reply Memorandum again would require the Court to engage in fact-finding between the versions of events. *See* Defs.' Reply at 16–18. That exercise would be inappropriate at this stage of the litigation.

Another subject for factual exploration, but not on a motion to dismiss, is the dispute over Plaintiff's request that Pedro be transferred to another nearby ICE facility. Defendants assert that transfer would not be a reasonable accommodation because of the "many factors" that "must be considered . . . including the safety and security of the detainee, other detainees, counsel, and the staff at both facilities." Defs.' Mot. at 34. Quite plainly, the consideration of evidence and expert testimony to resolve this issue is for another stage of the case.

Finally, the Second Amended Complaint adequately alleges specific harms that Defendants' attorney-access barriers impose on its clients with disabilities. *See, e.g.*, Second Am. Compl. ¶ 118 ("[Plaintiff was un]able to communicate with Pedro since the day of his last court date on January 17, 2023, until he was ultimately released from custody."), ¶ 121 ("Interruptions in communication can undermine the attorney-client relationship."), ¶ 123 ("Detained Clients with Disabilities may experience a total loss of access to counsel for weeks because of prolonged

19

periods in mental health segregation."), ¶ 130 ("In some cases, FIRRP attorneys have experienced periods—from days to months—where they could not access Detained Clients with Disabilities at all because of these barriers."). These allegations show the requisite harm that is necessary to state a Rehabilitation Act claim. *See, e.g., Choate*, 469 U.S. at 301; *Am. Council of the Blind*, 525 F.3d at 1259, 1269-70; *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d at 58; *Rogers*, 2019 WL 4464036, at *16.

\*   \*   \*

In sum, the Second Amended Complaint adequately alleges that FIRRP has third-party standing to advance attorney-access claims on behalf of its clients, states a claim under the Fifth Amendment's Due Process Clause, and states both "meaningful access" and "reasonable accommodation" claims under the Rehabilitation Act.

### IV. CONCLUSION

For the foregoing reasons, Defendants' [121] Motion to Dismiss the Second Amended Complaint is hereby **DENIED**.

**SO ORDERED.**

**Dated:** October 6, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

20