## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YAMIL LUNA GUTIERREZ, *et al.*,

        *Plaintiffs*,

        v.

KRISTI NOEM, *et al.*,

        *Defendants*.

Civil Action No. 25-1766 (SLS)

Judge Sparkle L. Sooknanan

### <u>MEMORANDUM OPINION</u>

This case challenges the legality of the government's recent practice of holding immigration detainees at the United States Naval Station at Guantanamo Bay, Cuba. The Named Plaintiffs are two Nicaraguan nationals who were held at Guantanamo before they were ultimately removed to Nicaragua. They contend that their detention at Guantanamo violated the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. The Named Plaintiffs moved to certify this case as a class action, seeking to represent a class of immigration detainees originally apprehended in the United States who are or will be held at Guantanamo. The Court denies that motion with respect to the Named Plaintiffs' habeas claim, but otherwise grants it with a modified class definition. The Court certifies a class of all immigration detainees originally apprehended and detained in the United States who have been ordered removed, except those ordered removed pursuant to 8 U.S.C. § 1225, and who are, or will be, held at Naval Station Guantanamo Bay, Cuba.

## BACKGROUND

### A.     Factual Background

The United States Naval Station, Guantanamo Bay "is a U.S. military base in Guantánamo Bay, Cuba. It is the site of a U.S. military prison at which the U.S. government has asserted law-of-war detention authority since 2001." Compl. ¶ 22, ECF No. 1. On one side of the base "is a maximum-security prison that houses the government's military detainees and includes what is known as 'Camp 6'"; on the other side of the base "is the Migrant Operations Center . . . , where migrants interdicted on the high seas have traditionally been held." Compl. ¶ 45.[1]

In January 2025, President Donald J. Trump directed the Secretaries of Defense and Homeland Security to expand operations at Guantanamo to "provide additional detention space for high-priority criminal aliens unlawfully present in the United States," up to 30,000 people. Compl. ¶ 24. Since then, over 500 immigration detainees have been held at Guantanamo. The Named Plaintiffs allege that detention at Guantanamo involves conditions and restrictions unlike immigration detention in the United States, including the presence of military guards, inadequate food, and insufficient sanitation. *See, e.g.*, Compl. ¶¶ 45, 47–51.

At Camp 6, the facility previously used to detain law-of-war detainees, immigration detainees are allegedly "permitted only one hour per day of recreation in an indoor cage." Compl. ¶ 7. Guards have also allegedly physically harmed detainees and withheld water from them as a form of punishment. Compl. ¶ 46. Those who "complain[] about conditions or mistreatment to officers have been tied to restraint chairs for hours." *Id.*

---

[1] The Court provides a more fulsome factual background in the contemporaneously filed Memorandum Opinion resolving the Defendants' Motion to Dismiss. ECF No. 53.

At the Migrant Operations Center, immigration detainees are housed "in small, barracks-style units, with several people held in each room." Compl. ¶ 47. The Named Plaintiffs allege that they are always confined to their units, except for one hour a day "when they are released into a small recreation pen, surrounded by armed military personnel and guard dogs." *Id.* When they return from recreation, they are "invasively searched," "including a pat down of their genitals." *Id.* Guards have allegedly insulted and taunted the detainees and have threatened to shoot them. *Id.*

The Named Plaintiffs are Yamil Luna Gutierrez and Rafael Angel Lopez Ocon, two Nicaraguan nationals. Compl. ¶¶ 12–13. Both were initially held at facilities in the United States. *Id.* And both were transferred to Guantanamo in late May 2025 and were detained there when they filed their Complaint and Motion for Class Certification. *See* Decl. Yamil Luna Gutierrez (Suppl. Gutierrez Decl.) ¶ 3, ECF No. 30-1; Decl. Rafael Angel Lopez Ocon (Suppl. Ocon Decl.) ¶ 3, ECF No. 30-2. But before the Defendants filed their Opposition to the Motion for Class Certification, Mr. Luna Gutierrez and Mr. Lopez Ocon were moved from Guantanamo. *See* Suppl. Gutierrez Decl. ¶ 3; Suppl. Ocon Decl. ¶ 3. They seek to represent a class of other immigration detainees who are held or will be held at Guantanamo. Suppl. Gutierrez Decl. ¶ 11; Suppl. Ocon Decl. ¶ 11.

### B.    Procedural Background

In June 2025, the Named Plaintiffs sued several officials and agencies tasked with overseeing the United States' immigration system. *See generally* Compl. Their Complaint alleges that their detention at Guantanamo violated the Administrative Procedure Act (APA), the Due Process Clause of the Fifth Amendment, and their "right to habeas corpus." Compl. ¶¶ 62–75. That same day, they filed a Motion for Class Certification and Appointment of Class Counsel.

ECF No. 4. On August 4, 2025, the Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 29. On September 9, 2025, the Court ordered supplemental briefing related to both motions. *See* Min. Order (Sept. 9, 2025); Defs.' Suppl. Br., ECF No. 40; Pls.' Suppl. Br., ECF No. 41. The Court held a hearing related to both motions on October 23, 2025. The Motion for Class Certification is fully briefed and ripe for review. *See* Opp'n, ECF No. 28; Reply, ECF No. 30.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class actions, and class certification may only be granted if a plaintiff shows that all its requirements are met. *N.S. v. Hughes*, 335 F.R.D. 337, 343–44 (D.D.C. 2020), *modified on other grounds sub nom. N.S. v. Dixon*, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). Rule 23(a) "contains four threshold requirements" for certification. *Id.* They are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "If the action satisfies these prerequisites, plaintiffs must then demonstrate that their proposed class falls into one of the categories of class actions listed in Rule 23(b)." *DL v. District of Columbia*, 860 F.3d 713, 723 (D.C. Cir. 2017). The relevant category in this case is Rule 23(b)(2), which addresses a situation where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2). A plaintiff must satisfy Rule 23 by a preponderance of the evidence. *Molock v. Whole Foods Market, Inc.*, No. 16-cv-2483, 2025 WL 1913231, at *7 (D.D.C. Mar. 10, 2025).

## DISCUSSION

The Court first addresses whether this case is moot. Then it turns to the Named Plaintiffs' Motion for Class Certification of their APA, constitutional, and habeas claims.

### A.    Mootness

The Defendants argue that the Named Plaintiffs' claims are moot because they were transferred out of Guantanamo after they filed their Motion for Class Certification. Opp'n at 8. The Court disagrees.[2]

"Article III of the Constitution limits federal courts to deciding 'actual, ongoing controversies,' meaning that courts have no jurisdiction over claims that are moot." *N.S.*, 335 F.R.D. at 344 (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002) (quoting *Clarke v. United States*, 915 F.2d 699, 700–01 (D.C. Cir. 1990)). For class actions, the mootness rule is that "[f]or every claim, at least one named plaintiff must keep her individual dispute live until certification, or else the class action based on that claim generally becomes moot." *J.D. v. Azar*, 925 F.3d 1291, 1307 (D.C. Cir. 2019).

---

[2] In their Opposition, the Defendants present this argument as a reason for the Court to deny class certification, rather than as a jurisdictional defect. *See* Opp'n at 8, 12. But the Defendants have also moved to dismiss this case due to mootness under Federal Rule of Civil Procedure 12(b)(1). Mot. Dismiss at 7, ECF No. 29. Because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," the Court considers mootness at the earliest possible point in this case. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). And the Court's conclusion here that this case is not moot resolves the Defendants' mootness argument raised in their Motion to Dismiss. *See* Mem. Op. at 9 n.2, ECF No. 53.

But the Supreme Court has also recognized a mootness exception unique to the class action context. *See United States v. Sanchez-Gomez*, 584 U.S. 381, 387–88 (2018). The exception is based on a recognition that "[s]ome claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980)). "[T]he class certification decision in inherently transitory settings is simply 'related back' to the time of the filing of the complaint with class allegations, at which point the named plaintiff's claims were live." 1 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 2:13 (6th ed. Dec. 2025 Update); *McLaughlin*, 500 U.S. at 52 ("In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." (citations omitted)). This exception commonly arises "in the immigration detention context." 1 Rubenstein, Newberg & Rubenstein on Class Actions § 2:13.

For the "inherently transitory" exception to apply, the party opposing mootness must prove that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class, and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Ramirez v. ICE*, 338 F. Supp. 3d 1, 35 (D.D.C. 2018) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)); *accord J.D.*, 925 F.3d at 1311; *see id.* at 1307 ("The party seeking jurisdictional dismissal bears the initial heavy burden of establishing mootness, but the opposing party bears the burden of proving an exception applies.").

This case is in the heartland of the inherently transitory exception. The average length of detention for immigration detainees at Guantanamo is *twelve days*. Decl. Fransisco Madrigal ¶ 6,

ECF No. 28-3. One of the Named Plaintiffs was held at Guantanamo for thirty-seven days, and the other for thirteen days. *See* Suppl. Gutierrez Decl. ¶ 3; Suppl. Ocon Decl. ¶ 3. Both Named Plaintiffs were moved from Guantanamo before the Defendants could even respond to the Motion for Class Certification. *See* Suppl. Gutierrez Decl. ¶ 3; Suppl. Ocon Decl. ¶ 3. Periods of this duration are too short for courts to "'reasonably be expected to rule' on certification." *J.D.*, 925 F.3d at 1309 (quoting *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1978)); *see, e.g.*, *id.* at 1311 (average custody term of forty-one to ninety days); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 183 (D.D.C. 2015) (period of detention is "weeks or months"); *Ramirez*, 338 F. Supp. 3d at 35 (same).

Disputing this prong, the Defendants identify two other cases "filed by the same team of attorneys" in this District and assert that "the overall litigation history" of these cases "shows that there has been time to adjudicate a request for class relief with plaintiffs whose claims are not moot." Opp'n at 9 (first citing *Las Americas v. Noem*, No. 25-cv-418 (D.D.C.); and then citing *Espinoza Escalona v. Noem*, No. 25-cv-604 (D.D.C.)). This argument is fundamentally flawed in at least two respects. First, the relation-back concept underlying the inherently transitory exception contemplates that a certification decision might "'relate back' to the filing of the complaint," not relate back to the filing of a complaint in a different case brought by different plaintiffs. *See Basel v. Knebel*, 551 F.2d 395, 397 n.1 (D.C. Cir. 1977). Thus, the relevance of other cases to the mootness analysis is questionable, even if those cases present similar claims. Second, the "litigation history" of these cases in fact *supports* that "it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class." *Ramirez*, 338 F. Supp. 3d at 35 (quoting *Olson*, 594 F.3d at 582). One of the cases was voluntarily dismissed because the named plaintiffs were moved from Guantanamo and "no longer wish[ed] to continue litigating the case." Notice Voluntary Dismissal at 1, *Espinoza Escalona v. Noem*,

No. 25-cv-604, ECF No. 34 (D.D.C. May 22, 2025). And in the other, the government is seeking dismissal on mootness grounds because the named plaintiffs were moved from Guantanamo before the court resolved the pending class certification motion. *See* Mot. Dismiss at 8, *Las Americas v. Noem*, No. 25-cv-418, ECF No. 43 (D.D.C. June 16, 2025). So even considering the other cases, they support the Named Plaintiffs' claim that the challenged detention is too short to permit the Court to make a certification decision while a potential class representative retains a live claim.

On the second prong, the Court is convinced that "there will be a constant class of persons suffering the deprivation complained of in the complaint." *Ramirez*, 338 F. Supp. 3d at 35 (quoting *Olson*, 594 F.3d at 582). As discussed further below, news reports referenced by the Named Plaintiffs indicate that hundreds of immigration detainees have been held at Guantanamo since the beginning of 2025.[3] Mot. at 6–7; *see also* Madrigal Decl. ¶ 5 (thirty-seven immigration detainees held at Guantanamo in late July 2025). Another news report referenced by the Named Plaintiffs states that in July 2025, the government planned to "double the capacity at Guantánamo to 400 people."[4] Reply at 4. And importantly, the Defendants do not dispute that they are currently holding immigration detainees at Guantanamo and that they intend to continue doing so. Mots. Hr'g Tr. 45:2–4, ECF No. 50 ("[THE COURT:] You are not saying that you don't intend to house

---

[3] Carol Rosenburg, *Guantánamo Migrant Operation Has Held Fewer Than 500 Detainees, and None in Tents*, N.Y. Times (May 5, 2025), https://www.nytimes.com/2025/05/05/us/politics/guantanamo-migrants-trump.html [https://perma.cc/4SF3-SRCY]; Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There*, CBS News (Apr. 17, 2025), https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records/ [https://perma.cc/3ZCG-CFDA]; Ted Hesson, *Migrant Detentions at Guantanamo Bay Cost $100,000 per Person Daily, Senator Says*, Reuters (May 20, 2025), https://www.reuters.com/world/us/trump-migrant-detentions-guantanamo-bay-cost-100000-per-person-daily-senator-2025-05-20/ [https://perma.cc/ZKX9-ZZHS].

[4] Ximena Bustillo & Tom Bowman, *Military Bases in New Jersey and Indiana Will Be Expanded to Detain Immigrants*, NPR (July 11, 2025), https://www.npr.org/2025/07/21/nx-s1-5475109/immigration-detention-military-bases [https://perma.cc/2YXS-T4MZ].

immigration detainees at Guantanamo, correct? [DEFENDANTS' COUNSEL:] Absolutely not."). This record assures the Court that "the alleged violations are pervasive and ongoing," "demonstrat[ing] that the alleged violations will recur often enough for members of the proposed class to retain live claims throughout the litigation." *Givens v. Bowser*, 111 F.4th 117, 121 (D.C. Cir. 2024).

The Defendants insist that this is insufficient because "[t]here have been times since January 2025 when there were no aliens detained at [Guantanamo]." Madrigal Decl. ¶ 4; Opp'n at 11. And at the motions hearing, counsel for the Defendants added that there was "nobody currently at Guantanamo" because there was an incoming hurricane. Mots. Hr'g Tr. 43:11–13. According to the Defendants, this shows that no live controversy will exist throughout this case. Opp'n at 11.

But a challenge to an ongoing policy does not fall outside the inherently transitory exception simply because there has been one instant when the challenged policy was not being applied. *See N.S.*, 335 F.R.D. at 345. A rule that harsh would run counter to a basic tenant of the exception—that it is meant to accommodate situations where "otherwise the issue would evade review." *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013) ("The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course."); *N.S.*, 335 F.R.D. at 345 ("To hold that this claim is moot would thus be to hold that the actions of the USMS with respect to civil immigration arrests are entirely unreviewable. Such an outcome is unacceptable."). It would also invite strategic forbearance from defendants.

And in this case, the inherently transitory exception is buttressed by another mootness doctrine: voluntary cessation. Under that doctrine, "a defendant's voluntary cessation of a

challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up). Here, where periods of no immigration detainees being present at Guantanamo are entirely the result of the Defendants' choices, the voluntary cessation doctrine would require them to "prove no reasonable expectation remains that [they] will return to [their] old ways." *Id.* (cleaned up). But of course, the Defendants have asserted the opposite—that they will "[a]bsolutely not" stop holding immigration detainees at Guantanamo. Mots. Hr'g Tr. 45:4. Thus, the Court concludes that the Defendants' proffered instances of forbearance from immigration detention at Guantanamo are not enough to stop the inherently transitory exception from relating this Court's decision back to the filing of the Complaint. *J.D.*, 925 F.3d at 1308. If the Defendants want to argue that its occasional forbearance otherwise moots the case, it is welcome to shoulder its "formidable burden" under the voluntary cessation doctrine. *Fikre*, 601 U.S. at 241 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).[5]

In sum, the inherently transitory exception "means that as long as [the Named Plaintiffs are] able to achieve class certification, [their] claim[s] will not be dismissed as moot." *N.S.*, 335 F.R.D. at 345. And for the reasons below, the Court finds that class certification is warranted.

### B.    Class Certification on APA and Constitutional Claims

Turning to class certification, the Named Plaintiffs move to certify a class under Federal Rule of Civil Procedure 23(b)(2). Mot. at 2. They propose the following class definition:

---

[5] The Defendants also argue that there will not be a constant class of persons suffering alleged injuries relating to conditions at Guantanamo because conditions are improving over time there, meaning that the Plaintiffs' concerns about conditions may be resolved during this litigation. Opp'n at 10–11. Even assuming this goes to mootness rather than the merits, it would also be properly assessed under the voluntary cessation doctrine, not the inherently transitory exception. *See FBI v. Fikre*, 601 U.S. 234, 241 (2024). And the Defendants have not made any attempt to satisfy their significant burden under that doctrine.

> All immigration detainees originally apprehended and detained in the United
> States, and who are, or will be held at Naval Station Guantánamo Bay, Cuba.

*Id.* Because the Rule 23 analysis is similar for the Named Plaintiffs' APA and constitutional claims, the Court discusses them together. *See Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir. 2022) ("Certification may be appropriate as to some of the class's claims but not others."). The Court first addresses the requirements in Rule 23(a) and Rule 23(b)(2), then it discusses the class definition that it certifies.

### 1.    Rule 23(a)

A plaintiff seeking to certify a class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Molock*, 2025 WL 1913231, at *7. "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

### a.  Numerosity

"A proposed class must be 'so numerous that joinder of all members is impracticable.'" *Morgan v. District of Columbia*, No. 10-cv-1511, 2025 WL 2255228, at *3 (D.D.C. Aug. 7, 2025) (quoting Fed. R. Civ. P. 23(a)(1)). "Impracticability of joinder means only that it is difficult or inconvenient to join all class members, not that it is impossible to do so." *Id.* (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015)). "[C]ourts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007).

The Named Plaintiffs point to news reports in support of the numerosity requirement. Mot. at 6–7. These reports reflect that as of May 5, 2025, 497 immigration detainees had been held at

Guantanamo;[6] on April 17, 2025, forty-two immigration detainees were being held there;[7] and on May 20, 2025, that number was approximately seventy.[8] A declaration filed by the Defendants states that thirty-seven immigration detainees were held at Guantanamo in late July 2025. Madrigal Decl. ¶ 5. This provides a sufficient basis for the Court to infer that the class contains more than forty individuals, which is presumptively too numerous to make joinder practicable. *See Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 52 (D.D.C. 2021) ("[T]he Court may . . . 'draw reasonable inferences from the facts presented to find the requisite numerosity.'" (quoting *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015))); *id.* at 53 ("[A] class with forty identifiable members is <u>presumed</u> to satisfy Rule 23(a)(1)[.]").

That presumption is confirmed in light of the "financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Id.* (quoting *N.S.*, 335 F.R.D. at 352). The Named Plaintiffs' proposed class includes individuals who "will be held" at Guantanamo, and the D.C. Circuit has explained that "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" *J.D.*, 925 F.3d at 1322 (quoting 1 Rubenstein, Newberg & Rubenstein on Class Actions § 3:15). Further, as mentioned, the average length of stay for immigration detainees at Guantanamo is twelve days, Madrigal Decl. ¶ 6, meaning that the class members' detention is "essentially unreviewable without a class action, as no detainee could litigate his or her claim" that quickly, *N.S.*, 335 F.R.D. at 353. "This makes joinder not just impracticable, but impossible—without a class action, there

---

[6] Rosenburg, *Guantánamo Migrant Operation Has Held Fewer Than 500 Detainees*, *supra* note 2.

[7] Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo*, *supra* note 2.

[8] Hesson, *Migrant Detentions at Guantanamo Bay Cost $100,000 per Person Daily*, *supra* note 2.

is no lawsuit at all, and the [Defendants] could continue [their allegedly] unlawful practice indefinitely without ever facing judicial review." *Id.* The Court thus concludes that the Named Plaintiffs have satisfied Rule 23(a)(1).

### b. Commonality

"Commonality requires that the plaintiff raise claims which rest on 'questions of law or fact common to the class.'" *Taylor*, 241 F.R.D. at 37 (quoting Fed. R. Civ. P. 23(a)(2)). The plaintiff must "demonstrate that the class members 'have suffered the same injury' and that their claims turn on a 'common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in a single stroke.'" *Morgan*, 2025 WL 2255228, at *4 (quoting *Wal-Mart*, 564 U.S. at 349–50). "Even a single common question will do, but the question must be more specific than simply asking whether the plaintiffs 'have all suffered a violation of the same provision of law' because the same provision of law 'can be violated in many different ways.'" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). So "plaintiffs must bridge the 'gap' between individual claims of harm and the 'existence of a class of persons who have suffered the same injury as that individual.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 352–53). "Where plaintiffs allege widespread wrongdoing by a defendant[,] a uniform policy or practice that affects all class members bridges the gap." *Id.* (cleaned up).

The Court is convinced that this requirement is also satisfied. To begin, the allegedly unlawful policy of holding immigration detainees at Guantanamo is "a uniform policy or practice that affects all class members." *Id.* And testing that policy's legality will require answering "'common contention[s]' that '[are] capable of classwide resolution.'" *Morgan*, 2025 WL 2255228, at *4 (quoting *Wal-Mart*, 564 U.S. at 349–50). To resolve the Plaintiffs' APA claims,

the Court would have to answer whether the Defendants lack statutory authority to detain the class at Guantanamo and whether the Defendants' decision to do so was arbitrary and capricious. Answering those questions yes or no "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

As the Named Plaintiffs observe, the Defendants do not articulate a reason why the Plaintiffs' APA claims fail to satisfy Rule 23(a)(2). *See* Reply at 11; Opp'n at 26–27; *see also Simpson*, 23 F.4th at 713 ("Certification may be appropriate as to some of the class's claims but not others."). Instead, the Defendants focus entirely on the Plaintiffs' due process claims. Opp'n at 26–30. But for that claim, too, a classwide proceeding has the capacity "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). That claim is predicated on the Named Plaintiffs' allegation that the class's detention at Guantanamo impermissibly "constitutes punishment." *Block v. Rutherford*, 468 U.S. 576, 583 (1984); *see, e.g.*, Compl. ¶ 71. Resolving that claim will require this Court to evaluate whether the Defendants' decision to detain the class at Guantanamo was "taken with an 'expressed intent to punish,'" or in the absence of an intent to punish, whether it was "rationally related to a legitimate nonpunitive government purpose" or "appear[ed] excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538, 561 (1979)); *see also Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("[A] court may take a peek at the merits before certifying a class, . . . limited to those aspects of the merits that affect the decisions essential under Rule 23."). The Court's answers to those questions will be common to the class.

The Defendants raise two arguments to the contrary. First, the Defendants observe that the immigration detainees held at Guantanamo are housed at two facilities, Camp 6 and the Migrant

Operations Center. Opp'n at 28. In the Defendants' view, these facilities differ "in ways that are significant to Plaintiffs' claims." *Id.* The Court disagrees that the Named Plaintiffs' due process claim cannot proceed on a classwide basis simply because the class includes individuals detained at both Camp 6 and the Migrant Operations Center. The Complaint's lead due process theory is that the Defendants violated the Due Process Clause by deciding to hold immigration detainees at Guantanamo with an expressed intent to punish. *See* Compl. ¶ 71; Mots. Hr'g Tr. 60:8–11; *Kingsley*, 576 U.S. at 398. Pursuant to that theory, the Named Plaintiffs aver that the use of any facility at Guantanamo for immigration detention constitutes unconstitutional punishment—which does not require parsing the conditions at Camp 6 versus the Migrant Operations Center. And resolving that contention is enough for commonality. *Thorpe*, 303 F.R.D. at 145 ("Even a single common question will do[.]").

It is true that the Named Plaintiffs offer an alternative theory to support their due process claim: that the conditions at Guantanamo themselves constitute unconstitutional punishment. *See* Compl. ¶ 72; Mots. Hr'g Tr. 60:8–11. Yet the Defendants' argument fails with respect to this theory too. "[F]actual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Nio v. DHS*, 323 F.R.D. 28, 32 (D.D.C. 2017) (cleaned up). On this theory, the Court will have to evaluate whether the conditions for immigration detainees at Guantanamo are "rationally related to a legitimate nonpunitive government purpose." *Kingsley*, 576 U.S. at 398. Nothing in the record indicates that such a purpose differs between Camp 6 and the Migrant Operations Center. And when the Court goes on to consider whether the conditions at Guantanamo "appear excessive in relation to that purpose," *id.*, it seems that many of the conditions of detention are the same across Camp 6 and the Migrant Operations Center, *see, e.g.*, Madrigal Decl. ¶¶ 32

(access to medical treatment and entertainment materials), 34 (air conditioning), 42 (absence of restraints within housing units), 44 (access to food), 48 (contact with counsel); Compl. ¶¶ 45 (presence of military personnel), 48 (access to food), 49 (possessions and cleanliness), 51 (lack of information). At this point, the Court sees no basis to conclude that differences between those facilities are the kind that "have the potential to impede the generation of common answers." *See Wal-Mart*, 564 U.S. at 350 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. at 131–32). Thus, even if the Named Plaintiffs' first theory is insufficient to itself establish commonality for the due process claim, there are also common answers to be generated on this second theory.[9]

Second, the Defendants suggest that due process claims are *always* inappropriate for classwide resolution. Opp'n at 29. But although procedural protections required by the Due Process Clause depend on what "the particular situation demands," *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)), the Defendants cite nothing indicating that the Clause's substantive protection against punishment differs among the class members here. Similarly unpersuasive is the Defendants' suggestion that immigration detainees may not be able to claim a due process violation as might another litigant. Opp'n at 29. Even assuming that is true, *but see Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))), the Defendants identify nothing indicating that due process protections vary among *the members of this class*. The Court fails to see how due process accounting for the immigration context says anything about

---

[9] If, as this litigation progresses, it turns out that differentiating between Camp 6 and the Migrant Operations Center will facilitate efficient resolution of the Plaintiffs' due process claims, this Court can certify subclasses. *See* Fed. R. Civ. P. 23(c)(5).

whether the Court will be able to "resolve an issue that is central to the validity of" the Plaintiffs' due process claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. The Court therefore concludes that the Named Plaintiffs have satisfied Rule 23(a)(2).

### c.  Typicality

"Rule 23(a)(3)'s typicality requirement is met when 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Morgan*, 2025 WL 2255228, at *6. "While commonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Id.* (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003)). It "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Thorpe*, 303 F.R.D. at 147 (quoting *Wal-Mart*, 564 U.S. at 349). "'The facts and claims of each class member do not have to be identical to support a finding of typicality,' . . . but the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (first quoting *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 338 (D.D.C. 2007); and then quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)). The requirement is satisfied "when the plaintiffs' claims arise from the same course of conduct, series o[f] events, or legal theories of other class members." *Morgan*, 2025 WL 2255228, at *6 (quoting *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017)).

Here, the Named Plaintiffs were detained at Guantanamo pursuant to the same policy as the rest of the class. *See* Decl. Yamil Luna Gutierrez (Gutierrez Decl.) ¶¶ 3–11, ECF No. 4-1 (describing detention at Guantanamo); Decl. Rafael Angel Lopez Ocon (Ocon Decl.) ¶¶ 3–10, ECF No. 4-2 (same). The Defendants do not dispute that this is sufficient to establish that the class

representatives' claims "arise from the same course of conduct, series o[f] events, or legal theories of other class members." *Morgan*, 2025 WL 2255228, at *6 (quoting *Hoyte*, 325 F.R.D. at 490). Rule 23(a)(3) is thus satisfied.

### d. Adequacy

"The fourth Rule 23(a) requirement . . . is that the 'representative parties will fairly and adequately protect the interests of the class.'" *Thorpe*, 303 F.R.D. at 150 (quoting Fed. R. Civ. P. 23(a)(4)). It "imposes two criteria on plaintiffs seeking to represent the class: '(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Hoyte*, 325 F.R.D. at 490 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). The purpose of the adequacy requirement is "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Still, "[t]his is not a stringent requirement, as a conflict 'must be fundamental' and 'go to the heart of the litigation' in order to preclude certification." *Id.* at 491 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003)). Other than one caveat discussed below, the Court concludes that both the proposed class counsel and the Named Plaintiffs will fairly and adequately represent the class.

### i. Class Counsel

"The adequacy heading . . . factors in competency and conflicts of class counsel." *Amchem Prods.*, 521 U.S. at 626 n.20. In determining the adequacy of class counsel, the Court considers: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that

counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The ultimate question is whether counsel can "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

Here, the Named Plaintiffs are represented by "well-respected public interest organizations"—the American Civil Liberties Union, the Center for Constitutional Rights, and the International Refugee Assistance Project. *See Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 269 (D.D.C. 2025). "Class counsel have decades of civil litigation experience, including in class actions" involving civil rights and immigration issues. *See id.*; Decl. Noor Zafar ¶¶ 3–5, 6–9, 11–16, ECF No. 4-3; Decl. Scott Michelman ¶¶ 5–11, ECF No. 4-4. Counsel have led efforts to challenge immigration detention at Guantanamo, and the Court has no concerns about the resources that counsel will commit to representing the class. Given their extensive experience and knowledge of the applicable law, the Court concludes that counsel for the Named Plaintiffs will fairly and adequately represent the class. *See* Fed. R. Civ. P. 23(a)(4), (g).

### ii.    The Named Plaintiffs

Turning to the Named Plaintiffs themselves, the Named Plaintiffs have submitted declarations showing that they will prosecute this action in the class's interest. They state that they are participating in this lawsuit because they wish to protect other noncitizens who are detained at Guantanamo. Suppl. Gutierrez Decl. ¶ 5; Suppl. Ocon Decl. ¶ 10. And they say that they believe it is important to prevent that detention. Suppl. Gutierrez Decl. ¶ 11; Suppl. Ocon Decl. ¶ 16.

The Defendants raise two objections to the adequacy of the Named Plaintiffs as class representatives. First, the Defendants contend that the record insufficiently shows that the Named Plaintiffs comprehend their representational responsibilities. Opp'n at 30. Perhaps to address that concern, the Named Plaintiffs' supplemental declarations include attestations that they understand

the nature of their role and duties. *See* Suppl. Gutierrez Decl. ¶¶ 6–11; Suppl. Ocon Decl. ¶¶ 11–16. The Court is satisfied that the Named Plaintiffs have expressed a sufficient understanding of and commitment to their role as class representatives. *See* 1 Rubenstein, Newberg & Rubenstein on Class Actions § 3:67 ("Adequacy is satisfied . . . if the plaintiff has some rudimentary knowledge of her role as a class representative and is committed to serving in that role in litigation."); *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 211 (D.D.C. 2018) (sufficient that "the named plaintiffs have all attested that their lawyers informed them of the responsibilities of a class representative and that they are willing to protect the class's interests, and their declarations demonstrate an awareness of the facts of this case").

Second, the Defendants raise adequacy concerns because the government has executed the Named Plaintiffs' removal orders. Opp'n at 30–31. Specifically, the Defendants question whether the Named Plaintiffs maintain the capability to communicate with their counsel and participate in this litigation, and indeed whether they remain interested in this litigation at all. But these concerns, too, have been dispelled by the Named Plaintiffs' supplemental declarations. *See, e.g.*, Suppl. Gutierrez Decl. ¶¶ 10–11; Suppl. Ocon Decl. ¶¶ 15–16; *see also J.D.*, 925 F.3d at 1313 ("[P]laintiffs with moot claims may adequately represent a class." (quoting *DL*, 860 F.3d at 726)). The Court is satisfied that, in general, the Named Plaintiffs are adequate representatives.

### iii.    Expedited Removal Orders

The caveat, however, is with respect to individuals with expedited removal orders. Under the Immigration and Nationality Act (INA), there are two ways that a noncitizen can be removed from the United States. The first is through "[t]he usual removal process," which "involves an evidentiary hearing before an immigration judge." *DHS v. Thuraissigiam*, 591 U.S. 103, 108

(2020); *see* 8 U.S.C. § 1229a. The second is so-called "expedited removal," which involves (as the name suggests) a more summary process. *Thuraissigiam*, 591 U.S. at 108–09; *see* 8 U.S.C. § 1225.

This is relevant because judicial review of some claims implicating the expedited removal process is subject to limitations beyond those otherwise imposed by the INA. *See* 8 U.S.C. § 1252(a)(2)(A)(i), (e). And here, the Named Plaintiffs were not removed pursuant to expedited removal orders. Mots. Hr'g Tr. 21:13–16. So to prevail on their claims, they need not address the expedited-removal-specific limitations on judicial review. This raises a question whether the Named Plaintiffs will vigorously prosecute the claims of class members who are subject to expedited removal orders.

The Court has some concerns. In their Opposition to the Motion for Class Certification, the Defendants raise 8 U.S.C. § 1252(e), a limitation on judicial review of some challenges related to expedited removal. Opp'n at 23. And in their Reply, the Named Plaintiffs spend a few paragraphs arguing that Section 1252(e) does not apply to their claims. Reply at 16–18. But another provision, 8 U.S.C. § 1252(a)(2)(A)(i), strips courts of jurisdiction to review any "cause or claim arising from or relating to the implementation or operation of an" expedited removal order except as provided in Section 1252(e). The Parties' briefing—both on the Motion for Class Certification and the Motion to Dismiss—does not address this provision. The Named Plaintiffs addressed it only after the Court asked about it during the motions hearing. Mots. Hr'g Tr. 28:16–22. And it seems that neither the Supreme Court nor the D.C. Circuit has definitively interpreted this provision.

The Court suspects that the underdeveloped nature of these arguments is because the Named Plaintiffs were not themselves subject to expedited removal orders. To address this concern, the Court explored two options with counsel for the Named Plaintiffs at the motions hearing: (1) creating subclasses under Federal Rule of Civil Procedure 23(c)(5), and (2) redefining

the class to exclude individuals with expedited removal orders. Mots. Hr'g Tr. 24:5–9. Counsel expressed a preference for redefining the class. *Id.* 26:15–17. The Court agrees that this is the best way to proceed. Because individuals with expedited removal orders face their own limitations on judicial review that the Court is not satisfied has been sufficiently addressed by the Parties, the Court will redefine the class to exclude them as discussed below.[10]

*    *    *

The Named Plaintiffs have established that they and proposed class counsel are adequate representatives for the class, with the exception of individuals with expedited removal orders. Rule 23(a)(4) is satisfied.

### 2.    Rule 23(b)(2)

Having satisfied all the requirements of Rule 23(a), the Named Plaintiffs now must satisfy Rule 23(b)(2). Under that rule, "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. "Rule 23(b)(2) imposes two requirements: (1) that defendant's actions or refusal to act are generally applicable to the class and (2) that plaintiffs seek final injunctive

---

[10] At the motions hearing, counsel for the Plaintiffs stated that she was aware of only one individual subject to an expedited removal order who has been detained at Guantanamo. Mots. Hr'g Tr. 21:21–22. So at this point, it seems that excluding such individuals from the class definition will not have significant practical effect. And of course, the Plaintiffs may later seek to certify a broader class, adding as a class representative a person with an expedited removal order detained at Guantanamo. *See* Fed. R. Civ. P. 23(c)(1)(C).

relief or corresponding declaratory relief on behalf of the class." *O.A. v. Trump*, 404 F. Supp. 3d 109, 157 (D.D.C. 2019) (cleaned up).

These requirements are both met. There is no doubt that the Defendants' recent policy of holding immigration detainees at Guantanamo is generally applicable to the class. And the Plaintiffs' claims challenging that policy are such that the policy "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360. That is why the Complaint requests a "single injunction or declaratory judgment," *Wal-Mart*, 564 U.S. at 360, on behalf of the entire class, Compl. ¶¶ 77, 79. The Plaintiffs' APA claims also seek vacatur of the policy. Compl. ¶ 78. Courts in this District have certified claims seeking indivisible APA relief such as vacatur under Rule 23(b)(2). *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 102 (D.D.C. 2025); *Crowe v. Fed. Bureau of Prisons*, No. 24-cv-3582, 2025 WL 1635392, at *21 & n.7 (D.D.C. June 9, 2025) (provisional certification); *O.A.*, 404 F. Supp. 3d at 157; *Huashan Zhang v. USCIS*, 344 F. Supp. 3d 32, 60, 65 (D.D.C. 2018). Thus, the relief sought with respect to both the Plaintiffs' APA and constitutional claims meet the "key" requirement that the remedy warranted is "indivisible." *See Wal-Mart*, 564 U.S. at 360.

The Defendants contend that certification pursuant to Rule 23(b)(2) is inappropriate because of an INA provision limiting certain relief related to the removal process. Opp'n at 33. The provision, 8 U.S.C. § 1252(f)(1), states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

This "prohibits federal courts" other than the Supreme Court "from granting classwide injunctive relief" that "order[s] federal officials to take or to refrain from taking actions to enforce,

implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022).

Section 1252(f)(1), however, is a remedial bar, not a limitation on class certification. *See, e.g.*, *N.S. v. Dixon*, 141 F.4th 279, 289 (D.C. Cir. 2025) ("remedial bar"); *L.G.M.L. v. Noem*, No. 25-2942, 2025 WL 2671690, at *11 (D.D.C. Sept. 18, 2025) (same); *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1047 (S.D. Cal. 2022) (same). Indeed, the Supreme Court's recent decision in *Garland v. Aleman Gonzalez* interpreting Section 1252(f)(1) consistently described that provision as imposing a limitation on courts' remedial authority, not on the kinds of claims that can be certified for classwide resolution. *See, e.g.*, *Aleman Gonzalez*, 596 U.S. at 550–51 ("Therefore, § 1252(f)(1) does not preclude a court from entering injunctive relief on behalf of a particular alien . . . , but injunctive relief on behalf of an entire class of aliens is not allowed[.]"). And that understanding of Section 1252(f)(1) is confirmed by 8 U.S.C. § 1252(e)(1)(B), which expressly provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure" in certain challenges related to expedited removal orders. The fact that Congress wrote Section 1252(e)(1)(B) to explicitly prohibit class certification while simultaneously enacting Section 1252(f)(1) is a strong indication that the latter provision is meant to do something different.[11] *See Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 120 (D.D.C. 2017) ("[I]t is a well-established canon of statutory interpretation that the use of different words or terms

---

[11] Both provisions were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, § 306, 110 Stat. 3009–546, 3009–610–11 (1996).

within a statute demonstrates that Congress intended to convey a different meaning for those words." (quoting *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003))).[12]

In their briefing, the Defendants do little to explain why a statutory bar on the remedies that can be granted at the end of a case has anything to say about the requirements for class certification under Rule 23. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Section 1252(f) "is nothing more or less than a limit on injunctive relief."); *cf. Almaqrami v. Pompeo*, 933 F.3d 774, 780 (D.C. Cir. 2019) (noting that the legal availability of a certain kind of relief "goes to the merits"). When the Court pressed at the motions hearing, counsel for the Defendants said that "there are some real problems with [a] class action moving forward given the core relief that the individual petitioner class members would want is not within the power of the Court." Mots. Hr'g Tr. 31:21–24. But counsel did not articulate a doctrinal basis why this is so.

Few courts have addressed the effect of a statutory limitation on remedies on certifiability under Rule 23(b)(2). *Yates v. Collier* is helpful. 868 F.3d 354 (5th Cir. 2017). The statute at issue there, the Prison Litigation Reform Act (PLRA), limited the relief that could be granted in challenges to prison conditions. *Id.* at 368. The relevant provision stated:

---

[12] It is true that Section 1252(f)(1) says that "no court . . . shall have *jurisdiction* to" enter the prohibited injunction, which—at first glance—could suggest that the provision speaks to more than just courts' remedial authority. But as the Supreme Court has observed, "jurisdiction" is "a word of many, too many, meanings." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 547 (2019) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)). And in the context of equitable relief such as injunctions, "jurisdiction" typically refers more broadly to the power of a court to grant a remedy. *See, e.g.*, *Providence Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 788, 804 (1869) ("The jurisdiction of equity is adequate to give the proper remedy, whatever phase the case may assume[.]"); Kristin A. Collins, *"A Considerable Surgical Operation": Article III, Equity, and Judge-Made Law in the Federal Courts*, 60 Duke L.J. 249, 278 (2010) (discussing *Mayer v. Foulkrod*, 16 F. Cas. 1231 (C.C.E.D. Penn. 1823) (No. 9,341), a case in which Justice Washington used "jurisdiction" "in a general sense to mean the power of the federal court to apply traditional equitable remedies"); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 567 (2022) (Sotomayor, J., concurring in the judgment in part and dissenting in part) (differentiating between "the question of subject-matter jurisdiction" and "the remedial authority at issue" in Section 1252(f)(1)).

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

*Id.* at 368–69 (quoting 18 U.S.C. § 3626(a)(1)(A)).

The opponents of class certification argued that the district court was required to "take account of injunctive relief that the PLRA would authorize it to award as a remedy" before certifying a Rule 23(b)(2) class action. *Id.* at 369. But the circuit disagreed. *Id.* It observed that the text of the remedial-limitation provision "plainly says nothing at all about class actions or the requirements for class certification." *Id.* Absent an indication in the statutory text, the circuit explained that it could not "conclude that Congress intended that provision to alter the well-established requirements of class certification *sub silentio*." *Id.* at 370. Therefore, the Court held that the PLRA's remedial-limitation provision "does not alter the requirements for certifying a class action under Rule 23(b)(2)." *Id.* at 371. The Tenth Circuit has held the same. *Shook v. El Paso Cnty.*, 386 F.3d 963, 970 (10th Cir. 2004) ("The text of the PLRA says nothing about the certification of class actions. Based on the statute's absence of direction in that area, we presume that Congress intended to leave Rule 23 intact.").

The Court is persuaded by the Fifth Circuit's reasoning in *Yates*. Applied here, it would suggest that the availability of the Named Plaintiffs' requested relief is entirely irrelevant to certifiability under Rule 23(b)(2). The Court, however, need not go that far. After all, the inquiry under Rule 23(b)(2) is whether final injunctive or declaratory relief would be "appropriate" given the Named Plaintiffs' claims. Fed. R. Civ. P. 23(b)(2). Even if such relief must ultimately be legally available to be "appropriate," the Court concludes that, at a minimum, declaratory relief is available in this case despite Section 1252(f)(1). *Cf. Powell v. McCormack*, 395 U.S. 486, 518

(1969) ("[A] request for declaratory relief may be considered independently of whether other forms of relief are appropriate.").[13]

Start with the Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). So the baseline rule is that declaratory judgments are generally available in federal actions, even if an injunction is not. *Green v. Mansour*, 474 U.S. 64, 72 (1985) ("[W]e have held that under this Act declaratory relief may be available even though an injunction is not.").

The Defendants argue that Section 1252(f)(1) disrupts this baseline because the declaration sought—*i.e.*, that the Defendants' policy of holding immigration detainees at Guantanamo is unlawful—would impermissibly "restrain the government's operation of § 1231" by "requir[ing] the government to not detain aliens ordered removed" there. Opp'n 17–18. But that argument is foreclosed by D.C. Circuit precedent. The D.C. Circuit has held that "Section 1252(f) prohibits only injunctions against 'the operation of the provisions of part IV of this subchapter' as amended by IIRIRA. It does not proscribe issuance of a declaratory judgment[.]" *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) (citation omitted); *N.S.*, 141 F.4th at 290 n.7 (same). That holding accords with every other circuit to have answered the question. *See Brito v. Garland*, 22

---

[13] In a footnote, the Named Plaintiffs argue that Section 1252(f)(1) is inapplicable here. They contend that because "nothing in the INA authorizes detention extraterritorially," "any injunction would not affect the 'provisions of part IV' of the INA," which is a triggering condition for Section 1252(f)(1). Reply at 10 n.6. Because the Court concludes that it can certify a class assuming that Section 1252(f)(1) does apply, it does not resolve this question. But the Court notes that the Named Plaintiffs' argument appears to be in tension with *Aleman Gonzalez*. There, the Court rejected the argument that Section 1251(f)(1) only forbids classwide relief restraining "the operation of [the relevant INA] provisions 'as *properly* interpreted.'" 596 U.S. at 552.

F.4th 240, 252 (1st Cir. 2021) ("[W]e conclude that declaratory relief remains available under section 1252(f)(1)."); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) ("Section 1252(f) was not meant to bar classwide declaratory relief."). Indeed, the Defendants do not point to one case holding that declaratory relief is unavailable under Section 1252(f)(1).[14]

Further, the Government's argument elides the distinction between declaratory relief and injunctive relief. "[W]hile declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially." *Brito*, 22 F.4th at 251. "A declaratory judgment does not, for example, set the stage for a finding of contempt—a distinction of special note in cases in which the government is a party." *Id.* If the Plaintiffs prevail, the Defendants may well cease any conduct that the Court declares unlawful. But the Defendants choosing to comply in good faith with the law as announced by this Court is not equivalent to the Court entering coercive relief that comes with the potential of contempt.

The Named Plaintiffs' Motion for Class Certification is not the appropriate vehicle for definitively resolving the relief that Section 1252(f)(1) would permit should the Plaintiffs ultimately prevail in this case. Here, the Named Plaintiffs seek a remedy that would apply indivisibly to the entire class. Regardless of whether Section 1252(f)(1) allows more, at a

---

[14] The Sixth Circuit has noted in dicta that although "the issue of declaratory relief" was "not before [it]," it was "skeptical" that the habeas petitioners there would be permitted a classwide declaratory judgment under Section 1252(f)(1) because that would be "the functional equivalent" of classwide injunctive relief. *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018). The circuit did not, however, explain why—it said only that "[t]he practical effect of a grant of declaratory relief as to Petitioners' detention would be a class-wide injunction against the detention provisions." *Id.*

minimum, declaratory relief on each of the Plaintiffs' claims is appropriate and (assuming it is required for certification) legally available. Rule 23(b)(2) is thus satisfied.[15]

### 3.    Class Definition

With the strictures of Rule 23 satisfied, the Court must define the class being certified. Fed. R. Civ. P. 23(c)(1)(B). Accordingly, the Court proceeds to define the class and address the Defendants' arguments that such a class definition is defective.

---

[15] The Court further notes that even if Section § 1252(f)(1) forbids the Court from granting injunctive or APA relief in this proceeding, that provision would expressly authorize individual class members to bring individual follow-on claims for coercive relief to effectuate a favorable declaratory judgment. *See* 8 U.S.C. § 1252(f)(1) (permitting courts to enjoin the covered statutory provisions "with respect to the application of such provisions to an individual alien"). And a core purpose of Rule 23(b)(2) is to allow courts to issue an indivisible declaratory judgment that paves the way for follow-on individual proceedings seeking further (non-monetary) relief. *See* Advisory Committee Note (1966), Fed. R. Civ. P. 23 ("Declaratory relief 'corresponds' to injunctive relief when [it] . . . serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages."); 2 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 4:31 (6th ed. Dec. 2025 Update) (same); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530–31 (D.C. Cir. 2006) (applying this principle to reject a declaratory-judgment claim that would set up later monetary relief); *see also Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction.").

The Defendants argue that if Section 1252(f)(1) ultimately forbids the Court from granting coercive relief in this action, the final judgment granting declaratory relief will have a preclusive effect on any class member's future claim seeking coercive relief. Opp'n 20–21. But it is black-letter law that preclusion "does not apply to extinguish the claim" if "[t]he plaintiff was unable to . . . seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain . . . demands for multiple remedies or forms of relief in a single action." Restatement (Second) of Judgments § 26(1)(c) (A.L.I. 1982); Charles Alan Wright & Arthur R. Miller, 18 Fed. Prac. & Proc. Juris. § 4412 (3d ed. Sept. 2025 Update) ("Claim preclusion is readily denied when the remedies sought in the second action could not have been sought in the first action, so long as there was good reason to maintain the first action . . . in a form of proceeding that could not afford full relief."). When there are "formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief," "it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." Restatement (Second) of Judgments § 26 cmt. c.

### a. Redefining the Class

As mentioned above, the Named Plaintiffs' proposed class definition is:

All immigration detainees originally apprehended and detained in the United States, and who are, or will be held at Naval Station Guantánamo Bay, Cuba.

Mot. at 2. The Court largely adopts this definition with two modifications. First, as previewed above, the class definition will exclude individuals subject to expedited removal orders under 8 U.S.C. § 1225. Second, the class definition will explicitly state that class members are individuals who have been ordered removed from the United States. The Parties' filings in this case have thus far indicated that both sides already understand the class at issue to be made up of such individuals. *See, e.g.*, Compl. ¶ 62–64, Opp'n at 18.

Accordingly, the class definition this Court adopts is: All immigration detainees originally apprehended and detained in the United States who have been ordered removed, except those ordered removed pursuant to 8 U.S.C. § 1225, and who are, or will be, held at Naval Station Guantanamo Bay, Cuba.

### b. The Defendants' Arguments

The Defendants contend that a class definition such as this one is defective. Their argument draws on cases from this District testing class definitions against standards "that [are] not explicit in the text of Rule 23," including "that the class be susceptible to precise definition," *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992)—*i.e.*, a definition that is "neither amorphous, nor imprecise," *id.* (quoting *Robertson v. Nat'l Basketball Ass'n*, 389 F. Supp. 867, 897 (S.D.N.Y. 1975)), and not "overly broad," *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 92 (D.D.C. 2017) (quoting *Cnty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 666

(S.D. Fla. 2010)). Some courts term this inquiry "ascertainability." *See O.A.*, 404 F. Supp. 3d at 159–60.[16]

Even if such a requirement exists, it is satisfied here. *See id.* at 160 ("Out of an abundance of caution, the Court will assume for present purposes that such a requirement exists."). "'[T]he general outlines of the members of the class are determinable at the outset of the litigation' without engaging in burdensome individualized determinations." *Id.* (quoting *Brewer v. Lynch*, No. 08-cv-1747, 2015 WL 13604257, at *5 (D.D.C. Sept. 30, 2015)). To be a class member, an individual must be (1) an immigration detainee (2) who was originally apprehended and detained in the United States, and who (3) has been ordered removed (except under 8 U.S.C. § 1225) and (4) is currently (or at a future point will be) held at Guantanamo. These are "clear and objective criteria on which to show membership in the . . . class." *See Ramirez*, 338 F. Supp. 3d at 49.

The Defendants make two pertinent arguments to the contrary, but neither is persuasive. First, the Defendants object that the proposed class "would necessarily encompass individuals who are not yet (and may never be) transferred to" Guantanamo, rendering the proposed class "amorphous." Opp'n at 22. The Defendants likely have in mind the portion of the class definition that brings in future members—that the class includes individuals who "will be" detained at Guantanamo. But this misapprehends the proposed definition. Immigration detainees who meet the other criteria "will only become members of the class *if and when* they" are detained at

---

[16] The D.C. Circuit "has not addressed whether Rule 23 contains an ascertainability requirement for class certification." *J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019). It "has been recently disavowed by four federal appellate circuits." *Hoye v. District of Columbia*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017). And courts in this District have recently expressed particular skepticism about the applicability of this purported requirement in the context of Rule 23(b)(2) class actions. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 159 (D.D.C. 2019); *Ramirez v. ICE*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018); *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013).

Guantanamo. *See O.A.*, 404 F. Supp. 3d at 160. And it is not "at all unusual or improper for a Rule 23(b)(2) class to include future members." *Id.* (collecting cases).[17]

Second, the Defendants contend that the class definition is overbroad to the extent it "includes those who were previously transferred to [Guantanamo] but have already been removed." Opp'n at 24. But as the Named Plaintiffs note, this too reflects a misunderstanding of the class definition. Reply at 18. The class includes only individuals who "are" or "will be" detained at Guantanamo. It does not include individuals simply because they were previously detained there. And to the extent the Defendants are making arguments that go to mootness or standing, *see* Opp'n at 24–25, they are addressed by the Court's analysis of those issues above and in the Court's contemporaneously filed Memorandum Opinion, ECF No. 53, at 10–11.

In sum, even assuming that Rule 23 imposes implicit restrictions on class definitions, those restrictions pose no problem for the class definition adopted here. That definition is sufficiently definite and not overbroad.

\* \* \*

The Named Plaintiffs have established compliance with Rule 23 on their APA and constitutional claims. The Court will grant the Motion for Class Certification with respect to these claims.

## C.    Class Certification on Habeas Claim

With respect to their habeas claim, however, the Named Plaintiffs have not "affirmatively demonstrate[d] . . . compliance with" Rule 23. *Wal-Mart*, 564 U.S. at 350. As an initial matter, the

---

[17] The class is further limited by the nature of the claims the Court is certifying. The Court is certifying claims challenging the Defendants' recent policy of housing immigration detainees at Guantanamo. Future policies or occurrences separate from the ones challenged here that may cause immigration detainees to be held at Guantanamo are not the target of those claims.

nature of the Named Plaintiffs' habeas claim is unclear. The Complaint alleges only that "[t]he transfer of immigration detainees from the United States to Guantánamo has violated and continues to violate their right to habeas corpus." Compl. ¶ 75. The "right to habeas corpus," however, refers to the right to seek the writ—which is embodied in the Constitution's Suspension Clause, art. I, § 9, cl. 2. *See Al Maqaleh v. Gates*, 605 F.3d 84, 94 (D.C. Cir. 2010) ("Our duty . . . is to determine the reach of the right to habeas corpus and therefore of the Suspension Clause[.]"). And even a meritorious Suspension Clause challenge does not establish entitlement to the writ itself. *See Boumediene v. Bush*, 553 U.S. 723, 797 (2008) ("Their access to the writ is a necessity to determine the lawfulness of their status, even if, in the end, they do not obtain the relief they seek."). The Parties' briefing on the Defendants' Motion to Dismiss does not address the claim at all, so neither side has articulated their understanding of the claim's basis.

Nor does the briefing on the Motion for Class Certification clarify things. The Motion itself does not attempt to demonstrate compliance with Rule 23 on the habeas claim separately from the Named Plaintiffs' other claims (indeed, the Motion does not even use the word "habeas" once). And in their Reply, the Named Plaintiffs state that "the availability of class habeas" is "a question the Court need not reach because the Plaintiffs' claims are reviewable under the APA and in equity." Reply at 21. This suggests that the Named Plaintiffs have essentially abandoned an attempt to certify their habeas claim under Rule 23.

The Court notes that the Supreme Court has "never addressed whether habeas relief can be pursued in a class action," *Jennings*, 583 U.S. at 324 n.7 (Thomas, J., concurring), although the Court has addressed the merits of some class action habeas claims, *see, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 400–01 (2019); *Jennings*, 583 U.S. at 290; *cf. Johnson v. Guzman Chavez*, 594 U.S. 523, 532 n.3 (2021) (acknowledging that the Court was not addressing the district court's decision to

certify the class). In the 1970s, several circuit courts held that habeas claims cannot be certified under Rule 23 per se—but that courts could instead fashion class-action-like procedures in appropriate cases using authority under the All Writs Act. *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125–26 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976).[18] Two decades later, the D.C. Circuit cited these cases to acknowledge that "courts have . . . developed . . . equivalents" to "class actions in habeas." *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996).

Relying on these cases, the Named Plaintiffs suggest that even if Rule 23 is not available for their habeas claim, the Court can use a "similar procedure available at equity." Reply at 22; *see also* Pls.' Suppl. Br. at 3. But the Named Plaintiffs' Motion for Class Certification invokes only Federal Rule of Civil Procedure 23. Mot. at 2. By essentially abandoning Rule 23 in favor of other grounds of authority, the Named Plaintiffs have not affirmatively shown compliance with that rule "by a preponderance of the evidence." *Molock*, 2025 WL 1913231, at *7. Further, the Court will not take the Named Plaintiffs' terse, open-ended invitation to invoke equity or All Writs Act authority to pronounce that the habeas claim will proceed under a facsimile of Rule 23. If the Plaintiffs want the Court to certify their habeas claim under Rule 23—or to invoke another authority—they may file an appropriate motion. Until then, the Court will deny without prejudice the instant Motion for Class Certification with respect to the Named Plaintiffs' habeas claim.

---

[18] Other circuits around this time made more ambiguous statements. *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972) ("Nor can we agree that a petition for a writ of habeas corpus can never be treated as a class action."); *see also Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) (similar).

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part, as modified, and DENIES in part the Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, ECF No. 4.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:    December 5, 2025