**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YAMIL LUNA GUTIERREZ, *et al.*,<br><br>*Plaintiffs-Petitioners, on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>KRISTI NOEM, Secretary of Homeland Security, in her official capacity, *et al.*,<br><br>*Defendants-Respondents*. | Case No. 1:25-cv-01766 |

**JOINT NOTICE REGARDING DISCOVERY**

Pursuant to the Court's December 11, 2025, Order, Plaintiffs-Petitioners ("Plaintiffs") and Defendants-Respondents ("Defendants") respectfully submit this notice to provide an update on the parties' discussions regarding discovery on Plaintiffs' contrary to law claim (Count 1).

**I.    Plaintiffs' Position**

As stated in the parties' joint notice on December 29, the parties agree that there will be discovery on the contrary to law claim. Defendants want a protective order to cover discovery under Count 1, the Certified Administrative Record ("CAR"), and class member reporting. Plaintiffs agree to an initial protective order but reserve the right to contest the placement of material under the protective order after seeing what Defendants designate. In addition, to ensure that discovery proceeds promptly, the parties agree to finalize the protective order by January 12, 2026, or submit any disagreements to the Court for prompt resolution.

On the contrary to law claim, Defendants have agreed to provide the following information about each noncitizen who has been transferred to Guantanamo between June 4, 2025, and January 12, 2026:

- Name, A-number, and country of origin;

1

- If they were removed, date of removal and country to which they were removed;

- Dates of transfer to and from Guantanamo; and,

- A copy of their removal order.

Plaintiffs have proposed additional discovery to which Defendants have not agreed. Specifically, Plaintiffs requested that Defendants also provide the following additional information about each of the noncitizens Defendants have transferred to Guantanamo:

- Whether they were removed to their destination country directly from Guantanamo or brought back to the United States prior to removal to that country;

- Whether the flight manifests for each individual listed their destination country when they were transferred to Guantanamo; and,

- Whether each individual had travel documents, travel itineraries, and acceptance by the country of removal when they were transferred to Guantanamo.

This information is directly relevant to questions identified by the Court in its opinion denying Defendants' Motion to Dismiss, describing Defendants' characterization of "the Guantanamo-detention policy as 'part the government's efforts to facilitate [immigration detainees'] removals,'" and their suggestion "that detention at Guantanamo constitutes a 'staging point' amid execution of a removal order." ECF No. 53 at 45–46. This information bears directly on whether Defendants have been using Guantanamo as a "staging point" as opposed to "a detention facility for removed individuals," which the Court found exceeds statutory authorization. *Id.* at 46. Moreover, this information should all be contained within Defendants' records and should be readily available to Defendants. "The discovery requested here is appropriate, for it is not so much 'fact-finding' as it is 'filling in gaps . . . to determine what the agency actually did.'" *AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) (citation omitted)). Indeed, here

discovery is needed to "ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018); *see also Escobar Molina v. U.S. Dep't of Homeland Sec.,* No. CV 25-3417 (BAH), --- F. Supp. 3d ----, 2025 WL 3465518, at *37 (D.D.C. Dec. 2, 2025). Thus, for instance, if Defendants asserted in the CAR that Guantanamo was a staging area, the policy was not implemented in that manner, as this discovery will show. Plaintiffs will be in a position to determine whether any additional discovery is necessary after reviewing Defendants' Answer and the CAR.

The parties have not reached an agreement on the length of discovery. Plaintiffs have proposed that discovery close 60 days after the production of the CAR, and Defendants have proposed that discovery close 90 to 120 days after the production of the CAR. Plaintiffs oppose such a long discovery period. The information that Plaintiffs request is readily available to Defendants, who maintain those records as a matter of course in their detention and removal operations. Plaintiffs believe that Defendants should be able to respond to those limited discovery requests within 30 days of service, leaving time to resolve any discovery disputes.

## II.     <u>Defendants' Position</u>

Defendants agree to limited discovery for Plaintiffs' Count I Administrative Procedure Act ("APA") claim ("Contrary to Law Claim").  Defendants will provide Plaintiffs the following information for all aliens who were transferred to NSGB between June 4, 2025 and January 12, 2026:  (1) names, alien registration numbers, and country of origin; (2) dates of transfer to and from NSGB; (3) if removal has occurred, date of removal and country to which alien was removed; and (4) copies of removal orders.  This information largely tracks the information Defendants agreed to provide regarding class members in their regular, bi-weekly

reporting.  *See* ECF. No. 57.  Defendants propose a 90- to 120-day timeframe to produce these materials, which is necessary because gathering this information requires manual searches.

Additional discovery outside a voluntary agreement by the parties is unwarranted.  "[I]t is black-letter administrative law that in an APA case, a reviewing court "should have before it neither more nor less information than did the agency when it made its decision."  *Hill Dermaceuticals, Inc. v. Food & Drug Admin*., 709 F.3d 44, 47 (D.C. Cir. 2013); *see Chiayu Chang v. United States Citizenship & Immigr. Servs*., 254 F. Supp. 3d 160, 161 (D.D.C. 2017); 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party.").  The exceptions to this rule are limited to cases where the procedural validity of the agency's action remains in serious question, or the agency affirmatively excluded relevant evidence."  *CTS Corp. v. Envtl. Prot. Agency*, 759 F.3d 52, 64 (D.C. Cir. 2014).  But Plaintiffs' Contrary to Law Claim does not allege any procedural deficiency in agency decision-making.  Compl. ¶¶ 62-64; *see Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 39 (D.D.C. 2018), *aff'd* 7 F.4th 1201 (D.C. Cir. 2021) (articulating four "highly exceptional circumstances" in which a party may supplement an administrative record: (1) the agency "acted in bad faith," (2)"engaged in improper behavior," (3) "failed to examine all relevant factors," and (4) "failed to explain adequately its ground for decision.").  Rather, Plaintiffs argue that the Immigration and Nationality Act ("INA") does not authorize immigration detention facilities outside of the territory of the United States.  Compl. ¶¶ 62-64.  Because "the principle of limiting review to the administrative record 'exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny,'" there is no basis to apply an exception here.  *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 3 (D.D.C. 2017) (quoting *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)); *Truong v. United States Citizenship & Immigr. Servs*., No. CV 21-316 (RC), 2022 WL 888192, at *3 (D.D.C.

4

Mar. 25, 2022) (declining to adopt APA record rule exception regarding "agency's contemporaneous construction of relevant regulations" and maintaining available exceptions are limited to whether an agency "complied with its procedural obligations").

While Defendants are mindful that the Court identified open questions that might depend on facts not in the certified administrative record, *see* ECF No. 53 at 45, any facts that occurred prior to the agency's final decision to detain aliens at NSGB are not part of the "final agency action" that is under review.  ECF No. 53 at 22 (explaining that the policy at issue is "Defendants' recent designation of [NSGB] as a location to house immigration detainees"); *id.* at 23-24 (noting that the "selection of individuals to be detained at [NSGB]" is "incident" to what Plaintiffs actually challenge, which is the "decision to hold them in a detention facility at [NSGB]").  Ultimately, "plaintiffs are 'masters of the complaint' with the power to bring those claims they see fit," and "it is incumbent upon [the Court] to address" the "claims [they] actually bring[]."  *de Csepel v. Republic of Hungary*, 714 F.3d 591, 598 (D.C. Cir. 2013) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987)).  Here, Plaintiffs brought a claim under the APA challenging the substance of Defendants' designation of NSGB as a detention facility under the INA.  Compl. ¶¶ 62-64; ECF No. 53 at 28 n.10 (expressly rooting claim in APA).  Therefore, Court must analyze it as such, including the faithful application of the APA record rule.  *de Csepel*, 714 F.3d at 598; *see also United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  And although the Court construes allegations in the light most favorable to the Plaintiffs at the motion to dismiss stage, going forward it will be *Plaintiffs*' burden to prove their case, and they must do so using "neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc.*, 709 F.3d at 47.

If the Court nevertheless orders additional discovery outside the scope of the certified administrative record and the parties' agreement, it should not include any information about representations by and communications with foreign governments—including whether any particular alien has been accepted into any particular country—which is outside the scope of whether the INA authorizes immigration detention at NSGB. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952) (explaining that matters of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."). Additionally, Defendants respectfully request no less than the full 120 days to produce any additional material other than what has already been agreed to, given the necessity of performing individualized searches to collect information on each alien transferee.

Dated: January 5, 2026

Respectfully submitted,

 /s/ Alexa Perlmutter (with permission)
ALEXA PERLMUTTER
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4665
Email: alexa.s.perlmutter@usdoj.gov

LESLIE McKAY
*Assistant Director*

*Attorneys for Defendants-Respondents*

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

*Attorneys for Plaintiffs-Petitioners*