UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAMIL LUNA GUTIERREZ, et al.,<br><br>    Plaintiffs-Petitioners,<br><br>v.<br><br>KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, et al.,<br><br>    Defendants-Respondents. | Civil Action No. 1:25-cv-01766-SLS |

**JOINT NOTICE OF DISCOVERY DISPUTE**

Pursuant to this Court's February 5, 2026, Order, ECF No. 75 (the "Order"), Plaintiffs-Petitioners ("Plaintiffs") and Defendants-Respondents ("Defendants") (collectively, the "Parties") respectfully submit this Joint Notice of Discovery Dispute.

Pursuant to the Order, Plaintiffs served their discovery requests on Defendants via e-mail on February 12, 2026. In total, Plaintiffs served on Defendants: six requests for admission, two interrogatories, and one request for production. *See* Pls.' First Set of Combined Discovery Requests for Defs. On Count 1 (Attached as Exhibit A). Pursuant to the Order, on February 19, 2026, via email, Defendants served on Plaintiffs their objections to Plaintiffs' discovery requests. *See* Defs.' Objections to Pls.' First Set of Count 1 Discovery Requests (Attached as Exhibit B). Defendants have filed the unclassified administrative record under seal at ECF No. 80. *See* Order at 6.

As a threshold matter, Defendants request clarification from this Court with respect to Defendants' time to respond to Plaintiffs' discovery requests. Plaintiffs' understanding is that, under the Order, the time for Defendants to respond to their discovery requests has begun to run,

1

and that Defendants' deadline to make initial disclosures to Plaintiffs' discovery requests is thirty days after Plaintiffs served their discovery request—March 16, 2026. Defendants' position is that the Order did not define whether Defendants' time to respond began running when Plaintiffs served their discovery requests on February 12, 2026, or whether Defendants' deadline to respond is tolled pending the Court's resolution of the below disputes. Defendants therefore respectfully request clarification from this Court. Nonetheless, Defendants are prepared to begin production on March 16, 2026, on a rolling basis, upon a clarifying order from this Court.

Following two meet and confers, the Parties were able to resolve some, but not all, of their disagreements regarding Plaintiffs' discovery requests.[1] Specifically, Plaintiffs agreed that their discovery requests regarding information about individuals transferred to U.S. Naval Station Guantanamo Bay ("NSGB") will be limited to the timeframe between June 4, 2025, to January 12, 2026, with the understanding that the requested information about these noncitizens may pertain to events that occurred after January 12, 2026. The Parties agreed that Defendants will still provide the requested information about the specified aliens up through the date of production. Plaintiffs further agreed that they will withdraw Interrogatory No. 2. Defendants agreed to withdraw their disputes as to Requests for Admission Nos. 1, 2, 5, and 6, and to provide responses to those Requests for Admission. Defendants further agreed to withdraw their objections related to third-country removals or transfers.

---

[1] The following areas of agreement were reached following Plaintiffs' service of their discovery requests and Defendants' service of their objections to these discovery requests. These updates are not reflected in Exhibits A and B as these developments post-date the service of both these documents.

The Parties, however, could not resolve their disputes regarding: Requests for Admission Nos. 3 and 4; Interrogatory No. 1; and Request for Production No. 1. The Parties therefore respectfully submit their respective positions on each of these discovery requests as follows.

**DEFENDANTS' POSITION**

As a general matter, Defendants reiterate that this Court made clear that discovery here "should be limited and targeted to the narrow issue for which the record is inadequate"—discovery should be "reasonably limited . . . to revealing the contours of the policy challenged here." *See* Order at 5–6 (internal quotations omitted). Specifically, this Court only permitted "Plaintiffs to serve on the Defendants discovery requests aimed at answering whether the challenged policy contemplates a class member's detention at Guantanamo only amid executing their removal order." *See id.* at 5. As outlined below, Defendants believe that some of Plaintiffs' discovery requests fail to comply with the narrow scope, and spirit, of discovery as contemplated by this Court by, for example, exceeding that scope or implicating matters that the Supreme Court has cautioned against inference.

**Request for Admission No. 3:**

Defendants object to this request to the extent that it seeks information protected by the deliberative process privilege, the state secrets privilege, the law enforcement privilege, or any other applicable legal privilege or protection. Defendants additionally object to the term "travel arrangements," which under a definition provided by the Plaintiffs during recent negotiations concerning discovery disputes means "all of the plans and preparations for transportation Defendants must make for the individual with a final removal order to reach their final destination country, including, but not limited to, booking of any and all flights or other transportation plans necessary to transport that individual to the planned country of removal." Defendants object insofar as this definition contemplates that "travel arrangements" would encompass either the existence of communications between the United States government and the government of any foreign nation and/or the content of those communications. *See Trump v. Hawaii*,

1
Defendants' Position

585 U.S. 667, 711 (2018) ("[I]t would be necessary to determine that any discovery and other preliminary matters would not themselves intrude on the foreign affairs power of the Executive.") (Kennedy, J. concurring); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 64 (D.D.C. 2004) ("The deference due the executive in the management of foreign relations will limit any discovery that will occur and will narrow the Court's inquiry.").

**Request for Admission No. 4:**

Defendants object to this request to the extent that it seeks information protected by the deliberative process privilege, the state secret privilege, the law enforcement privilege, or any other applicable legal privilege or protection. Defendants further object to the term "consent," which under a definition provided by the Plaintiffs during recent negotiations concerning discovery disputes "means a communication from a government of a foreign country which informs Defendants that the government of that foreign country is willing to accept a specified noncitizen into their country's territory," as requiring Defendants to reveal both the nature and actual content of communications between the government of the United States and a foreign nation. *Trump v. Hawaii*, 585 U.S. at 711 (Kennedy, J. concurring); *Canning v. Dep't of State*, 453 F. Supp. 3d 332, 337 (D.D.C. 2020) ("matters relating to foreign relations and foreign commerce [are] areas where the deliberative process privilege applies with special force"); *Fulbright & Jaworski v. Dep't of Treasury*, 545 F. Supp. 615, 620 (D.D.C. 1982) (discussing the particular sensitivity around disclosure where the decision in question implicates foreign relations).

**Interrogatory No. 1:**

Defendants object to this interrogatory to the extent it requests cumulative and duplicative information that has already been and continues to be provided to Plaintiffs by way of the biweekly reporting requirements, including an alien's name, date transferred to and from NSGB, and country

2

of removal. And Defendants already agreed to provide names; alien registration numbers; countries of origin; dates of transfer to and from NSGB; if removal has occurred, the dates of removal and countries of removal; and copies of removal orders for class members transferred to NSGB between June 4, 2025, and January 12, 2026, *see* ECF No. 59 at 3.

The present interrogatory also goes well beyond both the limited scope permitted by the Court, *see* Order at 5–6 (limiting "discovery requests [to those] aimed at answering whether the challenged policy contemplates a class member's detention at Guantanamo only amid executing their removal order"), and the information Defendants previously agreed to provide, ECF No. 59 at 3. For instance, Plaintiffs' interrogatory disproportionately requests information as to whether flight manifests of a removal flight were finalized prior to an alien's transfer to NSGB, whether an alien's travel documents were finalized prior to their transfer to NSGB, and what conversations DHS may have had with third countries—none of which relates to or addresses the question of whether an alien was detained at NSGB "amid executing their removal order." Order at 5. Relatedly, Defendants object insofar as this interrogatory requests sensitive operational information that is protected by law enforcement privilege and deliberative process privilege; to the extent Plaintiffs request such information, Defendants would provide a privilege log regarding redacted or withheld information. Notwithstanding proportionality and privilege concerns, it would be incredibly burdensome for Defendants to provide much of the information requested for each alien ever transferred through NSGB as such information is not readily available and would require interagency coordination and a manual review of each alien's file and records across multiple systems of records. Indeed, between June 4, 2025, and March 4, 2026, 230 individuals have been transferred through NSGB—manual review of each of these files and records would be onerous and disproportionate to the needs of this case.

3

Therefore, the Court should limit Plaintiffs' interrogatory because it is overbroad, cumulative and not proportional to the scope of discovery permitted in this case. *See Nasreen v. Capitol Petroleum Grp.*, LLC, 340 F.R.D. 489, 491 (D.D.C. 2022) ("[C]ourts must limit discovery if the information and/or documents sought are unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or the proposed discovery is outside the scope permitted by Fed. R. Civ. P. 26(b)(1).").

**Request for Production No. 1:**

Defendants object to Plaintiffs' request for production because it seeks production of documents already in the record and it is not tailored to ascertaining the contours of the policy at issue.

First, the documents Plaintiffs seek in their request for production are already in the certified record. *See* ECF No. 80. Specifically, the record contains the memorandum of understanding, procedures for implementing the policy flowing from the executive order, communications, and other guidance materials regarding the detention and removal of aliens at Guantanamo. *See* DHS-0000001-0000078; DHS-0000091-0000123; DHS-0000274-0000556; U-DOW-CAR-127-55; U-DOW-CAR-176-212; U-DOW-CAR-583-99. Moreover, given these numerous documents already in the record, the record evidence here is not "so bare that it prevents judicial review." *Off. of Foreign Assets Control v. Voices in Wilderness*, 382 F. Supp. 2d 54, 62-63 (D.D.C. 2005). Given that the record contains the documents Plaintiffs request production of, permitting further production of additional documents would be to bless "a fishing expedition into the motives of the defendant agency." *Id.* at 63.

Second, Plaintiffs' broadly-worded request for production is not tailored to ascertain the contours of the policy at issue. As the Court noted, Plaintiffs' discovery requests "should be 'limited' and 'targeted to the narrow issue' for which the record is inadequate." Order at 5 (quoting *All. for Retired Ams. v. Bessent ("Alliance")*, No. 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. 2025)). Yet Plaintiffs' request for production is a drag net demand for "*[a]ny and all* memoranda of understanding, addenda to memoranda of understanding, guidance, standard operating procedures, standards, policies, or procedures by and/or between the DHS and/or DOD regarding the detention and/or removal of noncitizens, detainees, or 'aliens' at Guantanamo, issued on or after January 20, 2025." (emphasis added). Plaintiffs' boundless request for "any and all" documents "issued on or after January 20, 2025," "regarding" detention and removal at NSGB fails to meet the narrow and limited standard for extra-record discovery. *See Alliance*, 2025 WL 1114350, at *3.

The district court's decision in *Alliance* is instructive here. In *Alliance,* the plaintiffs alleged that a Treasury Department policy was contrary to law by providing members of the "United States DOGE Service" ("DOGE") access to Bureau of Fiscal Service records. *Id.* at *1. Plaintiffs sought extra-record discovery to ascertain the contours of the policy, which the district court granted only after narrowing the scope of the plaintiffs' requests. *Id.* at *3–4. Specifically, the court narrowed discovery requests to only those targeted at illuminating "exactly what actions [the agency] took to grant new access to [DOGE] personnel." *Id.* But here, Plaintiffs' request for production is not "targeted at illuminating the nature of the challenged policy." Order at 5. According to the Court, the "key question" for Plaintiffs' claim "is whether the [government's] policy [of detaining removable aliens at NSGB] carries out detention in the manner of 8 U.S.C. § 1231(g)(1) or instead in the manner of 8 U.S.C. § 1103(a)(3)[.]" *Id.* at 4. At best, Plaintiffs' broad request for production

5

would include documents only tangentially related to whether the government carries out detention under § 1231(g)(1) or § 1103(a)(3). For example, any "policies" "regarding" DOD's security protocols at detention facilities at Guantanamo or any "standards" "regarding" the physical conditions of detention facilities at Guantanamo would be covered by Plaintiffs' request but not tailored to addressing in what manner class members are detained.

## PLAINTIFFS' POSITION

**Privilege Objections:**

As a general matter, Defendants have objected to Requests for Admission (RFAs) No. 3 and 4 and Interrogatory No. 1 to the extent that these requests seek information protected by the deliberative process privilege, the state secrets privilege, the law enforcement privilege, or any other applicable legal privilege or protection. Defs.' Obj. RFA Nos. 3, 4; *see also* Defs.' Obj. Interrog. No. 1. Defendants have not identified specific information or responses that they intend to withhold based on any of these privileges, let alone established that any of these privileges apply under their various (and stringent) tests. *See In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017) (to withhold documents under the deliberative process privilege, the Government must prove that the material is "both 'predecision' and deliberative'" and "bear[s] the burden of demonstrating that the balance of interests tips in [its] favor"); *United States v. Zubaydah*, 595 U.S. 195, 209 (2022) ("[T]he Government bears the burden of showing that the [state secrets] privilege should apply . . . ."); *Kusuma Nio v. United States Dep't of Homeland Sec.*, 314 F. Supp. 3d 238, 244 (D.D.C. 2018) ("The government bears the burden of proving that the balance favors nondisclosure" based on the law enforcement privilege). If Defendants later seek to withhold information based on these privileges, Plaintiffs request the opportunity to further brief the issue.

**Request for Admission No. 3:**

As previously noted, Plaintiffs agreed to limit the scope of RFA No. 3 to "noncitizens who have been transferred from immigration custody in the United States to Guantanamo between June 4, 2025 and January 1, 2026." In response to Defendants' objection that "travel arrangements" is a vague term, Plaintiffs have agreed to include the following definition of "travel arrangements":

> "Travel arrangements" within the meaning of Request for Admission No. 3 means all of the plans and preparations for transportation Defendants must make for the individual with a final removal order to reach their final destination country, including, but not limited to, booking of any and all flights or other transportation plans necessary to transport that individual to the planned country of removal.

Defendants additionally object that this RFA impermissibly implicates "foreign affairs." There is no "foreign affairs" privilege, and while Defendants raise the vague specter of later invoking the state secrets privilege, they have not done so yet, and it would be highly implausible they could meet the demanding burden required over a highly general "yes or no" question. *See Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) ("[T]he privilege may not be used to shield any material not strictly necessary to prevent injury to national security . . . ."); *see also supra* Pls.' Position at 1. An admission or denial responding to this RFA would not interfere with the Executive's foreign affairs power or even require Defendants to disclose details about specific foreign governments or communications DHS or DOD had with foreign governments either generally or about particular detainees. Courts regularly require disclosure of this kind of information even when it *does* relate to specific foreign governments. *See e.g.*, *Odiase v. Oddo*, No. 25-cv-206 (W.D. Pa. Aug. 15, 2025), ECF No. 22 (granting discovery regarding whether there was a likelihood of petitioner's removal in the reasonably foreseeable future); Order Granting Discovery at 14–15, *Malam v. Alhalmi*, No. 20-cv-10829 (S.D. Mich. Aug 4, 2020), ECF No. 166 (same).

**Request for Admission No. 4:**

Plaintiffs have agreed to limit the scope of RFA No. 4 to "noncitizens who have been transferred from immigration custody in the United States to Guantanamo between June 4, 2025 and January 1, 2026." In response to Defendants' objection that "consent" is a vague term, Plaintiffs have agreed to include the following definition of "consent": "'Consent' within the

meaning of Request for Admission No. 4 means a communication from a government of a foreign country which informs Defendants that the government of that foreign country is willing to accept a specified noncitizen into their country's territory."

Defendants claim that this RFA, like RFA No. 3, impermissibly implicates "foreign affairs." But like RFA No. 3, Defendants have failed to establish that any privilege applies, *see supra* Pls.' Position at 1–2. An admission or denial as to whether DHS or DOD had always obtained consent from another country before every person's transfer to Guantanamo does not interfere with the Executive's foreign affairs power or reveal anything at all about any individual transfer. And a response to RFA No. 4 does not even require Defendants to disclose details about specific foreign governments or the details of communications DHS or DOD had with any specific foreign governments. As discussed above, Courts regularly require disclosure of this kind of information. *See supra* Pls.' Position at 2.

**Interrogatory No. 1:**

Interrogatory No. 1 seeks the following information about "each noncitizen DHS or DOD transferred from immigration custody in the United States to Guantanamo starting February 4, 2025 through February 12, 2026": (1) "Full name;" (2) "A-number;" (3) "country of origin;" (4) "date of transfer to and from Guantanamo;" (5) "final destination country they were transferred to;" (6) "date of transfer to final destination country;" (7) "whether they were ultimately transferred to a different country;" (8) "type of removal order they had;" (9) "whether they were transferred to the final destination country directly from Guantanamo or brought back to the United States prior to transfer to the final destination country;" (10) "whether the final destination country was listed on the individual's flight manifest at time of transfer to Guantanamo;" (11) "whether the individual had travel documents to the final destination country at the time of transfer to

3

Guantanamo;" (12) "whether the individual had travel arrangements to the final destination country at time of transfer to Guantanamo;" and, (13) "whether another country had agreed to accept the individual for removal at time of transfer to Guantanamo." Pls.' Interrog. 1. Plaintiffs have agreed to limit Interrogatory No. 1 to information about noncitizens transferred to Guantanamo "starting June 4, 2025 through January 12, 2026."

With Plaintiffs' agreement to limit the timeframe of this Interrogatory, the parties agree that there is no dispute as to items 1–4 and 6–7, given that they constitute the same information Defendants have already agreed to provide. *See* ECF No. 59 at 1–2.

As to item 5, "whether [the noncitizens] were ultimately transferred to a different country," Plaintiffs intended this question to request the same information Defendants have agreed to provide—"[i]f [the noncitizens] were removed." ECF No. 59 at 2; *see also* Order at 1–2. Defendants object to the wording in this Interrogatory as potentially broader than Defendants' prior agreement. Plaintiffs proposed rewording this question to "whether they [i.e., the noncitizens] were ultimately transferred to the final destination country," or removing this question if Defendants agree that the failure to respond to items 6 and 7 constitutes an admission that the noncitizen has not been transferred to a final destination country, but Defendants did not agree to either proposal.

Defendants continue to object to the remaining information requested in Interrogatory No. 1 (items 8–13). Each of these objections is unavailing.

First, Defendants object to these requests as outside of the scope of the Court's discovery order, but each of these questions is relevant and tailored to "whether [Defendants'] challenged policy contemplated a class member's detention at Guantanamo only amid executing their removal order." Order at 5. Indeed, the Court has already recognized in its February 2 Order that item 9—

4

"whether [the noncitizens] were transferred to the final destination country directly from Guantanamo or brought back to the United States prior to transfer to the final destination country"—"appears well-tailed to revealing the nature of the challenged policy." Order at 6 n.2. If Defendants transferred individuals to Guantanamo when Defendants were not yet able to transport them to their final destination country—whether because they did not have travel documents, because they did not yet have travel arrangements, or because the final destination country had not yet agreed to accept them (items 11–13)—that would indicate that Defendants did not transfer those individuals to Guantanamo amid the removal process. Similarly, if the final destination country was not listed on the individual's flight manifest at time of transfer to Guantanamo (item 10), that would tend to show that the individual was not being brought to Guantanamo only to execute their removal order. Lastly, the type of removal order for each of the individuals that have been transferred to Guantanamo (item 8) is relevant to determine the contours of Defendants' policy that the administrative record does not otherwise reveal. For instance, the Memorandum of Understanding between DOD and DHS states that Guantanamo is being used "for DHS/ICE Detention of Illegal Aliens Subject to Final Orders of Removal" but does not specify whether they are final orders of removal from removal proceedings under 8 U.S.C. § 1229a or expedited removal orders under § 1225(b)(1). ECF No. 28-1 at 1; *see also* DHS Certified Administrative Record, DHS-000118–123.

Second, Defendants argue that the information requested in this Interrogatory is duplicative of information Defendants are already producing in response to other discovery requests. This information is not duplicative of Plaintiffs' RFAs because responses to RFAs No. 2–4 only reflect a binary (yes or no) that do not illuminate the contours of Defendants' transfer and detention practices while responses to this Interrogatory would show details like how *frequently* the

5

circumstances surrounding an individual's detention on Guantanamo indicated that they were not being transferred to Guantanamo only amid the removal process. For instance, responding "Yes" to RFA No. 2, confirming that Defendants did not "always" have travel documents necessary to transfer the individual to their final destination country is substantively different from a response on Interrogatory No. 1 reflecting that travel documents were not available for over 50% of the people transferred in the relevant period. Further, unlike the other RFAs, these questions will reveal whether there were multiple circumstances for any given individual that indicated that they were not being transferred to Guantanamo only as part of executing their removal order, as well as any patterns (for instance, people who did not have travel documents were transferred back to the United States before removal).

Third, Defendants assert that the requested information would be unduly burdensome because it would require a manual review of each noncitizen's file. Defs.' Obj. Interrog 1. Defendants have informed Plaintiffs that between June 4, 2025, and March 4, 2025, 230 noncitizens have been transferred to Guantanamo. Thus, given that Plaintiffs have agreed to limit the timeframe of Interrogatory No. 1 to transfers between June 4, 2025 and January 12, 2026, Defendants would have to review fewer than 230 files. And, presumably, Defendants would already have to review these same files to respond to the parts of Interrogatory No. 1 to which they have already agreed. This is therefore not unduly burdensome, especially given how relevant this information is to the scope of Defendants' policy.

**Request for Production No. 1:**

Defendants' objections that Request for Production No. 1 is overly broad and outside the scope of this litigation are wrong. This request bears directly on the contours of Defendants' challenged policy, as it requests only Defendants' own guidance, procedures, and similar

6

documents which govern that challenged policy and were issued after the policy took effect fourteen months ago. Nor would production of these documents be an undue burden on Defendants, because these documents should be readily available to Defendants, and the scope of documents is narrow. While Defendants object that some documents that would be responsive to this RFP are already included in DHS's Certified Administrative Record, Defendants do *not* represent that any and all documents that would be responsive to this RFP have been disclosed to Plaintiffs in the administrative record. Nor do Defendants assert that the documents in the administrative record sufficiently answer whether the challenged policy only contemplates a class member's detention during the execution of their removal order.

Dated: March 5, 2026

Respectfully submitted,

<u>/s/ Lee Gelernt</u>
Lee Gelernt (D.D.C. Bar No. NY0408)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

*Attorney for Plaintiffs-Petitioners*

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

ANTHONY NICASTRO
*Acting Director*

LESLIE McKAY
*Assistant Director*

RUSSELL J.E. VERBY
*Senior Litigation Counsel*

MALCOLM McDERMOND
ALEXA PERLMUTTER
JASON K. ZUBATA
*Trial Attorneys*

By: <u>/s/ *Ian S. Lam*</u>
IAN S. LAM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-6329
Email: ian.s.lam@usdoj.gov

*Attorneys for Defendants-Respondents*

8

## CERTIFICATE OF SERVICE

      I certify that I served a copy of this notice on the Court and all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: March 5, 2026                        /s/ *Lee Gelernt*
                                                   Lee Gelernt
                                                   *Attorney for Plaintiffs*