UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YAMIL LUNA GUTIERREZ, *et al.*,

       Plaintiffs,

    v.

MARKWAYNE MULLIN, Secretary of the
U.S. Department of Homeland Security, *et al.*,

       Defendants.

Civil Action No. 1:25-cv-01766-SLS

**DEFENDANTS' MOTION TO MAINTAIN REDACTED INFORMATION IN THE CERTIFIED ADMINISTRATIVE RECORD UNDER SEAL**

Pursuant to the Court's May 14, 2026, Minute Order, Defendants submit this Motion to Maintain Redacted Information in the Certified Administrative Record ("CAR") Under Seal (the "Motion"), which supplements Defendants' Motion to Maintain the Certified Administrative Record Under Seal, ECF No. 88.

**BACKGROUND**

On March 19, 2026, the Parties attended a discovery conference before the Court. The Court acknowledged that it had "ordered [Defendants] to submit [the CAR] under seal" due to the ongoing negotiations over protected material. Transcript of March 19, 2026, Hearing at 15. During this hearing, the Court ordered Defendants to file a motion stating why the CAR should remain under seal. *Id.* at 15–16. On March 30, 2026, Defendants filed that motion. ECF No. 88 ("Motion to Maintain CAR Under Seal"). On April 13, 2026, Plaintiffs filed their response. ECF No. 92. On April 24, 2026, the Parties filed a Joint Notice Regarding the Sealing of the Unclassified Administrative Record. ECF No. 94. This Notice set forth the Parties' proposed next steps

regarding the procedure for conferring regarding, and filling on the public docket, a redacted CAR. *See id.*

On May 14, 2026, the Court ordered the Parties to comply with a different procedure regarding the redacted CAR. The Court ordered that: (1) Defendants provide Plaintiffs with a proposed redacted CAR by May 23, 2026; (2) the Parties confer in good faith to attempt to resolve any disputes regarding Defendants' proposed redactions; (3) Defendants file a motion seeking to maintain the redacted information under seal by June 3, 2026; and (4) that Plaintiffs would have until June 12, 2026, to file any opposition to Defendants' motion seeking to maintain the redacted information under seal. *See* May 14, 2026, Minute Order.

Defendants provided a proposed redacted CAR to Plaintiffs on May 22, 2026. On May 29, 2026, the Parties engaged in a meet and confer to discuss Defendants' proposed redacted CAR. The Parties have since resolved all disputes regarding individual redactions in the proposed redacted CAR.[1] Attached as Exhibit A to this Motion is Defendants' proposed redacted CAR; the Parties are in agreement as to the redactions found in the proposed redacted CAR.[2]

Pursuant to the Court's May 14, 2026, Minute Order, Defendants submit this Motion to Maintain Redacted Information in the Certified Administrative Record under Seal.

### ARGUMENT

Defendants' proposed redacted CAR contains only narrowly tailored, line-by-line redactions. *See* Ex. A. These limited redactions have been applied only to materials falling within three categories: (1) personally identifiable information, (2) sensitive information about law enforcement, and (3) sensitive information about national security. As outlined below, courts,

---

[1] For the purpose of this Motion, Plaintiffs do not oppose the redactions found in the middle of U-DOW-CAR-028 ("To comply with this Executive Order . . . greatest extent legally possible.").

[2] *See supra* n.1.

including this District, have found it permissible to withhold information on these bases. Defendants, therefore, respectfully request that the Court grant this Motion to maintain the redacted information found in the proposed redacted CAR under seal. *See* Ex. A.

## I.    Personally Identifiable Information

### A.    Personally identifiable information pertaining to non-public facing government employees.

The proposed redacted CAR shields the personally identifiable information ("PII") of non-public facing government employees, such as their names, phone numbers, and email addresses. *See infra* Table 1. These redactions are both proper and necessary; this District permits the redaction of PII related to non-public facing government employees. *See Groenendal v. Exec. Off. for U.S. Att'ys*, No. 20-CV-1030 (DLF), 2024 WL 1299333 (D.D.C. Mar. 27, 2024), *aff'd sub nom. Groenendal v. Exec. Off. for United States Att'ys*, No. 24-5086, 2024 WL 4455868 (D.C. Cir. Oct. 8, 2024) (finding appropriate redactions to "personally identifying information of non-public-facing employees, such as each employee's name, address, place of birth, employment history, and telephone number" (internal quotations omitted)); *see also, e.g.*, *Bast v. U.S. Dep't of Just.*, 665 F.2d 1251, 1255 (D.C. Cir. 1981) ("government officials do not surrender all rights to personal privacy when they accept a public appointment"); *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 179–80 (D.D.C. 2014*)*. And during the Parties' May 29, 2026, meet and confer, counsel for Plaintiffs confirmed that Plaintiffs agree that this information should remain redacted. *See also* ECF No. 92-1 at 6. Thus, PII relating to non-public facing government employees should remain under seal.[3]

---

[3] Relatedly, the proposed redacted CAR contains three pages listing the now-redacted names of "detainees to whom" a group of attorneys from NOVO Legal "request[ed] access for legal visits." *See* U-DOW-CAR-643–45 (list of detainee names); U-DOW-CAR-630–45 (letter from NOVO Legal, dated February 20, 2025). During the Parties' May 29, 2026, meet and confer, counsel for

| TABLE 1 |
|---|
| **Portions of proposed redacted CAR containing personally identifiable information pertaining to non-public facing government employees.** |

| | |
|---|---|
| **U-DOW-CAR-** | 009, 011, 017, 028, 125, 127, 131, 141, 147, 182, 187, 188, 190–91, 198, 204–05, 207–09, 211, 596–98, 599, 647, 649, 650, 658 |
| **DHS-** | 088, 092, 116, 122, 167 |

**B.     Personally identifiable information pertaining to public facing government employees.**

Similarly, the proposed redacted CAR contains redactions regarding the PII of certain public facing government employees. *See infra* Table 2. These redactions—which only constitute a small portion of the redactions found in the proposed redacted CAR, *see id.*—are appropriate because this District has determined that it is proper to withhold from the public identifying information about government officials and personnel where release of that information would cause "potential harassment and efforts to gain further access to [them] or to additional personal information." *See Banks v. Dep't of Just.*, 813 F. Supp. 2d 132, 142 (D.D.C. 2011) (alteration in original); *Abdeljabbar*, 74 F. Supp. 3d at 179–80.

The redactions here are narrower than those concerning the non-public facing government employees: Defendants have not redacted the names of these public facing government employees, only their contact information such as phone numbers and email addresses.[4] *See infra* Table 2. Releasing this contact information to the public could certainly cause harassment and lead to efforts to gain further access to these individuals. *See Banks*, 813 F. Supp. 2d at 142. "These

---

Plaintiffs confirmed Plaintiffs' agreement that these names should remain under seal to protect the identities of those individuals.

[4] *See, e.g.*, U-DOW-CAR-028 (mobile phone number of DOW Deputy Secretary), U-DOW-CAR-028 (email addresses of public facing military personnel); DHS-000122 (email addresses of public facing DHS officials).

concerns significantly outweigh what little benefit the public may gain with this information as to" the merits of this action. *See Abdeljabbar*, 74 F. Supp. 3d at 179–80.

During the Parties' May 29, 2026, meet and confer, counsel for Plaintiffs confirmed that Plaintiffs agree to these limited redactions. Thus, for these reasons, the PII (not including names) relating to public facing government employees should remain under seal.

| TABLE 2 | |
|---|---|
| **Portions of proposed redacted CAR containing personally identifiable information pertaining to public facing government employees.** | |
| **U-DOW-CAR-** | 001, 650 |
| **DHS-** | 088, 122 |

## II.    Sensitive Information About Law Enforcement

The CAR in this matter contains sensitive information about law enforcement—including law enforcement staffing, resources, intelligence, and methods—that should remain under seal and shielded from public disclosure. *See infra* Table 3.

As noted in Defendants' prior motion, ECF No. 88, this Circuit has established a six-factor balancing test to guide courts faced with a motion to seal judicial records, also known as the "*Hubbard* factors." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 n.14 (D.C. Cir. 1991) (reciting six-factor test: "(1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced") (citing *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980)).

As demonstrated below, an analysis of the *Hubbard* factors reveals that these materials ought to be withheld from public disclosure given—among other reasons—the lack of public need for access to these materials and the substantial harm that may occur to Defendants and their law enforcement efforts if this information were to be publicly disseminated.

The first *Hubbard* factor—the need for public access to the materials at issue—weighs against unsealing or removing the redactions related to sensitive information about law enforcement. "A district court weighing [this] factor should consider the public's need to access the information that remains sealed." *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 119 (D.C. Cir. 2021) ("*CNN*"). And here, the public does not need to access the sensitive law enforcement information redacted in the CAR. For example, a large portion of the law enforcement-related redactions concern active law enforcement databases,[5] which this District has determined can be withheld from public disclosure. *See Long v. Immigr. & Customs Enf't*, 813 F. Supp. 3d 13, 25 (D.D.C. 2025) ("For all currently active law enforcement databases, Defendant may withhold this information.") (citing *New Orleans Workers' Ctr. for Racial Just. v. United States Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 69 (D.D.C. 2019)).

Nor does the public need access to information implicating law enforcement resources and staffing—such as the number of law enforcement personnel assigned to a specific task[6] or overviews of law enforcement operational functions,[7] including certain law enforcement capabilities and resources. *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 525 F. Supp. 3d 181, 191–93 (D.D.C. 2021) (determining that government was

---

[5] *See, e.g.,* DHS-000251–53 (DHS's "Enforce" database); DHS-000255–72 (DHS's "EARM" database).

[6] *See, e.g.*, U-DOW-CAR-182, 195, 198, 200 (personnel staffing numbers).

[7] *See, e.g.*, U-DOW-CAR-584 (outlining certain ICE areas of responsibility); DHS-000089.

exempt from disclosing the number of Secret Service personnel staffing a particular trip because disclosure could problematically reveal the techniques, procedures, and guidelines that govern the creation of travel plans); *CNN*, 984 F.3d at 120 (noting "dire consequences that may occur if an agency discloses its intelligence . . . methods").

And to be sure, this action does not challenge or raise claims related to the sensitive law enforcement information found in the CAR. *See generally* Complaint, ECF No. 1. Nor does this action in any manner raise claims that might make staffing or disposition of DHS and DOW personnel even remotely relevant. Put simply, Plaintiffs solely challenge the location of their detention, not the manner or methods used to effectuate their detention.  For these reasons, the first *Hubbard* factor favors maintaining the redacted information under seal. As does the second *Hubbard* factor—the extent to which the public had access to the documents prior to the sealing order—because the public does not have access to the sensitive law enforcement information found in the CAR.

"The third, fourth, and fifth *Hubbard* factors are interrelated" and "although not dispositive, the fact that a party moves to seal the record weighs in favor of the party's motion." *See Gilliard v. McWilliams*, No. CV 16-2007 (RC), 2019 WL 3304707, at *4 (D.D.C. July 23, 2019) (internal quotations omitted). Defendants have moved to seal the CAR. *See, e.g.*, ECF Nos. 80, 85, 88.

The third *Hubbard* factor—the fact that a party has objected to disclosure and the identity of that party—again "weighs against disclosure because all [D]efendants object to unsealing." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 12 (D.D.C. 2013).

The fourth *Hubbard* factor— the strength of the property and privacy interests involved— also weighs in favor of maintaining the redacted information under seal because "secrecy plays an

7

outsized role in [this] specific context." *CNN*, 984 F.3d at 120. That the redactions are found (1) on documents previously marked as "FOUO" (i.e., "for official use only"),[8] (2) in email correspondence between cabinet-level government officials,[9] or (3) within internal law enforcement training materials[10] demonstrates that these sensitive law enforcement materials were confidential, restricted, and generally not to be released or otherwise communicated to the public.

The fifth *Hubbard* factor—the possibility of prejudice to those opposing disclosure— weighs in favor of maintaining the redacted information under seal because disclosure of sensitive law enforcement information could prejudice and impair Defendants' ability to carry out certain law enforcement functions. For example, disclosing records databases,[11] internal "intranet" links,[12] and email inboxes[13] could allow opportunities for "potential hackers [to] exploit the information to assess vulnerabilities and engineer attacks." *Long*, 813 F. Supp. 3d at 25. And it is possible that disclosure of this information will "lead to prejudice in future litigation." *See Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009). For example, if certain materials related to Defendants' post order custody review processes[14] are released to the public, future litigants may attempt to use this information against the government.

---

[8] *See, e.g.*, U-DOW-CAR-182, 195, 198, 200 (header and footer of these documents read "FOUO").

[9] *See, e.g.*, U-DOW-CAR-145 (email correspondence between DOW Secretary and DHS Secretary); DHS-000088–90 (same and includes limited email addresses for high-level officials).

[10] *See generally, e.g.*, DHS-000127–273 (internal DHS training materials related to law enforcement and detention).

[11] *See, e.g.*, DHS-000251–53 (DHS's "Enforce" database); DHS-000255–72 (DHS's "EARM" database).

[12] *See, e.g.*, DHS-138, 140, 158, 161, 166, 204, 208, 245, 273 (internal ICE "intranet" link).

[13] *See, e.g.*, U-DOW-CAR-182, 198 (general internal email inbox addresses); DHS-000088, 165, 172, 249 (same).

[14] *See generally* DHS-000128–273.

Finally, the sixth *Hubbard* factor—the purposes for which the documents were introduced—weighs in favor of maintaining the redacted information under seal at this juncture of the litigation. "If the documents were obtained through discovery, for example, they are afforded a stronger presumption of privacy, as those materials typically are not publicly accessible." *Friedman*, 672 F. Supp. 2d at 61 (D.D.C. 2009) (citing *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996)). Because the materials at issue here were obtained during discovery and given that the sensitive law enforcement information is neither "central to the claims of the litigation" nor proffered by Defendants with the explicit intent that "the Court rely on [the sealed] materials in adjudicating their dispute," this factor weighs in favor of maintaining this information under seal.[15] *See Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 58–59 (D.D.C. 2021).

Thus, the *Hubbard* factors all weigh in favor of maintaining the redacted materials related to sensitive law enforcement information under seal.

| TABLE 3 | |
|---|---|
| **Portions of proposed redacted CAR containing sensitive information related to law enforcement staffing, resources, intelligence, and methods** | |
| **U-DOW-CAR-** | 028, 145, 181, 182, 195, 198, 200, 584 |
| **DHS-** | 088–89, 092, 138, 140–50, 158, 161, 165–67, 172, 204, 208, 245, 249, 251–53, 255–73 |

---

[15] Defendants acknowledge that this specific factor may not weigh as strongly in favor of sealing if the redacted sensitive law enforcement information, down the line, "affect[s] a judicial decision," or is otherwise "considered as part of judicial decisionmaking." *See Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 58–59 (D.D.C. 2021).

### III.    Sensitive Information About National Security

The CAR in this matter also contains sensitive information about national security—including staffing, resources, intelligence, and methods—that should remain under seal and shielded from public disclosure. *See infra* Table 4.

It is well-established that "the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 926–27 (D.C. Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678, 696, (2001)). When national security concerns are implicated in unsealing documents, this counsels against lifting the redactions. *See Dhiab v. Trump*, 852 F.3d 1087, 1098 (D.C. Cir. 2017) ("The law of this circuit is that the need to 'guard against risks to national security interests' overcomes a common-law claim for access.") (quoting *Hubbard*, 650 F.2d at 315–16); *In re New York Times Co.*, No. MC 21-91 (JEB), 2021 WL 5769444, at *6 (D.D.C. Dec. 6, 2021). Like the law enforcement information discussed above, the *Hubbard* factors similarly weigh in favor of maintaining the national security information under seal.

The first *Hubbard* factor—the need for public access to the materials at issue—weighs against unsealing or removing the redactions related to sensitive information about national security. "A district court weighing [this] factor should consider the public's need to access the information that remains sealed." *CNN*, 984 F.3d at 119. Here, the public does not need to access the sensitive national security information redacted in the CAR. For example, the public has only a minimal interest—if any—in intelligence staffing, methods, and resources contained in the CAR.[16] *See Mowery v. Nat'l Geospatial Intel. Agency,* No. CV 20-3170, 2020 WL 12979022, at *2

---

[16] *See*, *e.g.*, U-DOW-CAR-181, 191 (DOW intelligence staffing); U-DOW-CAR-184, 201, 584, 593 (DOW/DHS intelligence methods); DHS-000089 (DHS intelligence staffing).

(D.D.C. Nov. 12, 2020) (finding only minimal public need for disclosure of operational information of intelligence agencies). And the Supreme Court has been clear that "[d]isclosure of the subject matter of [intelligence agencies'] research efforts and inquiries may compromise the [government's] ability to gather intelligence as much as disclosure of the identities of intelligence sources." *C.I.A. v. Sims*, 471 U.S. 159, 176 (1985). In other words, when intelligence and national security staffing and methods are implicated, the need for secrecy undermines any need for public access because public access would thwart national security and intelligence operations. *See CNN*, 984 F.3d at 120 (noting "dire consequences that may occur if an agency discloses its intelligence . . . methods").

Similarly, the public does not need access to information implicating national security resources and staffing—such as the number of military personnel assigned to a specific task[17] or overviews of national security operational functions, including certain national security capabilities and resources.[18] *See Citizens for Resp. & Ethics in Washington*, 525 F. Supp. 3d at 191–93 (determining that government was exempt from disclosing the number of Secret Service personnel staffing a particular trip because disclosure could problematically reveal the techniques, procedures, and guidelines that govern the creation of travel plans). Nor is there any need for the public to have access to how the government employs intelligence gathering platforms even if the existence of such platforms, for example a particular satellite system, is public knowledge. For these reasons, the first *Hubbard* factor cuts in favor of maintaining the redacted information under seal. And so does the second *Hubbard* factor— the extent to which the public had access to the

---

[17] *See, e.g.*, U-DOW-CAR-182, 195, 198, 200 (personnel staffing numbers and DOW security staffing areas of responsibility).
[18] *See, e.g.*, U-DOW-CAR-584 (outlining certain law enforcement capabilities); DHS-000089 (same).

documents prior to the sealing order—because the public does not have access to the sensitive national security information found in the CAR.

The interrelated third, fourth, and fifth *Hubbard* factors also weigh in favor of maintaining national security information under seal. *See Gilliard*, 2019 WL 3304707, at *4. While not dispositive, the fact that the government has moved to seal discrete and limited portions of the CAR weighs in favor of the government's motion. *See id.*; *see, e.g.*, ECF Nos. 80, 85, 88.

The third *Hubbard* factor—the fact that a party has objected to disclosure and the identity of that party— "weighs against disclosure because all [D]efendants object to unsealing." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 12; *see also United States v. Puma*, 666 F. Supp. 3d 7, 14–15 (D.D.C. 2023) (finding defendant's objection to disclosure weighed in favor of keeping video recordings sealed).

The fourth *Hubbard* factor—the strength of the property and privacy interests involved— weighs heavily in favor of maintaining the redacted information under seal because "secrecy plays an outsized role in [this] specific context." *CNN*, 984 F.3d at 120. The Supreme Court has long held that "the Government has a compelling interest in protecting [] the secrecy of information important to our national security[.]" *C.I.A.*, 471 U.S. at 175; *see also Haig v. Agee,* 453 U.S. 280, 307 (1981) ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation."); *United States v. Wash. Post. Co.*, 403 U.S. 943, 943 (1971) (ordering that "[p]ortions of the record or argument relating to matters claimed to affect national security" may be filed under seal). Here, the redacted national security information relates to internal operations of the military, including intelligence operations and even the deployment of a satellite

12

system.[19] Because these portions of the CAR implicate national security concerns, this factor weighs in strongly favor of sealing. *See Mowery*, 2020 WL 12979022, at *2.

Moreover, much of the information the government seeks to maintain under seal was originally marked as "FOUO" meaning "For Official Use Only" and contains "CUI" meaning "Controlled Unclassified Information."[20] These marks indicate the information contained in these documents were not intended for public disclosure.

The fifth *Hubbard* factor—the possibility of prejudice to those opposing disclosure— weighs in favor of maintaining the redacted information under seal because disclosure of sensitive national security information could prejudice and compromise Defendants' ability to carry out certain national security functions. *See C.I.A.*, 471 U.S. at 175; *see also Haig,* 453 U.S. at 307. Here, disclosing military intelligence resources and methods[21] or disclosing internal military operations[22] risks compromising those national security operations. *See Mowery*, 2020 WL 12979022, at *2 (finding the fifth factor weighs in favor of sealing when "the potential risks to national security from full public disclosure are serious").

Finally, the sixth *Hubbard* factor weighs in favor of maintaining the redacted information under seal at this juncture of the litigation. This factor "concerns the purposes for which the documents were introduced." *Friedman*, 672 F. Supp. 2d at 61 (D.D.C. 2009). "If the documents

---

[19] *See* U-DOW-CAR-145 (outlining certain law enforcement areas of responsibility), 181, 198 (military intelligence staffing); U-DOW-CAR-184, 201, 593 (military intelligence methods and resources); U-DOW-CAR-195, 200, 591 (military security staffing); U-DOW-CAR-189, 206 (military classification practices); U-DOW-CAR-207, 597 (military operations).

[20] *See* U-DOW-CAR-181-207 (FOUO); U-DOW-CAR-587–97 (FOUO).

[21] U-DOW-CAR-181, 191 (DOW intelligence staffing); U-DOW-CAR-184, 201, 593, 584 (DOW/DHS intelligence methods); DHS-000089 (DHS intelligence staffing request).

[22] U-DOW-CAR-184, 201, 593 (military intelligence methods and resources); U-DOW-CAR-195, 200, 591 (military security staffing); U-DOW-CAR-189, 206 (military classification practices); U-DOW-CAR-207, 597 (military operations).

were obtained through discovery, for example, they are afforded a stronger presumption of privacy, as those materials typically are not publicly accessible." *Id.* (citing *E.E.O.C.*, 98 F.3d at 1411). Because the materials at issue here were obtained during discovery and given that the national security information is neither "central to the claims of the litigation" nor proffered by Defendants with the explicit intent that "the Court rely on [the sealed] materials in adjudicating their dispute," this factor weighs in favor of keeping these materials under seal.[23] *See Vanda Pharms.*, 539 F. Supp. 3d at 58–59.

| TABLE 4 | |
|---|---|
| **Portions of proposed redacted CAR containing sensitive information about national security.[24]** | |
| **U-DOW-CAR-** | 181, 182, 184, 189, 195, 198, 200, 201, 206, 207, 584, 591, 593, 597, |
| **DHS-** | 089 |

### CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court maintain the redacted information in the proposed redacted CAR, Ex. A, under seal.

///

---

[23] *See supra* n.15.

[24] The supplemental CAR, U-DOW-CAR-646–62, contains redactions to protect classified information. *See* ECF Nos. 85, 89. During the Parties' May 29, 2026, meet and confer, counsel for Plaintiffs confirmed that Plaintiffs do not contest these redactions. And even if Plaintiffs sought disclosure of this classified information, the government's interest in protecting secret information should prevent such disclosure. *See, e.g., Dhiab*, 852 F.3d at 1089.

Dated: June 3, 2026

BRETT A. SHUMATE
*Assistant Attorney General, Civil Division*

ANTHONY P. NICASTRO
*Acting Director*

LESLIE McKAY
*Assistant Director*

RUSSELL J.E. VERBY
*Senior Litigation Counsel*

MALCOLM McDERMOND
ALEXA PERLMUTTER
JASON K. ZUBATA
*Trial Attorneys*

By: /s/ *Ian S. Lam*
IAN S. LAM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-6329
Email: ian.s.lam@usdoj.gov

*Attorneys for Defendants-Respondents*

15

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this Motion on the Court and all parties of record by filing it with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to these documents to all counsel of record.

Dated: June 3, 2026                      /s/ *Ian S. Lam*
                                             IAN S. LAM
                                             Trial Attorney

                                             *Attorney for Defendants-Respondents*