**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| YAMIL LUNA GUTIERREZ, *et al.*, | ) |
| | ) |
| *Plaintiffs-Petitioners, on behalf of themselves and all others similarly situated,* | ) |
| v. | ) Case No. 1:25-cv-01766-SLS |
| | ) |
| MARKWAYNE MULLIN, Secretary of Homeland Security, in his official capacity, *et al.*, | ) |
| | ) |
| *Defendants-Respondents.* | ) |

**DECLARATION OF NATALIE BEHR**
**IN SUPPORT OF PLAINTIFFS-PETITIONERS' PARTIAL MOTION**
**FOR SUMMARY JUDGMENT**

I, Natalie Behr, hereby declare:

1.  I am an attorney at the American Civil Liberties Union Foundation ("ACLU") Immigrants' Rights Project, and I am co-counsel for Plaintiffs-Petitioners ("Plaintiffs") in this case. I make this declaration to describe the analysis I conducted regarding discovery Defendants-Respondents ("Defendants") produced in the course of this litigation.

2.  On May 22, 2026, Defendants produced a table titled "ICE Discovery Response to Question 2," reflecting information about all noncitizens that were transferred to Guantánamo between June 4, 2025, and February 2, 2026. A true and correct copy of this table is attached to this declaration as Exhibit A, with personally identifying information redacted pursuant to the Protective Order. *See* ECF Nos. 69-1–2.[1] Defendants had produced versions of this table earlier in the discovery process, but the May 22 production reflects the table with the most complete set of information that Defendants agreed to provide and that the Court ordered.

3.  For each noncitizen included in this table, Defendants provided the following data:

    - Complete name, A-number, and citizenship of the individual;
    - The date the individual was "[b]ook[ed] in" to Guantánamo;
    - The date they were "[b]ook[ed] out" of Guantánamo;
    - The reason for their "release" from Guantánamo (whether they were

---

[1] The parties agree that the personally identifying information should be redacted. Plaintiffs do not rely on the redacted information so have not filed an unredacted version under seal but will provide the Court a copy of the unredacted version upon request.

"removed" to another country or "transferred" back to the United States);

- If they were "transferred" rather than "removed," the reason why they were returned to the United States and the name of the facility to which they were transferred;
- If they were transferred to another country for removal, the country to which they were ultimately transferred;
- The date they departed to that country; and,
- Whether another country had agreed to accept that individual for removal at the time of their transfer to Guantánamo.

4.  On June 1, 2026, Defendants produced a separate table titled "26.5.25_Luna Gutierrez v. Mullin_Outstanding Disc. 1_Defs' Resp_Final," reflecting additional information about ten of the noncitizens included in Exhibit A that had been transferred from Guantánamo back to the United States. Specifically, for some of these ten noncitizens, the government provided new information about the country to which they were transferred from the United States, and the date they departed to that country. For some others, the government provided information about whether the individual was still in detention in the United States or whether the individual had been released from custody. A true and correct copy of this table is attached to this declaration as Exhibit B, with personally identifying information redacted pursuant to the Protective Order. *See* ECF Nos. 69-1–2.

5.  I converted the table in Exhibit A into an Excel spreadsheet and counted 227 noncitizens in this table. I inputted the additional information provided in Exhibit B into this Excel spreadsheet.

6.  Using this data, I calculated the following:[2]

    - The median number of days that these 227 noncitizens included in the chart spent detained at Guantánamo was 23 days;
    - The mean number of days they spent detained at Guantánamo was 30.8 days;
    - 105 noncitizens, or 46.3% of these 227 noncitizens, spent over 30 days detained at Guantánamo;
    - 75 noncitizens, or 33% of these 227 noncitizens, spent over 40 days detained at Guantánamo; and,
    - Three noncitizens spent over 100 days detained at Guantánamo.

7.  I also used this data to calculate that 90 noncitizens (or 39.6% of all 227 noncitizens) were transferred from Guantánamo to a detention facility within the United States, rather than being "removed" directly from Guantánamo.

---

[2] When calculating these noncitizens' length of detention at Guantánamo, I did not include the date they were "booked out" of Guantánamo.

8. For this group transferred from Guantánamo back to the United States, the mean average length of their detention at Guantánamo was 48.6 days.

9. I calculated that 7.8% of that group (or seven noncitizens) were transferred to the country designated for their removal within three days of their return to the United States.

10. I calculated that 82 of the 90 noncitizens who were transferred back to the United States, or 91.1%, spent over seven days in detention in the United States after leaving Guantánamo. 75 of those 82 noncitizens were ultimately transferred to their final destination country of removal, with five noncitizens waiting 60 or more days before being transferred to their final destination country.

11. I calculated that seven out of the 90 noncitizens who were transferred back to the United States, or 7.8%, were either released from custody in the United States or, as of Defendants' last discovery production on June 1, 2026, remained in detention in the United States.

12. Based on this data, I also determined that no noncitizens among the 227 noncitizens (zero percent of the group) had been accepted for removal at the time of their transfer to Guantánamo.

I declare under penalty of perjury under the laws of the United States and New York that the foregoing is true and correct.

Executed in Brooklyn, New York on the 9th of June, 2026.

/s/ *Natalie Behr*
Natalie Behr