# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

YAMIL LUNA GUTIERREZ, *et al.*,        )
                                        )
    *Plaintiffs*,                      )
                                        )
v.                                      )        Civil Action No: 1:25-cv-1766-SLS
                                        )
MARKWAYNE MULLIN, Secretary of the )
Department of Homeland Security, *et al.*,   )
                                        )
    *Defendants*.                      )
_____

## <u>DECLARATION OF JOHN A. SCHULTZ</u>

I, John Schultz, declare the following, pursuant to 28 U.S.C. § 1746, and state under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.      I am the Acting Assistant Director for the Removal Division (RD) with U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO).  I have held this position since April 2026.  I have been employed in various positions with ICE ERO since April 2003.

2.      The RD is located at ICE Headquarters in Washington, D.C. and is responsible for coordinating with the 25 ERO Field Offices to support case management and facilitate the orderly removal of aliens from the United States. The RD, comprised of ICE Air Operations, International Operations, and the Removal Management Division, works in partnership with DHS, the U.S. Department of State (DOS), foreign embassies and consulates, and host government authorities on the complex coordination required to achieve ICE's removal mission through the use of charter flights and commercial airlines, which further improve foreign government cooperation with removal efforts.

1

3.    As the Acting Assistant Director for the RD, I am responsible for overseeing the day-to-day operations regarding the removal of aliens from the United States pursuant to ICE's enforcement mission, and for ensuring that this mission is conducted safely. This includes oversight of the Removal Management Division, which is responsible for advising ERO field offices on the coordination of removals, including the nationwide management of post-order custody guidance, policy, and procedures. The Removal Management Division also coordinates efforts between ERO and the Department of State's domestic and international personnel to ensure that all efforts are made to gain compliance from uncooperative countries in support of ICE's efforts to effectuate the timely removal of aliens with final orders of removal.

4.    ICE effectuates removals pursuant to final orders of removal issued under the Immigration and Nationality Act (INA).  In most cases, aliens are removed to their respective countries of citizenship.

5.    ICE typically needs a valid travel document to effectuate an alien's removal from the United States.  If ICE is in possession of a valid passport for the alien, there is generally no need for ICE to obtain another travel document for the country as the passport indicates that the receiving country will accept the alien.  In cases for which a valid passport does not exist, ICE routinely requests that foreign embassies and consulates verify an alien's nationality and issue a travel document for the alien's removal prior to effectuating the alien's removal.  The various types of travel documents include a passport, a temporary travel document, or a laissez-passer. Each country has its own process by which it verifies an alien, and it may require coordination by the relevant Detention and Deportation Officer that acts as a liaison to the embassy or consulate of the alien's country of citizenship. Some countries may

require nationality verification interviews while others may be able to verify identity with only an alien's name, date of birth, and country identity number. The processing time to obtain travel documents varies significantly, contingent on the country. The receipt of a travel document indicates that the country has accepted the alien.

6.      Travel documents are not necessary for the citizens of countries that participate in the Electronic Nationality Verification (ENV) program, which eliminates the need for a traditional travel document.  ICE provides advanced notifications to the country through the ERO attaché, and citizenship is verified upon the alien's arrival. In the rare case that the country is unable to verify citizenship, the alien is returned to the United States on the charter flight's return to the United States.

7.      ICE also utilizes third-country removals in a variety of situations.  These include if ICE is unable to obtain a travel document from the alien's country of citizenship, or if ICE is unable to remove the alien to his or her country of citizenship because, although the alien has a final order of removal, the alien has withholding of removal under INA § 241(b)(3) or deferral of removal under the Convention Against Torture pursuant to 8 C.F.R. § 1208.17.

8.      Many third-country removals involve coordination through the Department of State. The Department of State engages with certain countries on various arrangements and agreements to allow ICE to remove aliens with final orders of removal to those countries. The Removal Management Division will elevate names through the Department of State for consideration by the applicable third country, pursuant to the nomination criteria. Upon notification of acceptance by the third country, also through the Department of State, there is generally a short turnaround prior to the removal flight's departure. Additionally, ICE also utilizes a separate third-country removal pathway with Mexico separate from the Department

of State's arrangements and agreements which allows ICE to remove aliens under final orders of removal to Mexico through various ports-of-entry along the southwest border.

9.      The complex nature of third-country removals, including the logistical operations, the close coordination required through the Department of State, and ongoing habeas litigation, often requires the rapid movement of aliens in anticipation of an upcoming removal.

10.     ICE utilizes a staging process to conduct removal charters.  On a daily basis, ICE transports aliens throughout the country. In addition to transporting aliens to staging, aliens may be moved from one detention facility to another due to bed space issues or medical resource issues.  Should removal be delayed as well for operational reasons or legal impediments to removal, transferring the alien again may become a necessity as bed space near staging locations is prioritized for imminent removals.

11.     I provide this declaration based on my personal knowledge, reasonable inquiry, and information obtained in my official capacity from various records, systems, databases, other DHS employees, and information portals maintained and relied upon by DHS in the regular course of business and information provided by other government agencies or personnel

Executed on this 26th day of June 2026.

JOHN A
SCHULTZ

Digitally signed by
JOHN A SCHULTZ
Date: 2026.06.26
06:59:50 -04'00'

John A. Schultz
Acting Assistant Director
Removal Division
U.S. Immigration and Customs Enforcement
Washington, D.C.

4