**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| YAMIL LUNA GUTIERREZ, *et al.*,<br><br>*Plaintiffs-Petitioners*, *on behalf of themselves and all others similarly situated,*<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security, in his official capacity, *et al.*,<br><br>*Defendants-Respondents*. | Case No. 1:25-cv-01766-SLS |

**REPLY TO DEFENDANTS-RESPONDENTS' RESPONSE TO**
**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Defendants-Respondents ("Defendants") filed a response to Plaintiffs-Petitioners' ("Plaintiffs") Statement of Material Facts Not in Genuine Dispute, ECF No. 108-3 ("Plaintiffs' SUF"), *see* ECF No. 110-3 ("Defendants' SUF Response"), but failed to submit a statement of material facts as to which they contend there is no genuine issue in connection with their affirmative motion for partial summary judgment, as required by Federal Rule of Civil Procedure 56(c) and Local Civil Rule 7(h)(1). Such a statement of facts is necessary where, as here, there has been discovery in the case, and thus the record on summary judgment is comprised of more than just the administrative record. *See* ECF No. 97 (order granting discovery); LCvR 7(h)(2) (stating that the requirement for a statement of material facts as to which there is no genuine issue "shall not apply to cases in which judicial review is based *solely* on the administrative record") (emphasis added); Pls.' Opp. to Defs.' Mot. Summ. J. & Reply ISO Pls.' Mot. Summ. J. at 6 (citing cases). Plaintiffs nevertheless respond to Defendants' SUF Response here.

1

**Paragraph 8**

**Plaintiffs' SUF ¶ 8**: "Until 2025, the government has never transferred noncitizens apprehended and detained in the United States on civil immigration charges to Guantánamo, or to any other facility outside the United States, for the purpose of civil immigration detention under the INA. Answer ¶¶ 4, 23."

**Defendants' SUF Response:** "Defendants lack information or knowledge sufficient to concur or dispute this assertion of fact as Defendants cannot speak to transfers that may or may not have occurred prior to the existence of the U.S. Department of Homeland Security, including but not limited to those that may or may not have taken place under legacy government agencies, such as the Immigration and Naturalization Service. This response was provided to Plaintiffs in response to Request for Admission No. 1." Defs.' SUF Response at 3–4.

**Plaintiffs' Response:** In the Answer, Defendants admitted that "[n]ever before this Administration has the federal government transferred noncitizens apprehended and detained in the United States on civil immigration charges to Guantánamo, or to any other facility outside the United States, for the purpose of civil immigration detention," Answer ¶ 4, ECF No. 62 (admitting first sentence of Compl. ¶ 4, ECF No. 1), and that "[u]ntil February of this year, the government had never used Guantánamo to detain noncitizens apprehended and detained in the United States under the Immigration and Nationality Act ("INA")," Answer ¶ 23 (admitting first sentence of Compl. ¶ 23). Defendants' Answer is binding on them. *Nat'l Ass'n of Life Underwriters, Inc. v. Comm'r*, 30 F.3d 1526, 1530 (D.C. Cir. 1994) ("admissions in the pleadings are binding").

**Paragraph 11**

**Plaintiffs' SUF ¶ 11:** "The President's Memorandum did not direct DHS or the Department of Defense ('DOD') to detain noncitizens in Camp 6. U-DOW-CAR-118–119; DHS-000124."

2

**Defendants' SUF Response:** "Defendants dispute this assertion because the President's Memorandum directed "additional detention space for high-priority criminal aliens unlawfully present in the United States," *see* U-DOW CAR 118-119, DHS-000124, and directed the "[e]xpan[sion of the] Migrant Operations Center," *see* U-DOW-CAR-118, not Camp VI." Defs.' SUF Response at 5–6.

**Plaintiffs' Response:** Defendants' response ignores the plain text of the President's Memorandum, which "direct[s] the Secretary of Defense and the Secretary of Homeland Security to take all appropriate actions to expand the *Migrant Operations Center* at Naval Station Guantanamo Bay," but does not anywhere mention Camp 6. U-DOW-CAR-118–19; DHS-000124 (emphasis added). Defendants' response also ignores how their own record describes Camp 6 separately from the Migrant Operations Center. *See, e.g.*, SUF ¶¶ 5, 45, 50; Defs.' SUF Response ¶¶ 5, 45, 50.

**Paragraph 51**

**Plaintiffs' SUF ¶ 51:** "The government has publicly referred to the immigration detainees held at Guantánamo as 'the worst of the worst,' and 'high-threat' criminals who crossed the border to bring 'violence and mayhem to our communities.' Gonzalez Decl. Ex. O; *see also* Gonzalez Decl. Ex. N."

**Defendants' Response:** "Defendants dispute that Gonzalez Decl. Ex. O or Gonzalez Decl. Ex. N use the phrase 'the worst of the worst.' Defendants concur that Gonzalez Decl. Ex. O uses the phrase 'high-threat.'" Defs.' SUF Response at 21.

**Plaintiffs' Response:** Defendants do not dispute that the government has publicly referred to the immigration detainees held at Guantánamo as "the worst of the worst." That quotation appears in the Declaration of Sofia Gonzalez Ex. E, ECF No. 108-14 (@CBP posting on X, formerly Twitter,

3

"[f]lights to Guantanamo Bay have begun. The worst of the worst have no place in our homeland.").

**Paragraphs Regarding Analysis of Data Defendants Produced in Discovery**

**Plaintiffs' SUFs ¶¶ 56–69, 76, 78–86, 88–91, 96–105**

**Defendants' Response:** To the above paragraphs, Defendants responded along the following lines: "[t]he May 22, 2026, June 1, 2026, and June 25, 2026 ICE Discovery Responses speak for themselves, and the statistics Plaintiffs offer amount to an interpretation of the data as expressed by Plaintiffs' counsel." Defs.' SUF Response at 22–27, 29–34, 35–39; *see also id.* at 35–39 ("The May 22, 2026, June 1, 2026, and June 25, 2026 ICE Discovery Responses as contextualized by the Schultz Decl. speak for themselves, and the statistics Plaintiffs offer amount to an interpretation of the data as expressed by Plaintiffs' counsel.").

**Plaintiffs' Response:** Defendants do not dispute Plaintiffs' statements of material facts regarding calculations of the data Defendants produced in discovery. If Defendants believed Plaintiffs' "interpretation" of the data was erroneous, they were required to say so and explain why. Accordingly, the Court should consider these facts admitted. *See* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Indeed, Defendants rely on some of these facts in support of their motion for partial summary judgment. *See, e.g.*, Defs.' Opp. at 22–23, ECF No. 110-2 (citing facts in Pls.' SUF ¶¶ 96, 99–100).

4

**Paragraph 75**

**Plaintiffs' SUF ¶ 75:** "One noncitizen was returned to the United States because he did not have a final order of removal. Behr Decl. Ex. A at 5."

**Defendants' Response:** "Defendants dispute this assertion. *See Vasilevskii v. Noem* (D.D.C., No. 25-2173) ECF Nos. 26 at 4 (providing that alien was transferred to facility within the territorial United States before his final order was cancelled); 46 (Order, Feb. 18, 2026) at 2-3 (noting that alien was issued expedited removal order before being transferred to NSGB)." Defs.' SUF Response at 29.

**Plaintiffs' Response:** Defendants' statement is inconsistent with information Defendants provided in discovery. In the chart Defendants produced on May 22, 2026, Defendants stated that this noncitizen was transferred to Guantánamo, was then "[r]eturned to CONUS [the United States] since the alien was not a final order" and has "since been released from custody since proceedings were terminated." Decl. of Natalie Behr Ex. A at 5, ECF No. 108-5. Plaintiffs are unable to access Defendants' sealed pleadings in *Vasilevskii v. Noem* (D.D.C., No. 25-2173), but acknowledge that the Court's order in that case reflects that the government had issued an expedited removal order for this individual at the time of his transfer to Guantánamo. Order at 2–3, *Vasilevskii v. Noem*, No. 25-2173 (D.D.C. Feb. 18, 2026), ECF No. 46. In any case, it appears that the expedited removal order was issued in error.

**Paragraph 87**

**Plaintiffs' SUF ¶ 87:** "The government does not explain what this 'mission' was or whether it is the same or different from its definition of 'travel arrangements.' *See* Behr Decl. ¶ 10 & Ex. C."

**Defendants' SUF Response:** "Defendants dispute any implication that they were obligated to provide a definition for the term 'mission' other than the normal understanding of the word. This

is especially so in light of the fact that Defendants timely provided a definition for the phrase 'travel arrangements' when Plaintiffs requested clarification. *See* Behr Decl. ¶ 10. No such request was made with respect to the term 'mission.'" Defs.' SUF Response at 32–33.

**Plaintiffs' Response:** Plaintiffs' SUF ¶ 87 was not taking issue with Defendants' failure to provide the meaning of the word "mission." Defendants do not dispute Plaintiffs' statement of material fact. Accordingly, the Court should consider this fact admitted. *See* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

**Paragraph 122**

**Plaintiffs' SUF ¶ 122:** "In addition to DOD's flights, as of December 21, 2025, DHS had spent approximately $12 million on transportation alone to fly 82 charter flights, which transported approximately 480 immigrants to Guantánamo and 670 immigrants from Guantánamo, including those who were transported back to the United States. 2025 IG Report at 16."

**Defendants' Response:** "Defendants dispute that 2025 IG Report at 16 contains the information reflected in Plaintiffs assertion of fact." Defs.' SUF Response at 48.

**Plaintiffs' Response:** Plaintiffs regret their typographical error. It was the *2026* IG Report, at 18, that contains the information reflected in Plaintiffs' SUF ¶ 122, as Defendants are aware. *See* Gonzalez Decl. Ex. U at 18, ECF No. 108-30 ("As of December 21, 2025, ICE Air Operations completed a total 28 charter flights arriving at NSGB and 54 charter flights departing from NSGB since OSG began, the DHS said . . . . In the same period, ICE Air Operations transported 481 aliens to NSGB from Arizona, Florida, Louisiana, and Texas, DHS said. During the same period, ICE Air Operations transported 670 individuals from NSGB to 26 countries and locations in the United

States, DHS said. . . . The estimated overall cost of operating these flights since the operation began is nearly $12 million, DHS said.").

**Paragraph 134**

**Plaintiffs' SUF ¶ 134**: "According to an analysis of DHS's data by TRAC, a nonprofit data research project, as of April 14, 2025, ICE's contractual detention capacity in the United States was 62,913, but only 48,056 beds were occupied. Gonzalez Decl. Ex. Z at 1."

**Defendants' Response:** "Defendants dispute this assertion as Footnote 3 of Gonzalez Decl. Ex. Z expresses doubts concerning the accuracy of Plaintiffs' cited 62,913 funded-beds figure as 'significantly larger than the numbers usually given.' Moreover, the figures provided for DHS speak for themselves and the interpretation of a non-profit organization should not be accepted as an uncontroverted fact." Defs.' SUF Response at 52.

**Plaintiffs' Response:** ICE itself disclosed that its contractual detention capacity was 62,913 beds on April 14, 2025, in response to Freedom of Information Act ("FOIA") requests by Transaction Records Access Clearinghouse ("TRAC"). Gonzalez Decl. Ex. Z at 1, ECF No. 108-35.

Dated: July 21, 2026

My Khanh Ngo (D.D.C. Bar No. CA00219)
Kyle Virgien
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Derek Poteet ±*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th Floor

Respectfully submitted,

/s/ *Lee Gelernt*

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Judy Rabinovitz
Noor Zafar
Natalie Behr
Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org

Washington, DC 20005
(703) 217-8374
dpoteet@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Kimberly Grano (D.D.C. Bar No. NY0512)
Pedro Sepulveda (D.D.C. Bar No. NY0637)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 946-7453
kgrano@refugeerights.org
psepulveda@refugeerights.org
gschwarz@refugeerights.org

Megan Hauptman (D.C. Bar No. 1780749)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
650 Massachusetts Avenue NW, Suite 600
Washington, D.C. 20001
(646) 939-7329
mhauptman@refugeerights.org

jrabinovitz@aclu.org
nzafar@aclu.org
IRP_NBehr@aclu.org
ojadwat@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
(212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Pro bono representation certificates
forthcoming
± Not admitted in D.C.; practice limited to
federal courts*