UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAMIL LUNA GUTIERREZ, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>MARKWAYNE MULLIN, Secretary of the<br>U.S. Department of Homeland Security, et al.,<br><br>      Defendants. | Civil Action No. 1:25-cv-01766-SLS |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS ........... 2

          A.     Section 1252(g)'s Jurisdictional Bar Forecloses Review Because Plaintiffs Challenge an Action Arising from the Execution of Their Removal Orders ..................................................................................................... 2

          B.     Section 1252(a)(2)(B)(ii)'s Jurisdictional Bar Forecloses Review Because the Secretary's Authority Pursuant to 8 U.S.C. § 1103(a)(3) Is Specified as Discretionary ............................................................................ 4

    II.     THE DETENTION OF ALIENS AT NSGB IS NOT CONTRARY TO LAW ..... 6

          A.     The Government's Detention Authority Under 8 U.S.C. § 1231 Extends Until a Removal Order is Fully Executed ...................................... 6

          B.     Section 1103(a)(3) Provides Unreviewable Detention Authority Amidst the Execution of Removal Orders ............................................. 10

          C.     The Presumption Against Extraterritoriality Does Not Apply or Is Rebutted ...................................................................................... 15

    III.    THE DETENTION OF ALIENS AT NSGB IS NOT ARBITRARY AND CAPRICIOUS ................................................................................. 17

    IV.   8 U.S.C. § 1252(f)(1) DOES NOT PERMIT WHAT AMOUNTS TO A CLASS-WIDE RESTRAINT ON DETENTION OPERATIONS ..................................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*American Federation of Teachers v. Department of Education*,
779 F. Supp. 3d 584 (D. Md. 2025) ........................................................................ 18

*American Wild Horse Preservation Campaign v. Perdue*,
873 F.3d 914 (D.C. Cir. 2017) ................................................................................ 17

*Boumediene v. Bush*,
553 U.S. 723 (2008) ................................................................................................ 10

*Burrage v. United States*,
571 U.S. 204 (2014) .................................................................................................. 5

*Calla-Collado v. Att'y Gen.*,
663 F.3d 680 (3d Cir. 2011) .................................................................................... 14

*Cayuga Nation v. Zinke*,
302 F. Supp. 3d 362 (D.D.C. 2018) .................................................................... 17, 22

*Clark v. Martinez*,
543 U.S. 371 (2005) .................................................................................................. 9

*Cmty. for Creative Non Violence v. Kerrigan*,
865 F.2d 382 (D.C. Cir. 1989) ................................................................................ 13

*Conserve Sw. Utah v. United States Dep't of the Interior*,
822 F. Supp. 3d 52 (D.D.C. 2026) .......................................................................... 19

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ................................................................................................ 11

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ............................................................................ 2

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020) .................................................................................................... 19

*Doe, 1 v. Fed. Election Comm'n*,
920 F.3d 866 (D.C. Cir. 2019) ................................................................................ 13

*Duncan v. Walker*,
533 U.S. 167 (2001) .................................................................................................. 3

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)................................................................................................ 3

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009).............................................................................................. 19

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
   592 U.S. 414 (2021).............................................................................................. 17

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985).............................................................................................. 22

*Garland v. Ming Dai*,
   593 U.S. 357 (2021).............................................................................................. 10

*Gupta v. McGahey*,
   709 F.3d 1062 (11th Cir. 2013) ............................................................................. 3

*Immigrant Advocs. Response Collaborative v. United States*,
   No. 1:25-cv-2279, 2026 WL 746923 (D.D.C. Mar. 17, 2026) ............................. 3

*INS v. Phinpathya*,
   464 U.S. 183 (1984).............................................................................................. 12

*Reyna as next friend of J.F.G. v. Hott*,
   921 F.3d 204 (4th Cir. 2019) ................................................................................. 8

*Jurewicz v. U.S. Dep't of Agriculture*,
   891 F. Supp. 2d 147 (D.D.C. 2012)..................................................................... 11

*Kingdomware Techs., Inc. v. United States*,
   579 U.S. 162 (2016)................................................................................................ 8

*Kiobel v. Royal DutchPetroleum Co.*,
   569 U.S. 108 (2013).............................................................................................. 15

*Kucana v. Holder*,
   558 U.S. 233 (2010)................................................................................................ 5

*Make the Road New York v. Mullin*,
   179 F. 4th 16 (D.C. Cir. 2026).............................................................................. 23

*Massachusetts Lobstermen's Ass'n v. Ross*,
   349 F. Supp. 3d 48 (D.D.C. 2018) .......................................................................... 9

*Miranda v. Garland*,
   34 F.4th 338 (6th Cir. 2022) ................................................................................. 23

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................................... 21

*Mullin v. Al Otro Lado*,
    No. 25-5, 2026 WL 1825741 (U.S. June 25, 2026) ................................................... 17

*N.C. Fisheries Ass'n v. Gutierrez*,
    518 F. Supp. 2d 62 (D.D.C. 2007) ........................................................................... 17

*Narenji v. Civiletti*,
    617 F.2d 745 (D.C. Cir. 1979) .................................................................................. 13

*National Shooting Sports Foundation, Inc. v. Jones*,
    716 F.3d 200 (D.C. Cir. 2013) .................................................................................. 20

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007) ................................................................................................... 21

*Pereira v. Sessions*,
    585 U.S. 198 (2018) ..................................................................................................... 5

*Quantum Ent. Ltd. v. United States Dep't of the Interior, Bureau of Indian,*
    *Affs.*, 597 F. Supp. 2d 146 (D.D.C. 2009) .................................................................. 19

*Refugee & Immigrant Ctr. for Educ. & LegalServs. v. Mullin* ,
    174 F.4th 81 (D.C. Cir. 2026) ................................................................................... 23

*Raines v. U.S. Department of Justice*,
    424 F. Supp. 2d 60 (D.D.C.2006) ............................................................................. 11

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ................................................................................................ 2, 3

*Sadhvani v. Chertoff*,
    460 F. Supp 2d. 114 (D.D.C. 2006) ........................................................................ 3, 18

*Sault Ste. Marie Tribe of Chippewa Indians v. Haaland*,
    659 F. Supp. 3d 33 (D.D.C. 2023) ............................................................................... 2

*Schieber v. United States*,
    77 F.4th 806 (D.C. Cir. 2023) ...................................................................................... 5

*Spirit Airlines, Inc. v. Dep't of Transp.*,
    997 F.3d 1247 (D.C. Cir. 2021) ................................................................................. 20

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    255 F. Supp. 3d 101 (D.D.C. 2017) ........................................................................... 21

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) .................................................................................................... 5

*Theodore Roosevelt Conservation Partnership v. Salazar,*
    616 F.3d 497 (D.C. Cir. 2010) ................................................................................ 21

*Trump v. J.G.G.,*
    604 U.S. 670 (2025) ................................................................................................ 23

*Turlock Irrigation Dist. v. FERC,*
    36 F.4th 1179 (D.C. Cir. 2022) .............................................................................. 10

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,*
    508 U.S. 439 (1993) .................................................................................................. 7

*United States v. Atl. Rsch. Corp.,*
    551 U.S. 128 (2007) .................................................................................................. 6

*United States v. Sineneng-Smith,*
    590 U.S. 371 (2020) ................................................................................................ 12

*Validus Reinsurance, Ltd. v. United States,*
    786 F.3d 1039 (D.C. Cir. 2015) .............................................................................. 16

*Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.,*
    50 F.4th 164 (D.C. Cir. 2022) ........................................................................... 10, 12

*Webster v. Doe,*
    486 U.S. 592 (1988) ................................................................................................ 11

*Yakima Valley Cablevision, Inc. v. FCC,*
    794 F.2d 737 (D.C. Cir. 1986) ................................................................................ 20

*Zadvydas v. Davis,*
    533 U.S. 678 699-702 (2001) ................................................................... 6, 7, 9, 14

## Statutes

5 U.S.C. § 706(2)(A) ...................................................................................................... 23

8 U.S.C. § 1101(g) .................................................................................................... 4, 7, 9

8 U.S.C. § 1103(a)(3) ............................................................................................ 1, *passim*

8 U.S.C. § 1231 ...................................................................................................... 1, *passim*

8 U.S.C. § 1231(a)(1)(A) ............................................................................................... 14

8 U.S.C. § 1231(a)(1)(B) .................................................................................................. 7

8 U.S.C. § 1231(a)-(b) ........................................................................................................ 6

8 U.S.C. § 1231(b) ................................................................................................. 6, *passim*

8 U.S.C. § 1231(b)(1) .......................................................................................................... 8

8 U.S.C. § 1231(b)(2) ..................................................................................................... 8, 16

8 U.S.C. § 1231(d)(3) .......................................................................................... 8, 9, 16, 17

8 U.S.C. § 1231(g) .......................................................................................... 6, 8, 15, 16

8 U.S.C. § 1252(f)(1) ........................................................................................................ 23

8 U.S.C. § 1252(g) ......................................................................................................... 2, 3

## Regulations

8 C.F.R. § 241.15(b) .......................................................................................................... 13

**INTRODUCTION**

Defendants' Motion for Summary Judgment argued that the Guantanamo detention policy is neither contrary to law nor arbitrary and capricious.  Specifically, Defendants engaged with the Court's Memorandum Opinion, *see* ECF No. 53 ("Mem. Op."), refined and expanded their prior positions in light of the Court's reasoning, presented a cohesive reading of 8 U.S.C. § 1231 and § 1103(a)(3) as the basis for their statutory detention authority, and engaged at length with the administrative record, which is the only basis on which this Court may decide Plaintiffs' arbitrary and capricious claim.  Rather than respond to those arguments as written—much less rebut them—Plaintiffs continue to advance their preferred theory of the case with a myopic focus on the Court's Memorandum Opinion and postmortems of the Guantanamo detention policy based on evidence that was not before the agency at the time it made its decision.  Plaintiffs do not meaningfully engage with the text or structure of the statutes, the applicable legal framework, the standard of review, or the administrative record.  They instead rely almost exclusively on the Memorandum Opinion—which did not consider the arguments and evidence that Defendants have now put before the Court—to claim that all of Defendants' positions have been foreclosed.  This Court should reject Plaintiffs' attempt to construe this case as having already been decided in their favor and address the arguments in Defendants' Motion that Plaintiffs have chosen to ignore.  The statutory scheme and the administrative record together reveal that the Guantanamo detention policy is not contrary to law or arbitrary and capricious.  Accordingly, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiffs' motion.

## ARGUMENT[1]

### I.     THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS

Plaintiffs are wrong that Defendants' invocation of § 1252(a)(2)(B)(ii) and (g)'s jurisdictional bars is simply a "renew[al]" of prior arguments. Pls. SJ Mot. at 3. Rather, Defendants explained that the Court's prior decision did not fully reckon with the complete statutory language and argued that jurisdiction-stripping provisions apply in the context of Defendants' refined legal theories. Defs. SJ Mot. at 6-11. For the reasons discussed in Defendants' Motion and below, this action should be dismissed.

### A.     Section 1252(g)'s Jurisdictional Bar Forecloses Review Because Plaintiffs Challenge an Action Arising from the Execution of Their Removal Orders

The plain text of § 1252(g) confirms this action is jurisdictionally barred because it applies to "any cause or claim . . . *arising* from the decision or action" to execute a removal order. 8 U.S.C. § 1252(g) (emphasis added). Given that the Court construed removal to mean any departure from the territory of the United States, *see* Mem. Op. at 43, this lawsuit is bringing a claim that "arise[es] from the decision or action" to execute a removal order. Specifically, Plaintiffs challenge the government's decision to "initiate" the execution of their removal orders by transferring them to Naval Station Guantanamo Bay ("NSGB") prior to their final destination countries. *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 483 (1999) ("*AADC*"). It is true, as Plaintiffs posit, Pls. SJ Rep. at 3-4, that Defendants resist this Court's earlier reliance on *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 60 (D.D.C. 2020). But that is because that decision did not contend with the word "arising" as it was interpreting § 1252(g), and "it is this Court's duty to give effect, if possible, to every clause and word of a statute." *Sault Ste. Marie Tribe of Chippewa*

---

[1] Defendants have not defaulted because this case is brought under the Administrative Procedure Act ("APA") and Defendants rely on the administrative record. *Contra* Pls. SJ Rep. at 6.

*Indians v. Haaland*, 659 F. Supp. 3d 33, 44 (D.D.C. 2023) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Of course, Defendants do not contest the binding precedent in *AADC*, 525 U.S. at 484, 487, but Plaintiffs simply ignore that the Supreme Court itself treated the denial of a stay of removal as one of "various decisions . . . leading up to or consequent upon final orders of deportation" and thus within the scope of § 1252(g). *Id.* at 485. The denial of a stay is not the discretionary decision to execute a removal order, and therefore Plaintiffs' own interpretation of the statute is inconsistent with the case on which they purport to rely. Pls. SJ Rep. at 4.

Plaintiffs' attempts to distinguish Defendants' cited cases are likewise unpersuasive. Pls. SJ Rep. at 4 n.1. Contrary to Plaintiffs' assertion, *Gupta v. McGahey* did not simply concern a discretionary "decision to commence a proceeding," but rather the alien challenged "(1) [agents'] procurement of an arrest warrant, (2) Gupta's arrest, (3) Gupta's detention, (4) the agents' search of Gupta's apartment and car, and (5) [agents'] seizure of Gupta's personal items," all of which the Court found arose from the commencement of removal proceedings and thus precluded by § 1252(g). 709 F.3d 1062, 1065 (11th Cir. 2013). In the same way, *Sadhvani v. Chertoff* was not a challenge to the discretionary decision to execute a removal order but rather the decision to do so "without notifying the BIA or the Department of Justice and while [Sadhvani's] motion to reopen the removal proceedings was still pending." 460 F. Supp 2d. 114, 123 (D.D.C. 2006). And while *Immigrant Advocs. Response Collaborative v. United States* concerned the adjudication of removal proceedings, it was not a challenge to a particular adjudicative decision, which, under Plaintiffs' preferred interpretation of the statute, would be the only action for which review here is foreclosed. No. 1:25-cv-2279, 2026 WL 746923 *4 (D.D.C. Mar. 17, 2026); *see* 8 U.S.C. § 1252(g) ("[C]ommence proceedings, adjudicate cases, or execute removal orders"); *cf. Facebook, Inc. v. Duguid*, 592 U.S. 395, 402, 141 (2021) (explaining that "when there is a straightforward,

- 3 -

parallel construction that involves all nouns or verbs in a series" they are generally read in the same way) (citation omitted).  Rather, it was a challenge to "the process by which removal cases are settled," just like Plaintiffs here challenge the process by which their removal orders are executed.  2026 WL 746923 *4.  In any event, Plaintiffs' overall position puts the Court in a Catch-22 because if the Court were to conclude that the aliens detained at NSGB were unlawfully removed to Cuba—which is the logical coalescence of § 1101(g)'s definition of removal and a ruling that the government lacks extraterritorial detention authority—then Plaintiffs *are* simply challenging the decision to execute their removal orders and § 1252(g) would apply, even under their preferred interpretation.

**B.    Section 1252(a)(2)(B)(ii)'s Jurisdictional Bar Forecloses Review Because the Secretary's Authority Under § 1103(a)(3) Is Specified as Discretionary**

Because Defendants' authority to "maintain custody over an individual while the government is in the midst of executing their removal order" is rooted in 8 U.S.C. § 1103(a)(3), *see* Mem. Op. at 45, section 1252(a)(2)(B)(ii) also precludes judicial review.  As discussed in Defendants' Motion, the Court's prior discussion of this jurisdictional bar included several examples of statutes with identical language used in § 1103(a)(3) that fall within its scope.  Defs. SJ Mot. at 10 (citing Mem. Op. at 15).  Despite Plaintiffs' otherwise tunnel-visioned reliance on the Court's Memorandum opinion, Plaintiffs inexplicably fail to acknowledge or contend with the cases the Court cited when discussing § 1252(a)(2)(B)(ii).  Pls. SJ Mot. at 4-5.  Instead, Plaintiffs offer four objections to § 1252(a)(2)(B)(ii)'s applicability, none of which have merit.

First, Plaintiffs argue that "Defendants' actions are not authorized by § 1103(a)(3) because they are not detaining Plaintiffs at [NSGB] in the midst of executing a removal order."  Pls. SJ Rep. at 5 (cleaned up).  But Plaintiffs have it backwards.  The Court may not jump over a jurisdictional bar in favor of assessing the substance of the agency's actions.  Rather, the "deems

necessary" language in § 1103(a)(3) precludes judicial review of that substance; indeed, that is the purpose of a jurisdiction-stripping provision. *See Schieber v. United States*, 77 F.4th 806, 809 (D.C. Cir. 2023) (noting that the Supreme Court "firmly rejected the doctrine of 'hypothetical jurisdiction,' under which a court would skip over difficult jurisdictional questions'") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 (1998)). Nor does it matter whether the statute requires detention in the midst of executing a removal order; it simply allows the Secretary to "perform such other acts as he deems necessary for carrying out his authority under the provisions" of the INA. 8 U.S.C. § 1103(a)(3). Second, Plaintiffs contradictorily argue that because § 1103(a)(3) *does not* mention detention, the authority is not "expressly specified in the statute." Pls. SJ Rep. at 5 (citing *Kucana v. Holder*, 558 U.S. 233, 247 (2010)). But Plaintiffs' reliance on *Kucana* is misplaced as that case answered only whether the jurisdictional bar applied to regulatory decisions committed to agency discretion. 558 U.S. at 249. There is no regulation at issue here such that this case resolves the inquiry. Third, Plaintiffs argue they "do not challenge any exercise of discretion," citing *Zadvydas*, Pls. SJ Rep. at 5, but that case did not address § 1103(a)(3) or the "deems" language. Fourth, Plaintiffs raise a generalized policy dispute. Pls. SJ Rep. at 5. But "[t]he role of this Court is to apply the statute as it is written—even if [it] think[s] some other approach might 'accord with good policy.'"[2] *Burrage v. United States*, 571 U.S. 204, 218 (2014) (internal citation omitted); *see Pereira v. Sessions*, 585 U.S. 198, 217 (2018) (finding "practical concerns . . . do not justify departing" from the text of the statute). The Court must give full effect to the jurisdiction-barring provisions of the INA and should therefore dismiss this action.

---

[2] In any event, Plaintiffs are incorrect that accepting Defendants' position would somehow compel the conclusion that the Supreme Court "erred in case after case," Pls. SJ Rep. at 5, because in those cases, specific statutory provisions either did or did not authorize the government's actions. Here, assuming the Court rules on authority under § 1103(a)(3), it simply means that the Court has rejected Defendants' other argument that § 1231 provides such authority.

## II.    THE DETENTION OF ALIENS AT NSGB IS NOT CONTRARY TO LAW

Defendants' Motion argued that: (1) the government's § 1231 detention authority over aliens with final orders of removal extends until the government fully executes their final order of removal, which is not complete until they have reached their final destination country; (2) detention authority also exists under § 1103(a)(3), which grants unreviewable authority to the Secretary to carry out the provisions of the INA; and (3) the presumption of extraterritoriality does not apply or is plainly rebutted.  *See* Defs. SJ Mot. at 12-30.  As discussed below, rather than responding to these arguments, Plaintiffs misconstrue portions of them and ignore others, parroting the Court's Memorandum Opinion notwithstanding that it was written in response to Defendants' reliance on § 1231(g), which is no longer the only provision before the Court.

### A.    The Government's Detention Authority Under 8 U.S.C. § 1231 Extends Until a Removal Order is Fully Executed

Plaintiffs incorrectly claim that Defendants simply "recycle[d]" their "statutory" argument. Pls. SJ Rep. at 1.  Not so.  Defendants offered an expanded basis for statutory authority by arguing in their Motion that the text and structure of § 1231, read alongside the Supreme Court's decision in *Zadvydas*, make clear that detention authority for aliens with final orders of removal under § 1231 extends until the government has fully executed their final orders.  *See* Defs. SJ Mot. at 12-17; 8 U.S.C. § 1231(a)-(d); 533 U.S. 678 699-702 (2001); *see United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) ("Statutes must be read as a whole").  Plaintiffs offer no rebuttal to that argument.  Instead, they fall back on the definition of "removal," which is not at issue here, and pick apart pieces of the statute rather than confronting it in its entirety.  *See* Pls. SJ Rep. at 7.

Plaintiffs selectively quote Defendants' Motion and misread their position regarding the definition of removal.  *See* Pls. SJ Rep. at 6-7, 8. Contrary to Plaintiffs' reading, for purposes of this argument, Defendants do not contest the definition of removal provided by § 1101(g).

*See* Defs. SJ Mot. at 16.  Nor do Defendants argue that § 1101(g)'s definition of removal only applies to aliens who have never been in government custody.  *Contra* Pls. SJ Rep. at 8.  The term "removal" is not equal in scope to the "lawful execution of a final order of removal," which is the concern of § 1231.  Section 1101(g) says nothing about detention authority and Plaintiffs provide no support for their proposition that removal and detention are necessarily coterminous.[3]  *See* Pls. SJ Mot. at 9 & n.4 (arguing that "language in concurrence in a non-precedential per curiam order" is unpersuasive but providing no authority to substantiate their alternative position).  Detention authority under § 1231 is derived, in part, from § 1231(a)(2)(A), which states that an alien "shall" be detained during the "removal period" and may continue to be detained for "a period reasonably necessary" to execute the removal order.  533 U.S. at 699.  Plaintiffs, focusing only on the definition of "removal," do not mention the removal period at all or explain why, in the context of § 1231 as a whole, it must end at the exact moment of physical departure from this country.  *See* Pls. SJ Mot. at 6-9; *see* 8 U.S.C. § 1231(a)(1)(B) (defining commencement of removal period with no corresponding definition of its end point).  The better reading—so as to permit the government to carry out its statutory obligations in the context of the due process enshrined by *Zadvydas*—is that the removal period ends when a removal order is fully executed.

After all, "[s]tatutory construction 'is a holistic endeavor'" and any interpretation "must account for a statute's full text," including its "language as well as punctuation, structure, and subject matter."  *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (internal citation omitted).  For this reason, discussing § 1231(d)(3) as a standalone

---

[3] That Defendants' position on the definition of removal has developed in response to the D.C. Circuit's discussion of the issue and this Court's Memorandum Opinion is hardly remarkable. *Contra* Pls. SJ Rep. at 9 n.4.  It is also unclear, given Plaintiffs' position, why they describe NSGB as a facility for aliens "*awaiting* removal."  Pls. SJ Rep. at 9.

provision is unpersuasive. *See* Pls. SJ Rep. at 7. Indeed, "custodial authority" does not arise *only* from § 1231(d)(3); rather, that provision—which authorizes the Secretary to require a third party to "guard safely" and "transport" aliens "to the destination specified"—bolsters Defendants' contention that Congress legislated against a backdrop of detention authority extending through the full execution of the removal order. And while § 1231(g) is "the only provision *expressly* governing where immigration detainees can be held" pending removal, Mem. Op. at 44 (emphasis added), it "appears to relate more centrally to the government's brick and mortar obligations for obtaining facilities in which to detain aliens," *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019), and its text in no way forecloses detention as a part of the removal process at facilities already owned by the government, including NSGB. Notably missing from Plaintiffs' Reply is any acknowledgment of § 1231(b)(2). *See* Pls. SJ Rep. at 6-8. As argued in Defendants' Motion, the government's detention authority under § 1231, must encompass the process of executing a final order of removal in accordance with the full statutory provision stating that the Secretary "shall" remove particular aliens to particular countries. 8 U.S.C. § 1231(b)(1), (b)(2)(A)(ii), (b)(2)(D); *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *see* Defs. SJ Mot. at 13. The Court's Memorandum Opinion construed the only "underlying purpose" of the removal process as "ensur[ing] the lawful departure of individuals from the United States." Mem. Op. at 46. In so doing, the Court accounted for the requirement to remove aliens to particular countries by qualifying departure as "lawful" but glossed over what it that means in practice, which is that § 1231's detention authority cannot end until the alien reaches that final country. *Id*.

Maintaining their narrow focus on the Court's prior discussion of § 1103(a)(3), Plaintiffs neither acknowledge nor counter Defendants' position that § 1231(b), read in conjunction with § 1231(a)(2)(A), (d)(3), and (f)(1), provides detention authority to fully execute a removal order to the final destination country.[4]  *See* Pls. SJ Rep. at 6-8 (discussing § 1103(a)(3) in a subsection referring to § 1231); *see* Defs. SJ Mot. at 12-17.  *Zadvydas* only underscores Defendants' reading of the statute.  *Contra* Pls. SJ Rep. at 8.  That is, the extended detention at issue in *Zadvydas* would not have existed if § 1101(g)'s definition of the moment of removal also controlled § 1231's applicability such that an alien's removal could be properly effectuated simply by taking him outside the territorial United States.  533 U.S. at 684.  While *Zadvydas* does not speak to the precise issue of "the time it might take for a removal order to be effectuated once . . . physically removed from the country," Pls. SJ. Rep. at 8, it provides support for the ultimate conclusion that § 1101(g) does not dictate or constrain the government's authority to execute a final order of removal.

Finally, Plaintiffs "resort to a classic slippery-slope argument."  *Massachusetts Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 67 (D.D.C. 2018).  They argue that Defendants' position would permit the government to "fly noncitizens around the globe for long-term detention in overseas camps."  Pls. SJ Rep. at 7.  But "[t]he slope, assuming there is one, has plenty of traction."  *Massachusetts Lobstermen's Ass'n*, 349 F. Supp. 3d at 67.  Statutory authority under § 1231 "authorize[s] detention only for a period consistent with" the execution of removal orders.  *Clark v. Martinez*, 543 U.S. 371 (2005) (citing 553 U.S. at 697-99).  And the Supreme Court has

---

[4] To the extent that § 1103(a)(3) is relevant in this context, which it is not, Plaintiffs misrepresent the Court's Memorandum Opinion by stating that "the Court has already foreclosed Defendants' arguments that § 1103(a)(3), alone *or in conjunction with other statutes*, could authorize running a detention facility" at NSGB.  Pls. SJ Rep. at 9 (emphasis added).  The Court did no such thing. It only rejected Defendants' reliance on § 1231(g).  Mem. Op. at 44.  Given that the Court had not yet been presented with Defendants' broader argument on the holistic reading of § 1231, such an argument cannot have already been foreclosed.

provided a means by which individuals in government custody outside of the territorial United States may invoke the writ of habeas corpus to challenge the legality of their detention under the constitution.[5]  *See Boumediene v. Bush*, 553 U.S. 723, 754-67 (2008).  Moreover, "[f]or each slippery slope there is an opposing slope." *Turlock Irrigation Dist. v. FERC*, 36 F.4th 1179, 1184 (D.C. Cir. 2022).  To hold that the government's detention authority under § 1231 ends at this country's borders would prevent the government from fully executing final orders of removal to final destination countries.  Nor is the Court's invocation of § 1103(a)(3)'s "interstitial authority" sufficient, Mem. Op. at 30, as discussed below.  Any such holding—including any attempt to define the contours and limits of such interstitial authority—would simply be a "judge-made procedural requirement . . . that Congress has not prescribed."  *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021).  Detention authority to fully execute final orders of removal is thus necessarily proper under § 1231.

### B.   Section 1103(a)(3) Provides Unreviewable Detention Authority Amidst the Execution of Removal Orders

Next, as argued in Defendants' Motion, assuming the Court reaches the applicability of 8 U.S.C. § 1103(a)(3), that provision authorizes action that is committed to agency discretion by law and is therefore unreviewable.  But even if not, the government's policy is "reasonably related to the purposes" of the INA and therefore proper under 8 U.S.C. § 1103(a)(3).  *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 178-79 (D.C. Cir. 2022).

First, Plaintiffs wholly fail to acknowledge, must less contest, Defendants' argument, *see* Defs. SJ Mot. at 18-20, that authority to maintain custodial control of aliens through the full

---

[5] Plaintiffs have chosen not to pursue a due process claim at this stage in the litigation, *see* ECF No. 57 at 3, so their accusations about Defendants' purported fear-based motives for detention at NSGB are inappropriate and do not support their contrary-to-law arguments. Pls. Reply at 9, 18 n.10.

execution of a removal order pursuant to § 1103(a)(3) is committed to agency discretion by law and is therefore unreviewable.  Pls. SJ Mot. at 9-13; *see Jurewicz v. U.S. Dep't of Agriculture*, 891 F. Supp. 2d 147, 151 (D.D.C. 2012) ("Plaintiffs forfeited any challenge based on Exemption 3 [in FOIA case] by ignoring it in their Motion."); *Raines v. U.S. Department of Justice*, 424 F. Supp. 2d 60, 66 n. 3 (D.D.C.2006) ("[I]t is not the obligation of the court to research and construct legal arguments open to parties, especially when they are represented by counsel") (citation omitted). While it is true that the Court opined in its Memorandum Opinion on the substantive authority under § 1103(a)(3), it did so without having briefing on or considering the threshold question of APA review under that provision.  *See* Mem. Op.  Relying only on the Opinion, Plaintiffs put the cart before the horse and simply proclaim that the threshold and dispositive question is whether NSGB is being used as a way station on the way to an alien's final destination country.  Pls. SJ Mot. at 9-13.  But that is not how APA review works. The language of § 1103(a)(3) is classically unreviewable, *Webster v. Doe*, 486 U.S. 592, 600 (1988), and the Court's Opinion did not hold otherwise. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation omitted).

Even if Defendants' actions are reviewable, however, they are not contrary to law.  On this point, based solely on the Court's Memorandum Opinion—which did not contend with the meaning of the applicable legal standard—Plaintiffs continue to press their preferred narrative: that unless the government is making a logistically-required pit stop on the way to the final destination country, continued detention outside of the United States is unlawful. Pls. SJ Rep. at 9-13.  But the Court's discussion of § 1103(a)(3) was simply a response to the hypotheticals in Defendants' Motion to Dismiss, and its statement that the statute "appears to grant only interstitial

- 11 -

authority" was hedging.  The Court did not so hold, nor did it have the benefit of considering briefing on the contours of such authority.  Mem. Op. at 30, 41-42.  Defendants have now provided such briefing.  Defs. SJ Mot. at 18-26.  Plaintiffs, citing only to the Court's Memorandum Opinion, have not.  *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (discussing party presentation principle).  As previously argued, the pertinent question is whether actions taken pursuant to § 1103(a)(3) are "reasonably related to the purposes of the legislation."[6] *Washington All. of Tech. Workers*, 50 F.4th at 178.  The policy at issue here is reasonably related to detaining aliens during the execution of their final removal orders, Defs. SJ Mot. at 21-26, and the record confirms this relationship.  U-DOW-CAR-119 (Presidential Memorandum directing that NSGB will "provide additional detention space for high-priority criminal aliens unlawfully present in the United States" and "address attendant immigration enforcement needs"); DHS-000091 ("GTMO Bound Flight Coordination Process" addressing flights to and from NSGB); DHS-000114 (DHS seeking assistance for "personnel directly supporting alien detention and removal operations . . . specifically for the purpose of providing support to operations at NSGB"). *Contra* Pls. SJ Mot. at 9 n.5 (stating there is "no rationale or evidence").  While Plaintiffs now complain that Defendants' cited cases do not involve removal orders or detention, Pls. SJ Rep. at 9 n.5, Defendants never claimed that they did.  Rather, these cases illustrate that only a *reasonable*

---

[6] To that end, Plaintiffs' contentions that Defendants' summary judgment argument is incompatible with its "position [] that [NSGB] is merely a way-station," "pit-stop" or "staging point," Pls. SJ Rep. at 10 & n.6, 13, ignores the developments in this case that have occurred since Defendants' filed their Motion to Dismiss in August 2025. *See* ECF No. 29 (Aug. 4, 2025); *see* Defs. SJ Mot. at 21-26.  As Defendants explained in their Motion—to which Plaintiffs again offered no response—expecting blind adherence to reasoning about a dynamic and ongoing agency mission that was proffered before the record was produced or any facts were developed is both unrealistic and unpersuasive. *INS v. Phinpathya*, 464 U.S. 183, 188-89 n.6 (1984) (statements of counsel are not evidence); *see* Defs. SJ Mot. at 36.  In that way, Plaintiffs' apparent frustration that the evidence does not support a position that is merely one discrete part of Defendants' larger theory of the case is indeed beside the point. *Contra* Pls. SJ Rep. at 10.

relationship is necessary between the exercise of authority and the purpose of the statute, not a narrowly-tailored or exacting one. *See*, *e.g.*, *Doe, 1 v. Fed. Election Comm'n*, 920 F.3d 866, 871 (D.C. Cir. 2019); *Cmty. for Creative Non Violence v. Kerrigan*, 865 F.2d 382, 387 (D.C. Cir. 1989).

Defendants' discovery production, alongside Plaintiffs' own extra-record materials, reflects that Defendants' use of NSGB is reasonably related to the execution of removal orders.[7] *See Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979) ("[S]o long as [the Secretary's] action is reasonably related to the duties imposed upon him" by statute, then the statute "need not specifically authorize each and every action."). In this regard, the most critical fact is that 89% of the aliens for whom data exists were either accepted by their country of removal prior to their transfer to NSGB or did not need to be accepted prior to being removed to that country. Behr Decl. Exh. C ("June 25, 2026 NSGB Chart"); Behr Decl. Exh. D ("Schultz Decl") ¶ 5; 8 C.F.R. § 241.15(b). The fact that 85% of the aliens brought to NSGB did not need advanced acceptance from their country of removal because they are citizens of countries participating in the Electronic National Verification ("ENV") program underscores that the facility is used for aliens whose repatriations are "expedited."[8] ECF No. 108-21, Exh. L ("ICE 2024 Annual Report") at 30-31

---

[7] As discussed previously and below, Defendants continue to dispute the consideration of Plaintiffs' extra-record materials, *see* Defs. SJ Mot. at 33-36, *supra* III, but insofar as Plaintiffs have entered this material into the record, and heavily rely on it in support of their arguments, they must contend with it in its entirety.

[8] Plaintiffs continue to quibble with Defendants' discovery production chart to no avail. *See* Pls. SJ Rep. at 12 n.8. As explained in a sworn declaration, "[t]he receipt of a travel document indicates that the country has accepted the alien," but "[t]ravel documents are not necessary for the citizens of countries that participate in the [ENV] program." Schultz Decl. ¶ 5-6. Therefore, no advanced acceptance is needed. *Id.* ¶ 6 (noting that alien's identity is verified upon arrival at the destination country); 8 C.F.R. § 241.15(b) ("For the purposes of [8 U.S.C. § 1231(b)], the Secretary retains discretion to determine the effect, if any, of acceptance or lack thereof, when an acceptance by a country is required, and *what constitutes sufficient acceptance*.")

n. 28.  Failing to address this, Plaintiffs seize on the absence of travel *arrangements*, but as discussed above, they do so in service of a theory of the case untethered to the "reasonably related" legal standard and the arguments Defendants presented in support of summary judgment.  Pls. SJ Rep. at 11; *cf. Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 685 (3d Cir. 2011) ("ICE necessarily has the authority to determine the location of detention of an alien in deportation proceedings and therefore, to transfer aliens from one detention center to another.") (citation omitted).  Indeed, as Plaintiffs' own extra-record evidence makes clear, "[r]emoval management is a complex process that requires careful planning in coordination with a wide range of domestic and foreign partners," and it is hardly surprising that transfers are made in anticipation of travel arrangements.  ICE 2024 Annual Report at 30.

Plaintiffs likewise do not acknowledge the reasons why transfers back to the United States were required such as medical events or developments in litigation.  Pls. SJ Rep. at 12-13.  And while they express displeasure at the length of detention for certain aliens who had to be transferred back to the continental United States due to inclement weather, Plaintiffs do not dispute that it is reasonable for removal and flight plans to change due to unexpected bad weather.  Pls. SJ Rep. at 13 n.9.  Finally, the fact that the MOU states that DHS "will ensure transfer from NSGB no later than 180 days *from the date of final order of removal*," is not probative of the length of detention at NSGB but relates only to *overall* length of an alien's detention during the removal period.  8 U.S.C. § 1231(a)(1)(A); *Zadvydas*, 533 U.S. at 699 (holding that detention may continue for "a period reasonably necessary" to execute removal order).  *Contra* Pls. SJ Mot. at 11.  Thus, because authority under 8 U.S.C. § 1103(a)(3) is committed to agency discretion, the Court should not

---

(emphasis added), 214.15(c).  As Plaintiffs' own evidence further clarifies, aliens from ENV countries and "subject to final orders of removal who affirm their countries of citizenship under oath are authorized for repatriation to their native country."  ICE Annual Report at 30-31 n.28.

reach this issue, but if it does, the evidence reflects that the use of NSGB is reasonably related to the statutory obligation to execute removal orders and therefore is not contrary to law.

### C.      The Presumption Against Extraterritoriality Does Not Apply or Is Rebutted

As argued in Defendants' Motion, applying the presumption against extraterritoriality in the context of §§ 1103(a)(3) and 1231 runs contrary to the purpose of the presumption and is inconsistent with the plain text of those provisions.  *See* Defs. SJ Mot. at 26-30.  Instead of responding to Defendants' argument, Plaintiffs continue to argue about § 1231(g).  Pls. SJ Rep. at 14 (stating that Defendants' position would carry foreign policy consequences "that Congress, in § 1231(g), clearly did not embrace"), 15 ("As the Court previously found, the statute is clear," necessarily referring to § 1231(g), the only statute the Court analyzed in its Memorandum Opinion), *id.* ("[T]he specific statute in *Delgado-Garcia* stands in stark contrast to § 1231(g)"). But, as discussed at length above, the basis for its asserted detention authority is not only § 1231(g), and Plaintiffs' desire to recast it as such does not make it so.  Indeed, while for purposes of litigation in this Court, Defendants have attempted to reconcile their positions with the Court's Memorandum Opinion, *see, e.g.*, Defs. SJ Mot. at 6, 10, 16-18, Plaintiffs simply fall back on their prior argument that the presumption against extraterritoriality applies indiscriminately without ever confronting the Court's skepticism on this point.  *See* Mem. Op. at 31 n.11 ("The Court is not convinced.").  Courts apply the presumption "to discern whether an Act of Congress regulating conduct applies abroad" and to ascertain "what courts may do" to provide relief relating to such conduct.  *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013).  And Plaintiffs still have not pointed to a case applying the presumption to discern the scope of a grant of authority to the Executive.  Pls. SJ Rep. at 14-15; *see* Mem. Op. at 11 n.31 (observing that Court is "unaware" of any case).  The Court should not break new ground and apply it here.

Nor does Defendants' position "flip[] the presumption on its head." Pls. SJ. Rep. at 14. Defendants simply do not buy into blind reliance on the presumption when it would defeat the purpose of the statute, which provides the government with the authority not simply to physically remove aliens with final orders from the country, but to execute final orders of removal to particular destinations. 8 U.S.C. § 1231(b)(2)(C)-(D), (d)(3), (f)(1). Plaintiffs' only response to this point is that Defendants' reading would result in consequences that "Congress, in § 1231(g), clearly did not embrace." Pls. SJ Rep. at 14. As discussed above, however, the question is no longer whether § 1231(g) alone contemplates extraterritorial detention, but whether the remaining provisions of the statute, applied in concert, do. Nor does Defendants' position, as Plaintiffs mischaracterize it, grant a "blank check for the Executive branch" because regardless of the application of the presumption, the Court employs the traditional tools of interpretation in all cases to ascertain the meaning of a statute. Pls. SJ Rep. at 14. As Plaintiffs agree, it is only when a statute is ambiguous that courts look to the presumption. Pls. SJ Rep. at 13; *see Validus Reinsurance, Ltd. v. United States*, 786 F.3d 1039, 1041 (D.C. Cir. 2015) ("The ambiguity is resolved upon applying the presumption against extraterritoriality."). But because applying the presumption here conflicts with the purpose of § 1231 as a whole, the Court should not do so.

Finally, even if the presumption applies, it is rebutted. Again, notwithstanding that Defendants presented new arguments in their Motion, Plaintiffs address only § 1231(g). Pls. SJ Rep. at 15. Then, in a single sentence, they label Defendants' new argument a "bare assertion" and call it a day. Pls. SJ Rep. at 16. But Defendants' assertion was not bare. Detention under § 1231(a)(2)(A) is proper during the "removal period," and the Court must therefore "determine whether [that phrase] gives extraterritorial reach to the provisions" of § 1231. *Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at *9 (U.S. June 25, 2026). Section 1231(b)

and (d)(3) commands that when the government executes a final removal order, the process ends only once the Secretary removes the alien "to" his particular final destination country, which shows "an unmistakable congressional intent" to permit detention of aliens to continue until that process is complete. *Al Otro Lado*, 2026 WL 1825741, at *9-10.

## III.   THE DETENTION OF ALIENS AT NSGB IS NOT ARBITRARY AND CAPRICIOUS

As the government has argued, APA review is not appropriate in a case challenging the legality of detention. Defs. SJ Mot. at 6 n.1. But even assuming the Court reaches the merits of this issue, Defendants have argued that under the appropriately narrow, record-based review, the Guantanamo detention policy is both "reasonable and reasonably explained" as part of the Administration's larger effort to increase immigration enforcement and protect the territorial integrity of the United States. Defs' SJ Mot. at 31-33; *see Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Plaintiffs' arguments to the contrary depend upon ignoring the bulk of the administrative record in favor of an array of extra-record materials that they contend support the policy choice they would prefer. Pls. SJ Rep. at 19-20 & n.11. But this is not the function of deferential APA review. *See Cayuga Nation v. Zinke*, 302 F. Supp. 3d 362, 370 (D.D.C. 2018) ("[D]isagreement is not a sufficient basis for this Court to overturn an agency decision under the APA."); *N.C. Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d 62, 95 (D.D.C. 2007) (same).

First, Plaintiffs continue to overreach by characterizing the Guantanamo detention policy as "a radical change." Pls. SJ Rep. at 16. Their reliance on *American Wild Horse Preservation Campaign v. Perdue*, 873 F.3d 914 (D.C. Cir. 2017), does not move the needle in their favor. There, the court considered Forest Service management of two non-contiguous parcels of land and its issuance of several plans that merged the original two parcels into one by including a third,

middle parcel.  873 F.3d at 920-21.  In 1991, the Forest Service announced that it was legally obligated to manage that larger single parcel and actively did so for more than two decades, but in 2012, it reversed course, dismissed the joining of the original two parcels as an "administrative error," and issued a new forest management plan that excluded the third parcel.  *See id*. at 920-22.  On those facts, the court held that the Forest Service "failed to acknowledge and adequately explain its change in policy."  *Id*. at 923.  The court described the Forest Service as having done an "about-face" on the third parcel and observed that its inclusion in the land being managed was "well documented in the administrative record[] and . . . reconfirmed repeatedly by two decades of *agency practice and official pronouncements*."  *Id.* at 924 (cleaned up, emphasis added).

Here, Defendants have not reversed course from any previously established policy or practice.  Defs. SJ Mot. at 33-35.  The record instead confirms the Secretary of Homeland Security's longstanding authority to "maintain custody" of certain aliens "at any location he deems appropriate," including "Guantanamo Bay Naval Base or any other appropriate location." U-DOW-CAR-116; *see* 8 U.S.C. § 1103(a)(3).  In other words, the use of NSGB for an immigration-related purpose is not entirely new.  *See* U-DOW-CAR-289-338 & DHS-00511-17. And Defendants' more recent, expanded use of NSGB to house final-order aliens amidst the execution of their removal orders is not the sort of change in practice that the D.C. Circuit confronted in *American Wild Horse Preservation Campaign*.[9]  More fundamentally, the agencies' expanded use of NSGB did not go unacknowledged or unexplained.  *See* U-DOW-CAR-119 & DHS-00012;  U-DOW-CAR-121 ¶¶ 1-2  &  DHS-000118 ¶¶ 1-2;  *see Conserve Sw. Utah  v.*

---

[9]  Plaintiffs' reliance on *American Federation of Teachers v. Department of Education*, 779 F. Supp. 3d 584 (D. Md. 2025), is similarly misplaced because it also involved an unexplained agency course reversal.  Pls. SJ Rep. at 16; *see Am. Fed'n of Tchrs.*, 779 F. Supp. 3d at 617 (finding no explanation for the Department's its "change in position regarding its authority to regulate curriculum, and its decision to prospectively categorize content as discriminatory").

*United States Dep't of the Interior*, 822 F. Supp. 3d 52, 69 (D.D.C. 2026) (observing that "[a]n agency is not required to explain its conclusions with crystalline clarity" as long as its path is reasonably discernible); *cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (clarifying that agencies are not required to show "that the reasons for the new policy are better than the reasons for the old one"). *Contra* Pls. SJ Rep. at 16.

Second, Defendants' rationale for the Guantanamo detention policy has remained the same since the very start. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) ("[J]udicial review of agency action is limited to the grounds that the agency invoked when it took the action.") (cleaned up). *Contra* Pls. SJ Rep. at 17. The January 2025 Presidential Memorandum directed the agencies to utilize NSGB for three reasons: (1) to "provide additional detention space for high-priority criminal aliens unlawfully present in the United States"; (2) to "address attendant immigration enforcement needs identified by the Department of [War] and the Department of Homeland Security"; and (3) to "halt the border invasions, dismantle criminal cartels, and restore national sovereignty." U-DOW-CAR-119; DHS-000124. Consistent with the President's directive, and in light of other contemporaneously issued Executive Orders, *see* DHS-000079-88, a February 28, 2025 Request for Assistance related to operations at NSGB, DHS explained its "[o]verarching [g]oal" as "seek[ing] to expeditiously execute Presidential guidance to protect the American people against invasion, foreign terrorists and other national security and public safety threats." DHS-000114; *see Quantum Ent. Ltd. v. United States Dep't of the Interior, Bureau of Indian Affs.*, 597 F. Supp. 2d 146, 152 (D.D.C. 2009) ("Nothing more than a 'brief statement' is necessary [under the APA], as long as the agency explains 'why it chose to do what it did.'"). In arguing otherwise, Plaintiffs inappropriately read one phrase of the Presidential Memorandum—its instruction to "provide additional detention space for high-priority

- 19 -

criminal aliens," U-DOW-CAR-119, DHS-000124—in isolation from the remainder of the document as well as from the remainder of the record.  Pls. SJ Rep. at 17.

Plaintiffs go on to insist that, in choosing to detain certain final-order aliens at NSGB, Defendants failed to consider available detention capacity in the United States as an "obvious alternative."  Pls. SJ Rep. at 17-19.[10]  But this argument misses the mark, particularly given the President's straightforward instruction simply to expand capacity at NSGB to provide *additional* detention space for certain aliens.  U-DOW-CAR-119, DHS-000124; *see* Defs. SJ Mot. at 36; *National Shooting Sports Foundation, Inc. v. Jones*, 716 F.3d 200, 216-17 (D.C. Cir. 2013).  Plaintiffs also wrongly suggest that Defendants failed to appreciate the complexity of the immigration detention and removal process.  *Contra* Pls. SJ Rep. at 18-19.  Not so.  Indeed, as discussed above, that complexity explains why it is unrealistic for NSGB to operate in the manner that Plaintiffs would prefer.  *See supra* II.B.  As Defendants argued and as the record confirms, the agencies reasonably accounted for the costs and logistics associated with the Guantanamo detention policy, understood the difficulties inherent in executing the President's initial directive, and considered how to leverage existing processes and assets to try to maximize efficiencies over time, especially in light of NSGB's unique location.  *See* U-DOW-CAR-121-26, DHS-000093, DHS-000115,    DHS-00118-23;    *see    also*    U-DOW-CAR-001-37,    U-DOW-CAR-127,

---

[10]  The cases Plaintiffs rely on to support their either/or view of the agencies' decisionmaking do not add weight to their side of the scale.  *See Spirit Airlines, Inc. v. Dep't of Transp.*, 997 F.3d 1247, 1250-51, 1256 (D.C. Cir. 2021) (concluding that the agency completely ignored alternatives directly raised to it by parties who had an interest in and were affected by the agency's elimination of an airline's entire block of peak-time flying slots). *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 746-47 (D.C. Cir. 1986) (recognizing that agency counsel "conceded at oral argument that there is absolutely no basis in the record for the agency's decision to change its enforcement policy retroactively" and describing the agency's action as a flat refusal "to process *all* pending cases under an existing rule pursuant to longstanding procedures" for which "[n]o intelligible explanation was offered") (emphasis in original).

U-DOW-CAR-659-61, DHS-000001-78, DHS-000088, DHS-000096-103.  Ultimately, Plaintiffs' continued complaints about the wisdom of utilizing detention space at NSGB in addition to detention facilities in the United States highlight their obvious disagreement with Defendants' outcome but do not counter the record evidence showing that the agencies adequately considered the relevant facts.  *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (characterizing a decision as arbitrary and capricious if the agency has "*entirely failed* to consider an *important aspect* of the problem") (emphasis added, citation omitted); *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (stating that an agency "must examine *the relevant data* and articulate a *satisfactory explanation for its action* including a rational connection between the facts found and the choice made") (cleaned up, emphasis added).

So too, Plaintiffs' continued reliance on a slew of extra-record materials, some of which contain disputed facts, is little more than an effort to substitute their own policy preferences for the agencies' decision making.  Pls. SJ Rep. at 19-20; *see Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 125 (D.D.C. 2017) ("Disagreement with an agency's analysis is not enough to warrant the consideration of extra-record evidence, which, after all, is the exception, not the rule.") (cleaned up).  The APA limits judicial review to the administrative record "except when . . . the record is so bare that it prevents effective judicial review."  *Theodore Roosevelt Conservation Partnership v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010).  Here, the record produced by the agencies is undoubtedly sufficient to allow this Court to evaluate both the reasonableness of the President's instruction "to provide additional detention space for high-priority criminal aliens," U-DOW-CAR-119 & DHS-000124, and the reasonableness of the agency actions to implement that directive.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review

- 21 -

. . . to the agency decision based *on the record the agency presents to the reviewing court*.")
(emphasis added).  Plaintiffs nevertheless ask this Court to judge the detention policy not by the
record that Defendants produced but instead by an ever-expanding range of materials newly
sourced and produced by Plaintiffs in this litigation.  Pls. SJ Rep. at 20 & n.11.  In this way, it is
Plaintiffs who offer post hoc rationalizations in service of the policies that they would prefer.  That
is not the function of APA review.  *See Cayuga Nation*, 302 F. Supp. 3d at 370.

Finally, the Guantanamo detention policy is not contrary to the text of the Presidential
Memorandum as Plaintiffs continue to suggest.  Pls. SJ Rep. at 20-21.  On this point, Plaintiffs
begin by misstating Defendants' argument about what the Presidential Memorandum says and then
insisting that "the text of the directive cannot bear that interpretation."  *Id*.  But Defendants never
argued that the Presidential Memorandum did not encompass "high-priority criminal aliens."
Defs. SJ Mot. at 37.  Instead, Defendants pointed out Plaintiffs' conflation of terms from multiple
documents and their incorrect statement that the Presidential Memorandum was limited to only
"'high threat' individuals," Pls. SJ Mot. at 34, which is terminology that the Memorandum does
not use.  *See* U-DOW-CAR-119 & DHS-000124.  Thus, at this point, Plaintiffs' entire argument
that Defendants have exceeded the scope of the Presidential Memorandum relies on their
mischaracterization of both the Memorandum and Defendants' arguments about it.  Pls. SJ Mot.
at 34; Pls. SJ Rep. at 20-21.  For this reason alone, they have not shown any deviation from the
Presidential Memorandum at all, much less one that is arbitrary and capricious.  Instead, as
Defendants have consistently argued, Defs. SJ Mot. at 37-38, the Secretary's detention authority
is statutory, and the Presidential Memorandum does not purport to cabin that authority in any way.
*See* U-DOW-CAR-119, DHS-000124.  And because the Presidential Memorandum establishes no

private right of action, Plaintiffs must show that the Guantanamo detention policy is arbitrary and capricious under the APA, which they simply have not done.

## IV.    8 U.S.C. § 1252(f)(1) DOES NOT PERMIT WHAT AMOUNTS TO A CLASS-WIDE RESTRAINT ON DETENTION OPERATIONS

This Court and the D.C. Court of Appeals have embraced the position that vacatur and stays under the APA may be permissible despite the clear, plainly worded prohibition against injunction or restraint-style relief found in Section 1252(f)(1). *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin* ("*RAICES*"), 174 F.4th 81 (D.C. Cir. 2026); *Make the Road New York v. Mullin*, 179 F. 4th 16, 31-32 (D.C. Cir. 2026). However, for all its trappings indicating otherwise, at its core, this case presents a habeas claim regarding the legality of detention and issuing orders regarding that detention's legality on a class-wide basis wades directly into the heartland of § 1252(f)(1). *See Trump v. J.G.G.,* 604 U.S. 670, 671-72 (2025); *Miranda v. Garland*, 34 F.4th 338, 354-57 (6th Cir. 2022). Courts that apply the *RAICES* approach paint their respective relief orders as narrow, even surgical, lacking coercion, or somehow merely preserving the status quo. *See Make the Road,* 179 F.4th at 31; *RAICES,* 174 F.4th at 119. As explained in greater detail in Defendants' Motion, Plaintiffs painted themselves into a corner by bringing a class action lawsuit and thereafter seeking a remedy prohibited by § 1252(f)(1). *See* Def. SJ Mot. at 42-43. Worse yet, Plaintiffs have now set the Court on course to face this fatal flaw by demanding a remedy that Congress could not have intended under § 1252(f)(1), especially where it could be misused to frustrate the Executive's efforts at every stage of the multifaceted removal process.

Naturally, when a policy is subject to APA review, courts may take corrective action only if the government's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs assert that the detention policy runs contrary to all clauses of Section 706(2)(A), and Defendants have rebutted their claims based on

- 23 -

reasonable legal justifications as well as practical rationales for their actions.  Should the Court

disagree with these legal underpinnings, any relief would need to be limited to what is permitted

by law.  Plaintiffs insists that they merely seek vacatur of "Defendants' Policy of transferring

noncitizens from the United States and detaining them at Guantanamo[,]" *see* Plaintiff [Proposed]

Order, ECF No. 108-1.  But Defendants maintain their position that such an order will restrain the

government's action—the use of Guantanamo for detention—on a class-wide basis.  *See* Defs SJ

Mot. at 42-43.  Moreover, dressing what amounts to injunctive relief in a class action lawsuit in

the robes of vacatur will not neutralize the prohibition clearly outlined in Section 1252(f)(1).

The government's concerns with respect to remedies grow even more acute should this

Court grant relief on the basis that Defendants' actions are deemed arbitrary, capricious, or an

abuse of discretion.  Plaintiffs go to great lengths to portray the Guantanamo detention policy as

inefficient, costly, and logistically challenging in comparison to detention in the United States.

*See* Pls. SJ Rep. at 26-27.  In particular, Plaintiffs repeatedly point to the costs associated with the

detention facilities at NSGB.  *See* ECF No.110-3 at ¶¶ 14, 29-32, 40-41, 111-15, 119-24.  Plaintiffs

also place considerable emphasis on the number of removable aliens transferred from the United

States to NSGB and then back to the United States before eventually reaching their final

destinations.  *Id*. at ¶¶ 53-54, 56-69.  Plaintiffs even go so far as to offer their own statistical

analysis of the time removable aliens spent detained at NSGB before making the next step in the

removal process.  *Id*. at ¶¶ 55, 57-69, 79-92, 96-105.  And consistently weaving through these data

points is Plaintiffs' inexplicable focus on whether the DHS possessed travel arrangements and

acceptances for each alien before moving them to NSGB, as if the government is somehow acting

improperly by pursing two or more related goals—travel arrangements, country acceptances when

needed, and stagging—all at the same time.  *Id*. at ¶¶ 37, 70-87, 89-105.

Should this Court view the Guantanamo detention policy as arbitrary, capricious, or an abuse of discretion based on Plaintiffs' claims that the program is too costly or inefficient and grant relief, the very real possibility exists that such a ruling will be abused in the future to challenge any movement or action taken in connection with the multistep removal process, even when occurring wholly within the United States. DHS regularly transfers removable aliens between detention facilities and staging areas and back again as the situations dictate, while at the same time engaging in efforts to finalize travel arrangements and secure removal country acceptances if needed. Schultz Decl. ¶ 9-10. DHS applied the same procedures to the removable aliens transferred back and forth between the United States and NSGB. The distinction between the removal methods used within the United States exclusively and those partially involving NSGB amount to a difference in degree, not in kind. This is one reason why detention decisions are not reviewable under the APA and why, even if the Court rules for Plaintiffs, it should require further justification without vacatur.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action.

Dated:  August 4, 2026                    Respectfully submitted,

BRETT A. SHUMATE                    RUSSEL J.E. VERBY
*Assistant Attorney General*          *Senior Litigation Counsel*

DREW C. ENSIGN                       ALEXA PERLMUTTER
*Deputy Assistant Attorney General*   *Trial Attorney*

ANTHONY NICASTRO                    By: /s/ *Jason K. Zubata*
*Director*                            JASON K. ZUBATA
                                      *Trial Attorney*
AUGUST E. FLENTJE                    U.S. Department of Justice, Civil Division
*Deputy Director*                     Office of Immigration Litigation
                                      P.O. Box 868, Ben Franklin Station
LESLIE McKAY                         Washington, DC 20044
*Assistant Director*                  Tel: 202-532-4143
*Counsel for Defendants*              Email: Jason.K.Zubata@usdoj.gov

- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 4, 2026, I electronically filed the foregoing Motion for Defendants with the Clerk of Court for the United States District Court of the District of Columbia using the CM/ECF system.  I also certify that Plaintiffs will be served through their counsel, who are registered CM/ECF users, via the CM/ECF system.

By: /s/ *Jason K. Zubata*
JASON K. ZUBATA
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: 202-532-4143
Email: Jason.K.Zubata@usdoj.gov