**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YAMIL LUNA GUTIERREZ, *et al.*,

*Plaintiffs-Petitioners*, *on behalf of themselves and all others similarly situated,*

v.

MARKWAYNE MULLIN, Secretary of Homeland Security, in his official capacity,[1] *et al.*,

*Defendants-Respondents*.

Case No. 1:25-cv-01766-SLS

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO MAINTAIN THE ADMINISTRATIVE RECORD UNDER SEAL[2]**

Defendants have failed to establish that the certified administrative record ("CAR") should remain under seal. Accordingly, the Court should deny Defendants' Motion, ECF No. 88, and order Defendants to unseal the CAR with appropriate redactions to protect any personal identifying information.

## BACKGROUND

On January 16, 2026, the parties filed a Joint Status Report regarding the Unclassified Protective Order indicating that "[t]he Parties have agreed that the unclassified record . . . will be treated as protected until the Court resolves any contested issues and issues a final Protective Order

[1] On March 23, 2026, Markwayne Mullin was confirmed to serve as the Secretary of Homeland Security. He is automatically substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] This brief has been filed under seal because it discusses the contents of the Certified Administrative Record, which is currently under seal, but Plaintiffs maintain that the Certified Administrative Record should not remain sealed for the reasons discussed herein. If Defendants' motion is denied, Plaintiffs request that this brief and any other briefing or orders discussing the Certified Administrative Record be made available on the public docket. *See* Proposed Order.

governing the unclassified record and weekly class member reporting." Jt. Rep. at 1, ECF No. 69. The Parties noted that they had "come to agreement on the majority of this Order, with one key area of disagreement remaining for the Court's resolution"—the process for designating protected materials subject to the protective order. *Id.* at 1–2. The parties each submitted their proposals, *see* ECF Nos. 69-1 and 69-2, and on January 21, the Court issued a ruling on the dispute resolution process. Min. Order (Jan. 21, 2026).

Defendants produced the vast majority of the unclassified CAR on January 16. This production included over seven hundred pages that Defendants have not designed as protected. *See* U-DOW-CAR-34–120, 129–30, 156–69, 213–88, 339–582, 600–29; U-DHS-CAR-79–87, 124–26, 274–506, 557–560. However, Defendants also designated entire documents as protected under the Protective Order. Plaintiffs objected to those designations on the basis that the vast majority of documents at issue did not include the categories of information that the parties agreed would be covered by the Protective Order, such as personally identifying information or "[s]ensitive information about law enforcement or national security staffing, law enforcement or national security resources, law enforcement or national security intelligence, and/or law enforcement or national security method." ECF No. 69-1 § 2.d.–e., at 2; ECF No. 69-2 (same).[3] In the limited circumstances in which documents included names and contact information of non-public facing federal government employees, Plaintiffs proposed that such information could be protected through limited redactions rather than designating entire documents as protected.

Defendants agreed to remove designations from two publicly available documents, U-DOW-CAR-169–73 and DHS-1–78. In addition, during a meet and confer on February 25,

[3] Plaintiffs objected to the designations of the following pages: U-DOW-CAR-001–33, 121–28, 131–55, 169–73, 176–212, 289–338, 583–599, 630–645 and DHS-1–78, 88–90, 91–123, 127–273, 507–556.

Defendants reported that they may be amenable to protecting at least some material through redactions rather than designating entire documents as protected, and that Defendants were conducting an additional level of review of the CAR to make this determination. Plaintiffs followed up with Defendants regarding Plaintiffs' proposal to use limited redactions and, as of April 10, 2026, Defendants state they "continue to discuss" and have not provided Plaintiffs any further updates regarding their position on the remaining 21 documents (a total of 419 pages) whose designations are contested. *See supra* at 2 & note 3.

**ARGUMENT**

**I. Unsealing the Certified Administrative Record is Not Premature.**

Defendants assert that the CAR should remain protected pursuant to the Parties' previous agreement because the Court has not issued a final Protective Order. *See* Defs.' Mot. to Maintain the CAR Under Seal ("Mot.") at 2 (citing ECF No. 69 at 1). But the Court has effectively adopted the parties' proposed Protective Order by ruling on the only outstanding dispute over the proposed order—the method of resolving disputes over specific designations. *See* Min. Order (Jan. 21, 2026); ECF No. 69 at 1 ("[T]he Parties have come to agreement on the majority of this [Protective] Order, with one key area of disagreement remaining for the Court's resolution."). And Defendants' suggestion that the Parties agreed that the entire CAR would "be treated as protected" until the Court resolved each and every disputed designation under the CAR is mistaken. Instead, the Parties agreed that the record would remain protected until the Court resolved the contested issues about the Protective Order itself, which it has now done. *See* ECF No. 69 at 1; Min. Order (Jan. 21, 2026). Indeed, the Court's Order made clear that the CAR would not be treated as protected in its entirety while the Parties disputed certain designations, because the Court specifically noted that while the Parties disputed a specific designation, only "[t]he *designated* material will continue to

be treated as protected until the Court has resolved the dispute." Min. Order (Jan. 21, 2026) (emphasis added). If there were any doubt, the Court may, in conjunction with denying the government's motion to keep the CAR under seal, issue the final Protective Order as adopted by the Court. *See id.*

Further, "even where a protective order has issued, a district court cannot abdicate its responsibility to oversee the discovery process and determine whether filings should be made available to the public." *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 78 (D.D.C. 2020) (quoting *McConnell v. Fed. Election Comm'n*, 251 F. Supp. 2d 919, 927 (D.D.C. 2003)). "Thus, the mere fact that material may be subject to a protective order limiting disclosure does not mean that it must remain shielded from public disclosure." *Id.* (citations omitted).

## II. The *Hubbard* Factors Weigh Strongly in Favor of Unsealing the CAR.

There is a "strong presumption in favor of public access to judicial proceedings." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). Defendants have not overcome that presumption here.

At a minimum, the several hundred pages within the CAR that are not designated as protected should be unsealed. *See, e.g.*, U-DOW-CAR-34–120, 129–30, 156–75, 213–88, 339–582, 600–29; U-DHS-CAR-1–87, 124–26, 274–506, 557–60. Defendants have not attempted to make any argument that the content of these documents should remain shielded from the public, let alone establish that competing interests outweigh the strong presumption of disclosure. *See Metlife, Inc.*, 865 F.3d at 665–66.

For the remaining material Defendants have designated as protected and whose status is in dispute, the Court should order Defendants to file these documents on the public docket with appropriately tailored redactions to protect private information about non-public facing individuals.

Contrary to Defendants' claim, the six factors set forth in *Hubbard*, 650 F.2d at 317–22, weigh in favor of unsealing these documents with tailored redactions. *Metlife, Inc., 865 F.3d* at 665.

*First*, there is a "need for public access to the documents at issue." *Id.* These documents are plainly of significant public interest, as they pertain to an unprecedented government policy. The public's interest in transparency of judicial proceedings and documents is heightened where, as here, the government is a party to the case. *All Assets Held at Bank Julius Baer & Co*., 520 F. Supp. 3d at 81 (citing *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

*Second*, some of the material designated as protected has been previously disclosed to the public, which strongly weighs in favor of unsealing that material. *See Metlife, Inc.*, 865 F.3d at 665. For example, DHS-118–23 and U-DOW-121–26 have been submitted on the public docket with redactions by Defendants *in this very case*, *see* ECF No. 28-1, and disclosed by media reporting.[4] DHS-127–273 was also publicly disclosed in Freedom of Information Act litigation relating to the government's practice of detaining people who have final orders of removal but cannot be removed to their home countries due to persecution or torture. *See generally Cap. Area Immigrants' Rts. Coal. v. DHS*, 1:23-cv-1498 (E.D. Va. May 1, 2025), ECF No. 32.

---

[4] *See* Camilo Montoya-Galvez, *Memo Shows U.S. Can Send Migrants Without Criminal Records to Guantanamo, Despite Trump's Promise to Hold "the Worst" There*, CBS News (Apr. 17, 2025), https://www.cbsnews.com/news/guantanamo-trump-migrants-without-criminal-records.

*Third*, while Defendants' objection to unsealing weighs against disclosure, Defendants are the only party that has objected, and their objection is not dispositive. *Metlife, Inc.*, 865 F.3d at 665 (noting that under *Hubbard*, courts must consider, among the other factors, "the fact that someone has objected to disclosure, and the identity of that person" (citations omitted)); *see also Nat'l Children's Ctr., Inc.*, 98 F.3d at 1410 (reversing district court's decision to seal consent decree when a party's objection to unsealing was only factor weighing in favor of maintaining seal); *CNN, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021) (recognizing that the absence of a third party objection cuts in favor of disclosure).

*Fourth*, privacy and property interest considerations weigh in favor of sealing only specific portions of documents that reveal personal identifying information, not wholesale sealing of documents. *See Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 55 (D.D.C. 2021) (recognizing that privacy interests "do[] not serve as a blanket excuse to keep the public from accessing entire judicial records—rather, [they] may justify only 'keep[ing] under seal those documents *or portions of documents* which would result in an unwarranted invasion of privacy'" (quoting *Hubbard*, 650 F.2d at 324)); *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) ("Should the court determine that some kind of sealing order is warranted, that order should be no broader than is necessary to protect those specific interests identified as in need of protection."). Defendants raise arguments about specific private material that should remain under seal, such as identifying information about non-public facing federal government employees. But Plaintiffs do not dispute that any personal identifying information about a non-supervisory government official or contractor, including email addresses, should remain redacted. In fact, Plaintiffs proposed this as a solution to the parties' dispute at the February meet and confer. Instead, what Plaintiffs dispute is the blanket designation of entire documents based on this

rationale. And Defendants have not explained, either at the meet and confer or in their motion to this Court, why documents containing such information should remain under seal in their entirety.

Defendants also claim that there is a "strong privacy interest" in protecting sensitive law enforcement information and a strong possibility of prejudice to the government's law enforcement and detention operations at Guantánamo. Mot. at 4. But they merely make cursory assertions and do not explain how the pages they cite implicate sensitive law enforcement information. *See* Mot. at 4; U-DOW-CAR-131–34 (action memo describing in general terms support DOD is providing to operations at Guantánamo); U-DOW-CAR-147–53 (similar action memo describing DOD support at the southwest border); U-DOW-CAR-176–212 (fragmentary order describing in general terms DOD support to operations at Guantánamo); U-DOW-CAR-583–99 (letter and similar fragmentary order describing similar). And as this Court already noted, "the default is that documents should not be filed under seal" and Defendants need to "justify" maintaining the CAR under seal. Tr. Mar. 19, 2026 Hr'g at 16:2–5.

Defendants' reliance on *CNN, Inc. v. FBI*, 984 F.3d at 120, is misplaced. In that case, the court found that unsealing the remainder of a partially redacted FBI record would disclose the identities of "intelligence sources whose lives may depend on" continued sealing and impair intelligence gathering. *Id.* But the document at issue there was *already* unsealed in part. *Id.* at 117. That is the very approach Plaintiffs are asking for here. Because nothing in the CAR, including the specific pages Defendants cite, implicates the identities of intelligence sources or even reveals intelligence-gathering methods, *see, e.g.*, U-DOW-CAR-131–34, 147–53, 176–212, 583–99, Plaintiffs' position that Defendants' privacy interests can be protected through the redaction of particular information rather than wholesale sealing is even stronger than in *CNN, Inc*.

*Fifth*, Defendants have not claimed that disclosure will cause any prejudice in future litigation. *See All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d at 85. The *CNN, Inc.* court considered the risk to intelligence gathering under this *Hubbard* factor, 984 F.3d at 120, but Plaintiffs have already explained how there is no such risk under the fourth *Hubbard* factor as to privacy, *supra* at 6–7, and Defendants make no further arguments about prejudice.

*Sixth*, there is a generally a "strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them." *All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d at 85. Given that the Parties intend to rely on documents in the CAR, this factor weighs in favor of disclosure.

Finally, Defendants additionally assert that the Court should not unseal the CAR at this time given that the Parties have been engaged in ongoing conversations over specific designations. But since February 25, Plaintiffs have awaited Defendants' review of the CAR to determine whether Defendants would agree to redact specific material rather than designating entire documents as protected. When Plaintiffs followed up recently, Defendants stated on April 10, 2026, that they "continue to discuss." Defendants have not indicated when this review will be complete nor whether they intend to de-designate whole documents in lieu of more tailored redactions. In summary, Defendants have failed to overcome their high burden to use blanket designations and keep the entire CAR under seal, particularly given the presumption of open courts and public access. *See, e.g.*, *Parhat v. Gates*, 532 F.3d 834, 851–53 (D.C. Cir. 2008) (denying government motion in cases regarding Guantánamo detainees that relies on "spare, generic assertions of the need to protect information").

**CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motion to maintain the CAR under seal, ECF No. 88, and order Defendants to file the CAR on the public docket with only tailored redactions to protect non-supervisory government employees' identifying information.

Dated: April 13, 2026

Respectfully submitted,

/s/ *Lee Gelernt*

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Judy Rabinovitz
Noor Zafar
Omar C. Jadwat
Natalie Behr
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
IRP_NBehr@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

My Khanh Ngo (D.D.C. Bar No. CA00219)
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Derek Poteet*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, DC 20005
(703) 217-8374
dpoteet@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Kimberly Grano (D.D.C. Bar No. NY0512)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor

*Attorneys for Plaintiffs-Petitioners*

New York, New York 10004
(646) 946-7453
kgrano@refugeerights.org
gschwarz@refugeerights.org

**Pro bono representation certificates forthcoming*