**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

YAMIL LUNA GUTIERREZ, *et al.*,

*Plaintiffs-Petitioners*, *on behalf of themselves and all others similarly situated,*

v.

MARKWAYNE MULLIN, Secretary of Homeland Security, in his official capacity,[1] *et al.*,

*Defendants-Respondents*.

Case No. 1:25-cv-01766-SLS

**PLAINTIFFS' SEALED MEMORANDUM REGARDING DISCOVERY**

Plaintiffs submit this memorandum pursuant to the Court's April 1, 2026, Sealed Minute Order requesting simultaneous memoranda regarding whether Page U-DOW-CAR-647 or other portions of the Supplement to the Unclassified Certified Administrative Record ("CAR Supplement") "contain[] information relevant to determining the contours of the challenged policy, and if so, the extent to which that information obviates the need for the additional discovery outlined in the Parties' [86] Joint Notice." Min. Order (Apr. 1, 2026).

**ARGUMENT**

The CAR Supplement's reference to 8 U.S.C. § 1231(g) as the statutory authority for detention at Guantánamo is relevant to determining the scope of the challenged policy, and it supports Plaintiffs' claim that there is no statutory authority for such detention because § 1231(g) authorizes detention only "pending removal" and detainees at Guantánamo have been "removed"

[1] On March 23, 2026, Markwayne Mullin was confirmed to serve as the Secretary of Homeland Security. He is automatically substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

by virtue of their having departed from the United States. *See* Op. Denying Mot. to Dismiss ("MTD Op.") at 30–44, ECF No. 53. However, neither this reference nor anything else in the CAR Supplement obviates Plaintiffs' need for limited discovery to rebut Defendants' assertions that transfers of noncitizens to Guantánamo, and their detention there, are nonetheless part of the government's execution of removal orders pursuant to § 1231(g) *and* 8 U.S.C. § 1103(a)(3), as well as any evidence they may try to submit at the summary judgment phase. Plaintiffs therefore still seek limited discovery on the statutory claim, including on the important question identified by the Court regarding whether, at the time of an individual's transfer to Guantánamo, another country had agreed to accept that individual.

Defendants will likely insist that by providing a particular document, Page U-DOW-CAR-647, they have obviated the need for additional discovery, but they have not. Page U-DOW-CAR-647 is a general administrative message from the "Joint Staff J3" in Washington, D.C., dated February 4, 2025, which states that:

> DHS will maintain legal custody of all illegal aliens in transit to/from and at GTMO. . . . 8 USC sec 1231(g) allows DHS to arrange appropriate places for detention. DHS assesses that GTMO is a "United States Government facility," and is therefore authorized as an appropriate place for detention of illegal aliens.

ECF No. 85-2 at 5.

This reference to 8 U.S.C. § 1231(g) indicates that Defendants intended to use Guantánamo as a detention facility within the meaning of 8 U.S.C. § 1231(g), the statutory authority for DHS to arrange for detention in U.S. facilities "for aliens detained pending removal or a decision on removal." *Id*. Detention "pending removal" is, as this Court already held, different from detention as part of "executing a removal order," as the government claims. *See* MTD Op. at 31–35, 44–45; Tr. Mar. 19, 2026 Hr'g at 10:18–22.

While the § 1231(g) reference is thus probative (in Plaintiffs' favor), it does not dispense with the need for further extra-record discovery—because Defendants are still contesting the scope of the challenged policy. Indeed, in their prior briefing, Defendants relied on § 1231(g) for the government's authority "to transfer a detainee to an appropriate place of detention *as part of a removal effort*." Defs.' Mot. to Dismiss at 11, ECF No. 29 (emphasis added); *id*. at 18–20. Yet as this Court has noted, Defendants have still consistently "characterize[d] the Guantanamo-detention policy as 'part of the government's efforts to facilitate [immigration detainees'] removals,'" and "suggest that detention at Guantanamo constitutes a 'staging point' amid execution of a removal order." MTD Op. at 45 (quoting Defs.' Mot. to Dismiss at 20; Defs.' Reply at 17, ECF No. 35).

Most recently, during the March 19 hearing regarding the parties' outstanding discovery disputes, the Court asked Defendants whether they were "prepared to concede that Guantanamo is being treated as a detention facility in, essentially, the same way as domestic detention facilities[.]" Tr. Mar. 19, 2026 Hr'g at 11:1–3; *see also id*. at 11:22–24 ("The question is: Is the government conceding that Guantanamo is being treated as a detention facility the same way other detention facilities are used domestically?"). In response, counsel for Defendants stated: "I am not sure at this point we can concede that," *id*. at 12:13–14, and that "[i]t's my understanding that the goal was that this is a weigh [sic] station on [sic] route to final destination," *id*. at 12:18–20.

Indeed, Defendants have maintained that the detention policy at Guantánamo is authorized not just by § 1231(g) *but also* by 8 U.S.C. § 1103(a)(3), which states that the Secretary of Homeland Security "shall . . . perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." *See* Defs.' Mot. to Dismiss at 21 ("Section 1103(a)(3) operates *in tandem* with [8 U.S.C. §§ 1231 and 1225] to give the Secretary all necessary authority to conduct the removal operation in her preferred manner, including *to plan the removal*

*mission and arrange for appropriate staging points to support that mission.*" (emphasis added)); *see also id.* at 19–21; Defs.' Reply at 17. Thus, Defendants will likely assert that their early reliance on § 1231(g), as demonstrated by this page of the CAR Supplement, remains consistent with their use of Guantánamo as a "way station" amid execution of a removal order.

As this Court noted, "an essential aspect of the policy—whether these people are only stopping [at Guantánamo] while being removed[—]is not written down anywhere, not in the administrative record." Tr. Mar. 19, 2026 Hr'g at 18:3–6 (referring to the CAR). That remains true for the CAR Supplement as well, which contains no information on this point, at least not in the unredacted portions provided to Plaintiffs. The *absence* of any evidence, in either the CAR or CAR Supplement, that Guantánamo was intended to be used as a way station during the process of removal is itself relevant to determining the contours of the policy. However, the limited additional discovery Plaintiffs seek—including whether another country had agreed to accept the individual for removal at the time of their transfer to Guantánamo—is nonetheless appropriate given the government's continued insistence that detention at Guantánamo is part of its execution of removal orders. *See id*. at 19:24–20:10.[2] Because Defendants continue to dispute this factual question (and may try to submit further evidence or raise new arguments at the summary judgment stage), Plaintiffs have the right to information relevant to that question. Order on Discovery at 4–5, ECF No. 75.

Additionally, prior to this Court's April 1, 2026, order, Defendants had agreed to respond to four remaining Requests for Admission as amended by the parties, and part (5) of Interrogatory

[2] Even if there were acceptances, that alone would not override other evidence that Guantánamo is not being used as a stopover. But lack of acceptances would be consistent with evidence showing that Defendants are not using Guantánamo as a "way station" for removal, including length of time people are detained there and how people are transferred back to the United States.

No. 1, *see* Tr. Mar. 19, 2026 Hr'g at 6:10–24, as well as to provide a spreadsheet showing for each person transferred to Guantánamo between June 4, 2025, and January 12, 2026, to where they were transferred immediately after leaving Guantánamo, *see* ECF No. 86 at 1–2. On April 10, 2026, Defendants produced to Plaintiffs the latter spreadsheet but stated, contrary to their earlier agreement, that they "continue to discuss" the Requests for the four Admission (Nos. 1, 2, 5 and 6), and that they now oppose producing information responsive to part (5) of Interrogatory No. 1 because that is "pending resolution by the Court." Plaintiffs are willing to withdraw their outstanding discovery requests for responses to Requests for Admission 2, 5, and 6, because much of that information is reflected in the produced spreadsheet, but maintain that the Court should order Defendants to respond to the remaining discovery that go to their statutory claim and the contours and implementation of the policy. These are: Request for Admission No. 1 and part (5) of Interrogatory No. 1, which are minimal and Defendants had originally agreed to after meet and confers between the parties.[3] Plaintiffs also request that Defendants answer the two discovery requests tailored to the question the Court posed—what the government is doing when it brings people to Guantánamo and specifically whether, at the time of an individual's transfer to Guantánamo, another country had agreed to accept that individual—as discussed at the recent hearing. *See* Tr. Mar. 19, 2026 Hr'g at 19:24–20:10. Those are (1) information about whether another country had agreed to accept the individuals identified in response to Interrogatory No. 1; and (2) any and all memoranda of understanding, guidance, standard operating procedures,

[3] Request for Admission No. 1 asks Defendants to admit that the U.S. government has never transferred a noncitizen from immigration detention in the United States to Guantánamo prior to February 4,2025, and part (5) of Interrogatory No. 1, as modified by the parties' agreement, asks Defendants to confirm for each individual transferred between June 4, 2025, and January 12, 2026, "whether they were ultimately delivered to a country designated by 8 U.S.C. § 1231(b)."

standards, policies, or procedures, regarding "what the government is thinking when it brings people to Guantanamo." *See* Joint Not., ECF No. 86 at 4.[4]

Finally, Plaintiffs are unable to address whether the redacted material in the CAR Supplement is relevant to determining the contours of the challenged policy because Defendants have not provided Plaintiffs' counsel—specifically those who already have security clearances—the ability to review the redacted material within the CAR Supplement. However, Plaintiffs believe that, at a minimum, the redacted material within pages U-DOW-CAR-649, 651, 653–54 may be relevant to the policy's contours because the surrounding *un*redacted material indicates that the redacted material pertains to the "detention of high-threat illegal aliens" at Guantánamo. *See e.g.*, U-DOW-CAR-651, ECF No. 85-2 at 9. Plaintiffs have requested the ability for security-cleared counsel to review unredacted versions of these pages. In the alternative, Plaintiffs have requested that, as a first step, Defendants provide them either with unclassified substitutions for the redacted information on these pages or a declaration confirming that the redacted information is not relevant to a claim or defense of any party, which the Court can then assess as to its accuracy given that the Court has access to the redacted information. The parties have met and conferred on these requests, but Defendants have not yet determined their position. Should the parties not reach agreement on this issue, Plaintiffs reserve the right to seek access to those materials in unredacted form for their security-cleared counsel, although still do not seek to delay briefing on the parties' motions for summary judgment; instead, the Court can order supplemental briefing on summary judgment should the redacted materials be relevant to the APA claims.

[4] Plaintiffs also requested information about flight manifests, travel documents and the travel arrangements typically required when a removal order is executed. *See* Tr. Mar. 19, 2026 Hr'g at 20:11–21:1. The Court may also order the other discovery as it is relevant to the contours of the disputed policy. *Id*.

## CONCLUSION

For the reasons discussed above, the CAR Supplement's reference to § 1231(g) is relevant to determining the scope of the challenged policy but neither this reference nor anything else in the CAR Supplement obviates Plaintiffs' need for the outstanding, limited discovery on the statutory claim.

Dated: April 13, 2026

Respectfully submitted,

/s/ *Lee Gelernt*

Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No. NY0224)
Judy Rabinovitz
Noor Zafar
Omar C. Jadwat
Natalie Behr
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
IRP_NBehr@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

My Khanh Ngo (D.D.C. Bar No. CA00219)
Kyle Virgien*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org

Derek Poteet*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, DC 20005
(703) 217-8374
dpoteet@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Kimberly Grano (D.D.C. Bar No. NY0512)
Ghita Schwarz (D.D.C. Bar No. NY0663)
INTERNATIONAL REFUGEE

ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
(646) 946-7453
kgrano@refugeerights.org
gschwarz@refugeerights.org

*Attorneys for Plaintiffs-Petitioners*

**Pro bono representation certificates forthcoming*